1
2
3
4
5
6
7

8          IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

9                  IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| 10 RICHARDO SALOM, CATHERINE PALAZZO as assignee for Ruben Palazzo, and PETER HACKINEN, *on their own behalf and on behalf of other similarly situated persons*, | Case No: 24-2-04553-8 SEA |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| vs. | |
| NATIONSTAR MORTGAGE LLC d/b/a CHAMPION MORTGAGE, CHAMPION MORTGAGE COMPANY, CHAMPION MORTGAGE COMPANY LLC, CHAMPION MORTGAGE COMPANY OF TEXAS, CHAMPION MORTGAGE OF OHIO, MR. COOPER, NATIONSTAR, NATIONSTAR MORTGAGE, NATIONSTAR MORTGAGE LLC, RIGHTPATH LOAN SERVICING, RIGHTPATH SERVICING, RUSHMORE LOAN SERVICING, AND RUSHMORE SERVICING, | (JURY DEMAND) |
| Defendants. | |

24          1.      Defendant Nationstar Mortgage LLC which does business under various trade

25  names (including Champion Mortgage, Champion Mortgage Company, Champion Mortgage

26  Company LLC, Champion Mortgage Company of Texas, Champion Mortgage of Ohio, Mr.

COMPLAINT - 1

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

1   Cooper, Nationstar, Nationstar Mortgage, Nationstar Mortgage LLC, RightPath Loan Servicing,

2   RightPath Servicing, Rushmore Loan Servicing, and Rushmore Servicing).  Over the last

3   decade, Nationstar has also merged with multiple other mortgage servicers, including Seterus

4   Inc., and assumed their portfolio of servicing rights as its own. Collectively these DBAs and

5   merged entities are referred herein as "Nationstar".

6        2.      As a result of its growth, Nationstar has become one of the largest servicers of

7   residential mortgages in the country and it routinely violates the Fair Debt Collection Practices

8   Act ("FDCPA") and various state debt collection laws, and breached the uniform terms of

9   borrowers' mortgages ("Uniform Mortgages") by charging and collecting illegal payoff

10  statement fees when borrowers requested payoff statements to satisfy their loans or understand

11  what sums Nationstar claims it is due ("Payoff fees").

12       3.      The Payoff Fees subject to this action are nothing more than junk fees added

13  unfairly or deceptively to the accounts of mortgage borrowers by Nationstar to thousands of

14  consumers on a regular basis which are not expressly authorized by law or standard loan

15  documents.

16       4.      The Consumer Financial Protection Bureau has issued an advisory opinion

17  explaining the harm to consumers and also to honest actors when financial service companies

18  like Nationstar impose and collect junks fees explaining generally:

19       5.      Debt collectors play a critical role in the consumer finance ecosystem, and the

20  CFPB wants to ensure that law-abiding debt collectors are not disadvantaged by their

21  competitors that impose unlawful fees…These types of fees are often illegal, and today's

22  advisory opinion and accompanying analysis seek to stop these violations of law and assist

23  consumers who are seeking to hold debt collectors accountable for illegal practices.

24       6.      Nationstar knows the law and has a history of imposing and collecting junk fees

25  it is not entitled to collect.  This conclusion is based in part on the following:

26

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

1    7.    In the matter of *Garcia v. Nationstar Mortgage LLC*, Case No. C15-1808 TSZ

2 (W.D. Wash.) Nationstar settled claims involving thousands of illegal 'convenience fees'

3 imposed and collected from borrowers nationwide.

4    8.    Nationstar entered in an Assurance of Discontinuance with the Consumer

5 Protection Division of the Office of the Maryland Attorney General, dated May 14, 2018, where

6 it agreed to "refund, reverse or otherwise credit" property inspection fees it imposed related to

7 more than 25,543 transactions valued at a sum of approximately $1,088,168 in prohibited fees

8 and Nationstar agreed it had the means to identify the borrowers' names, addresses, loan type,

9 number of months charged, the sum of fees imposed, any amounts "refunded, reversed, credited

10 or in another other way reimbursed to the consumer," the date a loan transferred to another

11 servicer (if applicable), and the name of the new servicer the account was transferred (if

12 Applicable))

13    9.    In the matter of *Baxter v. Lakeview et. al* (Case No. C-02-CV-22-000654, Cir.

14 Ct. of Anne Arundel County, Maryland)(November 10, 2022) Nationstar admitted under

15 penalties of perjury by its corporate designee that after it was sued it identified and refunded

16 over a million dollars of so-called 'convenience fees' imposed and collected from Maryland

17 mortgage borrowers in violation of Maryland law which incorporates Federal law.

18    10.    In this action, Plaintiffs challenge Nationstar's current practice of illegally

19 charging residential, homeowners various sums, including $25.00, for a written payoff quote

20 ("Payoff Transaction").

21    11.    The FDCPA prohibits Nationstar from collecting any amount in addition to the

22 principal obligation unless such amount is explicitly stated in the agreement creating the debt or

23 expressly permitted by law.  15 U.S.C. § 1692f(1). Importantly, Payoff fees are found nowhere

24 in the Uniform Mortgages and are not permitted by state debt collection laws governing

25 Nationstar's conduct across the United States.

26    12.    A mortgage servicer such as Nationstar generally works on behalf of another

pursuant to an assignment of servicing rights agreement with the mortgage lender or noteholder.

COMPLAINT - 3

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

1   Under such an agreement, the servicer performs the everyday tasks of managing the loan, such

2   as collecting monthly payments, applying payments, managing escrow accounts, and, in the

3   event of a default, enforcing the mortgage through foreclosure.  As a pure mortgage servicer,

4   Nationstar is generally not a party to the Uniform Mortgage documents between the borrower

5   and the owner of the loan.  It is simply a third-party vendor retained by the owner or insurance

6   provider for the loan with no rights to alter the Uniform Agreements unless agreed to by all

7   parties in a written and countersigned agreement.

8          13.     The assignment of servicing rights agreement transfers the lender's servicing

9   rights under the mortgage and nothing more. Servicers and lenders are bound by the written

10  terms of the mortgages and owe the same obligations to borrowers to only impose and collect

11  fees actually authorized by the signed agreements or law.  The terms of all mortgage loans

12  generally incorporate all applicable laws which include 15 U.S.C. § 1692f(1) and the various

13  state laws described herein.

14         14.     Nationstar services mortgages throughout the United States and is supposed to be

15  compensated out of the interest paid on each borrower's monthly payment. Nationstar may

16  charge borrowers fees expressly authorized under the Uniform Mortgage or amounts actually

17  paid to third parties who perform services for Nationstar's borrowers that are expressly

18  authorized by law or contract in the Uniform Mortgage. Importantly, the Uniform Mortgage

19  does not permit Nationstar to mark-up the amounts it pays to third parties for bona fide services

20  that are expressly permitted by law or signed contract (since the mortgages at issue are required

21  to be in writing).

