The Honorable Marsha Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

RICARDO SALOM, CATHERINE
PALAZZO as assignee for Ruben Palazzo, and
PETER HACKINEN, *on their own behalf and
on behalf of other similarly situated persons,*

         Plaintiffs,

   vs.

NATIONSTAR MORTGAGE LLC,

         Defendant.

Case No. 2:24-cv-00444-MJP

**MOTION TO TAKE
JUDICIAL NOTICE**

NOTE FOR HEARING:

May 3, 2024

       Plaintiffs Ricardo Salom, Catherine Palazzo as assignee for Ruben Palazzo, and Peter Hackinen ("Plaintiffs") pursuant to Federal Rule of Evidence 201 respectfully request that the Court takes judicial notice of the following proceedings and papers[1] which concern issues and topics presented in this action:

       **Exhibit 1 (Apx. 1-2)**: March 18, 2024 Final Approval Order involving 100% return by settlement of a fee imposed and collected by Defendant Nationstar Mortgage LLC ("Nationstar") in 65,894 instances over the course of three years from Maryland borrowers where Nationstar,

---

[1]    Herein, Plaintiffs have identified the source of the public papers from which they originate and where applicable the case names and numbers, a brief description of purpose of the papers presented, and the appendix pages where the document can be identified in the Plaintiffs' Combined Appendix of Exhibits for Judicial Notice filed with this motion. Each exhibit is referenced by the Appendix pages identified ("**Apx. ____** ").

MOTION FOR JUDICIAL NOTICE - 1

1    was also represented by the same counsel appearing for it in this action, also represented

2    Nationstar in *Baxter v. Lakeview & Nationstar,* Circuit Court for Anne Arundel County, MD

3    (Case No. C-02-cv-22-000654).

4         **Exhibit 2** (**Apx. 3-10**): March 15, 2024 Transcript of final approval hearing. *Baxter v.*

5    *Lakeview & Nationstar,* Circuit Court for Anne Arundel County, MD (Case No. C-02-cv-22-

6    000654).

7         **Exhibit 3** (**Apx. 11-31**): April 24, 2023 Transcript of contested class hearing where the

8    court certified the proposed class over Nationstar's objections and argument. *Baxter v. Lakeview*

9    *& Nationstar,* Circuit Court for Anne Arundel County, MD (Case No. C-02-cv-22-000654).

10        **Exhibit 4** (**Apx. 32-38**): Nationstar's Senior Vice President Courtney Ehinger's sworn

11   declaration (i) admitting without court supervision Nationstar communicated with the putative

12   class members following the commencement of the *Baxter* action against it (the case commenced

13   on April 15, 2022) and (ii) it has the means and ability to reasonably identify 65,894 specific

14   class member transactions where class members paid specific fees in a period of over three years.

15        **Exhibit 5** (**Apx. 39-48**): Nationstar entered into a May 14, 2018 agreement with the

16   Consumer Protection Division of the Office of the Maryland Attorney General where its agreed

17   (i) it had the means and ability to "refund, reverse or otherwise credit" certain fees it had

18   unlawfully imposed and collected in more than 25,542 transactions with Maryland borrowers;

19   (ii) it knew the names of the borrowers impacted by its practices, their loan type, their addresses;

20   (iii) it knew the exact sums exact sums imposed and collected from the consumers; and (iv) it

21   agreed to "cease and desist from engaging in any unfair or deceptive trade practices in violation

22   of the [Maryland Consumer Protection Act]." Nationstar also entered into this public Assurance

23   of Discontinuinance[2] with the Consumer Protection Division of the Office of the Maryland

24

25        [2]   The Maryland Supreme Court f/k/a Maryland Court of Appeals referenced and took

26   notice of this same agreement with the State of Maryland in the matter of *Nationstar Mortg. LLC*
     *v. Kemp*, 258 A.3d 296, 306 at FN 15 (2021)("Nationstar apparently had a practice of imposing

SEATTLE CONSUMER JUSTICE P.S.
10728 16th Avenue SW
Seattle, WA 98146
206.330.0595

1  Attorney General which is a government agency of the State of Maryland.

2        **Exhibit 6** (**Apx. 49-57**):Nationstar previously stipulated and agreed to a settlement in this

