The Honorable Barbara J. Rothstein

1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON - SEATTLE

12

13    RICARDO SALOM, CATHERINE                    Case No. 2:24-cv-00444-BJR
      PALAZZO as assignee for Ruben Palazzo,
14    and PETER HACKINEN, *on their own
      behalf and on behalf of other similarly*
15    *situated persons,*

16                Plaintiffs,                       **EXHIBIT 1**
                                                   **TO**
17          vs.                                    **AMENDED COMPLAINT--CLASS**
                                                   **ACTION**
18    NATIONSTAR MORTGAGE LLC

19    And

20
      FEDERAL HOME LOAN MORTGAGE
21    ASSOCIATION, *on its own behalf and on
      behalf of similarly situated persons*
22

23                Defendants.

24

25

26

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Avenue SW
Seattle, WA  98146
Tel# 206-330-0595 / Fax# 206-400-7609

The Honorable Barbara J. Rothstein

1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON - SEATTLE

12

| | |
|---|---|
| RICARDO SALOM, CATHERINE PALAZZO as assignee for Ruben Palazzo, and PETER HACKINEN, *on their own behalf and on behalf of other similarly situated persons,* | Case No. 2:24-cv-00444-BJR |
| Plaintiffs, | **EXHIBIT 1 TO AMENDED COMPLAINT--CLASS ACTION** |
| vs. | |
| NATIONSTAR MORTGAGE LLC | |
| And | |
| FEDERAL HOME LOAN MORTGAGE ASSOCIATION, *on its own behalf and on behalf of similarly situated persons* | |
| Defendants. | |

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Avenue SW
Seattle, WA  98146
Tel# 206-330-0595 / Fax# 206-400-7609

~~IN THE SUPERIOR~~ The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT ~~OF THE STATE~~ WESTERN DISTRICT OF WASHINGTON - SEATTLE

~~IN AND FOR THE COUNTY OF KING~~

~~Richardo Salom, Catherine Palazzo~~
RICARDO SALOM, CATHERINE PALAZZO as assignee for Ruben Palazzo, and ~~Peter Hackinen~~ PETER HACKINEN, *on their own behalf and on behalf of other similarly situated persons,*

    Plaintiffs,

    vs.

Case No~~:.~~. 2:24-cv-00444-BJR

**AMENDED COMPLAINT--CLASS ACTION** ~~COMPLAINT~~

~~COMPLAINT~~ Amended Class Action Complaint - 1

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th ~~Av.~~Avenue SW
Seattle, WA ~~_~~98146
~~V (~~Tel# 206)~~ -~~ 330-0595 / ~~F (~~Fax# 206)~~ -~~ 400-7609

**JURY DEMAND**)

~~NATIONSTAR MORTGAGE LLC d/b/a CHAMPION MORTGAGE, CHAMPION MORTGAGE COMPANY, CHAMPION MORTGAGE COMPANY LLC, CHAMPION MORTGAGE COMPANY OF TEXAS, CHAMPION MORTGAGE OF OHIO, MR. COOPER, NATIONSTAR, NATIONSTAR MORTGAGE, NATIONSTAR MORTGAGE LLC, RIGHTPATH LOAN SERVICING, RIGHTPATH SERVICING, RUSHMORE LOAN SERVICING, AND RUSHMORE SERVICING,~~

_____ NATIONSTAR MORTGAGE LLC

And

FEDERAL HOME LOAN MORTGAGE ASSOCIATION, *on its own behalf and on behalf of similarly situated persons*

_____ Defendants.

_____

Plaintiffs Ricardo Salom, Catherine Palazzo as assignee for Ruben Palazzo, and Peter Hackinen ("Plaintiffs") pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) file this Amended Class Action Complaint[1] and Jury Demand as a matter of right and say in support:

1.     Defendant Nationstar Mortgage LLC ~~which~~ does business under various trade names (including Champion Mortgage, Champion Mortgage Company, Champion Mortgage Company LLC, Champion Mortgage Company of Texas, Champion Mortgage of Ohio, Mr. Cooper, Nationstar, Nationstar Mortgage, Nationstar Mortgage LLC, RightPath Loan

---

[1]     Attached as Exhibit 1 is a comparison copy of the changes made herein.

~~COMPLAINT~~ Amended Class Action Complaint - 2

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th ~~Ave~~ Avenue SW
Seattle, WA _98146
~~V (~~Tel# 206) _ 330-0595 / ~~F (~~Fax# 206) _ 400-7609

Servicing, RightPath Servicing, Rushmore Loan Servicing, and Rushmore Servicing).  Over the last decade, Nationstar has also merged with multiple other mortgage servicers, including Seterus Inc., and assumed their portfolio of servicing rights as its own. Collectively these DBAs and merged entities are referred herein as "Nationstar".  As a servicer, Nationstar acts as a collector on behalf of the owners of thousands of mortgage loans throughout the country including those owned by Defendant Federal Home Loan Mortgage Association (Freddie Mac) and the members of the Defendant's Class define *infra*.

2.      Defendant Freddie Mac is the owner of the Palazzo Loan described *infra*. Maryland and Washington law recognizes that mortgage assignees like Freddie Mac step into the shoes of the assignors. *See e.g.* MD. ANN. CODE REAL PROP. § 2-103; *Thompkins v. Mountaineer Investments, LLC*, 439 Md. 118, 139 (2014); *Brown v. Washington State Dep't of Com.*, 184 Wash. 2d 509, 359 P.3d 771 (2015)(recognizing Freddie Mac as the assignee of a mortgage note retains all economic interest in the assigned loan).  Freddie Mac, as the assignee of those who originally made the loans under its specific guidelines, stands in their shoes and is therefore the maker of Palazzo's loan. Freddie Mac also is the maker of the Palazzo Loan and thousands of other loans of the putative class members because it prescribed the guidelines that governed the loans and approves them.   Freddie Mac requires that Nationstar service its agreements, including the Palazzo Loan and the loans of similar putative class members, in accordance with federal and Maryland law and is responsible for the acts of its authorized servicer. Nationstar has a duty to notify Freddie Mac when Plaintiffs notice it of its errors and they have access to all of Nationstar's records related to the Palazzo Loan, in accordance with its policies and practices.

1.3.   Additionally, it is widely recognized that Freddie Mae routinely acquires loans from others. Freddie Mac is the owner and party to every mortgage contract it has acquired including the Palazzo Loan. Freddie Mac (like the other members of the Defendant's Class)

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Ave Avenue SW
Seattle, WA  98146
V (Tel# 206)  330-0595 / F (Fax# 206)
400-7609

simply stands in the shoes of others and is bound by the terms and conditions of the contracts it acquires and is entitled to no greater rights as an assignee than its assignors had to give it.

2.4.	As a result of its growth, Nationstar has become one of the largest servicers of residential mortgages in the country, and it routinely violates the Fair Debt Collection Practices Act ("FDCPA") and various state debt collection laws, and breached breaches the uniform terms of borrowers' mortgages ("Uniform Mortgages") by charging and collecting illegal payoff statement fees when borrowers requested request payoff statements to satisfy their loans or understand what sums Nationstar claims it is due ("Payoff fees Fees").

3.5.	The Payoff Fees subject to this action are nothing more than junk fees added unfairly or deceptively to the accounts of mortgage borrowers by Nationstar to and thousands of other consumers on a regular basis which by Nationstar, as they are not expressly authorized by law or standard loan documents.

4.	The Consumer Financial Protection Bureau has issued an advisory opinion explaining the harm to consumers and also to honest actors when financial service companies like Nationstar impose and collect junks fees explaining generally:

5.	Debt collectors play a critical role in the consumer finance ecosystem, and the CFPB wants to ensure that law-abiding debt collectors are not disadvantaged by their competitors that impose unlawful fees…These types of fees are often illegal, and today's advisory opinion and accompanying analysis seek to stop these violations of law and assist consumers who are seeking to hold debt collectors accountable for illegal practices.

6.	Nationstar knows the law and has a history of imposing and collecting junk fees it is not entitled to collect. Further, both federal and state laws, which are incorporated into every mortgage agreement, do not expressly authorize the Payoff Fees imposed and collected by Nationstar.

6.7.	The subject Payoff Fees are simply another form of the pay-to-pay fees Nationstar has routinely imposed and collected without legal authority. Nationstar has already

COMPLAINT - Amended Class Action Complaint - 4

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Ave Avenue SW
Seattle, WA 98146
V (Tel# 206) - 330-0595 / F (Fax# 206) - 400-7609

refunded other forms of pay-to-pay junk fees in multiple actions, and from these prior actions it has an appreciation and understanding that it has no right to impose these fees yet it elected to do so. This conclusion is based in part on the following:

7.a. In the matter of *Garcia v. Nationstar Mortgage LLC*, Case No. C15-1808 TSZ (W.D. Wash).). Nationstar settled claims involving thousands of illegal 'convenience fees' "convenience fees" imposed and collected from borrowers nationwide. ECF. 13-1 (Apx. 49-61). It was also disclosed in the *Garcia* action that Nationstar did not disclose in other related cases that identical or overlapping claims were also pending in in the *Garcia* Court, which caused a burden on other parties and other courts when not flagged as a related case. ECF. 13-1 (Apx. 62-66).

b. In the matter of *Baxter v. Lakeview et. al* (Case No. C-02-CV-22-000654, Cir. Ct. of Anne Arundel County, Maryland, (November 10, 2022)), Nationstar, though its corporate designee, while represented by the same counsel who represent it in this action, admitted under penalties of perjury that after it was sued, it identified and refunded over a million dollars of so-called "convenience fees" imposed and collected from Maryland mortgage borrowers in violation of Maryland law, which incorporates federal law. ECF. 13-1 (Apx. 1-38). Nationstar also partially refunded these fees months after it was sued and without notice or leave to the governing court when it knew the plaintiff and putative class members were represented by counsel. In the process of refunding these fees, Nationstar never properly explained to the putative class members why they received a refund. *Id.*

c. In the matter of *McFadden v. Nationstar* (Case No. 1:20-cv-00166-EGS-ZMF, U.S. D.C. for the Dist. of Columbia), Nationstar settled a nationwide settlement involving thousands of consumers who Nationstar imposed and collected pay-to-pay fees without the right to do. In that case, Nationstar was able to identify the consumers, fees, and dates the fees were collected from its own business records.

COMPLAINT  Amended Class Action Complaint - 5

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Ave Avenue SW
Seattle, WA  98146
V  (Tel# 206)  330-0595 / F  (Fax# 206)
400-7609

8. In another matter, Nationstar entered ~~in~~into an Assurance of Discontinuance with the Consumer Protection Division of the Office of the Maryland Attorney General, dated May 14, 2018, where it agreed to "refund, reverse or otherwise credit" property inspection fees it imposed ~~related to~~in more than 25,543 transactions valued at a sum of approximately $1,088,168 in prohibited fees ~~and~~. There, Nationstar agreed it had the means to identify the borrowers' names, addresses, loan type, number of months charged, the sum of fees imposed, any amounts "refunded, reversed, credited or in another other way reimbursed to the consumer," the date a loan transferred to another servicer (if applicable), and the name of the new servicer to whom the account was transferred (if Applicable~~)~~)). ECF. 13-1 (Apx. 39-49).

~~9.      In the matter of *Baxter v. Lakeview et. al* (Case No. C-02-CV-22-000654, Cir. Ct. of Anne Arundel County, Maryland)(November 10, 2022) Nationstar admitted under penalties of perjury by its corporate designee that after it was sued it identified and refunded over a million dollars of so-called 'convenience fees' imposed and collected from Maryland mortgage borrowers in violation of Maryland law which incorporates Federal law.~~

~~10.~~9.   In this action, Plaintiffs challenge Nationstar's ~~current~~ practice of illegally charging residential, homeowners various sums, including $25.00, for a written payoff quote ("Payoff Transaction"). In no prior action did Nationstar obtain any bona fide release for the claims asserted herein for pay-to-pay payments related to the issuance of Payoff Transactions. In other words, no identical claims were previously asserted against Nationstar related to the issuance of Payoff Transactions, even though it knew from its experience that when a fee is not expressly authorized by law or contract, it has no right to impose or collect the fee. Here, Nationstar voluntarily elected to impose and collect the subject Payoff Fee with a knowing and/or recklessly indifferent appreciation that it had no such right to impose or collect the fee.

~~11.~~10.  The FDCPA prohibits Nationstar from collecting any amount in addition to the principal obligation unless such amount is explicitly stated in the agreement creating the debt or expressly permitted by law. ~~-~~15 U.S.C. § 1692f(1). Importantly, Payoff ~~fees~~Fees are not

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th ~~Av~~Avenue SW
Seattle, WA  98146
~~V (Tel#~~ 206)~~-~~330-0595 / ~~F (Fax#~~ 206)~~-~~
400-7609

found nowhere in the Uniform MortgagesMortgage documents and are not permitted by state

debt collection laws governing Nationstar's conduct across the United States. Of note, other

specific fees are identified and expressly authorized by the Uniform Mortgage documents

which were drafted not by the Plaintiffs or any members of the Plaintiffs' Class but by the

original lenders to each transaction who never intended to expressly authorize any fee for

Payoff Transactions like that subject to this action. .

12.11. A mortgage servicer such as Nationstar generally works on behalf of

anotherothers pursuant to an assignment of servicing rights agreement with the mortgage

lender or noteholder, including Freddie Mac. Under such an agreement, the servicerNationstar

performs the everyday tasks of managing the loan, such as collecting monthly payments,

applying payments, managing escrow accounts, and, in the event of a default, enforcing the

mortgage through foreclosure. As a pure mortgage servicer, Nationstar is generally not a party

to the Uniform Mortgage documents between the borrower and the owner of the loan, like

Freddie Mac. It is simply a third-party vendor or debt collector retained by the owner or

insurance provider for the loan with no rights to alter the Uniform Agreements unless agreed to

by all parties in a written and countersigned agreement.

13.12. The assignment of servicing rights agreement transfers the lender's servicing

rights under the mortgage and nothing more. Servicers and lenders are bound by the written

terms of the mortgages and owe the same obligations to borrowers to only impose and collect

fees actually authorized by the signed agreements or law. The terms of all mortgage loans

generally incorporate all applicable laws which include, including 15 U.S.C. § 1692f(1)), 12

U.S.C.A. § 2610, 15 U.S.C.A. § 1639c(e)(3), and the various state laws and regulations

described herein.

14.13. Nationstar services mortgages throughout the United States and is supposed to be

compensated out of the interest paid on each borrower's monthly payment. Nationstar may

additionally charge borrowers fees expressly authorized under the Uniform Mortgage or

COMPLAINT—Amended Class Action Complaint - 7

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th AveAvenue SW
Seattle, WA 98146
V (Tel# 206)-330-0595 / F (Fax# 206)-
400-7609

amounts actually paid to third parties who perform services for Nationstar's borrowers thatif those services are expressly authorized by law or contract in the Uniform Mortgage. Importantly, the Uniform Mortgage does not permit Nationstar to mark-upmarkup the amounts it pays to third parties for bona fide services that are expressly permitted by law or signed contract (since the mortgages at issue are required to be in writing).

