The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON - SEATTLE

| | |
|---|---|
| RICARDO SALOM, CATHERINE PALAZZO as assignee for Ruben Palazzo, and PETER HACKINEN, *on their own behalf and on behalf of other similarly situated persons,*<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONSTAR MORTGAGE LLC<br><br>And<br><br>FEDERAL HOME LOAN MORTGAGE ASSOCIATION, *on its own behalf and on behalf of similarly situated persons*<br><br>Defendants. | Case No. 2:24-cv-00444-BJR<br><br>**ANNOTATED STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF THE PLAINTIFFS' CLASS AND SUBCLASSES AND TO ALLOW SUPPLEMENTATION** |

Plaintiffs Ricardo Salom, Catherine Palazzo, and Peter Hackinen ("Named Plaintiffs"), by their undersigned counsel, hereby provides this annotated summary of preliminary and public discovery records obtained thus far in these proceedings in support of their Motion for Class Certification of a Plaintiffs' Motion for Class Certification of the Plaintiffs' Class and Subclasses pursuant to Fed. R. Civ.P. 23. This summary also references and summarizes the public records, theevidence. the well-pled allegations before the Court in Plaintiffs' Amended Class Action Complaint (ECF. 24), relevant documents from the Named Plaintiffs' Combined Appendix of Exhibits for Judicial Notice (ECF. 13-1 as corrected at 40-1) ,and Named Plaintiffs' Continued Appendix of Exhibits (Ex. 13-23, Apx 163-277) filed contemporaneously with this paper.

**I.** **Proposed Certified Class Fed. R. Civ.P. 23(a) & (b)(3):** At this early stage of these proceedings, Named Plaintiffs propose, pursuant to Fed. R. Civ.P. 23(a), that the purposed Plaintiffs' Class and Subclases be defined as follows:

> All persons who Nationstar imposed a Payoff Fee as part of a payoff statement issued to them who fall into one or more of the following groups (and subclasses):
>
> 1. were borrowers (or the assigns or successors in interest to the borrowers) on residential mortgage loans in the United States to which Nationstar acquired servicing rights when such loans were 30 days or more delinquent or in default on loan payment obligations or other standard default terms as defined by a Uniform Mortgage instrument ("**FDCPA Subclass**"); or
>
> 2. were borrowers (or the assigns or successors in interest to the borrowers) on residential mortgage loans secured by residential properties in the State of Washington in the four years before the commencement of this action to which Nationstar acted as a mortgage servicer ("**Washington Subclass**"); or
>
> 3. were borrowers (or the assigns or successors in interest to the borrowers) on residential mortgage loans secured by residential properties in the

State of Maryland since October 1, 2019, to the commencement of this action to which Nationstar acted as a mortgage servicer ("**Maryland Subclass**"); or

4. were borrowers on residential mortgage loans on properties located in the United States in the six years before the commencement of this action ("**Nationwide Unjust Enrichment Subclass**") in which Nationstar was not a party to the mortgage lender and merely acted as a collector on behalf of another.

Excluded from membership in the Plaintiff's Class and the related Subclasses are the Defendant, any entities in which it has a controlling interest, their agents and employees, and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

## II. Fed. R. Civ.P. 23(a) FACTORS

**Material Fact ("MF") I: Class Numerosity Element (Fed. R. Civ.P. 23(a)(1)):** The public disclosures by Nationstar's corporate parent, i.e. Mr. Cooper Group Inc. (ECF 8), as part of its filings with the Securities and Exchange Commission, reveals the following facts relevant and material to this element:

- in the Fourth Quarter alone of 2023 alone, Mr. Cooper Group Inc. and its consolidated subsidiaries, including primarily Nationstar, funded 10,699 new mortgage loans which included about 4,704 loans from its "direct-to-consumer" which involves "refinancing existing loans." **Ex. 10, Mr. Cooper's Group Inc,'s 2-9-2024 Press Release (Apx. 82, ECF 40-1**).

