UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON - SEATTLE

| | |
|---|---|
| RICARDO SALOM, CATHERINE PALAZZO as assignee for Ruben Palazzo, and PETER HACKINEN, *on their own behalf and on behalf of other similarly situated persons*,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONSTAR MORTGAGE LLC<br><br>And<br><br>FEDERAL HOME LOAN MORTGAGE CORPORATION, *on its own behalf and on behalf of similarly situated persons*<br><br>Defendants. | Case No. 2:24-cv-00444-BJR<br><br>**PLAINTIFFS' OPPOSITION TO NATIONSTAR'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Avenue SW
Seattle, WA 98146
Tel# 206-330-0595 / Fax# 206-400-7609

## I. Certification of Conferral Statement

After the Plaintiffs requested to meet and confer with counsel for Defendant Nationstar Mortgage LLC ("Nationstar") about motions they intended to file (and have now filed), Nationstar also requested the opportunity to meet and confer about its now filed Motion for Judgment on the Pleadings ("Motion") at the same time on July 3, 2024. At the conference, Nationstar's counsel explained its motion would be generally similar to its prior Motion to Dismiss (ECF. 19) and Nationstar's counsel conceded again that Nationstar was not the owner of any of Plaintiffs' loans, just the servicer. Nationstar's counsel also presented a disputed view of Plaintiffs' well-pled facts of the Amended Complaint (ECF. 24)(AC), asserting that Nationstar was a Lender while simultaneously claiming to be a non-party to the Plaintiffs' loans. Plaintiffs' counsel requested any authorities from Nationstar to support why their dispute of the facts pled in the Motion for Judgment on the Pleadings was appropriate and Nationstar provided none.

## II. Introduction

Nationstar has engaged in a nationwide, standardized course of conduct to collect thousands of unlawful pay-to-pay fees through payoff statements sent to residential mortgage borrowers for their loans—fees that were *never* expressly authorized under any of the original standard-form mortgage agreements, nor specifically permitted by law. In fact, the fees are barred by federal and state law and the standardized mortgage contracts governing the Plaintiffs' mortgage loans and the loans of others like them. This Court recently discussed the governing federal law at issue in *Creager v. Columbia Debt Recovery*, 618 F. Supp. 3d 1094, 1103 (W.D. Wash. 2022).

Here, this action is brought to stop Nationstar's demand for and collection of a payment of fees for payoff statements. In the Dodd-Frank Act, Congress added to the Truth in Lending Act

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION - 1

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Avenue SW
Seattle, WA 98146
Tel# 206-330-0595 / Fax# 206-400-7609

("TILA") the right of a borrower to obtain an accurate payoff statement. 15 U.S.C.A. § 1639g. Pursuant to 12 U.S.C.A. § 2610, Nationstar is barred from imposing or charging "upon any other person (as a part of settlement costs or otherwise)… in connection with a federally related mortgage loan… [as] a servicer (as the term is defined under section 2605(i) of [RESPA]), for or on account of the preparation and submission by such…servicer of the statement or statements required (in connection with such loan)…by the Truth in Lending Act."[1] In addition, the pay-to-pay fees at issue are also barred by the Fair Debt Collection Practices Act ('FDCPA") as described in *Creager*. 618 F. Supp. 3d at 1103.[2]

All standard mortgage contracts, just like the Plaintiffs' contracts at issue in this action, are subject to "'Applicable Law' [which] means all controlling applicable federal, state, and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) …" ¶ J on ECF. 20-2, ECF. 20-4; ECF. 20-6.[3] And also in each standard contract, it was agreed that **no** borrower would be "charge[d] fees that are expressly prohibited by…Applicable Law." ¶ 14 on ECF. 20-2 (p. 11 of 18), ECF. 20-4 (p. 12 of 22); ECF. 20-6 (p. 11 of 16). Nationstar previously argued that it was not obligated to follow this same limitation, thus allowing it, as an assignee and collector/servicer (i.e. Nationstar) to acquire rights its predecessors did not have. The Supreme Court of Maryland f/k/a Court of Appeals of Maryland appropriately and firmly

---

[1] It should be noted that Nationstar's Motion waived any argument to dismiss Plaintiffs' claims based upon the express statutory bar in 12 U.S.C.A. § 2610 by not even addressing it even though it is on notice of the argument. AC at ¶¶ 12, 39.