22         15.     Notwithstanding the law governing a Uniform Mortgage, Nationstar imposes and

23  collects directly or indirectly, unauthorized charges to create a profit center for itself. Here,

24  Nationstar charged borrowers for Payoff fees in amounts up to $25.00 through its mortgage

25  servicing practices.  These sums exceed the cost to Nationstar to provide the Payoff

26  Transaction.  These sums are also already paid to Nationstar as the percentage of interest it

COMPLAINT - 4

1  collects from borrowers.  So, the excessive sums are nothing less than junk fees to which

2  Nationstar has no right to add and collect on a borrower's mortgage loan account.

3      16.      Despite its uniform contractual obligations to charge only fees explicitly allowed

4  under the mortgage and applicable law, and only those amounts actually disbursed, Nationstar

5  leverages its position of power over homeowners and demands exorbitant Payoff Fees. Even if

6  some fees were allowed, the mortgage uniform covenants, and applicable law only allow

7  Nationstar to pass along the actual cost of fees incurred by it to the borrower – here only a few

8  cents per Payoff Transaction and not the sums actually imposed and collected by Nationstar

9  which far exceed the actual costs.

10     17.      Because Nationstar has no right to impose and collect the Payoff Fees at issue in

11 this action or to inflate the actual costs imposed and collected, the extra sums collected amount

12 to impermissible pre-payment penalties which are barred by Federal and State laws discussed

13 *infra*.  While these sums may appear small in the individual situation, in the aggregate they

14 amount to a substantial profit center for Nationstar, paid for by consumers who do not assume

15 they are dealing with a scoundrel, which gives it an unlawful competitive advantage over honest

16 mortgage services who choose not to skirt or violate the laws governing this section.

17     18.      Nationstar imposed upon and/or collected Payoff Fees in Payoff Transactions

18 from Plaintiffs or their assignors and they bring this class action lawsuit individually and on

19 behalf of all similarly situated putative class members.

20                          **I.      JURISDICTION AND VENUE**

21     19.      This Court has jurisdiction over Nationstar because Nationstar conducts business

22 in Washington and commits torts in Washington, as described in this Complaint.

23     20.      Venue is proper because the cause of action accrued in this County.

24                          **II.      PARTIES**

25     21.      Richardo Salom ("Salom") is a current resident of the State of Washington.

26 Previously, Salom acquired his former home and property in Gaithersburg, Maryland (146

COMPLAINT - 5

**SEATTLE CONSUMER JUSTICE, P.S**
10728 16TH AVE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

1 | Quince Orchard Road) on or about June 23, 2003 along with his wife.  He financed the purchase

2 | of the property in part with an extension of credit in the sum of $286,500.00 made on the same

3 | date by Wachovia Mortgage Corporation ("Salom Loan"). The proceeds of the Salom Loan

4 | were utilized entirely for personal, consumer purposes by Salom.  The Salom Loan was a

5 | federally related mortgage (as that term is defined by 12 U.S.C. § 2602(1)). When Nationstar

6 | acquired the servicing rights to the Salom Loan, the Salom Loan had a past-due balance and

7 | was in default pursuant to the terms of the loan documents.  Nationstar imposed a Payoff Fee

8 | onto the Salom Loan on June 29, 2022 and Plaintiff Salom paid the sum imposed.

9 |      22.     Plaintiff Catherine Palazzo is the wife and lawful assignee of her husband Ruben

10 | Palazzo of certain of the claims asserted herein.  Ruben Palazzo has a mortgage loan serviced by

11 | Nationstar d/b/a RightPath on his home located at 34811 Old Ocean City Road, Pittsville, MD

12 | 21850 ("Palazzo Property"). Ruben Palazzo's mortgage loan is a federally related mortgage (as

13 | that term is defined by 12 U.S.C. § 2602(1)). When Nationstar acquired the servicing rights to

14 | the Palazzo Loan, Nationstar believed thousands of dollars of past due sums were owed and as a

15 | result of that belief it had to make numerous adjustments to correct the loan records.  Nationstar

16 | imposed a Payoff Fee onto Ruben Palazzo's mortgage loan on September 11, 2023 and Ruben

17 | Palazzo paid the sum imposed.  For the purpose of this litigation, Ruben Palazzo assigned his

18 | consumer claims asserted herein to his wife Catherine Palazzo on or about January 8, 2024.

19 |      23.     Plaintiff Peter Hackinen has a mortgage loan serviced by Nationstar on his home

20 | located at 624 North 138th Street, Seattle, WA 98133. Peter Hackinen's mortgage loan is a

21 | federally related mortgage (as that term is defined by 12 U.S.C. § 2602(1)). When Nationstar

22 | acquired the servicing rights in Peter Hackinen's mortgage loan, his loan had a past-due balance

23 | and was in default pursuant to the terms of the uniform loan documents.  Nationstar imposed

24 | multiple Payoff Fees onto Plaintiff Peter Hackinen's mortgage loan on July 21, 2023, August

25 | 12, 2023, and October 4, 2023, and Plaintiff Peter Hackinen paid the sums imposed as

26 | confirmed by Nationstar in writing on statements dated August 15, 2023, September 15, 2023,

October 6, 2023, November 13, 2023, and December 11, 2023.

COMPLAINT - 6

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

24.     Defendant Nationstar is a Delaware limited liability corporation with a principal office in Texas.  Nationstar is directly owned by two entities: (1) Nationstar Sub1 LLC ("Sub1") and (2) Nationstar Sub2 LLC ("Sub2"). Both Sub1 and Sub2 are 100% owned by Nationstar Mortgage Holdings Inc. ("NSM Holdings"). NSM Holdings is a wholly owned subsidiary of Mr. Cooper. More than 10% of the stock of Mr. Cooper is owned by (a) Blackrock, Inc., a Delaware corporation, and certain of its affiliates and (b) The Vanguard Group, Inc., a Pennsylvania corporation, and certain of its affiliates.  BlackRock and Vanguard boast over $15 trillion in assets under management.

## III.     APPLICABLE LAW

### A.     Fair Debt Collection Practices Act ("FDCPA") and other relevant Federal Laws and Regulations

25.     The purpose of the FDCPA is "to eliminate abusive debt collection practices . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692.

26.     The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes the false representation of "the character, amount, or legal status of any debt." *Id.* § 1692e.

27.     The FDCPA also prohibits debt collectors from "unfair or unconscionable means to collect or attempt to collect any debt," including "the collection of any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f.

28.     The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

29.     The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 1692a(3).

30.     The FDCPA defines "debt collector" as "any person who uses . . . any business the principal purpose of which is the collection of any debts, or who regularly collects or

SEATTLE CONSUMER JUSTICE, P.S.
10728 16ᵀᴴ Avᴇ SW
Sᴇᴀᴛᴛʟᴇ, WA 98146
V (206) 330-0595 / F (206) 400-7609

1    attempts to collect . . . debt owed . . . or asserted to be owed or due another." *Id.* § 1692a(6). A

2    loan servicer like Nationstar is subject to the FDCPA when it services mortgages that were in

3    default at the time the servicer acquired the servicing rights, or when it treats the mortgages as if

4    they were in default at the time it acquired the servicing rights.