3  Court where it agreed that within just seven days it could identify a class of 188,393 members on

4  a "list [which included] all names, addresses, email addresses, and number of [specific] Fees [at

5  issue in that action] paid for each Settlement Class Member" (**Apx. 53** at ¶ 5.3). *Garcia v.*

6  *Nationstar, U.S. District Court for the Western District of Washington* (Case No. 2:15-cv-01808-

7  TSZ at Dkt. 92-1). *See also* **Exhibit 7** (**Apx. 58-61**), Declaration of Benjamin H. Richman at ¶

8  3 (identifying the number of persons subjected to Nationstar's debt collection practices at issue

9  in *Garcia* at Dkt. 93).

10        **Exhibit 8** (**Apx. 62-66**): During the *Garcia* case it was revealed that Nationstar had failed

11  to disclose in a parallel action pending at the same time in the United States District Court for

12  the Eastern District of California the overlapping claims asserted here in this Court in the *Garcia*

13  action  "As part of the Rule 26(f) conference that the parties held in the [parallel action in

14  California]… Nationstar…represented that no cases related to the [California action] existed."

15  Later, Nationstar had sought to settle claims in *Garcia* that would have impacted the claims

16  presented in the parallel action.  Declaration of Ian Mensher, *Garcia v. Nationstar, U.S. District*

17  *Court for the Western District of Washington* (Case No. 2:15-cv-01808-TSZ at Dkt. 118 at ¶¶ 2-

18  8).

19        **Exhibit 9** (**Apx. 67-80**): Nationstar's publicly traded parent—i.e. Mr. Cooper Group Inc.

20  (Dkt. 8)—issued on February 9, 2024, its Fourth Quarter of 2023 Earnings Review for its

21  investors which identifies Mr. Cooper: "Achieved record customer retention, exceeding 60%

22  recapture target" (**Apx. 69**) as part of its overall business activities through Nationstar.

23

24  inspection fees in connection with the mortgages it serviced in Maryland through another of its

25  subsidiaries. Subsequent to the events in this case, it entered into an Assurance of Discontinuance
   with the Consumer Protection Division in which it agreed to cease and desist from assessing such

26  fees and to make restitution of fees assessed with respect to those mortgages. *Consumer*
   *Protection Division v. Nationstar Mortgage, LLC* (May 14, 2018)").

SEATTLE CONSUMER JUSTICE P.S.
10728 16th Avenue SW
Seattle, WA 98146
206.330.0595

1

**Exhibit 10** (**Apx. 81-90**): Nationstar's publicly traded parent——i.e. Mr. Cooper Group

2

Inc. (Dkt. 8)—issued on February 9, 2024 a Press Release related to Fourth Quarter of 2023

3

Earnings Review identifying the parent group services mortgage loans for "4.6 million

4

customers" in in the Fourth Quarter of 2023 alone it refinanced $1.2 billion in new mortgage

5

loans which involved "refinancing existing loans through the direct-to-consumer channel" (**Apx.**

6

**82**).

7

**Exhibit 11** (**Apx. 91-124**): Nationstar's publicly traded parent's—i.e. Mr. Cooper Group

8

Inc. (Dkt. 8)—recent 2023 Annual Report on Form 10-K to the Securities and Exchange

9

Commission (less exhibits) where it admits that Nationstar

10

…originate[s] loans directly with borrowers through our direct-to-consumer

11

channel. This channel utilizes our call centers, website and mobile apps, specially
trained teams of licensed mortgage originators, predictive analytics and modeling

12

utilizing proprietary data from our servicing portfolio to reach those of our existing
4.6 million servicing customers who may benefit from a new mortgage. Depending

13

on borrower eligibility, we will refinance existing loans into conventional,
government or non-agency products. Through lead campaigns and direct

14

marketing, the direct-to-consumer channel seeks to convert leads into loans in a
cost-efficient manner. We earn gain-on-sale revenues from securitizing newly-

15

originated loans. [**Apx. 96** at Page 5]

16

Our direct-to-consumer channel represented 47% and 63% of our mortgage

17

originations for the years ended December 31, 2023, and 2022, respectively, based
on funded volume. Pull through adjusted lock volume for this channel was $5.7

18

billion and $14.8 billion in 2023 and 2022, respectively [**Apx. 96** at Page 5]….