15.14.  Notwithstanding the law governing a Uniform Mortgage, Nationstar imposes and collects directly or indirectly, unauthorized charges to create a profit center for itself. Here, Nationstar charged borrowers for Payoff feesFees in amounts up to $25.00 through its mortgage servicing practices. These sums exceed the cost to Nationstar to provide the Payoff Transaction. These sums are also already paid to Nationstar as the percentage of interest it collects from borrowers. So, the excessive sums are nothing less than junk fees to which Nationstar has no right to add and collect on a borrower's mortgage loan account.

16.15.  Despite its uniform contractual obligations to charge only fees explicitly allowed under the mortgage and applicable law, and only those amounts actually disbursed, Nationstar leverages its position of power over homeowners and demands exorbitant Payoff Fees. without the right to do so. Even if some fees were allowed, the mortgage uniformUniform Mortgage covenants, and applicable law only allow Nationstar to pass along the actual cost of fees incurred by it to the borrower – here only a few cents per Payoff Transaction and not the sums actually imposed and collected by Nationstar which far exceed the actual costs.

17.16.  Because Nationstar has no right to impose and collect the Payoff Fees at issue in this action or to inflate the actual costs imposed and collected, the extra sums collected amount to impermissible pre-payment penalties which are barred by Federalfederal and Statestate laws discussed *infra*. While these sums may appear small in the individual situation, in the aggregate they amount to a substantial profit center for Nationstar, paid for by consumers who do not assume they are dealing with a scoundrel, which gives it an unlawful competitive

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th AveAvenue SW
Seattle, WA _98146
V (Tel# 206) -330-0595 / F (Fax# 206) -
400-7609

advantage over honest mortgage services who choose not to skirt or violate the laws governing this section.

18.17.  Nationstar imposed upon and/or collected Payoff Fees in Payoff Transactions from Plaintiffs or their assignors and they bring this class action lawsuit individually and on behalf of all similarly situated putative class members.

## I.  JURISDICTION AND VENUE

19.18.  This Court has jurisdiction over Nationstar because Nationstar conducts business in Washington and commits torts in Washington, as described in this Complaint.  This action arises under the Constitution and laws of the United States. Jurisdiction is conferred on this Court pursuant to Article III, the Supremacy Clause, 28 U.S.C. § 1331.

19.     This Court has supplemental jurisdiction over the State claims alleged in this Complaint under 28 U.S.C. § 1367, as such claims form a part of the same case or controversy.

20.     Venue is proper under 28 U.S.C. § 1391(b) because the a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

21.

20.22.  Declaratory and injunctive relief is also available for the relief requested herein pursuant to 28 U.S.C. §§ 2201 and 2202.Nationstar does not have a contractual relationship with the Plaintiffs and certain of the members of the Plaintiffs' Class.  Therefore, there is no contractual agreement between Nationstar the Plaintiffs to attempt to cure before commencing this action through any grievance notice.  In addition, under the statutory claims asserted in this action, neither Congress in the FDCPA nor the Maryland General Assembly in the Maryland statutory claims or the Washington State Legislature, related to the Washington statutory claims, required consumers like the Plaintiffs or others like them to serve a pre-litigation notice on a defendant like Nationstar in this action before commencing an action in any court.  In fact, Congress and the state legislature knew how to add such provisions but affirmatively did not include any such requirement.  This is the majority view of courts around the country related to

COMPLAINT - Amended Class Action Complaint - 9

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Ave Avenue SW
Seattle, WA  98146
V (Tel# 206) -330-0595 / F (Fax# 206) -
400-7609

statutory claims like those raised in this action as well as claims against servicers not a party to the mortgage. *See e.g. LEMP, v. SETERUS, INC.*, No. 218CV01313TLNKJN, 2022 WL 912960, at *5 (E.D. Cal. Mar. 29, 2022); *Gerber v. First Horizon Home Loans Corp.*, No. C05-1554P, 2006 WL 581082, at *3 (W.D. Wash. Mar. 8, 2006)("The cause of action ~~accrued in this County.~~, which involves allegations of deceptive business practices, clearly exists independent of any contract between the parties"); *Kim v. Shellpoint Partners, LLC*, No. 15CV611-LAB (BLM), 2016 WL 1241541, at *7 (S.D. Cal. Mar. 30, 2016)(holding a contractual notice and cure provision does not apply to Federal statutory claims under the Truth in Lending Act"); *St. Breux v. U.S. Bank, Nat. Ass'n*, 919 F. Supp. 2d 1371, 1376 (S.D. Fla. 2013); *Schmidt v. Wells Fargo Home Mortg.*, 2011 WL 1597658, at *3 (E.D. Va. Apr. 26, 2011), *aff'd*, 482 Fed. Appx. 868 (4th Cir. 2012) (*per curiam*); *Johnson v. Specialized Loan Servicing, L.L.C.*, 2017 WL 4877450 (M.D. Fla. Oct. 24, 2017); *Patrick v. Teays Valley Trs.*, 2012 WL 5993163 (N.D. W. Va. Nov. 30, 2012); *Stovall v. SunTrust Mortg., Inc.*, No. CIV.A. RDB-10-2836, 2011 WL 4402680, at *7 (D. Md. Sept. 20, 2011).

23.     In the Dodd-Frank Act, Congress also enacted 15 U.S.C.A. § 1639c(e)(3) which established that "[n]o provision of any residential mortgage loan or of any extension of credit under an open end consumer credit plan secured by the principal dwelling of the consumer, and no other agreement between the consumer and the creditor relating to the residential mortgage loan or extension of credit…shall be applied or interpreted so as to bar a consumer from bringing an action in an appropriate district court of the United States, or any other court of competent jurisdiction, pursuant to section 1640 of this title or any other provision of law, for damages or other relief in connection with any alleged violation of this section, any other provision of this subchapter, or any other Federal law."  Any contractual provision between the Plaintiffs and the Plaintiffs' Class members on the one hand and Freddie Mac and members of the Defendant's Class on the other hand which might require a pre-suit grievance mechanism cannot be applied to the claims asserted by Plaintiffs and Plaintiffs' Class members to

~~COMPLAINT~~ Amended Class Action Complaint - 10

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th ~~Ave~~Avenue SW
Seattle, WA  98146
~~V (~~Tel# 206) - 330-0595 / ~~F (~~Fax# 206) -
400-7609

Nationstar since it (i) is not a party to their mortgage contracts owned by the member of the Defendant's Class or (ii) such an application is barred by 15 U.S.C.A. § 1639c(e)(3).

## II. **PARTIES**

21.24.   RichardoRicardo Salom ("Salom") is a current resident of the State of Washington. Previously, Salom acquired his former home and property in Gaithersburg, Maryland (146 Quince Orchard Road) on or about June 23, 2003, along with his wife. He financed the purchase of the property in part with an extension of credit in the sum of $286,500.00 made on the same date by Wachovia Mortgage Corporation ("Salom Loan"). The proceeds of the Salom Loan were utilized entirely for personal, consumer purposes by Salom. The Salom Loan was a federally related mortgage (as that term is defined by 12 U.S.C. § 2602(1)). When Nationstar, through its merged entity Seterus Inc., acquired the servicing rights to the Salom Loan, the Salom Loan had a past-due balance and was in default pursuant to the terms of the loan documents.  Nationstar imposed a Payoff Fee onto the Salom Loan on June 29, 2022, and Plaintiff Salom paid the sum imposed.

22.25.   Plaintiff Catherine Palazzo is the wife and lawful assignee of her husband Ruben Palazzo of certain of the claims asserted herein. Catherine Palazzo is named borrower on the Deed of Trust that secured the Palazzo Loan subject to these proceedings.  Ruben Palazzo has a mortgage loan serviced by Nationstar d/b/a RightPath on his home located at 34811 Old Ocean City Road, Pittsville, MD 21850Md. ("Palazzo Property"). Ruben Palazzo's mortgage loan is a federally related mortgage (as that term is defined by 12 U.S.C. § 2602(1)). When Nationstar acquired the servicing rights to the Palazzo Loan, Nationstar believed thousands of dollars of past due sums were owed and as a result of that belief, it had to make numerous adjustments to correct the loan records. Nationstar imposed a Payoff Fee onto Ruben Palazzo's mortgage loan on September 11, 2023 and Ruben Palazzo paid the sum imposed.  For the purpose of this litigation, Ruben Palazzo assigned his consumer claims asserted herein to his wife Catherine Palazzo on or about January 8, 2024.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th AveAvenue SW
Seattle, WA  98146
V (Tel# 206)—330-0595 / F (Fax# 206)—
400-7609

23.26.  Plaintiff Peter Hackinen has a mortgage loan serviced by Nationstar on his home located at 624 North 138th Street, Seattle, WA 98133. Peter Hackinen's mortgage loan is a federally related mortgage (as that term is defined by 12 U.S.C. § 2602(1)). When Nationstar acquired the servicing rights in Peter Hackinen's mortgage loan, his loan had a past-due balance and was in default pursuant to the terms of the uniform loanUniform Mortgage documents.  Nationstar imposed multiple Payoff Fees onto Plaintiff Peter Hackinen's mortgage loan on or about July 21, 2023, August 12, 2023, and October 4, 2023, and March 31, 2024 and Plaintiff Peter Hackinen paid the sums imposed as confirmed by Nationstar in writing on statements dated August 15, 2023, September 15, 2023, October 6, 2023, November 13, 2023, and December 11, 2023, and (about) April 10, 2024.

24.27.  Defendant Nationstar is a Delaware limited liability corporation with a principal office in Texas.  Nationstar is directly owned by two entities: (1) Nationstar Sub1 LLC ("Sub1") and (2) Nationstar Sub2 LLC ("Sub2"). Both Sub1 and Sub2 are 100% owned by Nationstar Mortgage Holdings Inc. ("NSM Holdings"). NSM Holdings is a wholly owned subsidiary of Mr. Cooper. More than 10% of the stock of Mr. Cooper is owned by (a) Blackrock, Inc., a Delaware corporation, and certain of its affiliates and (b) The Vanguard Group, Inc., a Pennsylvania corporation, and certain of its affiliates.  BlackRock and Vanguard boast over $15 trillion in assets under management.

### III.APPLICABLE LAW

**A.    Fair Debt Collection Practices Act ("FDCPA") and other relevant Federal Laws and Regulations**

25.28.  The purpose of the FDCPA is "to eliminate abusive debt collection practices . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692. Nothing in the FDCPA expressly authorizes Nationstar to impose its Payoff Fees onto the accounts of the Plaintiffs and putative class members for whom the FDCPA applies.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th AveAvenue SW
Seattle, WA  98146
V (Tel# 206)  330-0595 / F (Fax# 206)
400-7609

26.29.  The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes the false representation of "the character, amount, or legal status of any debt." *Id.* § 1692e.

27.30.  The FDCPA also prohibits debt collectors from "unfair or unconscionable means to collect or attempt to collect any debt," including "the collection of any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f.

28.31.  The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

29.32.  The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." Id. § 1692a(3).

30.33.  The FDCPA defines "debt collector" as "any person who uses . . . any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debt owed . . . or asserted to be owed or due another." *Id.* § 1692a(6). A loan servicer like Nationstar is subject to the FDCPA when it services mortgages that were in default at the time the servicer acquired the servicing rights, or when it treats the mortgages as if they were in default at the time it acquired the servicing rights.

31.34.  The FDCPA defines communication as "conveying of information regarding a debt directly or indirectly to any person through any medium." *Id.* § 1692a(2).

32.35.  The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that] are primarily for personal, family, or household purposes." *Id.* § 1692a(5).

33.36.  As part of Dodd-Frank's enactment, Congress required under the Truth in Lending Act ("TILA") that a "servicer of a home loan [like Nationstar in this action] **shall send an accurate payoff balance** within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Ave Avenue SW
Seattle, WA  98146
V (Tel# 206)  330-0595 / F (Fax# 206)  400-7609

borrower." ~~15 U.S.C.A. § 1639g (emphasis added).~~ 15 U.S.C.A. § 1639g (emphasis added). Nothing in TILA expressly authorizes Nationstar to impose its Payoff Fees onto the accounts of the Plaintiffs and putative class members for the receipt of a payoff statement issued pursuant to § 1639g. Of note, TILA did not have any requirements about payoff statements before enactment of § 1639g in the Dodd-Frank Act.

~~34.~~37.  Also under its regulatory authority, the CFPB also promulgated regulations to which also required a servicer to "provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date." 12 C.F.R. § 1026.36(c)(3). *See also* Official Interpretations of Reg. Z § 1026.36(c)(3)-3 ("Payoff statements must be accurate when issued"). Nothing in Reg. Z or its Official Interpretations expressly authorizes Nationstar to impose its Payoff Fees onto the accounts of the Plaintiffs and putative class members for the receipt of a payoff statement issued pursuant to 12 C.F.R. § 1026.36(c)(3).

~~35.~~38.  ~~The FDCPA,~~TILA and specifically 15 U.S.C.A. § 1639g, 12 C.F.R. § 1026.36(c)(3), and the Official Interpretations of Reg. Z § 1026.36(c)(3)-3 are expressly incorporated in every mortgage contract agreed to by the putative class members. The FDCPA is also expressly incorporated into every mortgage contract of the FDCPA Class members including the Hackinen Loan.

39.     Under the Real Estate Settlement Procedures Act ('RESPA"), 12 U.S.C.A. § 2610, Nationstar is barred from imposing or charging "upon any other person (as a part of settlement costs or otherwise)… in connection with a federally related mortgage loan… [as] a servicer (as the term is defined under section 2605(i) of [RESPA]), for or on account of the preparation and submission by such…servicer of the statement or statements required (in connection with such loan)…by the Truth in Lending Act." RESPA is also expressly incorporated into every mortgage contract of the putative class members.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th ~~Ave~~Avenue SW
Seattle, WA _98146
~~V (~~Tel# ~~)~~ 206)~~ -~~330-0595 / ~~F (~~Fax# 206)~~ -~~
400-7609

40.     The Consumer Financial Protection Bureau has issued an Advisory Opinion (480-AM-P dated June 29, 2022) on the fee harvesting practices of mortgage servicers, like those subject to this action, and explained its view of federal law that "amounts, including pay-to-pay fees, that are neither expressly authorized by the agreement creating the debt nor expressly authorized by law are impermissible under FDCPA section 808(1) and Regulation F, 12 CFR 1006.22(b), even if such amounts are the subject of a separate, valid agreement under State contract law." Previously, on October 21, 2021 the CFPB also filed a public legal brief advancing a nearly identical same argument before the United State Circuit Court for the Ninth Circuit. ECF. 13-1 (Apx. 125-62).