- More specifically, the "direct-to-consumer…channel utilizes our call centers, website and mobile apps, specifically trained teams of licensed mortgage originators, predictive analytics and modeling utilizing proprietary data from our servicing portfolio to **reach those of our existing 4.6 million servicing customers who may benefit from a new mortgage**…" **Ex. 11, Mr. Cooper**

**Group Inc.'s 2023 Annual 10-K (Apx. 93, ECF 40-1)** (emphasis added).

Public reports also show that Nationstar had 22,006 total cash-out refinance for owner-occupied homes in 2023. *See e.g.* **Ex. 23, [10 Biggest Cash-Out Refinance Lenders Helping Homeowners Tap Record Home Equity (mortgageresearch.com)](#)** (Appendix II, Apx. 261-273)(last visited June 13, 2024)(citing Home Mortgage Disclosure Act (HMDA) data from the Consumer Finance Protection Bureau (CFPB), accessed via PolygonResearch.com *HMDAVision*, May 13, 2024 as the source). "Cash-out refinances were Nationstar Mortgage's primary focus in 2023, comprising nearly 78% of their total (28,244) issued loans." *Id.* Applying this HMDA data for all of 2023 to Mr. Cooper's SEC reporting, reveals that a safe approximation of the percentage of loans refinanced in its 'direct-to-consumer channel' of business would be about 12,427 loans of serviced by it (about 44% of all its loan originations as reported by the Mr. Cooper Group's SEC filings) in 2023 alone. (**Ex. 10, Mr. Cooper's Group Inc,'s 2-9-2024 Press Release (Apx. 82, ECF -40-1, Page 85 of 164**); **Ex. 11, Mr. Cooper Group Inc.'s 2023 Annual 10-K (Apx. 93**, **ECF 40-1, Page 96 of 164**)).

It is a reasonable and fair inference that based upon these public facts to which the Court may take judicial notice pursuant to Fed. R. Evid. 201, that the number of occurrences Nationstar's pay-to-pay fees for payoff statements were imposed and collected including the Plaintiffs during the various class periods more likely than not exceeds hundreds of transactions since a payoff statement is needed in each refinance situation alone (as well as in each instance when a hope is sold with an existing Nationstar serviced mortgage with an unpaid balance). Further, Nationstar acknowledged on its own website that it charges "up to $25…[for] each payoff statement we generate [and] "[a]additional expedited delivery fees up to $25 may apply to each payoff quote sent via the web." **Ex. 13, [Requesting a Payoff Quote (mrcooper.com)](#)**

(last visited July 12, 2024)(Appendix II, Apx. 163).

**MF II (Fed. R. Civ.P. 23(a)(1)):** There is no managerial difficulty excluding from the persons generally identified in **MF 1**: (i) those who previously sought bankruptcy protection can be identified by an administrative review of PACER; (ii) Nationstar knows its own employees and contractors (and their relatives); and (iii) this Court's own employees are known.[1]

**MF. III (Fed. R. Civ.P. 23(a)(2))**: Informal and public discovery also confirms there are common questions of fact and law pertaining to the Plaintiffs' Class and Subclasses.  These include:

a. Whether Nationstar assessed or imposed or collected Payoff Fees on Plaintiff's Class members and their mortgage accounts;

b. Whether Nationstar, on behalf of the members of the Defendant Class (defined in AC (ECF. 24) at ¶ 143),[2] unjustly enriched itself by charging Payoff Fees not authorized by the mortgage agreements of the Plaintiffs' Class members to which it was not a party;[3]

---

[1] **Ex. 14, Declaration of Christinia Henry at ¶ 18** ("it is possible to identify from a simple search of PACER individuals who have filed for Chapter 7 or 13 bankruptcy. The PACER system tracks filing and discharge dates that can be applied to Nationstar's records and exclude persons who are not eligible to join the class").

[2] Named Plaintiffs do not seek to certify the Defendants' Class at this time since their participation may not be necessary should Plaintiffs proceed on their unjust enrichment claims against Nationstar.  AC at ¶¶ 142, 175.