[2] The conduct regulated by FDCPA is also incorporated into the broader state consumer protection statutes presented in this action which govern all creditors and all of Nationstar's borrowers in those jurisdictions. *Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 375-76 (4th Cir. 2022); Washington Collection Agency Act, RCW 19.16 ("WCAA").

[3] Each contract also specifically defines RESPA to include 12 U.S.C.A. § 2610 as it "might be amended from time to time, or any additional or successor legislation that governs the same subject matter." ¶ Q on ECF. 20-2, ECF. 20-4, ECF. 20-6.

rejected that argument. *Nationstar Mortg. LLC v. Kemp*, 258 A.3d 296, 309-310, 319 (2021).

This recent experience has informed Nationstar of the bar on its fee harvesting programs, since there is no law or contract that *expressly* authorizes the pay-to-pay fees at issue in this action. *Cf.* ECF. 46-1 at p. 14 of 15 (FNs 15-18). Here, as with the prior actions, Plaintiffs assert statutory debt collection claims and a common law claim for unjust enrichment on behalf of the putative class members against Nationstar for another fee it has no right to impose and collect. In the alternative, if the fact finder determines that Plaintiffs may not pursue their claims for unjust enrichment against Nationstar, the Plaintiffs have also asserted contract claims against the owners of their loans who hired and controlled Nationstar. There is no doubt that Nationstar wants to retain its unchecked fee harvesting right, but that wish does not make it expressly permitted by contract or applicable law. Nor can its own disputed views of the facts serve as a basis to grant its Motion. *Cf.* AC and Nationstar's Answer (ECF. 35) ("Answer") at ¶¶ 3, 11, 62, 78, 95, 116 (where Plaintiffs identify others, not including Nationstar, as the owners of their loans and Nationstar simply disputes and denies these factual allegations). *See also* Answer at ¶ 11 (where Nationstar admits it is a servicer of the Plaintiffs' loans).

The Plaintiffs' well-pled claims are remedial in nature and supported by the detailed AC. The laws at issue are broadly interpreted in favor of the Plaintiffs. While Nationstar disputes those facts, it is not permitted to obtain dismissal of the AC upon its disputed view. *Health Freedom Def. Fund, Inc. v. Carvalho*, 104 F.4th 715, 722 (9th Cir. 2024).

## II. General Factual Background

Defendant Nationstar services (i.e. collects upon) loans that are owned by others, including Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac"), and the members of the Defendant Class. AC at ¶¶ 3, 11, 62, 78, 95, 116; Answer at ¶ 11. Nationstar capitalizes on its

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION - 3

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Avenue SW
Seattle, WA 98146
Tel# 206-330-0595 / Fax# 206-400-7609

role as a servicer and non-owner or party to the mortgage loans by imposing and collecting junk fees of $25.00 or more in each instance where a borrower or a borrower's representative requests a payoff statement for his or her mortgage. AC at ¶¶ 9, 14, 82-84, 102-104, 120-121, 122, 124. *See also* ECF. 20-7, 20-8, 20-9, 20-10, 20-11 (all charging $25 or more for the receipt of an accurate statement the named plaintiffs authorized by 15 U.S.C.A. § 1639g and 12 C.F.R. § 1026.36(c)(3)). Nationstar does so even when (i) no law or enforceable contract expressly authorizes these fees and (ii) its actual costs for preparing a payoff statement amounts to pennies. AC at ¶¶ 67, 83, 102, 121, 137, 163, 194.