5         31.    The FDCPA defines communication as "conveying of information regarding a

6    debt directly or indirectly to any person through any medium." *Id.* § 1692a(2).

7         32.    The FDCPA defines "debt" as "any obligation or alleged obligation of a

8    consumer to pay money arising out of a transaction . . . [that] are primarily for personal, family,

9    or household purposes." *Id.* § 1692a(5).

10        33.    As part of Dodd-Frank's enactment, Congress required a "servicer of a home

11   loan shall send **an accurate payoff balance** within a reasonable time, but in no case more than

12   7 business days, after the receipt of a written request for such balance from or on behalf of the

13   borrower." 15 U.S.C.A. § 1639g (emphasis added).

14        34.    Also under its regulatory authority, the CFPB also promulgated regulations to

15   which also required a servicer to "provide an accurate statement of the total outstanding balance

16   that would be required to pay the consumer's obligation in full as of a specified date." 12 C.F.R.

17   § 1026.36(c)(3). *See also* Official Interpretations of Reg. Z § 1026.36(c)(3)-3 ("Payoff

18   statements must be accurate when issued").

19        35.    The FDCPA, 15 U.S.C.A. § 1639g, 12 C.F.R. § 1026.36(c)(3), and the Official

20   Interpretations of Reg. Z § 1026.36(c)(3)-3 are expressly incorporated in every mortgage

21   contract agreed to by the FDCPA Class members including the Hackinen Loan.

22        **B.    Relevant Maryland and Washington Laws and Regulations**

23        36.    The Maryland Consumer Debt Collection Act ("MCDCA") offers broad

24   protection to consumers from underhanded methods used by unscrupulous creditors and debt

25   collectors. It applies more broadly than the FDCPA.

26        37.    The MCDCA broadly defines "collector" as "a person collecting or attempting to

collect an alleged debt arising out of a consumer transaction." Md. Code, Com. L. § 14-201(b).

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

1  It allows recovery against both creditors collecting debts in their own names, and those whose

2  primary business is debt collection. Nationstar is qualified as a collector under the MCDCA in

3  relation to the Maryland Subclass members defined *infra*.

4        38.    A "consumer transaction" under the MCDCA is "any transaction involving a

5  person seeking or acquiring real or personal property, services, money, or credit for personal,

6  family, or household purposes." Md. Code, Com. L. § 14-201(c). The Palazzo Loan and the

7  Salom Loan and the loans of the Maryland Sub-Class members at issue in this action qualify as

8  consumer transactions under the MCDCA.

9        39.    The MCDCA makes it illegal to engage in conduct prohibited by the federal

10  FDCPA including that which is barred by 15 U.S.C. § 1692f(1). Md. Code, Com. L. § 14-

11  202(11).

12        40.    The MCDCA also prohibits "collectors" from claiming, attempting, or

13  threatening to enforce a right with knowledge that the right does not exist. *Id.* § 14-202(8).

14        41.    Seeking to collect a debt that includes "an unauthorized type of charge" violates

15  §§ 14-202(8) and § 14-202(11) of the MCDCA.

16        42.    Nationstar has knowledge of Maryland law and disregarded that knowledge that

17  it was barred from collecting the Payoff Transaction fees but did so anyway.

18        43.    Nationstar is a licensed Maryland mortgage servicer/lender (Lic. No. 2119). As a

19  licensed mortgage lender/servicer, Nationstar "has a duty of good faith and fair dealing in

20  communications, transactions, and course of dealings with a borrower in connection with

21  the...servicing...of any mortgage loan." Md. Code Regs. 09.03.06.20. Included among such

22  express duties, is Nationstar's duties to (i) "provide the borrower or the borrower's designee

23  with a written statement of the dollar figure which will repay a loan in full" within five days of

24  any request (Md. Code Regs. 09.03.06.14) and (ii) only enter into written agreements with

25  borrowers and "[u]nless disclosed in written agreements signed by the borrower, a licensee may

26  not, directly or indirectly, impose any fee or charge payable by or on behalf of the borrower

(Md. Code Regs. 09.03.06.08). The MCDCA was expressly incorporated in every mortgage

COMPLAINT - 9

SEATTLE CONSUMER JUSTICE, P.S
10728 16TH AVE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

1    contract agreed to by the Maryland Subclass members' loans and also the Palazzo Loan and the

2    Salom Loan.

3         44.     The Washington State Consumer Agency Act ("WCPA") protects consumers

4    from unfair and deceptive acts in trade and commerce. RCW § 19.86 et seq. To prevail on a

5    CPA action, the plaintiff must prove an "(1) unfair or deceptive act or practice; (2) occurring in

6    trade or "commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or

7    property; (5) causation." *Klem v. Washington Mut. Bank*, 176 Wn. 2d 771, 782 (2013). The

8    business of debt collection and default loan servicing has been adjudicated by Washington

9    Courts as occurring in commerce and impacting an important public interest. *See Panag v*

10   *Farmers Ins. Co. of Washington*, 166 Wn.2d 27 (2009); *Eng v, Specialized Loan Servicing*, 20

11   Wn.App.2d 435 (2021).

12        45.     The Washington State legislature has also enacted the Collection Agency Act to

13   specifically target debt collectors and violations of that act support a per se violation of the

14   WCPA . *See* RCW § 19.16.250.

15        46.     The Washington State Collection Agency Act ("WCAA") broadly defines

16   "collection agency" as "[a]ny person directly or indirectly engaged in soliciting claims for

17   collection, or collecting or attempting to collect claims owed or due or asserted to be owed or

18   due another person." R.C.W. § 19.16.100(4)(a). The WCAA allows recovery against collection

19   agencies who collect debts in their own names, and those whose principal business is debt

20   collection as a per se violation.  Nationstar is a licensed collection agency under the WCAA and

21   as a default loan servicer, is a collection agency in relation to the Washington Subclass

22   members defined *infra*.

23        47.     A "claim" under the WCAA is "any obligation for the payment of money or

24   thing of value arising out of any agreement or contract, express or implied." R.C.W. §

25   19.16.100(2). Hackinen, and Salom's experiences at issue in this action qualify as business

26   activities occurring in trade and commerce under the WCAA.

COMPLAINT - 10

48.     The WCAA prohibits "collectors" from claiming, threatening to take any action against the debtor which a licensed Collection Agency cannot legally take at the time the threat is made. RCW § 19.16.250(16). A Collection Agency is prohibited from representing or implying that the existing obligation of the debtor may be or has been increased by the addition of a fee or charge when in fact such fees or charge may not legally be added to the existing obligation of such debtor. RCW § 19.16.250(15). A Collection Agency is prohibited from collecting any sum in addition to the principal amount that is not expressly authorized by statute. RCW § 19.16.250(21). Seeking to collect a debt that includes a charge that is not authorized by statute violates this provision of the WCAA. Additionally, under RCW § 19.16.450, any violation of the CAA will limit recovery on a claim to the amount of the original claim or obligation without any interest, service charge, attorneys' fees, collection costs, delinquency charges, or any other fees or charges otherwise legally chargeable to the debtor on such claim. RCW § 19.16.250.