19

In 2023, our total originations included loans for 9,561 customers with low FICOs

20

(<660), 10,242 customers with income below the U.S. median household income,
12,139 first-time homebuyers, and 2,928 veterans. The originations during this

21

period included 14,534 Ginnie Mae loans, which are designed for first-time
homebuyers, low- and moderate-income borrowers, and veterans, comprising $4

22

billion in total proceeds [**Apx. 103** at Page 44]….

23

**Exhibit 12** (**Apx. 125-162**): Br. of *Amici Curiae* Consumer Financial Protection Bureau's

24

in the matter of *Thomas-Lawson v. Carington Mortgage Services LLC* before the United States

25

Court of Appeals for the Ninth Circuit (Case No. 21-55459)(dated Oct. 21, 2021) presenting its

26

statutory interpretation of 15 U.S.C. § 1692f(1) which forms the basis of certain of the Plaintiffs'

MOTION FOR JUDICIAL NOTICE - 4

1     claims asserted in this action.

2         This Court "may take notice of proceedings in other courts, both within and without the

3 federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex*

4 *rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992); *Lee*

5 *v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that courts may take judicial

6 notice of undisputed "matters of public record"); *Kim v. Allison*, 87 F.4th 994, 998 at FN 3 (9th

7 Cir. 2023)(taking judicial notice of "publicly filed documents" in other litigation). *See also* FED.

8 R. EVID. 201(b)(2) (stating that the Court "may judicially notice a fact that is not subject to

9 reasonable dispute because it . . . can be accurately and readily determined from sources whose

10 accuracy cannot reasonably be questioned."). The Court is also permitted to "take into account

11 documents 'whose contents are alleged in a complaint and whose authenticity no party questions,

12 but which are not physically attached to' any pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076

13 (9th Cir. 2005)(cleaned up). *See also Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 946 at FN 2 (9th

14 Cir. 2006)(SEC filings and related papers are proper for judicial notice). Finally, a "court may

15 take judicial notice of a federal agency's interpretation of its own [statutory] provisions in an

16 amicus brief." *Webb v. Trader Joe's Co.,* 999 F.3d 1196, 1202 (9th Cir. 2021)(collecting cases).

17         The materials presented relate to the claims asserted in this action and associated

18 procedures, practices, and customs of the Defendant Nationstar which support the class-wide

19 relief sought by the Plaintiffs related to the fee at issue in this action—i.e. a fee imposed and

20 collected to obtain a payoff statement. Specifically, the records presented from the *Baxter* and

21 *Garcia* actions and its settlement with the State of Maryland (**Exhibits 1-8**) demonstrate there is

22 no unusual burden for Nationstar to identify all persons who were charged specific fees by its

23 business practices and such information is readily available to it through its electronic business

24 records and in the normal course of its activities it can readily take such action will little, if any,

25 administratively burden. In addition, **Exhibits 1-8, 12** are readily available in the Federal and

26 State courts or government agencies referenced above and their accuracy is not subject to

MOTION FOR JUDICIAL NOTICE - 5

1   reasonable dispute.[3]

2       In addition, the SEC filings and related documents (**Exhibits 9-11**) are relevant and

3   material to these proceedings for similar class-wide purposes that Nationstar's parent corporation

4   (Dkt. 8) and Nationstar itself have other relevant and material data to show thousands of loans

5   were paid off and satisfied during specific periods of time by Nationstar.[4] These facts are directly

6   relevant and material to the manageability of this action and the ascertainably of the class

7   members and damages they are due. In addition, these documents are relevant to the class

8   asserted in this action for statutory damages which are measured by a Defendant's net worth

9   under the Fair Debt Collection Practices Act.  15 U.S.C.A. § 1692k(a)(2)(B). *See also Tourgeman*

10  *v. Nelson & Kennard*, 900 F.3d 1105, 1110 (9th Cir. 2018) ("Congress made evidence of the

11  defendant's net worth essential to establishing the statutory damages cap").