41.     If Congress intended to expressly authorize the imposition of a fee by law for a borrower to be required to pay a sum for an accurate payoff statement as required by 15 U.S.C.A. § 1639g, it knew how to do so.  *Cf.*  15 U.S.C.A. § 1639(t)(authorizing payoff statement fees for statutory defined "high-cost mortgages" (which are not at issue in this action) in some instances but limited the fees to situations where proper disclosures have been made and to reasonable amounts).  Instead of expressly authorizing fees for payoff statements in § 1639g, Congress chose not to do so and when it enacted § 1639g, its stated purpose was "to protect consumers from abusive financial services practices."  DODD–FRANK WALL STREET REFORM AND CONSUMER PROTECTION ACT, PL 111-203, July 21, 2010, 124 Stat 1376.

**B.      Relevant Maryland and Washington Laws and Regulations**

~~36.~~42.  The Maryland Consumer Debt Collection Act ("MCDCA") offers broad protection to consumers from underhanded methods used by unscrupulous creditors and debt collectors. It applies more broadly than the FDCPA.  *Alexander v. Carrington Mortgage Services, LLC*, 23 F.4th 370 (4th Cir. 2022).

~~37.~~43.  The MCDCA broadly defines "collector" as "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction." Md. Code, Com. L. § 14-201(b).

~~COMPLAINT~~ Amended Class Action Complaint - 15

It allows recovery against both creditors collecting debts in their own names, and those whose primary business is debt collection. Nationstar is qualified as a collector under the MCDCA in relation to the Maryland Subclass members defined *infra*.

38.44.   A "consumer transaction" under the MCDCA is "any transaction involving a person seeking or acquiring real or personal property, services, money, or credit for personal, family, or household purposes." Md. Code, Com. L. § 14-201(c). The Palazzo Loan and the Salom Loan and the loans of the Maryland Sub-Class members at issue in this action qualify as consumer transactions under the MCDCA.

39.45.   The MCDCA makes it illegal to engage in conduct prohibited by the federal FDCPA including that which is barred by 15 U.S.C. § 1692f(1). Md. Code, Com. L. § 14-202(11).

40.46.   The MCDCA also prohibits "collectors" from claiming, attempting, or threatening to enforce a right with knowledge that the right does not exist. *Id.* § 14-202(8).

41.47.   Seeking to collect a debt that includes "an unauthorized type of charge" violates §§ 14-202(8) and § 14-202(11) of the MCDCA.

42.48.   Nationstar has knowledge of Maryland law and disregarded that knowledge that it was barred from collecting the Payoff Transaction fees but did so anyway.

43.49.   Nationstar is a licensed Maryland mortgage servicer/lender (Lic. No. 2119). As a licensed mortgage lender/servicer, Nationstar "has a duty of good faith and fair dealing in communications, transactions, and course of dealings with a borrower in connection with the…servicing…of any mortgage loan." Md. Code Regs. 09.03.06.20. Included among such express duties, is Nationstar's duties to (i) "provide the borrower or the borrower's designee with a written statement of the dollar figure which will repay a loan in full" within five days of any request (Md. Code Regs. 09.03.06.14) and (ii) only enter into written agreements with borrowers and "[u]nless disclosed in written agreements signed by the borrower, a licensee may not, directly or indirectly, impose any fee or charge payable by or on behalf of the

COMPLAINT   Amended Class Action Complaint - 16

borrower" (Md. Code Regs. 09.03.06.08). The MCDCA was expressly incorporated in every mortgage contract agreed to by the Maryland Subclass members' loans and also the Palazzo Loan and the Salom Loan.

50.    Nothing in the MCDCA nor the regulations cited in the previous paragraph or any other Maryland law expressly authorizes Nationstar to impose its Payoff Fees onto the accounts of the Plaintiffs and putative class members for the receipt of a payoff statement issued to them. In fact, the Maryland Office of Financial Regulation which authorizes Nationstar's business in Maryland has also issued an Industry Advisory to Nationstar (May 22, 2022) in which it explained "any fee charged, whether for convenience or to recoup actual costs incurred by lenders and servicers for loan payments made through credit cards, debit cards, the automated clearing house (ACH), etc., must be specifically authorized by the applicable loan documents. If such a fee is not provided for in the applicable loan documents, it would be deemed illegal. Further, attempts to circumvent this fee restriction by directing consumers to a payment platform associated with the lender or servicer that collects a loan payment fee or requiring consumers to amend their loan documents for the purposes of inserting such fees could also violate Maryland law."

51.    These Maryland laws and regulations discussed herein were expressly incorporated in every mortgage loan agreed to by the Maryland Subclass members including the Salom Loan and the Palazzo Loan.

44.52.  The Washington State Consumer AgencyProtection Act ("WCPA") protects consumers from unfair and deceptive acts in trade and commerce. RCW § 19.86 et seq. To prevail on a CPA action, the plaintiff must prove an "(1) unfair or deceptive act or practice; (2) occurring in trade or "commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Klem v. Washington Mut. Bank*, 176 Wn. 2d 771, 782 (2013). The business of debt collection and default loan servicing has been adjudicated by Washington Courts as occurring in commerce and impacting an important public interest. *See*

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th AveAvenue SW
Seattle, WA  98146
V (Tel#  206)  330-0595 / F (Fax#  206)
400-7609

*Panag v Farmers Ins. Co. of Washington*, 166 Wn.2d 27 (2009); *Eng v, Specialized Loan Servicing,* 20 Wn.App.2d 435 (2021).

45,53.  The Washington ~~State~~state legislature has also enacted the Collection Agency Act to specifically target debt collectors ~~and violations~~like Nationstar. Violations of that act support a *per se* violation of the WCPA~~.~~ *See* RCW § 19.16.250.

46,54.  The Washington State Collection Agency Act ("WCAA") also broadly defines "collection agency" as "[a]ny person directly or indirectly engaged in soliciting claims for collection, or collecting or attempting to collect claims owed or due or asserted to be owed or due another person." R.C.W. § 19.16.100(4)(a). The WCAA allows recovery against collection agencies who collect debts in their own names, and those whose principal business is debt collection as a per se violation. ~~-~~Nationstar is a licensed collection agency under the WCAA and as a default loan servicer, is a collection agency in relation to the Washington Subclass members defined *infra*.

47,55.  A "claim" under the WCAA is "any obligation for the payment of money or thing of value arising out of any agreement or contract, express or implied." R.C.W. § 19.16.100(2). Hackinen, and Salom's experiences at issue in this action qualify as business activities occurring in trade and commerce under the WCAA.

48,56.  The WCAA prohibits "collectors" from claiming, threatening to take any action against the debtor which a licensed Collection Agency cannot legally take at the time the threat is made. RCW § 19.16.250(16). A Collection Agency is prohibited from representing or implying that the existing obligation of the debtor may be or has been increased by the addition of a fee or charge when in fact such fees or charge may not legally be added to the existing obligation of such debtor. RCW § 19.16.250(15). A Collection Agency like Nationstar in the State of Wahington is prohibited from collecting any sum in addition to the principal amount that is not expressly authorized by statute. RCW § 19.16.250(21). Seeking to collect a debt that includes a charge that is not authorized by statute violates this provision of the WCAA.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th ~~Ave~~Avenue SW
Seattle, WA  98146
~~V (Tel# ~~206)~~ -~~330-0595 / ~~F (Fax# ~~206)~~ -~~
400-7609

Additionally, under RCW § 19.16.450, any violation of the CAA will limit recovery on a claim to the amount of the original claim or obligation without any interest, service charge, attorneys' fees, collection costs, delinquency charges, or any other fees or charges otherwise legally chargeable to the debtor on such claim. RCW § 19.16.250.

49.57.   Additionally, under the stand alone WCPA, the ~~Defendants are~~Defendant Nationstar is a licensed collection ~~agencies~~agency, and ~~they use~~it uses the internet to advertise and to communicate with borrowers from ~~their~~its locations which are outside of the State of Washington. ~~They use~~It uses the mail, the telephone and the internet to transmit periodic statements, payoffs, and other correspondence to borrowers including the Named ~~Plaintiffs~~Plaintiff and putative class members; they receive substantial compensation for ~~their~~its services and part of their compensation comes directly from payments made by borrowers. Thus, ~~the Defendants'~~Nationstar's business activities are carried out in trade or commerce and satisfy that prong of the WCPA. The WCPA also makes it illegal to engage in conduct prohibited by the federal FDCPA including that which is barred by 15 U.S.C. § 1692f(1) as a *per se* violation of the WCPA.

50.58.   As to the public interest impact under the WCPA and the WCAA, since Nationstar's practice of charging payoff fees is widespread and not expressly and specifically authorized by its contractual obligations, it would undermine the very purpose of Uniform Mortgages and federal regulation and therefore would affect the public interest. Additionally, as violations of the debt collection industry necessarily implicate the public interest, once the trade and commerce prongs are satisfied, so is the public interest prong. *Panag*, 166 Wn.2d at 43.

51.59.   For the causation and injury prong of the WCPA and the WCAA, the Plaintiffs and members of the Washington Subclass would not have incurred the Payoff Transactions but for Nationstar's illegal practice of charging those fees. Likewise, since they paid those fees, they are also injured. Nationstar is a licensed Washington mortgage loan servicer. As a

~~COMPLAINT~~ Amended Class Action Complaint - 19

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th ~~Ave~~Avenue SW
Seattle, WA 98146
~~V (Tel#~~ 206) 330-0595 / ~~F (Fax#~~ 206) 400-7609

licensed mortgage servicer, Nationstar has a duty to follow all applicable state or federal laws relating to the activities governed by the Washington State Consumer Loan Act ("WCLA"). RCW § 31.04.027(1)(m). It also has a duty to refrain from engaging in unfair and deceptive acts and from fraud and misrepresentation. RCW 31.04.027(1)(b) and (c).

52.60.  These Washington laws discussed herein were expressly incorporated in every mortgage loan agreed to by the Washington Subclass members including the Hackinen Loan.

## IV. FACTUAL ALLEGATIONS

53.61.  Nationstar is a loan servicer that operates across the country. Its principal purpose as a mortgage servicer is to collect debt, and it uses interstate commerce to collect debts. Nationstar reforms this work on behalf of others including Freddie Mac and members of the Defendant's Class and in some instances on its own behalf.

62.    When Nationstar services a mortgage loan on behalf of another like Freddie Mac and the and members of the Defendant's Class (including Fannie Mae and the trust owner of the Hackinen Loan) and in some instances on its own behalf it is not a party to the underlying mortgage contracts but simply a collector hired by the owner of the loan and no borrower has any involvement in the selection process by the mortgage owner.

63.    According to sworn testimony by Fannie Mae's authorized corporate designee in the matter of *White v. NewRez & Fannie Mae* (Cir. Ct. Anne Arundel, Maryland, Case No. C-02-cv-001060) (Jan. 22, 2021) at 16:18–Page 18:1:

"Servicers have the ability to call or email my team and my team provides guidance based on our policy as found in the servicing guide. Q….So, with that introduction, what do you mean by the term "servicer" in your answer? Who is a servicer? A. A servicer would be any entity, any financial institution that services Fannie Mae loans. Q. And when you use the verb "services," what do you mean by that? A. Manages the oversight and the process to -- to oversee the collection of payments, the process to ensure compliance with Fannie Mae policy, and -- and any other federal or local law. Q. State law also? A. State laws as well".

COMPLAINT - Amended Class Action Complaint - 20

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Ave Avenue SW
Seattle, WA _98146
V (Tel# 206)- 330-0595 / F (Fax# 206)-
400-7609

64.     According to the recent 2023 SEC 10-K for Nationstar's parent company—i.e. Mr. Cooper Group, Inc. — Nationstar's parent (ECF. 8) admits that its wholly owned subsidiary Nationstar

…originate[s] loans directly with borrowers through our direct-to-consumer channel. This channel utilizes our call centers, website and mobile apps, specially trained teams of licensed mortgage originators, predictive analytics and modeling utilizing proprietary data from our servicing portfolio to reach those of our existing 4.6 million servicing customers who may benefit from a new mortgage. Depending on borrower eligibility, we will refinance existing loans into conventional, government or non-agency products. Through lead campaigns and direct marketing, the direct-to-consumer channel seeks to convert leads into loans in a cost-efficient manner. We earn gain-on-sale revenues from securitizing newly-originated loans.

Our direct-to-consumer channel represented 47% and 63% of our mortgage originations for the years ended December 31, 2023 and 2022, respectively, based on funded volume. Pull through adjusted lock volume for this channel was $5.7 billion and $14.8 billion in 2023 and 2022, respectively….

In 2023, our total originations included loans for 9,561 customers with low FICOs (<660), 10,242 customers with income below the U.S. median household income, 12,139 first-time homebuyers, and 2,928 veterans. The originations during this period included 14,534 Ginnie Mae loans, which are designed for first-time homebuyers, low-and moderate-income borrowers, and veterans, comprising $4 billion in total proceeds.

54.65.  Each time a mortgage borrower whose loan is serviced by Nationstar requests a Payoff statement related to their loan, Nationstar imposes, charges, and/or collects from the borrower one or more Payoff Fees up to $25 per instance per each Payoff Transaction.

66.     Based upon the customary and standard practice descried in the proceeding paragraph and according to the SEC disclosure of According to the public disclosure of the Mr. Cooper Group, Inc., Nationstar imposes and/or collects thousands of payoff fees from its current borrowers through its dire-to-consumer channel by refinancing them into new mortgage loans. So, not only does it earn new origination fees but it also imposes and collects fees for payoff statements that it is not expressly authorized to impose and collect.

55.67.  Nationstar's Payoff Fees are processed electronically in a matter of seconds from its system of record.  Upon information and belief based upon Nationstar's admissions in other matters concerning similar junk fees, the usual actual costs for Nationstar to prepare Payoff

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Ave Avenue SW
Seattle, WA  98146
V (Tel# 206)  330-0595 / F (Fax# 206)
400-7609

Transaction statements is a matter of pennies and far in excess of the costs it actually incurs. to produce the Payoff Statements.

56.68.  The Uniform Mortgage agreed to by the named plaintiffs and putative class members does not expressly authorize Nationstar to charge Payoff Fees. In fact, the Payoff Fees violate multiple uniform provisions of borrowers' mortgages since they are neither expressly authorized by Federal or State law or the written loan agreements governing the putative class members' mortgage loans such to this action.

57.69.  For example, many members of the Payoff Class have FHA mortgages, meaning that the mortgage is issued by an FHA-approved lender and insured by the FHA. The uniform covenants of FHA mortgages state that the lender may only assess fees authorized by the Secretary of the U.S. Department of Housing and Urban Development ("HUD").

58.70.  HUD permits servicers of FHA mortgages to collect "allowable fees and charges," i.e., fees and charges specifically delineated in Appendix 3 to the HUD Single Family Housing Policy Handbook ("Servicing Handbook"). *See* Handbook 4000.1, FHA Single Family Housing Policy Handbook § III(A)(1)(f). Servicers seeking to assess fees "not specifically mentioned" in the Servicing Handbook must request approval from the National Servicing Center to charge such fees. *Id.* § III(A)(1)(f)(B). HUD prohibits servicers from charging the borrower for "activities that are normally considered a part of a prudent Mortgagee's servicing activity." *Id.* § III(A)(1)(f)(C).