[3] Nationstar is not an owner of any of the loans of the Named Plaintiffs who instead are others including Defendant Freddie Mac (AC at ¶¶ 142, 175). *See e.g.* **Ex. 15, Freddie Mac Corp. Designee Dep. (3/9/2012 from** *Schneck v. SunTrust*) (Appendix II, Apx. 172-173) at 23:18-25:20:12, 30:9-12 (explaining Freddie Mac's role as the owner of a residential mortgage loan who engages a servicer to "manage[] [the] residential mortgage on a monthly basis..[to]

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Avenue SW
Seattle, WA  98146
Tel# 206-330-0595 / Fax# 206-400-7609

    c.  Whether Nationstar's conduct with the Plaintiffs' Class and Subclass violated the Fair Debt Collection Practices Act and related consumer protection laws of the States of Maryland and Washington by charging Payoff Fees not due or expressly authorized by law or contract;[4]

    d.  Whether the members of the Plaintiffs' Class were required to consider they were dealing with a scoundrel acting in contravention of the law and all governing contracts when they paid in reliance to Nationstar's demands on payoff statements for fees to receive the statement required by Truth in Lending Act and its regulations to be accurate.

    e.  Whether Nationstar's cost to process Payoff Transaction quotes is less than the amount that it actually charged for Payoff Fees to the members of the Plaintiffs' Class;

---

collect monthly payments and [] submit their required portions to the investor, which would be Freddie Mac" and Freddie Mac's expectation that a servicer complies with all Federal and State laws related to mortgage servicing); **Ex. 16, Fannie Mae Corp. Dep. (1/22/2021 from *White v. NewRez LLC and Fannie Mae*)** at (Appendix II, Apx. 194-197, 200-201) 28:9—29:19, 49:11-50:17, 86:12-15, 97:13-101:2 (confirming like Freddie Mac that the Fannie Mae is the owner of the loan and expects its servicers to comply with the terms of the loan while working on its behalf, it has a lookup tool to determine when if it owns a particular loan and for each loan and a servicer collects monies on Fannie Mae's behalf for all borrowers and "servicers are required to vet and understanding (sic) any applicable law and to abide by those"); **Ex. 24, Nationstar Corp. Dep. (12/5/2023 in *Parker v. NewRez*)** (Appendix II, Apx. 274) at 18:15-25 (explaining Nationstar's role as a servicer was that it was "the entity that accepted and processed mortgage payments, paid escrow items, assisted [the borrowers] in the day-to-day operations of their mortgage…" on behalf of others who own the loans and confirming Nationstar "[does not] own our loans").

[4]    The FDCPA bars fees not expressly authorized by law or contract at 15 U.S.C. § 1692f(1). The broader state laws of Maryland and Washington do the same. MD. ANN. CODE, COM. LAW § 14-202(11)(incorporating 15 U.S.C. § 1692f(1) to its list of prohibited conduct); R.C.W. § 19.16.100(4)(a); RCW § 19.16.250(21). *See also Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 375 (4th Cir. 2022)(recognizing the Maryland law is "broader" than the FDCPA); 2 U.S.C.A. § 2610 (barring fees related to statements required by the Truth in Lending Act which include payoff statements like those authorized by 15 U.S.C.A. § 1639g and 12 C.F.R. § 1026.36(c)(3), and the Official Interpretations of Reg. Z § 1026.36(c)(3)-3)),

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Avenue SW
Seattle, WA 98146
Tel# 206-330-0595 / Fax# 206-400-7609

f. Whether Plaintiffs and the Plaintiffs' Class were damaged by Nationstar's conduct and if they are entitled to actual and/or statutory damages as a result of Nationstar's actions and/or are entitled to restitution or disgorgement of Nationstar's unlawful profits;[5]

g. Whether Plaintiffs and the Plaintiffs' Class are entitled to prejudgment interest on their claims;

h. Whether Nationstar should be enjoined from collecting Payoff Fees;