Plaintiffs are residents of Maryland and Washington state and each previously had or still has a residential mortgage loan collected upon by Nationstar on behalf of another. AC ¶¶ 61-62, 83, 89, 90, 96, 107-108, 114-115. In the case of Plaintiffs' loans, Nationstar became the servicer and collector at a time when the loan was in default (or Nationstar's fictional default). AC ¶¶ 26, 76, 81, 98, 110, 115. No federal or Maryland law expressly authorizes Nationstar as a collector to collect the pay-to-pay fee for providing payoff statements. AC ¶¶ 10, 12, 36-37, 40-41, 68-71, 73, 80, 100, 118. No contractual provision of the mortgage loans at issue expressly authorizes Nationstar as a collector (or anyone else) to collect the pay-to-pay fee for the payoff statement. AC ¶¶ 79, 99, 117. In addition, Plaintiffs each paid and lost money above and beyond what they legally owed under the terms of their loans and as permitted by federal, or state laws governed by each loan and incorporated into each loan's terms. AC ¶¶ 10, 12, 36-37, 40-41, 68-71, 73, 79-80, 99-100, 117-118.

### III. Standard of Review

In *Carvalho*, the Ninth Circuit explained when considering a motion for judgement on the pleadings that a court "must accept the plaintiffs' alleged facts as true, whether 'actual proof'

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION - 4

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Avenue SW
Seattle, WA 98146
Tel# 206-330-0595 / Fax# 206-400-7609

of them is 'improbable.'…If the parties provide competing but plausible explanations, the plaintiffs' complaint survives…Thus, [the motion can only be granted] for the moving party only if there are no material and unresolved facts, and the plaintiffs' claims fail as a matter of law..." 104 4th at 722 (cleaned up).

## IV. Argument

An examination of the Plaintiffs' AC demonstrates that it sets forth legally sufficient claims for relief. It is not the Plaintiffs' burden to prove that his complaint states a claim. Under Rule 12(b)(6) it is Nationstar's burden to demonstrate that the AC fails to state a claim for relief. *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007) and Nationstar has failed this burden. The Plaintiffs' AC alleges both cognizable legal theories and sufficient facts to show that if the facts alleged are proven, the Named Plaintiffs and putative class members would be entitled to relief against Nationstar. At best, Nationstar's Motion raises disputed factual issues that go beyond the AC and are not appropriate at this stage, including (but not limited to), (i) claiming status and rights as the owner of loans for which it is not; (ii) claiming it acquired the servicing rights as a non-debt collector when the well pled facts demonstrate it started servicing the Hackinen loan on behalf of First Horizon Trust, at a time when the loan was in default (AC ¶ 115); and (iii) claiming it may charge fees based upon oral agreements not signed by anyone.

### A. The Notice and Cure Provisions of the Plaintiffs' Deeds of Trust Do Not Apply to the Claims Asserted Against Nationstar

At the outset, Nationstar seeks to dismiss all of Plaintiffs' remedial claims based upon the notice-and-cure provisions in their deeds of trust to which it is not even a party or the owner. *See* Motion at 2, 4-7; *see also* ECF. 20-2, 20-4, and 20-6 at ¶ 20; AC at ¶¶ 11, 62, 78, 95, 115. This

argument ignores that Plaintiffs gave notice and opportunity to the owners of their loans to cure any deficiencies before filing their AC in this action. AC at ¶¶ 91, 108, 128.

Generally, "[t]he notice-and-cure provisions in the deeds of trust bind the borrower and the lender, not the borrower and the loan servicer." *Schmidt v. Wells Fargo Home Mortg.*, No. 3:11-CV-059, 2011 WL 1597658, at *3 (E.D. Va. Apr. 26, 2011), *aff'd,* 482 F. App'x 868 (4th Cir. 2012). In addition, since the majority of Plaintiffs' claims against Nationstar in this action concern Nationstar's unfair or deceptive practices, the notice-to-cure provisions do not apply since they would add an unnecessary duty to the remedial statutes that require no such notice-and-cure before commencement of legal claims. *Id.* (collecting cases). *See also St. Breux v. U.S. Bank, Nat'l Ass'n*, 919 F. Supp. 2d 1371, 1375-76 (S.D. Fla. 2013).