49.     Additionally, under the stand alone WCPA, the Defendants are licensed collection agencies, and they use the internet to advertise and to communicate with borrowers from their locations which are outside of the State of Washington. They use the mail, the telephone and the internet to transmit periodic statements, payoffs, and other correspondence to borrowers including the Named Plaintiffs and class members; they receive substantial compensation for their services and part of their compensation comes directly from payments made by borrowers. Thus, the Defendants' business activities are carried out in trade or commerce and satisfy that prong of the WCPA. The WCPA also makes it illegal to engage in conduct prohibited by the federal FDCPA including that which is barred by 15 U.S.C. § 1692f(1) as a per se violation of the WCPA.

50.     As to the public interest impact under the WCPA and the WCAA, since Nationstar's practice of charging payoff fees is widespread and not expressly and specifically authorized by its contractual obligations, it would undermine the very purpose of Uniform Mortgages and federal regulation and therefore would affect the public interest. Additionally, as

COMPLAINT - 11

1    violations of the debt collection industry necessarily implicate the public interest, once the trade

2    and commerce prongs are satisfied, so is the public interest prong. *Panag*, 166 Wn.2d at 43.

3       51.    For the causation and injury prong of the WCPA and the WCAA, the Plaintiffs

4    and members of the Washington Subclass would not have incurred the Payoff Transactions but

5    for Nationstar's illegal practice of charging those fees. Likewise, since they paid those fees, they

6    are also injured. Nationstar is a licensed Washington mortgage loan servicer. As a licensed

7    mortgage servicer, Nationstar has a duty to follow all applicable state or federal laws relating to

8    the activities governed by the Washington State Consumer Loan Act ("WCLA"). RCW §

9    31.04.027(1)(m). It also has a duty to refrain from engaging in unfair and deceptive acts and

10   from fraud and misrepresentation. RCW 31.04.027(1)(b) and (c).

11      52.    These Washington laws discussed herein were expressly incorporated in every

12   mortgage loan agreed to by the Washington Subclass members including the Hackinen Loan

13   ## IV.    FACTUAL ALLEGATIONS

14      53.    Nationstar is a loan servicer that operates across the country. Its principal

15   purpose as a mortgage servicer is to collect debt, and it uses interstate commerce to collect

16   debts.

17      54.    Each time a mortgage borrower whose loan is serviced by Nationstar requests a

18   Payoff statement related to their loan, Nationstar imposes, charges, and/or collects from the

19   borrower one or more Payoff Fees up to $25 per instance per each Payoff Transaction.

20      55.    Nationstar's Payoff Fees are processed electronically in a matter of seconds from

21   its system of record.  Upon information and belief based upon Nationstar's admissions in other

22   matters concerning similar junk fees, the usual actual costs for Nationstar to prepare Payoff

23   Transaction statements is a matter of pennies and far in excess of the costs it actually incurs.

24      56.    The Uniform Mortgage agreed to by the named plaintiffs and putative class

25   members does not expressly authorize Nationstar to charge Payoff Fees. In fact, the Payoff Fees

26   violate multiple uniform provisions of borrowers' mortgages since they are neither expressly

COMPLAINT - 12

1    authorized by Federal or State law or the written loan agreements governing the putative class

2    members' mortgage loans such to this action.

3        57.    For example, many members of the Payoff Class have FHA mortgages, meaning

4    that the mortgage is issued by an FHA-approved lender and insured by the FHA. The uniform

5    covenants of FHA mortgages state that the lender may only assess fees authorized by the

6    Secretary of the U.S. Department of Housing and Urban Development ("HUD").

7        58.    HUD permits servicers of FHA mortgages to collect "allowable fees and

8    charges," i.e., fees and charges specifically delineated in Appendix 3 to the HUD Single Family

9    Housing Policy Handbook ("Servicing Handbook"). *See* Handbook 4000.1, FHA Single Family

10   Housing Policy Handbook § III(A)(1)(f). Servicers seeking to assess fees "not specifically

11   mentioned" in the Servicing Handbook must request approval from the National Servicing

12   Center to charge such fees. *Id.* § III(A)(1)(f)(B). HUD prohibits servicers from charging the

13   borrower for "activities that are normally considered a part of a prudent Mortgagee's servicing

14   activity." *Id.* § III(A)(1)(f)(C).

15       59.    The Handbook does not authorize Payoff Fees. And, Nationstar has not sought

16   authorization from the National Servicing Center to charge Payoff Fees.

17       60.    Plaintiffs Palazzo, Salom, and Hackinen, like many other borrowers, have

18   mortgage agreements that incorporate model language from Fannie Mae. Such mortgage

19   agreements contain uniform covenants that generally state that the servicer may not charge fees

20   that are expressly prohibited by the mortgage or by applicable law. These mortgage agreements

21   typically state that "applicable law" means controlling federal, state, and local statutes,

22   regulations, ordinances, and administrative rules and orders, as well as final non-appealable

23   judicial opinions. Nationstar assessed fees that are prohibited by "applicable law" when it

24   charged Payoff Fees in violation of state and federal statutes.

25       61.    In short, Uniform Mortgages do not expressly authorize Nationstar to charge

26   Payoff Fees, and Nationstar violated its borrowers' Uniform Mortgages when it assessed such

COMPLAINT - 13

SEATTLE CONSUMER JUSTICE, P.S
10728 16TH AVE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

1  fees. Nationstar collected the Payoff Fees even though it knew that such fees are not authorized

2  under its clients' mortgage agreements, and that it therefore had no right to collect them.

3       62.     In addition, since the fees at issue in this action which are improperly imposed

4  by Nationstar without a signed agreement authorizing them and the fees relate to mortgages and

5  real estate, any claim by Nationstar that non-written and signed agreements control would

6  violate the stature of frauds and would not be a just basis under the law.

7      **A.**    **Plaintiff Richardo Salom**

8

9       63.     Richardo Salom ("Salom") acquired his former home and property in

10  Gaithersburg, Maryland (146 Quince Orchard Road) on or about June 23, 2003, along with his

11  wife. He financed the purchase of the property in part with an extension of credit in the sum of

12  $286,500.00 made on the same date by Wachovia Mortgage Corporation ("Salom Loan"). The

13  proceeds of the Salom Loan were utilized entirely for personal, consumer purposes by Salom.

14       64.     The Salom Loan was later assigned and sold to Fannie Mae and Fannie Mae

15  subsequently engaged Seterus Inc. to act as the mortgage servicer of the Salom Loan at a time

16  when the loan was in default. Seterus became the servicer of the Salom Loan in or about

17  January 2015.

18       65.     To cure the default on the Salom Loan, on or about May 31, 2016 Seterus on

19  behalf of Fannie Mae and with Fannie Mae's express authority agreed to a loan modification of

20  the Salom Loan ("Salom Loan Modification").

21       66.     Neither the original Salom Loan mortgage documents (i.e. Note or Deed of

22  Trust) nor the Salom Loan Modification or any other written agreement signed by Salom

23  expressly authorized Fannie Mae or its vendors or servicers, including Nationstar, to impose,

24  collect, or attempt to collect any Payoff Fee from Salom related to the Salom Loan.