12      As the Federal agency charged with enforcement and implementing § 1692f(1) of the

13  FDCPA,[5] the CFPB's interpretation of the statute is also both "persuasive and consistent" with

14  text of the FDCPA and associated regulations and entitled to "great weight to any reasonable

15  construction of a regulatory statute adopted by the agency charged with its enforcement." *Bank*

16  *of Am. v. City & Cnty. of San Francisco*, 309 F.3d 551, 563 at FN 7 (9th Cir. 2002), as amended

17  on denial of reh'g and reh'g en banc (Dec. 20, 2002)(cleaned up). *See also Van Asdale v. Int'l*

18  *Game Tech.*, 763 F.3d 1089, 1093 (9th Cir. 2014)(recognizing a Federal agency's interpretations

19  presented in an amicus brief "merits some deference" since the agency has "specialized

20  experience…responsible for enforcing" the statute at issue). As the Court weighs certain of the

21  claims asserted by the Plaintiffs, it would be appropriate and necessary to consider the CFPB's

22

23  _____

    [3]     Certain of Nationstar's practices in *Baxte*r and *Garcia* actions detailed in these judicial
24  records may also be relevant or material to the Parties and the Court in this action in designing
    appropriate orders pursuant to Fed. R. Civ. P. 23(d).

25  [4]     It should be noted that **Exhibits 9-11** are also published by Nationstar's parent (Dkt. 8)
    on its own website for investors and the public at SEC Filings | Mr. Cooper Group
26  (mrcoopergroup.com).

    [5]     *See e.g.* 15 U.S.C. §§ 1692k(e), 1692l(b)(6), (d); 12 U.S.C. § 5512(b)(4)(B).

SEATTLE CONSUMER JUSTICE P.S.
10728 16th Avenue SW
Seattle, WA 98146
206.330.0595

interpretation of the statutory provision it enforces as directed by Congress which are consistent with Plaintiffs' claims before the Court in this action.

Finally, certain of the judicial and government records identified herein (**Exhibits 1-8, 12**) are broadly referenced in the Plaintiffs' Complaint (Dkt. 1-3 at ¶¶ 4-9) and/or are integral to the claims asserted in this action and before the Court.  Since referenced in the pleading before the Court and/or integral to the claims asserted, these documents are "integral to the complaint" and the Court is on these alternative grounds permitted to take judicial notice of the documents. *Amazon.com Servs. LLC v. Paradigm Clinical Rsch. Inst., Inc.*, 631 F. Supp. 3d 950, 961 (W.D. Wash. 2022).  *See also Milo & Gabby, LLC v. Amazon.com, Inc.*, 12 F. Supp. 3d 1341, 1351 (W.D. Wash. 2014)("In the Ninth Circuit, district courts may take judicial notice of documents that the pleadings do not mention, provided the documents are integral to the plaintiff's claims").

WHEREFORE, for good cause shown and the authorities stated herein and also Fed. R. Evid. 201, Plaintiffs request the Court to GRANT this Motion and take judicial notice of the referenced exhibits at this "stage of the proceedings" (Fed. R. Evid. 201(d)) to aid and guide the Court and Parties to those issues most material to claims asserted in any future proceedings as necessary and appropriate and to focus the Parties and the Court on actual material issues to the claims presented.

Dated:  April 16, 2024.

SEATTLE CONSUMER JUSTICE, P.S.          CONSUMER LAW CENTER, LLC

By: */s/ Christina L. Henry*                        By: */s/ Phillip R. Robinson*

Christina L. Henry (WSBA No. 31273)     Phillip R. Robinson (*Admitted Pro Hac Vice*)
10728 16th Avenue SW                              10125 Coleville Road, Suite 378
Seattle, WA 98146                                       Silver Spring, MD 20901
Telephone: 206.330.0595                             Telephone: 301.448.1304
Email: chenry@hdm-legal.com                     Email: Phillip@marylandconsumer.com

*Attorneys for Plaintiffs Ricardo Salom, Catherine Palazzo as assignee for Ruben Palazzo, and Peter Hackinen, on their own behalf and on behalf of other similarly situated persons.*