59.71.  The However, the Handbook does not authorize Payoff Fees. And, Nationstar has not sought authorization from the National Servicing Center to charge Payoff Fees.  Nationstar knows from its prior experience that, at best, the HUD FHA guidelines only authorize "actual costs" and to not permit Nationstar to impose pay-to-pay fees more than the "actual costs" just like it does for the Payoff Statement fee subject to this action.  *McFadden v. Nationstar Mortg. LLC*, No. 20-CV-166-EGS-ZMF, 2021 WL 3284794, at *8 (D.D.C. July 30, 2021), report and recommendation adopted, No. CV 20-166 (EGS), 2022 WL 1001253 (D.D.C. Apr. 4, 2022).

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Ave Avenue SW
Seattle, WA  98146
V (Tel#  206)  330-0595 / F (Fax#  206)
400-7609

60.72.  Plaintiffs Palazzo, Salom, and Hackinen, like many other borrowers, have mortgage agreements (*see e.g.* ECF. 20-1, ECF. 20-2, ECF. 20-3, ECF. 20-4, ECF. 20-5, ECF. 20-6) that incorporate model language from Fannie Mae and Freddie Mac. Such mortgage agreements contain uniform covenants that generally state that the servicer may not charge fees that are expressly prohibited by the mortgage or by applicable law. (ECF. 20-2 at ¶ 14 ("Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law"), ECF. 20-4 at ¶ 14 (same), and ECF. 20-6 at ¶ 14 (same)). These mortgage agreements typically state that "applicable law" means controlling federal, state, and local statutes, regulations, ordinances, and administrative rules and orders, as well as final non-appealable judicial opinions. Nationstar assessed and collected fees that are prohibited by "applicable law" when it charged and collected Payoff Fees in violation of state and federal statutes.

61.73.  In short, Uniform Mortgages do not expressly authorize Nationstar to charge Payoff Fees, and Nationstar violated its borrowers' Uniform Mortgages when it assessed such fees. Nationstar collected the Payoff Fees even though it knew that such fees are not authorized under its clients' mortgage agreements, and that it therefore had no right to collect them.

62.74.  In addition, since the fees at issue in this action which are improperly imposed by Nationstar without a signed agreement authorizing them and the fees relate to mortgages and real estate, any claim by Nationstar that non-written and signed agreements control would violate the stature of frauds and would not be a just basis under the law.

## A.    Plaintiff Richard Salom

63.75.  RichardoRicardo Salom ("Salom") acquired his former home and property in Gaithersburg, Maryland (146 Quince Orchard Road) on or about June 23, 2003, along with his wife. He financed the purchase of the property in part with an extension of credit in the sum of

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Ave Avenue SW
Seattle, WA  98146
V (Tel# 206) -330-0595 / F (Fax# 206)  400-7609

$286,500.00 made on the same date by Wachovia Mortgage Corporation ("Salom Loan"). The proceeds of the Salom Loan were utilized entirely for personal, consumer purposes by Salom. The Saloma Loan was not a "high-cost mortgage" as that term is defined by 15 U.S.C.A. § 1602(bb) and did not qualify as a loan under the Home Ownership and Equity Protections Act of 1994 (HOEPA Loan).

64.76.   The Salom Loan was later assigned and sold to Fannie Mae (a putative member of Defendant's Class defined *infra*) and Fannie Mae subsequently engaged Seterus Inc. (which later merged with Nationstar) to act as the mortgage servicer of the Salom Loan at a time when the loan was in default. Seterus became the servicer of the Salom Loan in or about January 2015.

77.     To cure the default on the Salom Loan, on or about May 319, 2016 Seterus on behalf of Fannie Mae and with Fannie Mae's express authority as the named lender for the Salom Loan agreed to a loan modification of the Salom Loan ("Salom Loan Modification"). The Salom Loan Modification specifically reaffirmed that the applicable law governing the relationship of the parties of the Salom Loan including 15 U.S.C.A. § 1639c(e)(3) which bars enforcement of any provision to take away the legal and statutory rights of Salom.  *Lyons v. PNC Bank, Nat'l Ass'n, 26 F.4th 180, 189 (4th Cir. 2022)*.

65.78.   Neither the original Salom Loan instruments nor the Salom Loan Modification did not name Seterus Inc. or any of its successors in interest including Nationstar, as the lender or owner of the Salom Loan or identified any servicer to be considered a lender, owner, or additional party of the Salom Loan in lieu of Fannie Mae or in additional to Fannie Mae.

66.79.   Neither the original Salom Loan mortgage documents (i.e. Note or Deed of Trust)Note or Deed of Trust (ECF. 20-1 and ECF 20-2)) nor the Salom Loan Modification or any other written agreement signed by Salom expressly authorized Fannie Mae or its vendors or servicers, including Nationstar, to impose, collect, or attempt to collect any Payoff Fee from Salom related to the Salom Loan.

COMPLAINT  Amended Class Action Complaint - 24

67.80.  No Maryland law expressly authorized Fannie Mae or its vendors or servicers, including Nationstar, to impose, collect, or attempt to collect any Payoff Fee from Salom.

68.81.  Seterus Inc. merged with Nationstar on or about February 28, 2019.  As the merged entity, Nationstar assumed the status of Seterus in relation to the Salom Loan on behalf of Fannie Mae including the status as a default servicer and debt collector.  At the time Nationstar became the servicer of the Salom Loan and all times since, it has known that it had no right to claim that Salom has waived any statutory or legal claims against it pursuant to 15 U.S.C.A. § 1639c(e)(3).

69.82.  Salom listed the Salom Property to sell in 2022. As part of the sale his agent requested a payoff statement from Nationstar who remained the servicer on behalf of Fannie Mae of the Salom Loan in 2022.  In response to Salom's requests, Nationstar provided Salom a payoff statement and charged and collected from him later a Payoff Fee of $25.00.

70.83.  Specifically, in a written payoff quote provided by Nationstar d/b/a Mr. Cooper on behalf of Fannie Mae related to the Salom Loan dated June 29, 2022, Nationstar demanded from Salom a Payoff Fee of $25.00 as part of the "**TOTAL PAYOFF AMOUNT**" quoted by it as due from Salom to satisfy the Salom Loan.  The actual cost for Nationstar to produce this statement in seconds was upon information belief, mere pennies and therefore materially less than $25 fee imposed and collected by Nationstar from Salom.

84.     In reliance that Nationstar was complying with the law and providing an accurate payoff sum to satisfy his obligation, Salom went to closing on the sale of the Salom Property on July 12, 2022, and Nationstar received the $25.00 Payoff Fee from his agent on the same day.

85.     At no time did Salom or anyone on his behalf agree in a signed writing to pay a fee for the payoff statement.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Ave Avenue SW
Seattle, WA  98146
V (Tel# 206)  330-0595 / F (Fax# 206)
400-7609

86.     Nationstar knew on and before June 23, 2022, it was not permitted to impose and collect any payoff statement fee that it imposed and collected from Salom but it chose to anyway.

71.87.  Fannie Mae released and satisfied all of Salom's obligations on the Salom Loan in a recorded Certificate of Release dated July 20, 2022, filed by its agents and affiliates, including Nationstar, in the land records of Montgomery County, Maryland (Book 66061, Page 460).  Fannie Mae expressly states in the Certificate of Release, drafted by it and recorded by it, that Salom's obligations related to the Salom Loan had been "fully paid and discharged."

72.88.  Nationstar has retained in its normal course of business all the records related to Salom and other borrowers like him and can produce those records by electronic email within a couple of minutes of any request. These records, including the electronic data related to them, easily identify that Salom paid the Payoff fee to Nationstar which it had imposed on his account and never refunded it to him.

89.     Salom has been damaged by Nationstar's collection conduct on behalf of Fannie Mae related to the Salom Loan imposing and collecting a junk fee from him which was neither expressly authorized by any written contract or law. Other honest mortgage servicers and lenders are also harmed by Nationstar's conduct and churning of fees and sums not allowed under the law which they do not impose and collect.

90.     Nationstar was not a party to the Salom Loan or the Salom Deed of Trust and simply served as a collector on behalf of Fannie Mae.

73.91.  Even though (i) he had previously and fully satisfied his duties under the Salom Loan and (ii) Fannie Mae has no right to claim he waived the claims asserted herein since the Salom Loan was modified after the effective date of 15 U.S.C.A. § 1639c(e)(3), as a precaution before the filing of this Amended Class Action Complaint, Salom sent notice of his grievance about Nationstar's practices at issue in this action to Fannie Mae, which it received, and Fannie

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Ave Avenue SW
Seattle, WA 98146
V (Tel# 206) -330-0595 / F (Fax# 206) -
400-7609

Mae did not thereafter take corrective action to correct Nationstar's improper practices on its behalf in relation to Salom and others like him in a reasonable time.

**B.      Plaintiff Catherine Palazzo**

74.92.  Catherine Palazzo ("Mrs. Palazzo") is Ruben Palazzo's lawful assignee of all the claims asserted herein.

75.93.  On March 21, 2007, Ruben Palazzo ("Palazzo") borrowed the sum of $128,000 from SunTrust Mortgage, Inc. ("Palazzo Loan")" (ECF. 20-3 and ECF. 20-4)) to acquire his home and property commonly known as 34811 Old Ocean City Road, Pittsville, MD 21850Md. ("Palazzo Property") with his wife. The deed of trust for the Palazzo Loan (ECF. 20-4) identified Mrs. Palazzo as a borrower on the loan.  Palazzo and his wife and some of his children have all lived at the Palazzo Property as their home and residence for the relevant periods subject to this action. The proceeds of the Palazzo Loan were utilized entirely for personal, consumer purposes by Palazzo.  The Palazzo Loan is not a "high-cost mortgage" as that term is defined by 15 U.S.C.A. § 1602(bb) and never qualified as a HOEPA Loan.

76.94.  The Palazzo Loan was later assigned and sold to Freddie Mac and Freddie Mac subsequently engaged a series of collectors to act as the mortgage servicer of the Palazzo Loan on its behalf. Relevant to this action, Nationstar d/b/a RightPath became the servicer of the Palazzo Loan on or about June 1, 2022. Recently Nationstar assigned the servicing of the Palazzo Loan to another of its d/b/a entities:, Rushmore.  At the time Nationstar became the servicer of the Palazzo Loan and all times since it has known that it had no right to claim that Mr. or Mrs. Palazzo has waived any statutory or legal claims against it pursuant to 15 U.S.C.A. § 1639c(e)(3).

95.      Neither the original Palazzo Loan instruments nor any other documents signed and agreed to by Mr. or Mrs. Palazzo, identified or memorialized any agreement that any servicer engaged by Freddie Mac, including Nationstar, was to be considered a lender, owner, or additional party of the Palazzo Loan in lieu of Freddie Mac or in additional to Freddie Mac.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th AveAvenue SW
Seattle, WA  98146
V (Tel# 206) 330-0595 / F (Fax# 206) 400-7609

77.96.  When Nationstar became the servicer of the Palazzo Loan on behalf of Freddie Mac, it knowingly and recklessly concealed that fact from Palazzo and did not send the notices required by Federal law (12 U.S.C.A. § 2605) and State law (Md. Code Ann., Com. Law § 13-316) which governed its relationship with Palazzo.  The violation of State law is also a crime (Md. Code Ann., Com. Law § 13-411).

78.97.  Nationstar did not disclose its role as the servicer of the Palazzo Loan to Palazzo until February 24, 2023 less thanabout twelve months before the commencement of this action and more than eight months after it was required to do so—in correspondence from its authorized representation Mary Portner as a Nationstar Customer Relations Specialist. In that disclosure, Nationstar admitted the following:

    a.  It knew no correspondence from it was sent to Palazzo or his Maryland counsel and instead had been sent by it to a stranger to Palazzo—Houser LLP.

    b.  It admitted that as the servicer of the Palazzo Loan it was responsible for issues related to: "Payment assistance and modification," "Payment posting," 'Validation of the debt," Foreclosure proceedings," and "Payment adjustments."

    c.  It admitted that when the Palazzo Loan was transferred to it that its predecessor i.e. Community Loan Servicing had represented to it that thousands of dollars were owed by Palazzo which were not owed and adjustments to the account were required. These sums were not disclosed as "lender paid expenses" either which means RightPath was required to adjust them as due from Palazzo since he did not owe them.

79.98.  Since it elected to conceal any information as the Palazzo Loan from Palazzo from June 1, 2022 through February 24, 2023, Nationstar had changed Palazzo's payments owed related to the escrow portion of his payment without disclosing the increase to Palazzo, and since it chose instead to conceal the information about the sums owed it imposed late fees onto Palazzo's account which it did not have a right to impose based on the fictional default.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Ave Avenue SW
Seattle, WA 98146
V (Tel# 206) 330-0595 / F (Fax# 206) 400-7609

80.99.  Neither the original Palazzo Loan mortgage documents (i.e. Note or Deed of Trust) or any ~~Palazzo Loan Modification or any~~ other written agreement signed by Palazzo expressly authorized Freddie Mac or its vendors or servicers, including Nationstar, to impose, collect, or attempt to collect any Payoff Fee from Palazzo related to the Palazzo Loan.

81.100.        No Maryland law expressly authorized Freddie Mac or its vendors or servicers, including Nationstar, to impose, collect, or attempt to collect any Payoff Fee from Palazzo.

82.101.        Because of the irregularities related to the Palazzo Loan continued by Nationstar from its predecessors and Palazzo's interest in potentially refinancing or paying off his mortgage, Palazzo asked Nationstar to provide him a Payoff quote for the Palazzo Loan on or about September 11, 2023. which it provided to him electronically through its website in seconds (not by fax).

83.102.        In response to Palazzo's request in the proceeding paragraph, Nationstar provided Palazzo a payoff statement and charged and collected from him a Payoff Fee of $25.00 on or about September 11, 2023.  The actual cost for Nationstar to produce this statement in seconds was upon information and belief that the actual costs involved mere pennies and therefore materially less than $25 fee imposed and collected by Nationstar from Palazzo.

84.103.        Specifically, in a written payoff quote provided by Nationstar d/b/a RightPath related to the Palazzo Loan dated September 11, 2023, Nationstar demanded from Palazzo a Payoff Fee of $25.00 as part of the "**TOTAL PAYOFF AMOUNT**" quoted by it as due from Palazzo to satisfy the Palazzo Loan.

104.    In reliance that Nationstar was complying with the law and providing an accurate payoff sum to satisfy his obligation, Palazzo paid the fee imposed by Nationstar and it received the $25.00 Payoff Fee as part of its collection practices.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th ~~Ave~~Avenue SW
Seattle, WA  98146
~~V (Tel#~~ 206) 330-0595 / ~~F (Fax#~~ 206)
400-7609

105.     At no time did Mr. Palazzo, Mrs. Palazzo, or anyone on their behalf agree in a signed writing to pay a fee for the payoff statement.