i. Whether Nationstar has the right to assert contract defenses to the claims asserted for mortgage loans which it does not even own and no notice of change of ownership pursuant to 15 U.S.C.A. § 1641(g) or 12 C.F.R. § 1026.39(b) was ever sent by Nationstar so identifying itself as the owner of the loan;

j. Whether the owners of the Plaintiffs' loans ever authorized Nationstar to violate Federal and State laws by imposing and collecting fees for payoff statements insured pursuant to, or if they ratified such conduct, by failing to require compliance with the actual terms of the loans they agreed to with the Plaintiffs' Class and Subclass which broadly incorporates Federal and State laws into each instrument which specifically agreed that **no** borrower would be "charge[d] fees that are expressly prohibited

---

[5] Nationstar has admitted it knows it is the party ultimately responsible for any errors it conducts while servicing loans on behalf of others. *See e.g.* **Ex. 17, Nationstar Corp. Dep. (5/7/2015 from *May v. Nationstar*)** (Appendix II, Apx. 218-219) at 284:23 – 285:7 ("The investor is aware of any Fannie Mae loan that's in litigation or delinquent, and we have to update them on a monthly basis of what's going on with the status. Fannie Mae contractually that we are – id it's our error, then we are responsible for the error, and that's what we're contracted to do…Fannie Mae doesn't service the loan. They own the loan. They wany up to – if we erred, to fix it").

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Avenue SW
Seattle, WA  98146
Tel# 206-330-0595 / Fax# 206-400-7609

by…Applicable Law." ¶ 14 on ECF. 20-2 (Page 11 of 18), ECF. 20-4 (Page 12 of 22); ECF. 20-6 (Page 11 of 16).[6]

k. In the alternative, whether the Defendant's Class should be (i) liable to the Plaintiffs' Class for the breaches of contract caused by their authorized agent Nationstar for whom they delegated their own responsibilities and they engaged to perform the subject services, and (ii) should repay to the members of the Plaintiffs' Class the fees imposed and collected by Nationstar on their behalf (in whole or in part in the sums in excess of Nationstar's actual costs) by their ratification of Nationstar's unlawful conduct.

l. Whether Plaintiffs and the Plaintiffs' Class are entitled to attorney's fees and costs.

**MF. IV (Fed. R. Civ.P. 23(a)(3))**: Informal and public discovery also confirms the course of conduct related to the Named Plaintiffs and other consumers for whom Nationstar uniformly charges borrowers fees for payoff statements.  Nationstar acknowledges on its own website that it charges "up to $25…[for] each payoff statement we generate [and] "[a]additional expedited delivery fees up to $25 may apply to each payoff quote sent via the web." **Ex. 13, [Requesting a Payoff Quote (mrcooper.com)](Requesting a Payoff Quote (mrcooper.com))** (Appendix II, Apx. 163) (last visited July 12, 2024). *See also* ECF. 20-7, 20-8, 20-9, 20-10, 20-11 (all charging $25 or more for the receipt of an accurate statement the named plaintiffs authorized by 15 U.S.C.A. § 1639g, 12 C.F.R. § 1026.36(c)(3), and Official Interpretations of Reg. Z § 1026.36(c)(3)-3).

---

[6] This language is standard mortgage language approved by Fannie Mae and Freddie Mac and utilized by nearly all mortgage investors. *See e.g.* **Ex. 16, Fannie Mae Corp. Dep. (1/22/2021 from *White v. NewRez LLC and Fannie Mae*)** (Appendix II, Apx. 198-199) at 82:18 – 83:12 ("….That would be standard verbiage on this document, as approved by Fannie Mae").

However, in each standard mortgage contract serviced by Nationstar on behalf of the owners of the loans, it was agreed that **no** borrower would be "charge[d] fees that are expressly prohibited by…Applicable Law." ¶ 14 on ECF. 20-2 (Page 11 of 18), ECF. 20-4 (Page 12 of 22); ECF. 20-6 (Page 11 of 16). And the term Applicable Law means "all controlling applicable federal, state, and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law)…" Definition ¶ J on ECF. 20-2 (Page 3 of 18), ECF. 20-4 (Page 3 of 22); ECF. 20-6 (Page 3 of 16).