Neither Congress nor the Washington or Maryland legislatures provided any requirement that a protected consumer is required to provide Nationstar or any other servicer with pre-suit notice or opportunity to cure the Plaintiffs' claims against Nationstar. *See e.g.* 15 U.S.C.A. § 1692 *et seq.*; MD. ANN. CODE, COM. LAW § 14-201, *et seq.*; MD. ANN. CODE, COM. LAW § 13-101, *et seq.;* Wash. Rev. Code 19, Ch. 19.16, *et seq*. ('WCAA") which is privately enforced though Wash. Rev. Code 19, Ch. 19.86 ("WCPA").

Each of the legislative bodies knew how to require a notice and cure provision within the remedial statutory claims,[4] but affirmatively elected not to do so for the statutory claims at issue here. *Cf. Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 844 (9th Cir. 2007) ("The text of the ADA contains no pre-suit notice requirement. If Congress believes it is preferable as a matter of policy to require plaintiffs to give notice to defendants before filing an ADA suit, it is

---

[4] *Cf.* MD. ANN. CODE, COM. LAW § 12-1018(a)(3) (expressly permitting notice and opportunity by a lender to cure before and after the filing of a lawsuit).

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION - 6

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Avenue SW
Seattle, WA 98146
Tel# 206-330-0595 / Fax# 206-400-7609

free to amend the Act"). Further, in the FDCPA Congress expressly elected to have the statute preempt any inconsistent state law (including contract law). 15 U.S.C. § 1692n. Nationstar's effort simply seeks to establish a judicial exemption to escape liability under the FDCPA, MCDCA, MCPA, WCAA, and WCPA to Plaintiffs. The Supreme Court has explained in *Andrus v. Glover Const. Co.*, 446 U.S. 608, 616–17 (1980) "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Id. See also Hillman v. Maretta*, 569 U.S. 483, 496 (2013); *Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 852 (9th Cir. 2024) (absent express preemption, a federal statute permits private enforcement of identical state laws, even in an implied preemption context, there is "a duty to accept the reading disfavoring pre-emption").

Here, the bar on pay-to-pay fees related to the issuance of payoff statements authorized by TILA, which were routinely imposed and collected by Nationstar from the Plaintiffs arise largely from the federal and state laws that bar them including 12 U.S.C.A. § 2610. *See generally* § II *supra*. In this regard, the claims in *St. Breaux*, 919 F. Supp. 2d 1371 are illustrative. The plaintiff in *Breaux* asserted claims under TILA for allegedly deficient disclosures in a mortgage agreement but did not comply with a notice and cure provision for claims "arising from" the other party's actions and the court did not dismiss the suit. *Id.* at 1375-76. Rather, because the TILA violation provided a basis for the claim and not the mortgage agreement itself, the court found the notice provision did not apply. *Id.* at 1376.

Other courts have held in accord to Plaintiffs' argument here. For example, in *Sigwart v. U.S. Bank*, 713 Fed. Appx. 535 (2017), the Ninth Circuit held a notice and cure provision did not apply since its "purpose…is 'to give the allegedly breaching party an opportunity to cure its breach'" (cleaned up). *Id*. at 537. The borrower in *Sigwart* had not asserted a breach of contract

claim but had asserted unfair or deceptive acts and practices claims against her servicer. *Id.* In addition, even if the borrower had given notice, under the circumstances presented, it would have provided no practical purpose and therefore was excused from doing so. *Id. See also Gerber v. First Horizon Home Loan Corporation*, No. 05-1554P, 2006 WL 581082, at *1 (W.D. Wash. May 8, 2006); *Kim v. Shellpoint Partners LLC*, No. 15-cv-611-LAB, 216 WL 1241541, at *7 (S.D. Cal. March 30, 2016); *Kivett v. Flagstar Bank*, 333 F.R.D. 500, 504 (N.D. Cal. 2019); *McShannock v. JP Morgan Chase Bank N.A.*, 354 F. Supp. 3d 1063, 1072 (N.D. Cal. 2018).

"If the Notice Provision has any legitimate purpose, it is to promote the resolution of contractual disputes without the expense of litigation." *Gerber*, 2006 WL 581082, at *2. In *Gerber*, the plaintiff alleged that his mortgage servicer charged him a fee for a "payoff statement," which included a $15 "priority fee," and brought causes of action for both breach of contract and violations of the WCPA. *Id.* at *1. The court dismissed the breach of contract claim but found that the state statutory cause of action "involv[ing] allegations of deceptive business practices, clearly exists independent of any contract between the parties," and was thus not barred by the plaintiff's failure to give notice. *Id.* at *3.