25       67.     No Maryland law expressly authorized Fannie Mae or its vendors or servicers,

26  including Nationstar, to impose, collect, or attempt to collect any Payoff Fee from Salom.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

68.      Seterus Inc. merged with Nationstar on or about February 28, 2019.  As the merged entity, Nationstar assumed the status of Seterus in relation to the Salom Loan on behalf of Fannie Mae including the status as a default servicer and debt collector.

69.      Salom listed the Salom Property to sell in 2022.  As part of the sale his agent requested a payoff statement from Nationstar who remained the servicer on behalf of Fannie Mae of the Salom Loan in 2022.  In response to Salom's requests, Nationstar provided Salom a payoff statement and charged and collected from him later a Payoff Fee of $25.00.

70.      Specifically, in a written payoff quote provided by Nationstar d/b/a Mr. Cooper related to the Salom Loan dated June 29, 2022, Nationstar demanded from Salom a Payoff Fee of $25.00 as part of the **"TOTAL PAYOFF AMOUNT"** quoted by it as due from Salom to satisfy the Salom Loan.

71.      Salom went to closing on the sale of the Salom Property on July 12, 2022, and Nationstar received the $25.00 Payoff Fee from his agent on the same day.

72.      Nationstar has retained in its normal course of business all the records related to Salom and other borrowers like him and can produce those records by electronic email within a couple of minutes of any request.  These records, including the electronic data related to them, easily identify that Salom paid the Payoff fee to Nationstar which it had imposed on his account and never refunded it to him.

73.      Salom has been damaged by Nationstar's collection conduct related to the Salom Loan imposing and collecting a junk fee from him which was neither expressly authorized by any written contract or law.  Other honest mortgage servicers and lenders are also harmed by Nationstar's conduct and churning of fees and sums not allowed under the law which they do not impose and collect.

**B.      Plaintiff Catherine Palazzo**

74.      Catherine Palazzo ("Mrs. Palazzo") is Ruben Palazzo's lawful assignee of all the claims asserted herein.

COMPLAINT - 15

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

75.     On March 21, 2007, Ruben Palazzo ("Palazzo") borrowed the sum of $128,000 from SunTrust Mortgage, Inc. ("Palazzo Loan") to acquire his home and property commonly known as 34811 Old Ocean City Road, Pittsville, MD 21850 ("Palazzo Property") with his wife. Palazzo and his wife and some of his children have all lived at the Palazzo Property as their home and residence for the relevant periods subject to this action.  The proceeds of the Palazzo Loan were utilized entirely for personal, consumer purposes by Palazzo.

76.     The Palazzo Loan was later assigned and sold to Freddie Mac and Freddie Mac subsequently engaged a series of collectors to act as the mortgage servicer of the Palazzo Loan on its behalf.  Relevant to this action, Nationstar d/b/a RightPath became the servicer of the Palazzo Loan on or about June 1, 2022.  Recently Nationstar assigned the servicing of the Palazzo Loan to another of its d/b/a entities: Rushmore.

77.     When Nationstar became the servicer of the Palazzo Loan on behalf of Freddie Mac, it knowingly and recklessly concealed that fact from Palazzo and did not send the notices required by Federal law (12 U.S.C.A. § 2605) and State law (Md. Code Ann., Com. Law § 13-316) which governed its relationship with Palazzo.    The violation of State law is also a crime (Md. Code Ann., Com. Law § 13-411).

78.     Nationstar did not disclose its role as the servicer of the Palazzo Loan to Palazzo until February 24, 2023—less than twelve months before the commencement of this action and more than eight months after it was required to do so—in correspondence from its authorized representation Mary Portner as a Nationstar Customer Relations Specialist.  In that disclosure, Nationstar admitted the following:

       a.   It knew no correspondence from it was sent to Palazzo or his Maryland counsel and instead had been sent by it to a stranger to Palazzo—Houser LLP.

       b.   It admitted that as the servicer of the Palazzo Loan it was responsible for issues related to: "Payment assistance and modification," "Payment posting," 'Validation of the debt," Foreclosure proceedings," and "Payment adjustments."

COMPLAINT - 16

c.   It admitted that when the Palazzo Loan was transferred to it that its predecessor—i.e. Community Loan Servicing—had represented to it that thousands of dollars were owed by Palazzo which were not owed and adjustments to the account were required.  These sums were not disclosed as "lender paid expenses" either which means RightPath was required to adjust them as due from Palazzo since he did not owe them.

79.    Since it elected to conceal any information as the Palazzo Loan from Palazzo from June 1, 2022 through February 24, 2023, Nationstar had changed Palazzo's payments owed related to the escrow portion of his payment without disclosing the increase to Palazzo and since it chose instead to conceal the information about the sums owed it imposed late fees onto Palazzo's account which it did not have a right to impose based on the fictional default.

80.    Neither the original Palazzo Loan mortgage documents (i.e. Note or Deed of Trust) or any Palazzo Loan Modification or any other written agreement signed by Palazzo expressly authorized Freddie Mac or its vendors or servicers, including Nationstar, to impose, collect, or attempt to collect any Payoff Fee from Palazzo related to the Palazzo Loan.

81.    No Maryland law expressly authorized Freddie Mac or its vendors or servicers, including Nationstar, to impose, collect, or attempt to collect any Payoff Fee from Palazzo.

82.    Because of the irregularities related to the Palazzo Loan continued by Nationstar from its predecessors and Palazzo's interest in potentially refinancing or paying off his mortgage, Palazzo asked Nationstar to provide him a Payoff quote for the Palazzo Loan on or about September 11, 2023.

83.    In response to Palazzo's request in the proceeding paragraph, Nationstar provided Palazzo a payoff statement and charged and collected from him a Payoff Fee of $25.00 on or about September 11, 2023.

84.    Specifically, in a written payoff quote provided by Nationstar d/b/a RightPath related to the Palazzo Loan dated September 11, 2023, Nationstar demanded from Palazzo a

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

1  Payoff Fee of $25.00 as part of the **"TOTAL PAYOFF AMOUNT"** quoted by it as due from
2  Palazzo to satisfy the Palazzo Loan.

3        85.     In addition, in the same written payoff quote provided by Nationstar d/b/a
4  RightPath related to the Palazzo Loan dated September 11, 2023, Nationstar also demanded
5  from Palazzo that be repay it unspecified Lender Paid Expenses of $19.77 as part of the
6  **"TOTAL PAYOFF AMOUNT"** quoted by it as due from Palazzo to satisfy the Palazzo Loan.

7        86.     Nationstar had no right to impose upon Palazzo to pay unspecified Lender Paid
8  Expenses since Palazzo had timely paid all sums due on his loan which had been disclosed to
9  him and Nationstar had first breached its legal duties owed to Palazzo by concealing its role
10 with the Palazzo Loan and thereafter also concealing from him any adjustments to the monthly
11 escrow portion of the Palazzo Loan due from him.  In other words, after having created a
12 fictional default, Nationstar has no right to profit further by demanding and collecting from
13 Palazzo pay unspecified Lender Paid Expenses which Freddie Mac incurred by its own election.