106.     Nationstar knew on and before September 11, 2023 it was not permitted to impose and collect any payoff statement fee that it imposed and collected from Palazzo but it chose to anyway.

107.     Nationstar is not a party to the Palazzo Loan or the Palazzo Deed of Trust and simply serves as a collector on behalf of Freddie Mac.

108.     Before the filing of this Amended Class Action Complaint, Mrs. Palazzo sent notice of her grievance about Nationstar's practices at issue in this action to Freddie Mac on her behalf and on behalf of others like her and Mr. Palazzo and it did not respond in a reasonable time even though it received the grievance letter.

85.109.     In addition, in the same written payoff quote provided by Nationstar d/b/a RightPath related to the Palazzo Loan dated September 11, 2023, Nationstar also demanded from Palazzo that be repay it unspecified Lender Paid Expenses of $19.77 as part of the "**TOTAL PAYOFF AMOUNT**" quoted by it as due from Palazzo to satisfy the Palazzo Loan.

86.110.     Nationstar had no right to impose upon Palazzo to pay unspecified Lender Paid Expenses since Palazzo had timely paid all sums due on his loan which had been disclosed to him and Nationstar had first breached its legal duties owed to Palazzo by concealing its role with the Palazzo Loan and thereafter also concealing from him any adjustments to the monthly escrow portion of the Palazzo Loan due from him. In other words, after having created a fictional default, Nationstar has no right to profit further by demanding and collecting from Palazzo pay unspecified Lender Paid Expenses which Freddie Mac incurred by its own election.

87.111.     Nationstar has retained in its normal course of business all the records related to Palazzo and other borrowers like him and can produce those records by electronic emailmail within a couple of minutes of any request. These records, including the electronic

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th AveAvenue SW
Seattle, WA 98146
V (Tel# 206) -330-0595 / F (Fax# 206) -
400-7609

data related to them, easily identify that Palazzo paid the Payoff fee to Nationstar which it had imposed on his account and never refunded it to him.

88.112.     Palazzo has been damaged by Nationstar's collection conduct related to the Palazzo Loan imposing and collecting a junk fee from him which was neither expressly authorized by any written contract or law. Other honest mortgage servicers and lenders are also harmed by Nationstar's conduct and churning of fees and sums not allowed under the law which they do not impose and collect. Mrs. Palazzo, as Palazzo's lawful assignee and in her own right is entitled to collect the damages asserted by Palazzo herein.

## C.     Peter Hackinen

89.113.     Peter Hackinen ("Hackinen") acquired his home and property in Seattle, Washington (624 N 138th Street) on or about May 31, 1995. He refinanced the property in December 2006 with First Horizon Home Loan Corporation for the sum of $280,000 ("Hackinen Loan"). The refinance was utilized entirely for personal, consumer purposes by Hackinen.

90.114.     The Hackinen Loan was later assigned and sold to the Bank of New York Mellon fka f/k/a The Bank of New York as Trustee for the holders of the Certificates, First Horizon Mortgage Pass-Through Certificates Series FHAMS 2007-FA1, ("First Horizon Trust"), by First Horizon Home Loans, a Division of First Tennessee Bank, N.A., Master Servicer in its capacity as agent for the Trusts under the Pooling and Servicing Agreement by Nationstar Mortgage LLC as Attorney in Fact. At no time was Nationstar a party to the Hackinen Loan; it simply served at all relevant times as a collector on behalf of the First Horizon Trust. The Hackinen Loan was not a "high-cost mortgage" as that term is defined by 15 U.S.C.A. § 1602(bb) and never qualified as a HOEPA Loan.

91.115.     Nationstar was engaged to act as the mortgage servicer of the Hackinen Loan on behalf of the trust identified in the previous paragraphFirst Horizon Trust at a time

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th AveAvenue SW
Seattle, WA 98146
V (Tel# 206) 330-0595 / F (Fax# 206) 400-7609

when the loan was in default and it also believed the loan to be in default. Nationstar became the servicer of the Hackinen Loan on or about August 5, 2013.

92.116.    To cure the longstanding default on the Hackinen Loan, on or about August 11, 2015, Nationstar with express authority of the Hackinen Loan owner, agreed to a loan modification of the Hackinen Loan ("Hackinen Loan Modification").

93.117.    Neither the original Hackinen Loan mortgage documents (i.e. Note and Deed of Trust (ECF. 20-5 and ECF. 20-6 ) or the Hackinen Loan Modification or any other written agreement signed by Hackinen expressly authorized Nationstar, to impose, collect, or attempt to collect any Payoff Fee from Hackinen related to the Hackinen Loan. The Hackinen Loan Modification also did not make Nationstar a party to the Hackinen Loan.

94.118.    No Washington law expressly authorized Nationstar, to impose, collect, or attempt to collect any Payoff Fee from Hackinen.

119.    At the time Nationstar became the servicer of the Palazzo Loan and all times since it has known that it had no right claim that Mr. or Mrs. Palazzo has waived and statutory or legal claims against it pursuant to 15 U.S.C.A. § 1639c(e)(3).

95.120.    Hackinen explored a refinance of his home in 2023. As part of the refinance, his mortgage broker requested several payoff statements from Nationstar who remained the servicer on the Hackinen Loan in 2023. In response to Hackinen's requests, Nationstar provided Hackinen's mortgage broker with at least three payoff statements and in each instance charged and collected from him a Payoff Fee of $25.00 with one fee imposed on or about, and multiple dates including July 21, 2023, August 12, 2023October2023, October 5, 2023., and March 11, 2024.

121.    Specifically, in a written payoff quotes provided by Nationstar d/b/a Mr. Cooper related to the Hackinen Loan in multiple dates including approximately July 22, 2023, October 5, 2023, and March 11, 2024 Nationstar demanded from Hackinen a Payoff Fee of $25.00 as part of the **TOTAL PAYOFF AMOUNT**" quoted by it as due from Hackinen to satisfy the

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th AveAvenue SW
Seattle, WA  98146
V (Tel# 206) 330-0595 / F (Fax# 206)
400-7609

Hackinen Loan in a refinance. The actual cost for Nationstar to produce these statements involved mere seconds was upon information and belief amounted to mere pennies of the sum charged and collected and therefore materially less than $25 fee imposed and collected by Nationstar from Hackinen.

122. Hackinen finally went to settlement on a refinance loan and paid off the Hackinen Loan on April 5, 2024 and as part of this settlement Nationstar again imposed and collected a $25.00 fee for the payoff statement necessary for the transaction labeled "Expedited Delivery Fee."

96.123. The successor trustee under the deed of trust associated with the Hackinen Loan released and satisfied all of Hackinen obligations on the Hackeninen Loan in a recorded Deed of Reconveyance dated April 25, 2024 filed by its agents and affiliates, including Nationstar, in the land records of King County, Washington (Instrument Number 20240425000404). In that instruments the trustee specifically stated in the recorded instrument that Hackinen's obligations related to the Hackinen Loan "have been fully satisfied."

97.124. Hackinen continued to pay his mortgage while exploring a refinance and he paid the $25.00 Payoff Fees as part of his regular monthly payments during the successive months and later as part of his settlement and payoff of the Hackinen Loan on April 5, 2024. Hackinen made these payments in reliance that Nationstar was complying with the law and providing an accurate payoff sum to satisfy his obligation.

125. At all times relevant to Hackinen Nationstar knew the law and knew it had no right to impose and collect any of the payoff fees imposed and collected by it from Hackinen

98.126. Nationstar has retained in its normal course of business all the records related to Hackinen and other borrowers like him and can produce those records by electronic email within a couple of minutes of any request. These records, including the electronic data related to them, easily identify that Hackinen paid the Payoff fee to Nationstar which it had imposed on his account and never refunded it to him.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Ave Avenue SW
Seattle, WA 98146
V (Tel# 206) 330-0595 / F (Fax# 206) 400-7609

99.127.        Hackinen has been damaged by Nationstar's collection conduct related to the Hackinen Loan imposing and collecting a junk fee from him which was neither expressly authorized by any written contract or law. Other honest mortgage servicers and lenders are also harmed by Nationstar's conduct and churning of fees and sums not allowed under the law which they do not impose and collect.

128.    Even though (i) he had previously and fully satisfied his duties under the Hackinen Loan and (ii) the First Horizon Trust has no right to claim he waived the claims asserted herein since the Hackinen Loan was modified after the effective date of 15 U.S.C.A. § 1639c(e)(3), as a precaution before the filing of this Amended Class Action Complaint, Hackinen sent notice of his grievance about Nationstar's practices at issue in this action to the First Horizon Trust . The notice was sent on Hackinen's behalf and on behalf of others like him. The First Horizon Trust received the notice but has not responded in a reasonable time.

## V. CLASS ACTION ALLEGATIONS (LCR 23(i)(2))

### A. Plaintiffs' Class and Subclass Allegations

100.129.        LCR 23(i)(2)(A) Statement: Plaintiffs bring this action under Wash. Super. CtFed. R. Civ. R. 23P. 23(a), (b)(3), and (b)(3) and specifically on behalf of the following Plaintiffs' Class:

All persons who Nationstar imposed a Payoff Fee as part of a payoff statement issued to them who fall into one or more of the following groups (and subclasses):

(1) were borrowers (or the assigns or successors in interest to the borrowers) on residential mortgage loans in the United States to which Nationstar acquired servicing rights when such loans were 30 days or more delinquent or in default on loan payment obligations or other standard default terms as defined by a Uniform Mortgage instrument ("FDCPA Subclass"); or

(2) were borrowers (or the assigns or successors in interest to the borrowers) on residential mortgage loans secured by residential properties in the State of Washington in the four years before the commencement of this action to

COMPLAINT  Amended Class Action Complaint - 34

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th AveAvenue SW
Seattle, WA  98146
V (Tel# 206)  330-0595 / F (Fax# 206)
400-7609

which Nationstar acted as a mortgage servicer ("Washington Subclass"); or

(3) were borrowers (or the assigns or successors in interest to the borrowers) on residential mortgage loans secured by residential properties in the State of Maryland in the three years beforesince October 1, 2019 to the commencement of this action to which Nationstar acted as a mortgage servicer ("Maryland Subclass"); or

(4) were borrowers on residential mortgage loans on properties located in the United States in the six years before the commencement of this action ("Nationwide Contract Subclass").Unjust Enrichment Subclass") in which Nationstar was not a party to the mortgage lender and merely acted as a collector on behalf of another.

101.130.     The above Plaintiffs' Class and Subclass members are identifiable through Defendant'sNationstar's electronic records and payment databases and as a matter of Federal and State laws, Nationstar is required to be able to identify groups of borrowers it imposed certain fees upon, including Payoff Fees, as part of its normal and customary business within a matter of just days. As a matter of public records Nationstar has admitted these facts by its sworn statements under penalties of perjury related to similar, but different junk fees it imposed and collected from other borrowers.

102.131.     Excluded from membership in the Plaintiff's Class and the Subclassrelated Subclasses are the Defendant;, any entities in which it has a controlling interest; its, their agents and employees;, and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

103.132.     Plaintiffs propose that they serve as Plaintiff's Class and Subclass representatives. Each Plaintiff is a member of the Nationwide ContractUnjust Enrichment Subclass. Peter Hackinen also is a member of the FDCPA Subclass and the Washington Subclass. Plaintiffs Mrs. Palazzo and Salom also are members of the Maryland Subclass.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th AveAvenue SW
Seattle, WA  98146
V (Tel# 206)  330-0595 / F (Fax# 206)
400-7609

104.133.   Plaintiffs and the Plaintiffs' Class members have all been harmed by the actions of DefendantNationstar by having junk fees imposed and/or collected by the Defendantit for payoff statements. Other honest mortgage servicers are also harmed by Nationstar seeking and realizing a competitive advantage of imposing and collecting junk fees not expressly authorized by contract or law.

105.   Numerosity is satisfied. There are at least fifty members of each Subclass and the Class defined above.

134.   Numerosity is satisfied. There are at least fifty members of the Plaintiff's Class and Subclass defined above. Mr. Cooper's also publicly filed 10K confirms that hundreds of Nationstar borrowers were refinanced by it through its direct-to-consumer channel which focuses on promoting refinance transactions for borrowers it current services loans for. ECF. 13-1 (Apx. 81-90, 96, 103).   *See also* ECF. 13 at Page 4 of 7 (summarizing Nationstar's intentional business model to refinance of the servicing clients into new, mortgage originations through its direct-to-consumer channel).

106.135.   Individual joinder of these persons is impracticable.

107.136.   LCR 23(i)(2)(B)(3) Statement: There are questions of law and fact common to Plaintiffs and to the Plaintiff's Class and Subclasses, including, but not limited to:

a)a. Whether Nationstar assessed or imposed or collected Payoff Fees on Plaintiff's Class members and their mortgage accounts;

b)b.   Whether Nationstar, on behalf of the ownersmembers of the loans of theDefendant Class members, breached it's the borrowers' mortgage contracts (defined *infra*), unjustly enriched itself by charging Payoff Fees not authorized by the mortgage agreements of the Plaintiffs' Class to which it was not a party;

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th AveAvenue SW
Seattle, WA_98146
V (Tel# 206)  330-0595 / F (Fax# 206)
400-7609

c)c. Whether ~~Nationstar~~Nationstar's conduct violated the FDCPA by charging Payoff Fees not due or expressly authorized by law or contract;

d)d.  Whether ~~Nationstar~~Nationstar's conduct violated the MCDCA by charging Payoff Fees not due or expressly authorized by law or contract;

e)e. Whether ~~Nationstar~~Nationstar's conduct violated the Maryland Consumer Protection Act;

f.  ~~Whether Nationstar~~Whether the members of the Plaintiffs' Class were required to consider they were dealing with a scoundrel acting in contravention of the law and all governing contracts when they paid in reliance to Nationstar's demands on payoff statements for fees to receive the statement required by TILA to be accurate.

f)g. Whether Nationstar's conduct violated the Washington Consumer Agency Act which is enforced as a per se violation of the Washington Consumer Protection Act by charging Payoff Fees not due or expressly authorized by law or contract.

g)h.  Whether Nationstar violated the ~~Washinton~~Washington Consumer Protection Act by charging Payoff Fees not due or expressly authorized by law or contract.

h)i. Whether Nationstar's cost to process Payoff Transaction quotes is less than the amount that it charged for Payoff Fees;

i)j. Whether Plaintiffs and the Plaintiffs' Class were damaged by Nationstar's conduct;

j)k. Whether Plaintiffs and the Plaintiffs' Class are entitled to actual and/or statutory damages as a result of Nationstar's actions;

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th ~~Ave~~Avenue SW
Seattle, WA _98146
~~V (Tel#~~ 206)~~-~~330-0595 / ~~F (Fax#~~ 206)~~-~~
400-7609

k)l. Whether Plaintiffs and the Plaintiffs' Class are entitled to restitution or disgorgement of Nationstar's unlawful profits;

m.  Whether Plaintiffs and the Plaintiffs' Class are entitled to prejudgment interest on their claims;

l)n. Whether Nationstar should be enjoined from collecting Payoff Fees; and

o.  In the alternative, whether the Defendant's Class should be (i) liable to the Plaintiffs' Class for the breaches of contract caused by their authorized agent Nationstar for whom they delegated their own responsibilities and they engaged to perform the subject services, and (ii) should repay to the members of the Plaintiffs' Class the fees imposed and collected by Nationstar on their behalf (in whole or in part in the sums in excess of Nationstar's actual costs).

m)p.    Whether Plaintiffs and the Plaintiffs' Class are entitled to attorney's fees and costs.