Here, the specific conduct at issue in this action is Nationstar's demand for and collection of a payment for a payoff statement. In the Dodd-Frank Act, Congress added to the Truth in Lending Act ("TILA") the right of a borrower to obtain an accurate payoff statement. 15 U.S.C.A. § 1639g. *See also* 12 C.F.R. § 1026.36(c)(3); Official Interpretations of Reg. Z § 1026.36(c)(3)-3. And under the Real Estate Settlement Procedures Act ('RESPA"), 12 U.S.C.A. § 2610 no fees for statement issued under the TILA are permitted.[7] *See also* 15 U.S.C.A. § 1692f(1) ("FDCPA"), MD. ANN. CODE, COM. LAW § 14-202(11)(incorporating 15 U.S.C.A. § 1692f(1)), R.C.W. § 19.16.100(4)(a), RCW § 19.16.250(21); RCW § 19.16.250(22).

**MF. V (Fed. R. Civ.P. 23(a)(4))**: Plaintiffs are also adequate to represent the proposed class members.[8]

---

[7]   Each contract also specifically defines RESPA to include 12 U.S.C.A. § 2610 as it "might be amended from time to time, or any additional or successor legislation that governs the same subject matter." ¶ Q on ECF. 20-2 (Page 3 of 18), ECF. 20-4 (Page 3-4 of 22); ECF. 20-6 (Page 4 of 16).

[8]   **Ex. 18 (Appendix II, Apx. 221-224), Declaration of Catherine Palazzo; Ex. 19 (Appendix II, Apx. 225-229), Declaration of Ricardo Salom; Ex. 20 (Appendix II, Apx. 230-234), Declaration of Peter Hackinen.** *See also* ECF. 20-7, 20-8, 20-9, 20-10, 20-11 (all charging

**MF. VI (Fed. R. Civ.P. 23(a)(4)**:  Plaintiff's counsel is adequate to represent the proposed class members.[9]

C. **Fed. R. Civ.P. 23(b)(3) FACTORS**

**MF. VII (Fed. R. Civ.P. 23(b)(3)-I)**: The putative class claims in this case focus on Nationstar's imposition and collection of fees from its consumer borrowers for the receipt of a payoff statement that is neither expressly authorized by law or contract. *See generally* AC. Nationstar's unjust enrichment as a result of its unfair or deceptive conduct, as a collector or debt collector under State and Federal law in this regard, entitles the Plaintiffs and the Plaintiffs' Class for a return of the damages and losses and/or Nationstar's disgorgement to them of the sums it unjustly collected without the right to do so.[10]

**MF. VIII (Fed. R. Civ.P. 23(b)(3)-II):** According to public data (**MF I** *supra*), the number of borrowers from around the country who Nationstar has imposed and collected the pay-to-pay convenience fees is likely in the thousands nationwide.  Therefore, the common question before the Court affects thousands of Nationstar's customers nationwide including borrowers in the States of Washington and Maryland.

---

$25 or more for the receipt of an accurate statement the named plaintiffs authorized by 15 U.S.C.A. § 1639g, 12 C.F.R. § 1026.36(c)(3), and Official Interpretations of Reg. Z § 1026.36(c)(3)-3.

[9]     **Ex. 21 (Appendix II, Apx. 235-250), Declaration of Phillip Robinson; Ex. 14 (Apx. Appendix II, Apx. 164-169), Declaration of Christina Henry.**

[10]     *See generally* AC.  *See also* **Ex, 22, CFPB, FDCPA Advisory Opinion; Pay-to-Pay Fees (consumerfinance.gov)** (Appendix II, Apx. 251-216).  *See also* **Ex. 12, CFPB's Br. of Amicus Curiae before the United States Court of Appeals for the Ninth Circuit,** *Thomas-Lawson v. Carrington*, **Case No. 21-555459 (ECF. 40-1)(Apx. 125-162)(dated October 21, 2021).**

**MF. IX (Fed. R. Civ.P. 23(b)(3))**:   The common issue of whether or not Nationstar's practices are permitted or not does not involve any individualized questions since the practice is based on standard legal requirements known to Nationstar (**MF. I**)[11] to provide payoff statements at no charge, or in the alternative, to not collect more than its actual costs which are mere pennies of what it actually collects to generate the statements electronically.  AC at ¶¶ 67, 83, 102, 121, 137, 163, 173, 194.