Instead of following more analogous cases like *Gerber* and *Beyer* (discussed *infra*), where the Plaintiffs challenged fees that were not specified in their deeds of trust, Nationstar's notice and cure argument largely relies upon the unpublished and non-precedential decision in *Giotta v. Ocwen Loan Servicing LLC*, 700 Fed. Appx. 421 (2017). Motion at p. 6-7. In *Giotta*, unlike this case, the borrowers sued the actual lender for charging property inspection fees that were expressly **<u>authorized and specified as allowed</u>** under the deed of trust. *Giotta,* 700 Fed. Appx. at 422. Here, Plaintiffs are suing Nationstar for fees that are **<u>not authorized</u>** by their deeds of trust and therefore the fees are not pursuant to their deeds of trust. In addition, in *Giotta,* it was

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION - 8

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Avenue SW
Seattle, WA 98146
Tel# 206-330-0595 / Fax# 206-400-7609

"undisputed that the [borrowers] did not provide notice." *Giotta,* 700 Fed. Appx. at 422. But here, the Plaintiffs did provide pre-suit notice to their loan owners. AC at ¶¶ 91, 108, 128.

Notwithstanding the fact that its counsel conceded in a conference with Plaintiffs' counsel that Nationstar is just a loan servicer (and admitted as much in Nationstar's Answer at ¶ 11), Nationstar seems to desire it were the owner or had the rights of the owner of the Plaintiffs' loans, like the lender in *Giotta.* Motion at 7. However, that wish cannot make it so based upon the well-pled facts before the Court and the public records known and available to Nationstar. What is not clear from the Ninth Circuit opinion in *Giotta,* but known, available, and ignored to Nationstar, is the fact that the borrowers in *Giotta* agreed to a loan modification in which they agreed the term "lender" in their loan documents clearly and unambiguously included the servicer within the term. *Giotta*, 2016 WL 4447150 (2016) at *3. Here, by contrast, (i) the Salom Loan's modification identifies Fannie Mae as the Lender and expressly states the Deed of Trust controls and the Loan Documents still control (as specifically modified) (Exhibit A); (ii) Nationstar admitted pre-suit that Freddie Mac was the owner of the Palazzo Loan (Exhibit B); and (iii) the Hackinen Loan Modification ambiguously refers to Nationstar as both the "lender or servicer" (ECF. 38-1 at p. 3 of 12), reaffirms the definitions in the Deed of Trust controls (ECF. 38-1 at 4 of 12) as well as all other provisions of Loan Documents including the bar on collecting sums not permitted by law (ECF. 38-1 at ¶ 4(E)(F)), and the Hackinen Loan was satisfied by the Horizon Trust as owner not Nationstar after this action commenced (Exhibit C).[5]

Plaintiffs do not believe there is any merit to Nationstar's notice-and-cure argument. However, based upon the provision's plain text, it would not apply to Plaintiffs' claims for four

---

[5] Exhibits A, B, and C are referred to and are integral to the AC at ¶¶ 77, 97, 123 and may therefore be considered by this Court in relation to the Motion since Nationstar is arguing statements it knows are inconsistent with its actual records.