14       87.     Nationstar has retained in its normal course of business all the records related to
15 Palazzo and other borrowers like him and can produce those records by electronic email within
16 a couple of minutes of any request.  These records, including the electronic data related to them,
17 easily identify that Palazzo paid the Payoff fee to Nationstar which it had imposed on his
18 account and never refunded it to him.

19       88.     Palazzo has been damaged by Nationstar's collection conduct related to the
20 Palazzo Loan imposing and collecting a junk fee from him which was neither expressly
21 authorized by any written contract or law.  Other honest mortgage servicers and lenders are also
22 harmed by Nationstar's conduct and churning of fees and sums not allowed under the law which
23 they do not impose and collect.  Mrs. Palazzo, as Palazzo's lawful assignee is entitled to collect
24 the damages asserted by Palazzo herein.

25      **C.**     **Peter Hackinen**

26

COMPLAINT - 18

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

89.     Peter Hackinen ("Hackinen") acquired his home and property in Seattle, Washington (624 N 138th Street) on or about May 31, 1995. He refinanced the property in December 2006 with First Horizon Home Loan Corporation for the sum of $280,000 ("Hackinen Loan"). The refinance was utilized entirely for personal, consumer purposes by Hackinen.

90.     The Hackinen Loan was later assigned and sold to the Bank of New York Mellon fka The Bank of New York as Trustee for the holders of the Certificates, First Horizon Mortgage Pass-Through Certificates Series FHAMS 2007-FA1, by First Horizon Home Loans, a Division of First Tennessee Bank, N.A., Master Servicer in its capacity as agent for the Trusts under the Pooling and Servicing Agreement by Nationstar Mortgage LLC as Attorney in Fact.

91.     Nationstar was engaged to act as the mortgage servicer of the Hackinen Loan on behalf of the trust identified in the previous paragraph at a time when the loan was in default and it also believed the loan to be in default. Nationstar became the servicer of the Hackinen Loan on or about August 5, 2013.

92.     To cure the longstanding default on the Hackinen Loan, on or about August 11, 2015, Nationstar with express authority of the Hackinen Loan owner, agreed to a loan modification of the Hackinen Loan ("Hackinen Loan Modification").

93.     Neither the original Hackinen Loan mortgage documents (i.e. Note and Deed of Trust) or the Hackinen Loan Modification or any other written agreement signed by Hackinen expressly authorized Nationstar, to impose, collect, or attempt to collect any Payoff Fee from Hackinen related to the Hackinen Loan.

94.     No Washington law expressly authorized Nationstar, to impose, collect, or attempt to collect any Payoff Fee from Hackinen.

95.     Hackinen explored a refinance of his home in 2023. As part of the refinance, his mortgage broker requested several payoff statements from Nationstar who remained the servicer on the Hackinen Loan in 2023. In response to Hackinen's requests, Nationstar provided Hackinen's mortgage broker with at least three payoff statements and in each instance charged

COMPLAINT - 19

1   and collected from him a Payoff Fee of $25.00 with one fee imposed on or about, and July 21,

2   2023, August 12, 2023October 5, 2023.

3       96.    Specifically, in a written payoff quotes provided by Nationstar d/b/a Mr. Cooper

4   related to the Hackinen Loan in multiple dates including July 22, 2023, October 5, 2023,

5   Nationstar demanded from Hackinen a Payoff Fee of $25.00 as part of the "**TOTAL PAYOFF**

6   **AMOUNT**" quoted by it as due from Hackinen to satisfy the Hackinen Loan in a refinance.

7       97.    Hackinen continued to pay his mortgage while exploring a refinance and he paid

8   the $25.00 Payoff Fees as part of his regular monthly payments during the successive months.

9       98.    Nationstar has retained in its normal course of business all the records related to

10   Hackinen and other borrowers like him and can produce those records by electronic email

11   within a couple of minutes of any request.  These records, including the electronic data related

12   to them, easily identify that Hackinen paid the Payoff fee to Nationstar which it had imposed on

13   his account and never refunded it to him.

14       99.    Hackinen has been damaged by Nationstar's collection conduct related to the

15   Hackinen Loan imposing and collecting a junk fee from him which was neither expressly

16   authorized by any written contract or law.  Other honest mortgage servicers and lenders are also

17   harmed by Nationstar's conduct and churning of fees and sums not allowed under the law which

18   they do not impose and collect.

19   **V.**    **CLASS ACTION ALLEGATIONS**

20       100.    Plaintiffs bring this action under Wash. Super. Ct. Civ. R. 23 on behalf of the

21   following Class:

22       All persons who Nationstar imposed a Payoff Fee as part of a payoff statement

23       issued to them who fall into one or more of the following groups (and subclasses):

24

25       (1) were borrowers (or the assigns or successors in interest to the borrowers)
    on residential mortgage loans in the United States to which Nationstar

26       acquired servicing rights when such loans were 30 days or more delinquent
    or in default on loan payment obligations or other standard default terms as
    defined by a Uniform Mortgage instrument ("FDCPA Subclass"); or

COMPLAINT - 20

**SEATTLE CONSUMER JUSTICE, P.S**
10728 16ᵀᴴ Ave SW
Seattle, WA 98146
V (206) 330-0595 / F (206) 400-7609

(2) were borrowers (or the assigns or successors in interest to the borrowers) on residential mortgage loans secured by residential properties in the State of Washington in the four years before the commencement of this action to which Nationstar acted as a mortgage servicer ("Washington Subclass"); or

(3) were borrowers (or the assigns or successors in interest to the borrowers) on residential mortgage loans secured by residential properties in the State of Maryland in the three years before the commencement of this action to which Nationstar acted as a mortgage servicer ("Maryland Subclass"); or

(4) were borrowers on residential mortgage loans on properties located in the United States in the six years before the commencement of this action ("Nationwide Contract Subclass").

101.    The above Class and Subclass members are identifiable through Defendant's records and payment databases and as a matter of Federal and State laws, Nationstar is required to be able to identify groups of borrowers it imposed certain fees upon, including Payoff Fees, as part of its normal and customary business within a matter of just days.

102.    Excluded from membership in the Class and the Subclass are the Defendant; any entities in which it has a controlling interest; its agents and employees; and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

103.    Plaintiffs propose that they serve as Class and Subclass representatives. Each Plaintiff is a member of the Nationwide Contract Subclass. Peter Hackinen also is a member of the FDCPA Subclass and the Washington Subclass. Plaintiffs Mrs. Palazzo and Salom also are members of the Maryland Subclass.

104.    Plaintiffs and the Class members have all been harmed by the actions of Defendant by having junk fees imposed and/or collected by the Defendant for payoff statements. Other honest mortgage servicers are also harmed by Nationstar seeking and realizing a competitive advantage of imposing and collecting junk fees not expressly authorized by contract or law.