108.137.    Plaintiffs' claims are typical of the claims of the Plaintiffs' Class members. Nationstar charged them Payoff Fees in the same manner as the rest of the Plaintiff's Class members as part of its standard, uniform practices. Plaintiffs and the Class members entered into uniform covenants in their Mortgage Agreements that incorporated all Federal and State laws which prohibit Payoff Fees or, at most, cap the amount of Payoff Fees allowed to be charged at the actual sum incurred for the Payoff Transaction. which is pennies for what is charged and collected by Nationstar.

109.138.    LCR 23(i)(2)(B)(2)(i) Statement: Plaintiffs are adequate Plaintiffs' Class representatives because their interests do not conflict with the interests of the Plaintiffs' Class members, and they will adequately and fairly protect the interests of the Plaintiffs' Class members. Plaintiffs have taken actions before filing this complaint, by hiring skilled and

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Ave Avenue SW
Seattle, WA  98146
V (Tel# 206) - 330-0595 / F (Fax# 206) - 400-7609

experienced counsel to represent the interests of the Plaintiffs' Class and conducting reasonable pre-suit investigation.

110.139.     LCR 23(i)(2)(B)(2)(i) Statement:  Plaintiffs have hired counsel that is skilled and experienced in class actions and are adequate Class Counsel capable of protecting the interests of the Plaintiffs' Class members.

111.140.     LCR 23(i)(2)(B)(4) Statement: Common questions of law and fact predominate over questions affecting only individual Plaintiffs' Class members, and a class action is the superior method for fair and efficient adjudication of this controversy.

   a.  Because of the nature of the specific fee at issue in this action (i.e. Payoff Fee) the predominated issue—i.e. whether Nationstar is permitted to impose and collect fees for payoff statements not expressly authorized by any law or contract or in the alternative far more than Nationstar's actual costs involved—it is desirable to concentrate these questions in one forum.

   b.  Because the class members' interests are aligned with the Plaintiffs in that no rational borrower would desire to pay a junk or pay-to-pay fee imposed and collected by Nationstar not expressly authorized by law or contract, the predominant issue presented by Plaintiffs subsumes and individual issues that may be exist 9f any).

   c.  Because Nationstar has a long-term and recent appreciation that there is no difficulty in maintaining a class action based upon an impermissible pay-to-pay fee like the one subject to this action, a class action is superior to any other available methods to fairly and effectively adjudicate this controversy.

   d.  A class action in this Court is also superior and desirable to ensure a consistent application of the law to the same common set of facts occurs to ensure fair and efficient adjudication of the issues presented.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Ave Avenue SW
Seattle, WA  98146
V (Tel# 206) - 330-0595 / F (Fax# 206) -
400-7609

e.   No other litigation about the fee subject to this action is pending in any other jurisdiction as admitted by Nationstar's failure in this Court to identify any other related litigation as required by LCR3(g).  However, as discussed supra, Nationstar has a pattern or practice of not making such disclosures even though it is required to do so.

~~112.~~141.      The likelihood that individual members of the Plaintiffs' Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

~~*A.*~~ ~~**COUNT I:  Breach of Contract**~~
~~**(All Plaintiffs on behalf of the Class and Nationwide Contract Subclass)**~~

**B.      Defendant Class (LCR 23(i)(2)(B)(2)(ii))**

142.    Alternatively, if the Plaintiffs and the members of the Plaintiffs' Class and Nationwide Unjust Enrichment Subclass are not entitled to pursue their unjust enrichment claims against Nationstar, Plaintiffs also bring this Amended Class Complaint against Freddie Mac on its behalf and all other owners of mortgage loans Nationstar acted as a servicer and who collected payments on the mortgages of Plaintiff's Class members Nationstar did not own. To the extent the members of the Defendant Class are separate entities operating different locations, each have the same interest as Nationstar since the conduct and omissions subject to the Plaintiffs' Class members' claims concern Federal and State law made applicable to the loans they own and Nationstar collects on their behalf. In addition, the juridical link for each member of the Defendant Class also includes that: (a) Each member of the Defendant Class must comply with the same terms and conditions of the standard provisions of mortgages under the standard uniform forms or other deeds of trust that incorporate Federal and State law and therefore are not permitted to collect fees for payoff statements; and (b) Each member of the Defendant Class is entitled to no greater interest or rights than the operative loan documents authorize.

~~COMPLAINT -~~ Amended Class Action Complaint - 40

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th ~~Ave~~Avenue SW
Seattle, WA  98146
~~V (Tel#~~ 206) -330-0595 / ~~F (Fax#~~ 206) -
400-7609

143.    Plaintiffs propose that Freddie Mac be appointed as the Named Defendant on behalf of the Defendant Class and that the Defendant Class be defined as follows:

All of owners of each of the mortgage loans of the members of the Plaintiffs' Class who Nationstar (i) acted as the mortgage servicer or sub-servicer and collected payments from the borrower (ii) but Nationstar had no ownership interest in the loan.

144.    Excluded from the Defendant Class is any entity that may not be held responsible as a result of any court order issued by a United States Bankruptcy Court.

145.    Based on public disclosures, including some of those discussed herein, the size of the Defendant Class upon information and belief is so numerous as to make it impracticable to join all members of the Defendant Class and the Defendant Class members, include Fannie Mae and First Horizon Trust. On information and belief, the class is comprised of more than fifty mortgage entities throughout the United States who Nationstar acts as a mortgage servicer or subservicer and collects payments from members of the Plaintiffs' Class including payoff fees.

146.    Freddie Mac and all putative Defendant Class members operate under the same Federal and State laws governing the mortgage loans of the Plaintiffs' Class members set forth in the mortgages and related to the contract claims asserted by the Nationwide Unjust Enrichment Subclass Class members herein in the alternative for their unjust enrichment claims against Nationstar.

147.    Freddie Mac and members of the Defendant Class control these functions, practices, practices, and policies for Nationstar who acts as their agent and collector, Freddie Mac and each putative Defendant Class member is liable for the acts of Nationstar on their behalf in breach of the standard uniform mortgage contracts governing their relationship with the Nationwide Unjust Enrichment Subclass members.

148.    Nationstar's authorized corporate designee and officer, Andrew J. Loll (a/k/a AJ Loll), testified on behalf of Nationstar in the matter of *May v. Nationstar* (U.S. District Ct. for

COMPLAINT - Amended Class Action Complaint - 41

the E.D. of Mo.; Case No. 4:14-cv-00578) (5/7/2015) (ECF. 144-5) at Page 205, Lines 5-7) that Nationstar has contracted to fix its errors related to Fannie Mae borrowers for whom it collects.  Upon information and belief, Nationstar is also responsible to collect errors it makes related to borrowers for whom it collects on behalf of other members of the Defendant's Class.

149.    LCR 23(i)(2)(B)(3) Statement: Given that Nationstar, Freddie Mac, and putative Defendant Class members operate under the mortgages that are made subject to Federal and State law, there are questions of law and fact which are common to all members of the Defendant Class, which questions predominate over any question affecting only individual Defendant Class members. The principal common issues are:

a.   If the fact finder or Court determines the unjust enrichment claims against Nationstar by the Nationwide Unjust Enrichment Subclass may not proceed in this action, whether the Federal laws incorporated herein are incorporated into the terms and conditions of the mortgage contracts between the Freddie Mac and the members of the Defendant Class on the one hand and members of the Nationwide Unjust Enrichment Subclass members on the other hand.

b.   If the fact finder or Court determines the unjust enrichment claims against Nationstar by the Nationwide Unjust Enrichment Subclass may not proceed in this action, whether Freddie Mac and the members of the Defendant Class are responsible for acts of Nationstar at issue in this action undertaken on their behalf.

c.   If the fact finder or Court determines the unjust enrichment claims against Nationstar by the Nationwide Unjust Enrichment Subclass may not proceed in this action, whether Freddie Mac and the members of the Defendant Class breached their contracts with the members of the Nationwide Unjust Enrichment Subclass by imposing and collecting fees for payoff statements.

d.   If the fact finder or Court determines the unjust enrichment claims against Nationstar by the Nationwide Unjust Enrichment Subclass may not proceed in this action and

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Ave Avenue SW
Seattle, WA 98146
V (Tel# 206)-330-0595 / F (Fax# 206)-
400-7609

that Freddie Mac and members of the Defendant class breached their contracts with the members of Nationwide Unjust Enrichment Subclass, what sum of damages and losses are the members of the Nationwide Unjust Enrichment Subclass entitled to recover related to the fees imposed and collected from them to receive the payoff statements.

e. If the fact finder or Court determines the unjust enrichment claims against Nationstar by the Nationwide Unjust Enrichment Subclass may not proceed in this action and that Freddie Mac and members of the Defendant class breached their contracts with the members of Nationwide Unjust Enrichment Subclass, what sums of prejudgment interest are the members of the Nationwide Unjust Enrichment Subclass entitled to receive in addition to damages and losses.

150.     The only individual questions concern the identification of the Defendant Class members which are part of Nationstar's business records and the computation of the relief that the Defendant Class members may be liable for actual damages on the Plaintiffs' and Nationwide Unjust Enrichment Subclass's alternative breach of contract claim, and this identification can be determined by a ministerial examination of Nationstar's electronically stored information that is readily available to it since it is required to maintain such data as a matter of law for the entire class period. Alternatively, Freddie Mac or the other owners and members of the Defendant Class also have the necessary records and/or the ability to obtain the necessary information as the owners of loans of the Nationwide Unjust Enrichment Subclass members.

151.     Freddie Mac's position or defenses to the claims are typical of the position or defenses of the Defendant Class members. Upon information and belief, the Defendant Class members treated all of the Nationwide Unjust Enrichment Subclass members the same by imposing and/or collecting fees for payoff statements through their common collector Nationstar.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Ave Avenue SW
Seattle, WA  98146
V (Tel# 206)  330-0595 / F (Fax# 206)  400-7609

152.   LCR 23(i)(2)(B)(2)(ii) Statement:  Defendant Freddie Mac will fairly and adequately protect the interests of all Defendant Class members in the defense of this action. It is similarly situated to each Defendant Class member and each engaged Nationstar to perform the same services subject to this action in relation to the members of the Nationwide Unjust Enrichment Subclass. If Freddie Mae is determined not to be adequate, Fannie Mae or First Horizon Trust can be substituted as the named defendant on behalf of the Defendant's Class since each would also fairly and adequately protect the interests of all Defendant Class members in the defense of this action and they are also similarly situated to each Defendant Class member and each engaged Nationstar to perform the same services subject to this action in relation to the members of the Nationwide Unjust Enrichment Subclass

153.   To that end, Defendant Nationstar has retained counsel experienced in handling class action suits and upon information and belief Freddie Mac will retain the same firm to represent it and the Defendant's Class.

154.   Neither Freddie Mac nor its counsel will have any interest which might cause them not to vigorously defend this action and the interests of the Defendant Class members.

155.   The Defendant Class members have acted and are acting in a uniform manner with respect to the entire class and on grounds uniformly applicable to the class: each hired Nationstar and delegated to Nationstar their responsibility to provide accurate payoff statements to the Plaintiffs' Class members.

156.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy. In one action as proposed by the Named Plaintiff herein, the Defendant Class members' individual interests are aligned, and the same actions and omissions are part and parcel to the claims presented by the Nationwide Unjust Enrichment Subclass members.

157.   The Defendant Class members can more economically defend the claims in this action rather than defend tens if not hundreds of individual actions.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Ave Avenue SW
Seattle, WA  98146
V (Tel# 206) 330-0595 / F (Fax# 206) 400-7609

158.    The concentration of the litigation concerning this matter in this Court is desirable.

159.    A failure of justice will result from the absence of a class action.

## VI. CLAIMS

**A.    COUNT I:  Unjust Enrichment**

**(All Plaintiffs on behalf of the Plaintiffs' Class and Nationwide
Usury Subclass against Nationstar Only)**

~~113.~~160.    Plaintiffs incorporate paragraphs 1 through ~~112.~~154. This claim is brought on behalf of the Plaintiff's Class and specifically the Nationwide ~~Contract~~Unjust Enrichment Subclass represented by each of the Plaintiffs against Nationstar only.

161.    ~~Plaintiffs (as borrowers or the assigns of a borrower of successor in interest to a borrower) each have a mortgage loan that was~~Nationstar is not a party to the mortgage contracts governing the relationships between the Plaintiffs and the members of the Nationwide Unjust Enrichment Subclass on the one hand and Freddie Mac and the members of the Defendant Class.

162.    Nationstar has no written and signed contracts between the Plaintiffs and the members of the Nationwide Unjust Enrichment Subclass authorizing an agreement to the payment of fees for payoff statements.  Since Nationstar has no contractual relationship itself as the party to the subject mortgage contracts and those contracts do not even expressly authorize the Payoff Fee at issue, this claim on behalf on the Plaintiffs and the members of the members of the Nationwide Unjust Enrichment Subclass arising under the common laws of all states which do not permit a party like Nationstar to unjustly enrich itself.

163.     Nationstar had no legal right and was not entitled to receive any benefits or fees from the Plaintiffs or the Nationwide Unjust Enrichment Subclass for them to receive payoff statement for their mortgages which were or remained owned by Freddie Mac and the members of the Defendant Class. In the alternative, Nationstar is not entitled to impose and

~~COMPLAINT~~ Amended Class Action Complaint - 45

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th ~~Ave~~Avenue SW
Seattle, WA _98146
~~V (Tel#~~ 206)_-330-0595 / ~~F (Fax#~~ 206)_-
400-7609

collect any fee for a payoff statement which exceeds its actual or reasonable costs incurred by it which upon information and belief amounts to just pennies.

164. Further, it is unjust for Nationstar to impose and collect $25 fees for each payoff statement issued by it since the reasonable and customary charge for such statements, when expressly authorized, are materially smaller. *Cf.* 15.U.S.C. § 1639(t)(1)(B)(authorizing for high-cost HOEPA loans only certain payoff fees when the statements delivered by fax or courier and are reasonably calculated to the costs involved or incurred by the servicer). Not only are Plaintiffs and the members of the Nationwide Unjust Enrichment Subclass harmed by Nationstar's fee harvesting model of imposing and collecting unauthorized fees for payoff statements, but so to are honest mortgage services who are at an unfair competitive advantage by Nationstar's election to collect a fee it is not entitled or to unreasonably mark the fee up to a sum in material excess of its actual costs.