**MF. X (Fed. R. Civ.P. 23(b)(3))**: Pursuing the class members' common law and statutory claims in the aggregate is fair more efficient since the sums at issue for the fees collected for services not actually incurred (if performed or incurred at all) are modest.[12]

**MF. XI (Fed. R. Civ.P. 23(b)(3)(A))**:   Rather than flood the Court with hundreds of individual actions, it is more practical and efficient to prosecute the common claims in this action.[13]

**MF. XII (Fed. R. Civ.P. 23(b)(3)(C)):** Because this Court is located in the forum where the occurrence at issue has taken place, it is convenient for the parties to have this action

---

[11]   Nationstar's Authorized Corporate Designees have routinely testified in various court that Nationstar is responsible for correcting its errors of law. *See e.g.*  **Ex. 17, Nationstar Corp. Dep. (5/7/2015 from *May v. Nationstar*)** (Appendix II, Apx. 218-219) at 284:23 – 285:7.

[12]   *See* ECF. 20-7, 20-8, 20-9, 20-10, 20-11 (all charging $25 or more for the receipt of an accurate statement the named plaintiffs authorized by 15 U.S.C.A. § 1639g, 12 C.F.R. § 1026.36(c)(3), and Official Interpretations of Reg. Z § 1026.36(c)(3)-3).

[13]   *Compare* § 21:6. Fair Debt Collection Practices Act (FDCPA), 7 NEWBERG ON CLASS ACTIONS § 21:6 (5th ed.).

adjudicated here.[14]

**MF. XIII (Fed. R. Civ.P. 23(b)(3)(D)):** Because Nationstar has a legal duty to maintain the necessary electronic data required to identify the Class members and the necessary information about the fees it imposes and collects from the class members (**MF. IV**), there are no difficulties managing this action as a class action.

**MF. XIV (Predominance)**: The Plaintiffs' damages, statutory and actual, can be identified by Nationstar's electronic records which it is required to maintain (and have the ability to produce in a matter of days) to identify groups of borrowers who have been charged a specific fee. Further, the application of the factors permitting the maximum statutory damages authorized under the FDCPA are easily met since the net worth of Nationstar exceeds $50,000,000 as disclosed by its corporate owner's SEC reports.

**MF. XV (Predominance II)**: The common issues identified in **MF III** are also the predominant issues in this action and boil down to this: does any Federal and State law or regulation or any mortgage contract governing the mortgage loans of the Plaintiffs' Class members, which also incorporate all such applicable laws, expressly authorize Nationstar to impose a collect a fee for issuance of payoff statements?

**MF. XVI (Superiority)**: This action concerns pay-to-pay junk fees imposed and

---

[14] This action is the first filed class action related to Nationstar's Payoff Fee practices and only known one pending to represent the interests of a class of Nationstar's customers other cases are commenced they would likely be transferred to this Court for consolidation. *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1294 (N.D. Cal. 2013). In addition, Nationstar has identified no other actions on this issue pending against it. ECF. 1-2. However, in the past Nationstar has chosen for strategic reasons to conceal such information in in violation of its duty in this Court to comply with LCR 3(h) f/k/a LCR 3(g). *See* Plaintiffs' Motion for Appropriate Relief Pursuant to FED. R. CIV. P. 23(d).

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Avenue SW
Seattle, WA  98146
Tel# 206-330-0595 / Fax# 206-400-7609

collected by Nationstar from consumers who sought payoff statements of their mortgage loans from their mortgage loan servicer, Nationstar. The standard fees appear to be in the amount of $25.00 or more (**MF IV**). Because of the small sum, consumers simply are not likely to pursue their claims unless on an aggregate basis.