additional reasons. First, since Nationstar's fee is barred by law (see § II supra), it cannot "arise[] from the other party's actions pursuant to [the] Security Instrument," which is the first requirement for the notice and cure provision to apply. Second, neither Plaintiffs' deeds of trust or notes, authorize a non-party agent of the owners of the loan, like Nationstar, to impose and collect whatever fees it wishes—especially when none of the instruments expressly address fees for payoff statements. ECF 20-1 through 20-6. Third, the notice and grievance provision only apply to the "Lender" and not the "Loan Servicer" of the loan, which the instrument defines "to be [an] entity…collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law." ECF. 20-2, 20-4, and 20-6 at ¶ 20. If the original lenders who entered into the Deeds of Trust with the Plaintiffs actually envisioned the notice and cure provision would apply to a loan servicer, like Nationstar, it would have expanded the scope of the provision in the same paragraph it defined a Loan Servicer to say 'Neither Borrower nor Lender or Loan Servicer may commence, join, or be joined' in an action without first issuing a notice and opportunity to cure. But the original lenders did not include a Loan Servicer like Nationstar in the notice and cure provision. ECF. 20-2, 20-4, and 20-6 at ¶ 20. This "ambiguity in how the provisions in the deed of trust or the loan modification agreement should be construed, under ordinary contract principles…would be construed against the drafters – in this case…Nationstar" and the owners of the loans who stands in the shoes of their predecessors. *Kemp*, 258 A.3d at 320. Fourth, Plaintiffs' claims against Nationstar do not concern a breach of contract, but instead, involve its conduct not expressly authorized by any law or contract.

"[T]he written language embodying the terms of an agreement] will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION - 10

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Avenue SW
Seattle, WA 98146
Tel# 206-330-0595 / Fax# 206-400-7609

contract." *Md. Cas. Co. v. Blackstone Int'l Ltd.*, 114 A.3d 676 (2015). Here, the plain language of the notice and cure provisions only apply to the lenders and not the loan servicers and only conduct governed by the contract which does not include unauthorized fees which are not "actions pursuant to this Security Instrument." It is not the Court's job to add terms to a contract the parties did not agree to in the first instance. Thus, on this basis, the Motion should be denied.

### B. Plaintiffs' Unjust Enrichment Claims May Proceed

Here, Nationstar is not a party to the loans and is simply a collector engaged by the owners of the loans. AC at ¶¶ 76, 95, 115. Since Nationstar is not a party to the contracts and is just a vendor hired by the owners to collect payments on behalf of the owners (ECF. 20-2, 20-4, and 20-6 at ¶ 20), Plaintiffs are permitted to pursue their unjust enrichment claims against it for collecting sums that are barred by law (*see* Section II *supra*) and were never owed under both Washington and Maryland law (and the common law of most other states). This is so, "[u]njust enrichment is thus a cognizable theory for seeking to recover the funds that [the wrongdoer] retains" *Taie v. Ten Bridges LLC*, 568 F. Supp. 3d 1126, 1133 (W.D. Wash. 2021). "The doctrine of unjust enrichment applies only if the circumstances of the benefits received or retained make it unjust for the defendant to keep the benefit without paying." *Nationstar Mortg. LLC v. Drexel Inv. Inc.*, No. 13-CV-01245-BJR, 2014 WL 4243730, at *6 (W.D. Wash. Aug. 26, 2014). Similarly, Maryland allows "[a] plaintiff to recover…on a claim for unjust enrichment upon proving the following three elements: (1) A benefit conferred on the defendant by the plaintiff; (2) An appreciation or knowledge by the defendant of the benefit; and (3) The acceptance or retention by the defendant of the benefit under circumstances that would make it inequitable for the defendant to retain the benefit without the payment of its value." MPJ I-Cv 9:32.

Here, the Plaintiffs allege that Nationstar, a non-party to their loans,[6] was unjustly enriched when the Plaintiffs paid the unauthorized pay-to-pay fees and Nationstar demanded and collected the fees even though they were barred by federal law and not expressly authorized in any law or mortgage contract. *See* Section II *supra*. The Parties do not dispute that the loan instruments generally govern the loan payments, fees, past due amounts, and foreclosure proceedings regarding mortgage loans. However, where the question is whether the pay-to-pay fees are allowed for a payoff statement, when not specifically permitted under the contract, are sufficiently separate from the terms of the contract, so as to support a quasi-contract theory. *Beyer v. Countrywide Home Loans Servicing LP*, 2008 WL 1791506 (2008) is illustrative. In *Beyer*, the plaintiff was challenging a payoff fee of $60.00 imposed and collected from him and other similar persons. *Id.* at *1-2. Like Nationstar here, the mortgage servicer sought to have the unjust enrichment claims dismissed but the court, recognizing that while the plaintiff relied upon the assertion, as Plaintiffs here rely, that the fee was not authorized by the deeds of trust and "that assertion…does not suggest…that [the] unjust enrichment and CPA claims are inseparable from any breach of contract claim." *Id.* at *3. Rather, since the deed of trust is silent regarding the fee at issue (the same fees at issue in this action), the silence supports the "argument that the CPA and unjust enrichment claims do not arise from actions taken 'pursuant to the Security Instrument' and therefore are not foreclosed…" *Id. See also Gerber,* 2006 WL 581082, at *3.