COMPLAINT - 21

105. Numerosity is satisfied. There are at least fifty members of each Subclass and the Class defined above.

106. Individual joinder of these persons is impracticable.

107. There are questions of law and fact common to Plaintiffs and to the Class and Subclasses, including, but not limited to:

a) Whether Nationstar assessed or imposed Payoff Fees on Class members;

b) Whether Nationstar, on behalf of the owners of the loans of the Class members, breached it's the borrowers' mortgage contracts by charging Payoff Fees not authorized by the mortgage agreements;

c) Whether Nationstar violated the FDCPA by charging Payoff Fees not due or expressly authorized by law or contract;

d) Whether Nationstar violated the MCDCA by charging Payoff Fees not due or expressly authorized by law or contract;

e) Whether Nationstar violated the Maryland Consumer Protection Act;

f) Whether Nationstar violated the Washington Consumer Agency Act which is enforced as a per se violation of the Washington Consumer Protection Act by charging Payoff Fees not due or expressly authorized by law or contract.

g) Whether Nationstar violated the Washinton Consumer Protection Act by charging Payoff Fees not due or expressly authorized by law or contract.

h) Whether Nationstar's cost to process Payoff Transaction quotes is less than the amount that it charged for Payoff Fees;

i) Whether Plaintiffs and the Class were damaged by Nationstar's conduct;

j) Whether Plaintiffs and the Class are entitled to actual and/or statutory damages as a result of Nationstar's actions;

k) Whether Plaintiffs and the Class are entitled to restitution or disgorgement of Nationstar's unlawful profits;

l) Whether Nationstar should be enjoined from collecting Payoff Fees; and

m) Whether Plaintiffs and the Class are entitled to attorney's fees and costs.

COMPLAINT - 22

108.     Plaintiffs' claims are typical of the claims of the Class members. Nationstar charged them Payoff Fees in the same manner as the rest of the Class members. Plaintiffs and the Class members entered into uniform covenants in their Mortgage Agreements that prohibit Payoff Fees or, at most, cap the amount of Payoff Fees allowed to be charged at the actual sum incurred for the Payoff Transaction.

109.     Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class members, and they will adequately and fairly protect the interests of the Class members. Plaintiffs have taken actions before filing this complaint, by hiring skilled and experienced counsel to represent the interests of the Class and conducting reasonable pre-suit investigation.

110.     Plaintiffs have hired counsel that is skilled and experienced in class actions and are adequate Class Counsel capable of protecting the interests of the Class members.

111.     Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of this controversy.

112.     The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

A.     COUNT I:  Breach of Contract
       (All Plaintiffs on behalf of the Class and Nationwide Contract Subclass)

113.     Plaintiffs incorporate paragraphs 1 through 112.  This claim is brought on behalf of the Class and specifically the Nationwide Contract Subclass represented by each of the Plaintiffs.

114.     Plaintiffs (as borrowers or the assigns of a borrower of successor in interest to a borrower) each have a mortgage loan that was serviced by Nationstar in the various class

COMPLAINT - 23

1   periods. Nationstar was bound by the terms of all mortgages it services and has no greater rights

2   than its assignors had to give it.

3       115.    Members of the Class and Nationwide Contract Subclass have or had mortgages

4   that were serviced by Nationstar either as the holder of the loan or pursuant to an assignment

5   from the lender.  Each of those mortgages incorporated the laws and regulations of all

6   applicable laws governing the transaction including those identified herein which bar the

7   imposition and collection of fees without a writing expressly authorizing the fee in the mortgage

8   contract since the transaction involves real estate and also a consumer transaction.

9       116.    Nationstar was bound by the terms of Plaintiffs' and Class members' mortgage

10   agreements and entitled to no greater rights than expressly stated and expressly authorized by

11   those agreements.

12       117.    Nationstar improperly collected Payoff Fees contrary to the express terms of

13   Class and Nationwide Contract Subclass members' mortgage agreements that prohibit the

14   charging of fees not expressly authorized by State or Federal law.

15       118.    As a proximate result of that breach, Plaintiffs and members of the Class and

16   Nationwide Contract Subclass have been damaged by paying fees that should not have been

17   assessed against them and which Nationstar was not entitled to collect.

18       119.    On behalf of themselves and the Class, Plaintiffs seek injunctive and

19   compensatory relief.

20   **B.    COUNT II Violations of the FDCPA**

21       **(Plaintiff Hackinen on behalf of the Class and FDCPA Subclass members)**

22

23       120.    Paragraphs 1 to 119 are incorporated herein by reference.  This claim is brought

     on behalf of the Class and specifically the FDCPA Subclass and is brought by Plaintiff
24
     Hackinen on their behalf.
25
         121.    The FDCPA makes it an illegal, unfair practice for a debt collector to undertake
26
     the "collection of any amount (including any interest, fee, charge, or expense incidental to the

COMPLAINT - 24

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

1  principal obligation) unless such amount is expressly authorized by the agreement creating the

2  debtor permitted by law." 15 U.S.C. § 1692f(1).

3    122.    Plaintiff Hackinen, and the members of both the Class who are also FDCPA

4  Subclass members are "consumers" as defined by 15 U.S.C. § 1692a(3) because they purchased

5  homes by mortgage primarily for personal, family, or household use.

6    123.    Because Nationstar regularly collects debts owed others and because it acquired

7  the loans of Plaintiffs and Class and FDCPA Subclass members while those loans were in

8  default and it also believed the loans to be in default, it qualifies as a debt collector under the

9  FDCPA in relation to the members of the FDCPA Subclass.

10    124.    The Mortgage Agreements of Plaintiff Hackinen FDCPA Subclass members  do

11  not expressly authorize Nationstar to collect Payoff Fees. At most, the Mortgage Agreements

12  permit Nationstar to collect the actual costs incurred to process the Payoff Transactions which

13  amounts to pennies of the sums imposed and collected by it.

14    125.    Although the Mortgage Agreements do not expressly authorize collection of

15  Payoff Fees, Nationstar imposed and collected such fees anyway without the right to do so.

16    126.    By its conduct described in the previous paragraphs, Nationstar violated 15

17  U.S.C. § 1692f(1).

18    127.    Nationstar recklessly, frequently, and persistently imposed and collected Payoff

19  Fees from Plaintiff Hackinen and the members of the  FDCPA Subclass.

20    128.    Plaintiff Hackinen and the members of the  FDCPA Subclass were harmed

21  because of Nationstar's conduct.

22    129.    As a result of Nationstar's violation of 15 U.S.C. § 1692f, Plaintiff Hackinen,

23  and the members of the FDCPA Subclass were harmed monetarily and are entitled to actual

24  damages, plus statutory damages under 15 U.S.C. § 1692k, together with reasonable attorney's

25  fees and costs.

26    **C.    COUNT III**
   **Violations of State Debt Collection and Mortgage Servicing Laws**

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

**(All Plaintiffs on behalf of the Class, Washington Subclass, and Maryland Subclass)**

130.    Paragraphs 1 to 132 are hereby incorporated by reference.  This claim is brought on behalf of the Class and specifically the Washington Subclass and the Maryland Subclass.