165. Nationstar is presumed to know the law including the Federal and State laws discussed herein which bar the imposition and collection of fees related to payoff statements.

166. Additionally, Nationstar has known since at least 2018 and thereafter that it was improper for it to impose pay-to-pay fees onto the accounts of Plaintiffs or the Nationwide Unjust Enrichment Subclass members since the CFPB and other regulators and state laws told it so but it elected to continue to impose pay-to-pay fees related to payoff statements.

167. Nationstar had an affirmative duty under Federal law to only disclose accurate payoff statements to the Plaintiffs and members of the Nationwide Unjust Enrichment Subclass and including and demanding fees not owed for payoff statements was unfair or deceptive or abusive.

168. Nationstar's failure to disclose it had no right to the pay-to-pay fees added to its payoff statements to the Plaintiffs or the Nationwide Unjust Enrichment Subclass members was a material omission. If Nationstar had disclosed the fees it imposed and collected for payoff statements were unauthorized junk fees not allowed under the law, the Plaintiffs and the

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Ave Avenue SW
Seattle, WA 98146
V (Tel# 206) 330-0595 / F (Fax# 206) 400-7609

members of the Nationwide Unjust Enrichment Subclass would have been able to discover their claims against Nationstar. The Plaintiffs and the or the Nationwide Unjust Enrichment Subclass members' discovery was thus, delayed by the continuous concealment of Nationstar's intentional omissions.

169.   Nationstar cannot claim ignorance of the Federal and State laws governing the payoff statements discussed herein.

170.   Due to its presumed and actual knowledge, as described *supra*, Nationstar had an appreciation that it was not entitled to receive the benefits it was collecting in the form of fees for payoff statements (a variation of pay-to-pay fees it has admitted and acknowledged in other proceedings it has not right to collect in other proceedings but it continued to collect the fees without the legal right to do so).

171.   The acceptance and retention by Nationstar of any sums received as a result of its pay-to-pay fees for borrowers to receive payoff statements under such circumstances is inequitable since Nationstar did not have the legal right to even collect such payments in the first instance in the manner it sought to collect them—this conclusion is just and proper even though Nationstar might have otherwise collected the payoff fees if they were expressly authorized by law on contract (when they are not as described herein). Nationstar is not entitled to any equitable relief in the form of a set-off or recoupment since it comes to the Court with unclean hands having engaged in illegal activities in contravention of State laws.

172.   No Plaintiff nor any members of the Nationwide Unjust Enrichment Subclass made a voluntary payment to Nationstar since they were not obligated under the law to believe they were dealing with scoundrels and Nationstar had an affirmative duty to disclose to them only bona fide sums due on the statements and to not seek unfair, deceptive, or abusive junk fees not expressly authorized by law or contract.

173.   Alternatively, any set-off or recoupment should be limited to the amounts actually incurred by Nationstar to prepare the subject payoff statements at issue in this action

COMPLAINT - Amended Class Action Complaint - 47

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Ave Avenue SW
Seattle, WA  98146
V (Tel# 206) - 330-0595 / F (Fax# 206) -
400-7609

related to the accounts of the Plaintiffs and Nationwide Unjust Enrichment Subclass members, which is pennies on the dollar. It would not be equitable to permit Nationstar to retain sums in excess of its actual costs since that would amount to a windfall to Nationstar.

174.    The amounts accepted and retained by Nationstar from the Plaintiffs and Nationwide Unjust Enrichment Subclass members are liquidated amounts.

**B.    COUNT II:  Breach of Contract**
**(All Plaintiffs on behalf of the Plaintiffs' Class and Nationwide Usury Subclass against Freddie Mac and the Defendant Class)**

175.    Plaintiffs incorporate paragraphs 1 through 174. This claim is brought as the alternative to the unjust enrichment claim presented in Count I herein against Nationstar. This alternative claim is specifically brought on behalf of the Plaintiff's Class and specifically the Nationwide Unjust Enrichment Subclass represented by each of the Plaintiffs against Freddie Mae and the Defendant Class members only.

~~114.~~176.    The Plaintiffs and members of the Nationwide Unjust Enrichment Subclass each of the members of the Defendant Class (and Freddie Mac) have agreed to written mortgage loans that were serviced by Nationstar in the various class periods. ~~Nationstar was~~ Freddie Mac and the members of the Defendant Class were bound by the terms of all mortgages ~~it~~Nationstar serviced or services ~~and has no~~on its behalf. Neither Freddie Mac nor any members of the Defendant Class are entitled to any greater rights than ~~its~~their assignors or predecessors (if any) in interest related to the mortgage loans subject this action of the Nationwide Unjust Enrichment Subclass members had to give ~~it~~them.

~~115.~~177.    Members of the Plaintiffs' Class and Nationwide ~~Contract~~Unjust Enrichment Subclass have or had mortgages that were serviced by Nationstar ~~either~~as the ~~holder of~~agent for the ~~loan or pursuant to an assignment from the lender.~~ Defendant Class members and Freddie Mac. Each of those mortgages incorporated the laws and regulations of all applicable laws governing the transaction including those identified herein which bar the

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th ~~Ave~~Avenue SW
Seattle, WA  98146
~~V (Tel#~~ 206) 330-0595 / ~~F (Fax#~~ 206)
400-7609

imposition and collection of fees without a writing expressly authorizing the fee in the mortgage contract since the transaction involves real estate and also a consumer transaction.

116.178.      Nationstar wasFreddie Mac and the Defendant Class members were bound by the terms of Plaintiffs' and ClassNationwide Unjust Enrichment Subclass members' mortgage agreements and entitled to no greater rights than expressly stated and expressly authorized by those agreements.

117.179.      On behalf of Freddie Mac and members of the Defendant Class, Nationstar improperly collected Payoff Fees contrary to the express terms of Class and Nationwide ContractUnjust Enrichment Subclass members' mortgage agreements that prohibit the charging of fees not expressly authorized by State or Federal law.

180.      As a proximate result of that breach, Plaintiffs and members of the Class and Nationwide ContractFreddie Mac and the members of the Defendant's Class each has the means and ability to audit and supervise Nationstar's conduct on their behalf to ensure all such work, including the imposition and collection of Payoff Fees was expressly allowed by contract or law.  However, notwithstanding that ability and means and methods to ensure such compliance by Nationstar's work on their behalf, Freddie Mac and the members of the Defendant's Class elected to ratify Nationstar's unfair, deceptive or abusive conduct by turning a blind eye in reckless indifference to its fee harvesting program to collect Payoff Fees not expressly authorized by law or contract or in the alternative unreasonably excessive of Nationstar's actual costs.

181.      Freddie Mac and the members of the Defendant's Class each also have an appreciation of Nationstar's overall pay-to-pay practices since they have been involved in this conduct with many actions across the country including those identified herein.  Yet, even with this appreciation, Freddie Mac and the members of the Defendant's Class choose not to investigate Nationstar's conduct related to the fee at issue in this action, which is simply another variation of its pay-to-pay fee harvesting practices.  Such an election constitutes

COMPLAINT—Amended Class Action Complaint - 49

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th AveAvenue SW
Seattle, WA 98146
V (Tel# 206)-330-0595 / F (Fax# 206)-400-7609

another example of the ratification of Nationstar's conduct at issue in this action by Freddie Mac and the members of the Defendant's Class.

182.   Upon information and belief, Nationstar disclosed to Freddie Mac and the members of the Defendant's Class the claims asserted by the Plaintiffs in this action in March 2024 after it was served since Nationstar's agreements with Freddie Mac and members of the Defendant's Class required disclosure of this action.  This belief is based upon Freddie Mac's and Fannie Mae's standard guidelines for the secondary mortgage market utilized by members of the Defendant's Class.  With that additional knowledge, Freddie Mac and members of the Defendant's Class had a further appreciation of Nationstar's overall pay-to-pay practices at issue in this action.  Yet, Freddie Mac and the members of the Defendant Class chose not to require Nationstar to correct its practices and instead chose to ratify the conduct.

183.   Freddie Mac and the members of the Defendant's Class have never required Nationstar to stop its payoff statement fee harvesting practice even though they claim to require Nationstar to fix all problems caused by it (by Nationstar's own sworn admission).  This failure also constitutes a ratification by Freddie Mac and the members of the Defendant's Class of Nationstar's conduct which amounts to a breach of the mortgage agreements between (i) Plaintiffs and members of the Plaintiffs' Class and (ii) Freddie Mac and members of the Freddie Mac and the members of the Defendant's Class.

184.   Before the filing of this Amended Class Complaint, the Plaintiffs have given notice to the owners of their mortgage loans of their grievance against them subject to this claim on their behalf and on behalf of others like them but no corrections to their grievances were made in a reasonable time. If necessary, upon Nationstar's disclosure of all the members of the Defendant Class, Plaintiffs will serve similar grievance notices to the members of the Defendant Class. However, upon information and belief, based upon the experiences of the Plaintiffs described herein, requiring notice by the Plaintiffs' Class members would be futile

COMPLAINT  Amended Class Action Complaint - 50

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Ave Avenue SW
Seattle, WA  98146
V (Tel# 206) -330-0595 / F (Fax# 206) -
400-7609

since Freddie Mac and the members of the Defendant's Class do not regularly and customarily cure the errors made by Nationstar on their behalf as described herein.

118.185.     As a proximate result of the breach of the Nationwide Unjust Enrichment Subclass members' mortgage agreements by Freddie Mac and other members of the Defendant Class, the Plaintiffs and members of the Nationwide Unjust Enrichment Subclass have been damaged by paying fees that should not have been assessed against them and which Nationstar was not entitled to collect.

186.   As described above, Freddie Mac and the members of the Defendant's Class, by their inaction and ratification of Nationstar's conduct on their behalf, which breached their contracts with the Nationwide Unjust Enrichment Subclass, have also voluntarily waived any bona fide claim to preclude this claim from proceeding.  Freddie Mac and members of the Defendant's Class breached the subject mortgage contracts first as described herein and in doing so waived any other rights they may have had before being added to this action by this Amended Class Action Complaint.

187.   The amounts accepted and retained by Nationstar from the Plaintiffs and Nationwide Unjust Enrichment Subclass members are liquidated amounts.

119.188.     On behalf of themselves and the Class, Nationwide Unjust Enrichment Subclass, Plaintiffs seek injunctive and compensatory relief against Freddie Mac and the members of the Defendant Class related to the imposition of pay-to-pay fees in the form of fees for accurate payoff statements not expressly authorized by contract or law.


B.C.    COUNT HIII:  Violations of the FDCPA

**(Plaintiff Hackinen on behalf of the Plaintiffs' Class and FDCPA Subclass members against Nationstar)**

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Ave Avenue SW
Seattle, WA _98146
V (Tel# 206)  330-0595 / F (Fax# 206)
400-7609

120.189.    Paragraphs 1 to 119188 are incorporated herein by reference. This claim is brought on behalf of the Plaintiffs' Class and specifically the FDCPA Subclass and is brought by Plaintiff Hackinen on their behalf against Nationstar only.

121.190.    The FDCPA makes it an illegal, unfair practice for a debt collector to undertake the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debtor permitted by law." 15 U.S.C. § 1692f(1).

122.191.    Plaintiff Hackinen, and the members of both the Plaintiffs' Class who are also FDCPA Subclass members are "consumers" as defined by 15 U.S.C. § 1692a(3) because they purchased homes by mortgage primarily for personal, family, or household use.

123.192.    Because Nationstar regularly collects debts owed by others (including Freddie Mac and members of the Defendant's Class) and because it acquired the loans of Plaintiffs and ClassPlaintiff Hackinen and the FDCPA Subclass members while those loans were in default and it also believed the loans to be in default, it qualifies as a debt collector under the FDCPA in relation to the members of the FDCPA Subclass and Plaintiff Hackinen.

193.    TheSince Nationstar has no contractual relationship itself as the party to the subject mortgage contracts and those contracts do not even expressly authorize the Payoff Fee at issue, this claim on behalf of Plaintiff Hackinen and the members of the members of the FDCPA Subclass do not arise under any contractual agreements Plaintiff Hackinen and the members of the members of the FDCPA Subclass may have with the members of the Defendant's Class.  Instead the FDCPA claims asserted in this count arise under remedial statutory claims and protections established by Congress in the FDCPA.

124.194.    No law or the Mortgage Agreements of Plaintiff Hackinen FDCPA Subclass members do not expressly authorize Nationstar to collect Payoff Fees. At most, the Mortgage Agreements permit Nationstar to collect the collection of the actual costs incurred to

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th AveAvenue SW
Seattle, WA 98146
V (Tel# 206) 330-0595 / F (Fax# 206) 400-7609

process the Payoff Transactions which amounts to pennies of the sums imposed and collected by it.

125.195.        Although the Mortgage Agreements and the law do not expressly authorize collection of Payoff Fees, Nationstar imposed and collected such fees anyway without the right to do so in violation of the Federal and State laws described herein.

126.196.        By its conduct described in the previous paragraphs, Nationstar violated 15 U.S.C. §- 1692f(1).

127.197.        Nationstar recklessly, frequently, and persistently imposed and collected Payoff Fees from Plaintiff Hackinen and the members of the FDCPA Subclass.

198.    According to public disclosures, Nationstar's net worth exceeds $50,000,000 and therefore Plaintiff Hackinen and the members of the FDCPA Subclass are entitled to an award of $500,000 in statutory damages in addition to their actual damages pursuant to 15 U.S.C.A. § 1692k(a)(2)(B). ECF. 13-1 (Apx. 81-124).

199.    Nationstar also recklessly, frequently, and persistently imposed and collected Payoff Fees from Plaintiff Hackinen and the members of the FDCPA Subclass.

128.200.        Plaintiff Hackinen and the members of the FDCPA Subclass were harmed because of Nationstar's conduct. by Nationstar's imposition and collection of the payoff fees which were not expressly authorized by law or contract.

201.    The amounts accepted and retained by Nationstar from Plaintiff Hackinen and the members of the FDCPA Subclass are liquidated amounts.

129.202.        As a result of Nationstar's violation of 15 U.S.C. § 1692f, Plaintiff Hackinen, and the members of the FDCPA Subclass were harmed monetarily and are entitled to actual damages and prejudgment interest, plus statutory damages under 15 U.S.C. § 1692k in a sum of $500,000, together with reasonable attorney's fees and costs.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Ave Avenue SW
Seattle, WA  98146
V (Tel# 206)- 330-0595 / F (Fax# 206)-
400-7609

C.   **COUNT III**

**D.     IV:  Violations of State Debt Collection and Mortgage Servicing Laws**

(All Plaintiffs on behalf of the **Plaintiffs'** Class, Washington Subclass, and Maryland Subclass **against Nationstar only**)

130.203.      Paragraphs 1 to 132202 are hereby incorporated by reference. This claim is brought on behalf of the Plaintiffs' Class and specifically the Washington Subclass and the Maryland Subclass against Nationstar only.