D. ASCERTAINABILITY AND MANAGEABILITY FACTORS

**MF. XVII (Ascertainability)**: Nationstar has electronic data available to it to identify all members of the putative Plaintiffs' Class and Subclasses. This data can identify: (i) names and addresses of customers, (ii) the written contract terms between the class members' mortgage contracts which govern what fees may be imposed and charged, (iii) the sums collected (if any) by Nationstar from the members of the Plaintiffs' class, including the date(s) it collected each payment; (iv) the actual costs it incurred to prepare the payoff statements; and (v) even the sum

of prejudgment interest owed to the consumer.[15, 16, 17, 18]  Nationstar is required also by law to have the means to create a list of every one of its borrowers who it imposed and collected fees related to payoff statements in just a matter of days.  *See e.g. Yates v. NewRez LLC*, 686 F. Supp. 3d 397, 405 (D. Md. 2023)(recognizing a mortgage servicer's "statutory and regulatory requirements relating to recordkeeping. *See, e.g.*, 12 U.S.C. § 2605(k)(1)(E) (2018) (requiring servicers to comply with Consumer Financial Protection Bureau regulations); 12 C.F.R. § 1024.38(c)(2)(i) (requiring servicers to maintain a schedule of all transactions credited or debited to a mortgage loan account); Md. Code Regs. 09.03.06.05 (2022) (requiring preservation of mortgage loan records)").

---

[15]    *See* **Ex. 4, Declaration of Courtney Ehinger, Senior Vice President, Performing Servicing for Nationstar (ECF. 40-1)(Apx. 11-31)** presented in the *Baxter* action in Maryland state court (dated November 10, 2022) at ¶¶ 1-20 (identifying her familiarity with Nationstar's payment methods and fees associated with them that can be searched systematically through its electronic databases, the number of specific instances a particular fee was imposes and collected and the total sum collected over a period of time as reflected on a spreadsheet, the owners of the loans (if not Nationstar).

[16]    *See* **Ex. 5, Nationstar's Assurance of Discontinuance with the Consumer Protection Division of the Office of the Maryland Attorney General (ECF. 40-1)(Apx. 39-49)**(dated May 14, 2018) at ¶¶ 17- 20 (identifying Nationstar's agreement and ability to provide a report in Microsoft Excel which identifies all borrowers within the State of Maryland, along with all material details of the sums collected from them, by date and amount of each junk fee subject to that settlement).

[17]    *See* **Ex. 6, Stipulation and Settlement Agreement from *Garcia v. Nationstar* (Case No. C-15-1808) in this Court (ECF. 40-1)(Apx. 49-57)** at ¶ 5.3 (where Nationstar agreed it had the ability to identify each borrower and their emails and addresses  and the number of each junk fee paid by the class members that was subject to *Garcia* action) and **Ex. 7, Declaration of Benjamin Richman in support of that settlement (ECF. 40-1)(Apx. 58-61)**(dated 12-11-2017) at ¶ 3 (identifying Nationstar was able to identify 188,400 individuals were subject to the fee practices at issue in *Garcia*).

[18]    *See* Jackerly McFadden, et. al. v. Nationstar Mortgage LLC, d/b/a Mr. Cooper – United States District Court for the District of Columbia | Case No. 1:20-cv-00166 (mortgagefeeclassaction.com).

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Avenue SW
Seattle, WA  98146
Tel# 206-330-0595 / Fax# 206-400-7609

**MF. XVIII (Manageability):** Any inquiry into the damages at issue in this action are limited, and Nationstar has routinely been able to identify from its own electronic records, all the information that its necessary to manage the class claims in this action since it has done do in this Court and many other actions identifying different pay-to-pay fees not at issue here. *See* **MF. XVII**.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Avenue SW
Seattle, WA  98146
Tel# 206-330-0595 / Fax# 206-400-7609