In addressing Nationstar's argument that there can be no unjust enrichment claim in light of the plaintiffs' written loan agreements (Motion at p. 7), the court previously conceded that is generally a correct statement of the law but "it is not squarely applicable to the present [claims].

---

[6] "An express contract has been defined as an actual agreement of the parties…" *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 606 (2000).

PLAINTIFFS' MOTION FOR CLASS  
CERTIFICATION - 12

SEATTLE CONSUMER JUSTICE, P.S.  
10728 16th Avenue SW  
Seattle, WA 98146  
Tel# 206-330-0595 / Fax# 206-400-7609

The 'matter' at the center of Plaintiffs' claim for unjust enrichment is Defendant's collection of the $50.00 Payoff Statement Fee, whereas the 'matter' of the acknowledged contract is the agreement between a borrower and a lender to secure a promissory note with the deed of trust relating to a piece of real property." *Orser v. Select Portfolio Servicing, Inc.*, No. C05-1507C, 2005 WL 3478126, at *4 (W.D. Wash. Dec. 20, 2005). In permitting the unjust enrichment claims on the same fees at issue here to proceed, the court explained that "the substantive right that is being discussed has little to do with the law of contract. Restitution involves a liability imposed by society for reasons of public policy." *Id.* (cleaned up). Maryland law is in accord with *Orser* and recognizes two exceptions to the general bar on unjust enrichment claims when a contract exists: (i) when the contract does not cover the subject matter; or (ii) there is evidence of bad faith (which are two issues in this action as well). *Dashiell,* 747 A.2d at 609.

Nationstar's conduct at issue in this action, involving the charging of pay-to-pay fees for payoff statements which are barred by law and never expressly authorized by laws governing the Plaintiff's loans and are not expressly authorized by any signed contracts that incorporate all applicable laws, are either bad faith or outside the terms of the contracts, and thus unjust enrichment is a proper claim as presented in Plaintiffs' AC and the claim should not be dismissed.

   C.   **Plaintiffs' Statutory Claims May Proceed**

Nationstar next asks the Court to disregard its own legal analysis on all fours with this action concerning the application of 15 U.S.C. § 1692f(1)—i.e. *Creager*, 618 F. Supp. 3d at 1103—and claims that Plaintiffs may not proceed on any of their statutory claims based upon the FDCPA or those broader state claims which incorporate the unlawful conduct barred by the FDCPA into their mini-FDCPA statutes. The Fourth Circuit's holding and well-reasoned opinion in *Alexander*, 23 F.4th at 374, controls these issues and rejects Nationstar's core contentions as

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION - 13

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Avenue SW
Seattle, WA 98146
Tel# 206-330-0595 / Fax# 206-400-7609

"to plaintiffs' central claim under [Maryland law]: that, by charging its convenience fees, [the mortgage servicer] engaged in conduct violating the FDCPA. We hold that [the servicer] is a 'collector' who charged an 'amount' that was not 'expressly authorized by the agreement creating the debt or permitted by law' in violation of the FDCPA. See 15 U.S.C. § 1692f(1)." *Id.* Other Circuit Courts are in accord in holding that "permitted by law," as used in § 1692f(1), requires affirmative sanction and not implied sanction as advocated by Nationstar. *Tuttle v. Equifax Check*, 190 F.3d 9, 13 (2d Cir. 1999); *Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1112 (7th Cir. 2008). *See also Brown v. Transworld Sys., Inc.*, 73 F.4th 1030, 1040 (9th Cir. 2023) (cleaned up); Section II *supra*.