131.    The laws of the various states regulate debt collection practices and mortgage servicing activities, including, but not limited to, incorporating provisions of the FDCPA and making those provisions independently actionable under state law, as well prohibiting additional unfair, unconscionable, and/or deceptive acts committed in the course of collecting on consumer debt (collectively "State Debt Collection Laws"). These State Debt Collection Laws include the laws of any and all of the fifty states and the District of Columbia that regulate the conduct of debt collectors and/or mortgage servicers in consumer transactions. Examples of these State Debt Collection Laws include, but are not limited to, California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §1788.01 *et seq.*; Florida's Consumer Collection Practices Act, Fla. Stat. 559.55, *et seq.*; Maryland's Consumer Debt Collection Act ("MCDCA"), Md. Code, Com. L. § 14-201 *et seq.*; the North Carolina's Debt Collection Act, N.C. Gen. Stat., § 75-55, *et seq.;* the North Carolina Debt Collection and Mortgage Servicing Act, N.C. Gen. Stat. § 45-91, *et seq.,* Texas's Debt Collection Act, Tex. Fin. Code § 392.303, *et seq.;* and any state law that borrows or is predicated on the federal Fair Debt Collection Practices Act.  Washington State's Consumer Protection Act, RCW § 19.86 et seq., and the Washington's Collection Agency Act, RCW § 19.19 et. seq.

132.    Plaintiffs Mrs. Palazzo and Salom, and members of the Maryland Subclass, qualify as consumers entitled to the protections of the MCDCA and Nationstar qualifies as a collector governed by the MCDCA.  Md. Code, Com. L. § 14-201.

133.    Nationstar's conduct described herein related to Plaintiffs Mrs. Palazzo and Salom, and members of the Maryland Subclass violation the MCDCA's prohibitions at Md. Code, Com. L. § 14-202(11) which incorporate conduct governed by the FDCPA. Alternatively,

COMPLAINT - 26

1    Nationstar's conduct also violated Md. Code, Com. L. § 14-202(8) since its conduct was

2    knowing or recklessly indifferent that it had right to impose or collect the payoff fees.

3        134.    As a direct and proximate result of Nationstar's violations of the Md. Code,

4    Com. L. § 14-202(11), or in the alternative Md. Code, Com. L. § 14-202(8), Plaintiffs Mrs.

5    Palazzo and Salom, and members of the Maryland Subclass are entitled to their actual damages

6    including the unlawful fees paid to and collected by Nationstar, directly or indirectly, in

7    violation of the MCDCA.

8        135.    Nationstar's violation of the MCDCA as described in the proceeding paragraphs

9    in relation to Plaintiffs Mrs. Palazzo and Salom, and members of the Maryland Subclass is also

10    a *per se* violation of the Maryland Consumer Protection Act ("MCPA").  Md. Code, Com. L. §

11    13-301(14)(iii).

12        136.    Plaintiff Hackinen, and members of the Washington Subclass, qualify as

13    consumers entitled to the protections of the WCPA and Nationstar qualifies as a collection

14    agency governed by the WCAA.  RCW §19.86 et seq; RCW § 19.16 et seq.

15        137.    Nationstar's conduct described herein related to Plaintiff Hackinen and members

16    of the Washington Subclass violate the WCPA's and the WCAA prohibitions which incorporate

17    conduct of those who engage in the business of debt collection and thus incorporates violations

18    of the FDCPA. *See Howard v. Patenaude & Felix, A.P.C.*, 634 F.Supp.3d 990, (W.D. Wash.

19    October 17, 2022).

20        138.    As a direct and proximate result of Nationstar's violations of RCW § 19.86.093

21    and RCW §§ 19.16.250(15), (16) and (21), Plaintiff Hackinen and members of the Washington

22    Subclass are entitled to their actual damages including the unlawful fees paid to Nationstar in

23    violation of WCPA and the WCAA. Additionally, under RCW § 19.16.450, Hackinen and

24    members of the Washington Subclass limits Nationstar's recovery on its mortgage obligation to

25    the original amount without any interest, service charge, attorneys' fees, collection costs,

26    delinquency charges, or any other fees or charges otherwise legally chargeable to the debtor on

such obligation.

COMPLAINT - 27

139.   Plaintiffs and the Class, including the Washington Subclass and Maryland Subclass, and their assigns and successors in interest are consumers who engaged in consumer debt transactions when they took out mortgage loans secured by their homes for personal and household use within the meaning of the State Debt Collection Laws.

140.   Nationstar is a debt collector or collector that collects debts incurred for personal and household use within the meaning of the State Debt Collection Laws.

141.   Nationstar's collection of monthly mortgage payments are attempts to collect debts arising out of consumer transactions within the meaning of the State Debt Collection Laws.

142.   Payoff Fees are prohibited under State Debt Collection Laws, because, they are: (a) fees incidental to the principal debt when such a fee is not expressly authorized by the agreement creating the debt or applicable law; (b) a portion of the debt collector's fee that is passed on to the consumer in violation of applicable law; (c) not authorized by the Secretary of HUD and/or any other relevant governmental authority or instrumentality; and/or (d) otherwise an unfair, unconscionable, and/or deceptive means of collecting a consumer debt under the State Debt Collection Laws.

143.   As a result of Nationstar's collection of Payoff Fees, Plaintiffs and the Class have suffered financial damages.

## VI.   PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and others similarly situated, respectfully request that the Court:

1.   Determine that this action may be maintained as a class action under Wash. Super. Ct. Civ. R. 23.

2.   Wash. Super. Ct. Civ. R. 23, that Plaintiffs are proper Class representatives, and that their counsel are appointed Class Counsel.

COMPLAINT - 28

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WA 98146
V (206) 330-0595 / F (206) 400-7609

3.      Award damages, including compensatory and exemplary damages, to Plaintiffs and the Class and various Subclasses in an amount to be determined at trial;

4.      Award statutory damages and/or penalties to Plaintiffs and the proposed Class and Subclasses as permitted by law;

5.      Enter an order enjoining Nationstar from continuing to impose and collect Payoff Fees;

6.      Award Plaintiffs and Class members their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

7.      Award pre- and post-judgment interest to the extent provided by law; and

8.      Award such further relief as the Court deems appropriate.

**PLAINTIFFS DEMAND A JURY ON ALL ISSUES SO TRIABLE.**

DATED February 28, 2024

         _/s/ Christina L. Henry_____
         Christina L Henry, WSBA 31273
         SEATTLE CONSUMER JUSTICE, P.S.
         Counsel for Plaintiffs
         10728 16th Ave SW
         Seattle, WA 98146
         206-330-0595 Fax 206-400-7609
         _chenry@hdm-legal.com_

         _/s/ Phillip R. Robinson_____
         Phillip R. Robinson (_Pro Hac Vice forthcoming_)
         Consumer Law Center, LLC
         Counsel for Plaintiffs
         10125 Colesville Road, Ste 378
         Silver Spring, MD 20901
         301-448-1304
         _phillip@marylandconsumer.com_

COMPLAINT - 29