131.204.      The laws of the various states regulate debt collection practices and mortgage servicing activities, including, but not limited to, incorporating provisions of the FDCPA and making those provisions independently actionable under state law, as well prohibiting additional unfair, unconscionable, and/or deceptive acts committed in the course of collecting on consumer debt (collectively "State Debt Collection Laws"). These State Debt Collection Laws include the laws of any and all of the fifty states and the District of Columbia that regulate the conduct of debt collectors and/or mortgage servicers in consumer transactions. Examples of these State Debt Collection Laws include, but are not limited to, California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §1788.01 *et seq.*; Florida's Consumer Collection Practices Act, Fla. Stat. 559.55, *et seq.*; Maryland's Consumer Debt Collection Act ("("MCDCA").,"), Md. Code, Com. L. § 14-201 *et seq.*; the North Carolina'sCarolina Debt Collection Act, N.C. Gen. Stat., § 75-55, *et seq.;* the North Carolina Debt Collection and Mortgage Servicing Act, N.C. Gen. Stat. § 45-91, *et seq.,* Texas's Debt Collection Act, Tex. Fin. Code § 392.303, *et seq.;* and any state law that borrows or is predicated on the federal Fair Debt Collection Practices Act. Washington State's Consumer Protection Act, RCW § 19.86 et seq., and the Washington's Collection Agency Act, RCW § 19.19 et. seq.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th AveAvenue SW
Seattle, WA _98146
V (Tel# 206) -330-0595 / F (Fax# 206)
400-7609

132.205.      Plaintiffs Mrs. Palazzo and Salom, and members of the Maryland Subclass, qualify as consumers entitled to the protections of the MCDCA and Nationstar qualifies as a collector governed by the MCDCA. Md. Code, Com. L. § 14-201.

133.206.      Nationstar's conduct described herein related to Plaintiffs Mrs. Palazzo and Salom, and members of the Maryland Subclass violation the MCDCA's prohibitions at Md. Code, Com. L. § 14-202(11) which incorporate conduct governed by the FDCPA. *Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 374–75 (4th Cir. 2022). Alternatively, Nationstar's conduct also violated Md. Code, Com. L. § 14-202(8) sincebecause its conduct was knowing or recklessly indifferent that it had right to impose or collect the payoff fees.

134.207.      As a direct and proximate result of Nationstar's violations of the Md. Code, Com. L. § 14-202(11), or in the alternative Md. Code, Com. L. § 14-202(8), Plaintiffs Mrs. Palazzo and Salom, and members of the Maryland Subclass are entitled to their actual damages including the unlawful fees paid to and collected by Nationstar, directly or indirectly, in reliance to its written payoff statements to them violation of the MCDCA.

135.208.      Nationstar's violation of the MCDCA as described in the proceeding paragraphs in relation to Plaintiffs Mrs. Palazzo and Salom, and members of the Maryland Subclass is also a *per se* violation of the Maryland Consumer Protection Act ("MCPA"). Md. Code, Com. L.Law § 13-301(14)(iii).

209.      While reliance is not an element of any MCDCA claim or MCPA claim incorporating the MCDCA pursuant to Md. Code, Com. Law § 13-301(14)(iii), the law is clear that payment of a fee in reliance to a demand of the collector does constitute reliance under the MCPA. *See e.g. Alexander v. Carrington Mortgage Services, LLC*, 23 F.4th 370, 380 (4th Cir. 2022) (recognizing reliance is a required element of a standalone claim under the MCPA but not a *per se* violation of the MCPA based upon Nationstar's MCDCA violations.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th AveAvenue SW
Seattle, WA  98146
V (Tel# 206)  330-0595 / F (Fax# 206)
400-7609

210.     Notwithstanding reliance is not an element of the claims asserted in this action by Plaintiffs Mrs. Palazzo and Salom on their behalf and on behalf of the Maryland Subclass, here Plaintiff and the Maryland Subclass members did rely upon Nationstar's written demands to them as evidence of their payments since they were not required to assume they were dealing with a scoundrel. Reliance under the MCPA can also be demonstrated by making and foregoing payments from the borrowers. *Fox v. Statebridge Co., LLC*, 629 F. Supp. 3d 300, 312 (D. Md. 2022) ("Taking the allegations in the Amended Complaint as true and in the light most favorable to Mrs. Fox, she has pled that she refrained from making additional payments on her mortgage account while she waited for Statebridge to process the [borrower response package] it had erroneously represented was essential, causing her account to fall deeper into default...Those facts among others suffice, at this early stage of the litigation, to state a plausible claim for violation of the MCPA. Mrs. Fox has also sufficiently pled damages resulting from her alleged reliance, including but not limited to damage to her credit score and emotional distress"); *Healy v. BWW L. Grp., LLC*, No. PWG-15-3688, 2017 WL 281997, at *4-5 (D. Md. Jan. 23, 2017) (taking action in reliance to statement or representation in the mortgage servicing practice is sufficient for MCPA claim including payments made in response to the false information); *Boardley v. Household Fin. Corp. III*, 39 F. Supp. 3d 689, 714 (D. Md. 2014) ("The difference between what Plaintiffs paid each month and the reduced amounts that they allegedly should have been able to pay instead is the actual loss" and sufficient reliance under the MCPA).

211.     At no time since October 1, 2019 to the present did Nationstar disclose to any member of Plaintiffs Mrs. Palazzo and Salom, and members of the Maryland Subclass that it was not entitled to collect any payoff fees but it had a duty to so disclose and correct its unfair or deceptive practices subject to this action in violation of the MCDCA and MCPA.  Any statute of limitations applicable to the claims of the Maryland Subclass members is tolled or

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Ave Avenue SW
Seattle, WA  98146
V  (Tel#  206)  330-0595 / F  (Fax#  206)
400-7609

does not commence until it makes such a disclosure or a foreclosure sale of the borrower's property occurs.  Md. Code Ann., Cts. & Jud. Proc. § 5-121.

136.212.      Plaintiff Hackinen, and members of the Washington Subclass, qualify as consumers entitled to the protections of the WCPA, and Nationstar qualifies as a collection agency governed by the WCAA.  RCW §19.86 et seq; RCW § 19.16 et seq.

137.213.      Nationstar's conduct described herein related to Plaintiff Hackinen and members of the Washington Subclass violate the WCPA's and the WCAA prohibitions which incorporate conduct of those who engage in the business of debt collection and thus incorporates violations of the FDCPA. *See Howard v. Patenaude & Felix, A.P.C*., 634 F.Supp.3d 990, (W.D. Wash. October 17, 2022).

138.214.      As a direct and proximate result of Nationstar's violations of RCW § 19.86.093 and RCW §§ 19.16.250(15), (16) and (21), Plaintiff Hackinen and members of the Washington Subclass are entitled to their actual damages including the unlawful fees paid to Nationstar in violation of WCPA and the WCAA. Additionally, under RCW § 19.16.450, Hackinen and members of the Washington Subclass limits Nationstar's recovery on its mortgage obligation to the original amount without any interest, service charge, attorneys' fees, collection costs, delinquency charges, or any other fees or charges otherwise legally chargeable to the debtor on such obligation.

139.215.      Plaintiffs and the Plaintiffs' Class, including the Washington Subclass and Maryland Subclass, and their assigns and successors in interest are consumers who engaged in consumer debt transactions when they took out mortgage loans secured by their homes for personal and household use within the meaning of the State Debt Collection Laws.

140.216.      Nationstar is a debt collector or collector that collects debts incurred for personal and household use within the meaning of the State Debt Collection Laws.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Ave Avenue SW
Seattle, WA 98146
V (Tel# 206) -330-0595 / F (Fax# 206) -
400-7609

141.217.    Nationstar's collection of monthly mortgage payments are attempts to collect debts arising out of consumer transactions within the meaning of the State Debt Collection Laws.

142.218.    Payoff Fees are prohibited under State Debt Collection Laws, because, they are: (a) fees incidental to the principal debt when such a fee is not expressly authorized by the agreement creating the debt or applicable law; (b) a portion of the debt collector's fee that is passed on to the consumer in violation of applicable law; (c) not authorized by the Secretary of HUD and/or any other relevant governmental authority or instrumentality; and/or (d) otherwise an unfair, unconscionable, and/or deceptive means of collecting a consumer debt under the State Debt Collection Laws.

219.    Since Nationstar has no contractual relationship itself as the party to the subject mortgage contracts and those contracts do not even expressly authorize the Payoff Fee at issue, this claim on behalf on the Plaintiffs and the members of the members of the Maryland Subclass and Washington Subclass do not arise under any contractual agreements the Plaintiffs and Maryland Subclass and Washington Subclass members may have with the members of the Defendant's Class.  Instead, the Plaintiffs' claims in this count on their behalf and on behalf of the Maryland Subclass and Washington Subclass members arise under remedial statutory claims and protections established by the Maryland and Washington legislatures.

143.220.    As a result of Nationstar's collection of Payoff Fees, Plaintiffs and the Plaintiffs' Class have suffered financial damages. in the sum of all the payoff fees imposed and collected by Nationstar.

## VI.VII.    PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and others similarly situated, respectfully request that the Court:

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Ave Avenue SW
Seattle, WA  98146
V (Tel# 206)  330-0595 / F (Fax# 206)
400-7609

1. ~~1.~~ A.     Determine that this action may be maintained as a class action under ~~Wash. Super. Ct~~Fed. R. Civ. ~~R~~P. 23~~.~~ and certify the proposed Plaintiffs' Class, Nationwide Unjust Enrichment Subclass, FDCPA Subclass, Washington Subclass, Maryland Subclass, and Defendant Class.

~~2.~~     ~~Wash. Super. Ct.~~ B.   Determine pursuant to Fed. R. Civ. ~~R~~P. 23~~,~~ that the Plaintiffs are proper Class representatives, and that their counsel are appointed Class Counsel. In the alternative to the claims asserted in Count I, also determines pursuant to Fed. R. Civ. P. 23 that Freddie Mac is a proper Class representative for the Defendant's Class, and that its counsel are appointed Class Counsel.

~~3.     Award damages, including compensatory and exemplary damages, to Plaintiffs and the Class and various Subclasses in an amount to be determined at trial;~~

~~Award~~C.     Enter judgments in favor in the Plaintiffs and the Plaintiffs' Class and FDCPA Subclass, National Washington Subclass, Maryland Subclass, and Nationwide Unjust Enrichment Subclass members against Nationstar pursuant to the claims asserted in Counts I, III & IV *supra*.

D.     In the alternative, if Plaintiffs and the Nationwide Unjust Enrichment Subclass do not prevail on their claims in Count I, enter judgment in their favor on their alternative claim brought in Count II against Freddie Mac and Defendant Class members.

E.     Pursuant to Count I enter a money judgment against Nationstar and order it to disgorge and pay to the Plaintiffs and Nationwide Unjust Enrichment Subclass members all fees for payoff statements  for those sums it has collected in an aggregated sum in excess of $75,000.000 from the Plaintiffs and Nationwide Unjust Enrichment Subclass for the sum of fees it was not entitled to collect but did so without the right to do so or in the alterative to disgorge all sums in excess of its actual costs incurred to produce a payoff statement from the actual costs imposed and collected from it.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th ~~Ave~~Avenue SW
Seattle, WA 98146
~~V (~~Tel# 206~~)~~ 330-0595 / ~~F (~~Fax# 206~~)~~ 400-7609

F.      In the alternative, if Plaintiffs and the Nationwide Unjust Enrichment Subclass do not prevail on their claims in Count I, pursuant to Count II enter a money judgment against Freddie Mac and the Defendant Class members for the sum of payoff fees collected by Nationstar on their behalf in an aggregated sum in excess of $75,000.00.

G.      Pursuant to Count III enter a money judgment against Nationstar and order it to pay damages, including statutory damages available under the FDCPA, to Plaintiff Hackinen and the members of the FDCPA Subclass all fees for payoff statements it has collected in a sum in excess of $75,000.000 from Plaintiff Hackinen and the members of the FDCPA Subclass  for the sum of fees it was not entitled to collect but did so without the right to do so.

H.      Pursuant to Count IV, enter a money judgment against Nationstar and order it to pay damages to Plaintiffs and the members of the Maryland Subclass and Washington Subclass all fees for payoff statements it has collected in an aggregated sum in excess of $75,000.000 from Plaintiffs and the members of the Maryland Subclass and Washington Subclass for the sum of fees it was not entitled to collect but did so without the right to do so.

4.   I.      Award any statutory damages and/or penalties available to Plaintiffs and the proposed Plaintiffs' Class and Subclasses subclass members  or as permitted by law: to any other class members.

5.   J.      Enter an order enjoining Nationstar from continuing to impose and collect Payoff Fees;.

6.   K.      Award Plaintiffs and Plaintiffs' Class members their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;.

7.   L.      Award pre- and post-judgment interest to the extent provided by law; and.

M.      Award such further relief as the Court deems appropriate.

**PLAINTIFFS DEMAND A JURY ON ALL ISSUES SO TRIABLE.**

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Ave Avenue SW
Seattle, WA  98146
V (Tel# 206)  330-0595 / F (Fax# 206)
400-7609

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

COMPLAINT  Amended Class Action Complaint - 61

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Ave Avenue SW
Seattle, WA _98146
V (Tel# 206) - 330-0595 / F (Fax# 206) -
400-7609

DATED ~~February 28~~May 30, 2024~~_____.~~

~~_-/s/ Christina L. Henry_____~~
~~Christina L Henry, WSBA 31273~~
~~SEATTLE CONSUMER JUSTICE, P.S.~~
~~Counsel for Plaintiffs~~
~~10728 16th Ave SW~~
~~Seattle, WA 98146_____~~
~~206-330-0595 Fax 206-400-7609~~
~~_chenry@hdm-legal.com_~~

~~_-/s/ Phillip R. Robinson_____~~
~~Phillip R. Robinson (_Pro Hac Vice forthcoming_)~~
~~Consumer Law Center, LLC~~
~~Counsel for Plaintiffs~~
~~10125 Colesville Road, Ste 378~~
~~Silver Spring, MD 20901~~
~~301-448-1304~~
~~_phillip@marylandconsumer.com_~~

_/s/ Christina L. Henry_____
Christina L Henry, WSBA 31273
SEATTLE CONSUMER JUSTICE, P.S.
Counsel for Plaintiffs
10728 16th Ave SW
Seattle, WA 98146_____
206-330-0595 Fax 206-400-7609
_chenry@hdm-legal.com_

_/s/ Phillip R. Robinson_____
Phillip R. Robinson (admitted _Pro Hac Vice_)
Consumer Law Center, LLC
Counsel for Plaintiffs
10125 Colesville Road, Ste 378
Silver Spring, MD 20901
301-448-1304
_phillip@marylandconsumer.com_

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th ~~Ave~~Avenue SW
Seattle, WA _98146_
~~V (Tel#~~ 206)-330-0595 / ~~F (Fax#~~ 206)_-_
400-7609