Nationstar's primary argument for trying to avoid the consequences of its unlawful fee harvesting conduct is to look to a statute that it admits does not apply to any of Plaintiffs' loans—HOEPA. Motion at 9-10 ("Plaintiffs' loans are not high-cost loans"). Nationstar's argument fails however, because it is not based on any federal or state law expressly authorizing the fees as required by the FDCPA. Their argument is twisted and indirect, based on its inferred view, which is not the same as the FDCPA's affirmatively permitted requirement. *Alexander*, 23 F.4th at 374; *Tuttle*, 190 F.3d at 13; *Seeger,* 548 F.3d at 1112; *Creager*, 618 F. Supp. 3d at 1103. Of course, it is also well settled that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992). Nationstar's own Motion even concedes the general issue when it summarizes its belief that "federal law expressly contemplates" (Motion at p. 10) the practice which is not clearly the same as affirmatively permits it. And once again, Nationstar waived any argument by not addressing the express bar on the subject fee in 12 U.S.C.A. § 2610 in its Motion. *See* FN 1 *supra*.

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION - 14

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Avenue SW
Seattle, WA 98146
Tel# 206-330-0595 / Fax# 206-400-7609

Because the Plaintiffs have properly asserted claims, based upon Nationstar's violations of the conduct regulated by 15 U.S.C. § 1692f(1) as described herein, they are also entitled to proceed on their broader state statutory claims which incorporate the conduct prohibited by the FDCPA. "Because [a servicer] is a collector who charged an amount that was not expressly authorized by the agreement creating the debt or permitted by law, it violated the MCDCA." *Alexander,* 23 F.4th at 379. "A violation of the MCDCA also constitutes a *per se* violation of the MCPA as an 'unfair, abusive, or deceptive trade practice.' CL § 13-301(14)(iii)." *Chavis v. Blibaum & Assocs., P.A.*, 264 A.3d 1254, 1265 (2021). Washington law is in accord. *See e.g. Fairway Collections, LLC v. Turner*, 540 P.3d 805, 817 (2023); *Brown v. Transworld Sys. Inc.,* 646 F. Supp. 3d 1328, 1344 (W.D. Wash. 2022).

Nationstar's should not be permitted to retain the benefits of its conduct and Plaintiffs should be entitled in this action to recover those sums that Nationstar had no right to collect. Plaintiffs' well-pled and detailed statutory claims should proceed.

## V. Conclusion

For the reasons stated above, the Motion for Judgment on the Pleadings should be denied. If the Court finds any allegations in the AC to be deficient, Plaintiffs request leave to further amend the complaint.

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION - 15

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Avenue SW
Seattle, WA 98146
Tel# 206-330-0595 / Fax# 206-400-7609

|   |   |
|---|---|
| 1 | I certify that this memorandum contains <u>15 pages</u>, in compliance with this Court's Standing Order. |
| 2 | DATED August 2, 2024 |

DATED August 2, 2024

    /s/ *Christina L. Henry*
Christina L Henry, WSBA 31273
SEATTLE CONSUMER JUSTICE, P.S.
Counsel for Plaintiffs
10728 16th Ave SW
Seattle, WA 98146
206-330-0595 Fax 206-400-7609
*chenry@hdm-legal.com*

    /s/ *Phillip R. Robinson*
Phillip R. Robinson (admitted *Pro Hac Vice*)
Consumer Law Center, LLC
Counsel for Plaintiffs
1220 Blair Mill Road, Suite 1105
Silver Spring, MD 20910
301-448-1304
*phillip@marylandconsumer.com*

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION - 16

SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Avenue SW
Seattle, WA 98146
Tel# 206-330-0595 / Fax# 206-400-7609

## Certificate of Service

I hereby certify that a copy of the foregoing and related other filings referenced herein and proposed order was provided to counsel to record for Defendant Nationstar at the time of filing through the Court's CM/ECF system. In addition, I also hereby certify that a paper copy of the same was sent by pre-paid U.S. Mail to Freddie Mac's General Counsel at:

Heidi Mason
Executive VP & General Counsel
Freddie Mac
8200 Jones Brach Drive
McLean, VA 22102

                */s/ Christina L. Henry*
                Christina L Henry