The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RICARDO SALOM, CATHERINE PALAZZO as assignee for Ruben Palazzo, and PETER HACKINEN, *on their own behalf and on behalf of other similarly situated persons,*<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONSTAR MORTGAGE LLC d/b/a CHAMPION MORTGAGE<br><br>And<br><br>FEDERAL HOME LOAN MORTGAGE ASSOCIATION, *on its own behalf and on behalf of similarly situated persons*,<br><br>Defendants. | Case No. 2:24-cv-00444-BJR<br><br>**NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION FOR RELIEF PURSUANT TO FED. R. CIV. P. 23(d)** |

NATIONSTAR'S OPPOSITION TO PLAINTIFFS' RULE 23(d) MOTION
(Case No. 2:24-cv-00444-BJR) - 1

TROUTMAN PEPPER
HAMILTON SANDERS LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................................. 5

II. ARGUMENT ................................................................................................................... 8

    A. Plaintiffs Fail to Make the Rigorous Showing Necessary to Obtain Mandatory Relief Related to LCR 3(g) .................................................................. 8

    B. The Court Should Deny Rule 23(d) Relief as to Communications Between Nationstar and its Customers Because Plaintiffs Identify No Conduct by Nationstar That Warrants Any Such Relief ........................................................ 11

III. CONCLUSION ............................................................................................................... 16

NATIONSTAR'S OPPOSITION TO PLAINTIFFS' RULE 23(d) MOTION
(Case No. 2:24-cv-00444-BJR) - 2

TROUTMAN PEPPER
HAMILTON SANDERS LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

# TABLE OF AUTHORITIES
Page(s)

**Cases**

*Belt v. Emcare, Inc.*,
  299 F. Supp. 2d 664 (E.D. Tex. 2003) ................................................................. 15

*Billingsley v. CitiTrends, Inc.*,
  560 Fed. Appx. 914 (11th Cir. 2014) ................................................................. 13

*Cain v. Source One Mortgage Servs. Corp.*,
  97 Wash.App. 1014 (unpublished) ................................................................. 6

*Coles v. Marsh*,
  560 F.2d 186 (3d Cir. 1977), cert. denied, 434 U.S. 985 (1977) ......................... 12

*Creager v. Columbia Debt Recovery*,
  618 F. Supp. 3d 1094 (W.D. Wash. 2022) ......................................................... 5

*Davis v. Homecomings*,
  No. C05-1466, 2006 WL 2927701 (W.D. Wash. 2006) ....................................... 6

*Dominguez v. Better Mortg. Corp.*,
  88 F.4th 782 (9th Cir. 2023) ................................................................. 12, 13, 15

*Friedman v. Intervet Inc.*,
  730 F. Supp. 2d 758 (N.D. Ohio 2010) ........................................................... 15

*Gulf Oil v. Bernard*,
  452 U.S. 89 (1981) ........................................................................................ 12

*Kleiner v. First Nat'l Bank of Atlanta*,
  751 F.2d 1193 (11th Cir. 1985) ................................................................. 7, 13

*Lawson v. Murray*,
  515 U.S. 1110 (1995) (Scalia, J., concurring) ............................................. 13, 14

*In re Microsoft Corp. Antitrust Litig.*,
  333 F.3d 517 (4th Cir. 2003) ........................................................................... 9

*Nationstar Mortg., LLC v. Kemp*,
  258 A.3d 296 (Md. App. 2021) ....................................................................... 5

*Nugussie v. HMS Host North Am.*,
  No. C16-0268RSL, 2017 WL 1250420 (W.D. Wash. 2017) .............................. 12

*Pinnacle Armor, Inc. v. United States*,
  No. CV F 07-1655 LJO DLB, 2008 U.S. Dist. LEXIS 3831 (E.D. Cal. Jan. 7,
  2008) ............................................................................................................. 9

NATIONSTAR'S OPPOSITION TO PLAINTIFFS' RULE 23(d) MOTION
(Case No. 2:24-cv-00444-BJR) - 3

TROUTMAN PEPPER
HAMILTON SANDERS LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

*In re School Asbestos Litigation*,
   842 F.2d 671 (3d Cir. 1988) .................................................................................. 13

*Stanley v. University of S. Cal.*,
   13 F.3d 1313 (9th Cir. 1994) .................................................................................... 9

*United States v. Evans*,
   929 F.3d 1073 (9th Cir. 2019) .................................................................................. 9

*United States v. W. T. Grant Co.*,
   345 U.S. 629 (1953) .................................................................................................. 9

*Zwerin v. 533 Short North, LLC*,
   No. 2:10-cv-488, 2011 WL 2446622 (S.D. Ohio 2011) ........................................ 12

**Statutes**

11 U.S.C. § 2610 .............................................................................................................. 6

Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et seq.*) ............................. 5, 6, 10

Maryland Commercial Law Code Ann. § 12-121 .......................................................... 5

Washington Consumer Protection Act (RCW 19.86 *et seq.*) ....................................... 10

**Other Authorities**

12 C.F.R. § 1026.34(9)(ii) ................................................................................................ 7

12 C.F.R. § 1026.36(c)(3) ................................................................................................ 6

Federal Rule of Civil Procedure 23(d) ............................................................. 5, 11, 13, 15

Local Civil Rule 3(g) ............................................................................................... *passim*

Notice to Lenders and Servicers: Court Decision on So-Called "Convenience
   Fees" .................................................................................................................. 14, 15

NATIONSTAR'S OPPOSITION TO PLAINTIFFS' RULE 23(d) MOTION
(Case No. 2:24-cv-00444-BJR) - 4

TROUTMAN PEPPER
HAMILTON SANDERS LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

Defendant Nationstar Mortgage LLC d/b/a Champion Mortgage Company ("Nationstar") submits this opposition to Plaintiffs' motion for relief pursuant to Federal Rule of Civil Procedure 23(d) [Dkt. # 43] ("Motion").

## I.  INTRODUCTION

Seeking to capitalize on the wave of so-called "convenience fee" litigation and regulatory action (and facing the fact that Nationstar stopped charging convenience fees more than two years ago), Plaintiffs Ricardo Salom, Catherine Palazzo, and Peter Hackinen (collectively, "Plaintiffs") filed this action alleging that Nationstar improperly charged them fees for payoff statements. Dkt. # 24 ¶¶ 24-26. But Plaintiffs strategically conceal the fact that they requested *expedited delivery* of these payoff statements, instead repeatedly conflating a fee to expedite a payoff quote with "pay-to-pay fees," – *i.e.*, fees charged to customers to make payment over the phone or via the internet. *See, e.g.,* Dkt. # 24 ¶¶ 40, 71, 140.b, 140.c, 166, 168, 170-171, 181-182, 188 (describing the expedited delivery fee as a "pay-to-pay fee"). Citing a mishmash of irrelevant case law,[1] statutes, and regulations, Dkt. # 43, 3-4, Plaintiffs assert that charging a fee when a borrower requests an expedited payoff quote violates the FDCPA and state consumer protection statutes. *Id.*

Plaintiffs rest their entire case on the proposition that an expedited delivery fee is neither "expressly authorized" by contract or "permitted by law," and therefore violates 15 U.S.C. § 1692f. Dkt. 43 at 3-4. To be clear, however, Washington courts have found that charging a fee for the service of preparing and providing expedited payoff statements is not a breach of any contract, but

---

[1] *Creager v. Columbia Debt Recovery*, 618 F. Supp. 3d 1094, 1099-1100 (W.D. Wash. 2022), involved the defendant's attempt to collect a security deposit improperly forfeited by Plaintiff's landlord. It did not involve a fee to expedite a payoff statement and does not, therefore, stand for the proposition that such a fee violates the FDCPA. *Nationstar Mortg., LLC v. Kemp*, 258 A.3d 296, 309-310 (Md. App. 2021) addressed the issue of the meaning of the term "lender" in Maryland Commercial Law Code Ann. § 12-121, prohibiting inspection fees. This case does not involve inspection fees. Nor does Nationstar make any argument related to this statutory provision in this case.

NATIONSTAR'S OPPOSITION TO PLAINTIFFS' RULE 23(d) MOTION
(Case No. 2:24-cv-00444-BJR) - 5

TROUTMAN PEPPER
HAMILTON SANDERS LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

instead is a permissible fee authorized by agreement. *See, e.g.*, *Davis v. Homecomings*, No. C05-1466, 2006 WL 2927701, at *3 (W.D. Wash. 2006); *Cain v. Source One Mortgage Servs. Corp.*, 97 Wash.App. 1014, 1999 WL674776, at *1-2 (unpublished). Moreover, there is no prohibition in federal or state law on charging expedited delivery fees. The relevant statute and regulations require a lender or servicer to provide a payoff statement within seven (7) business days after receiving a written request from the borrower or an authorized agent of the borrower. 15 U.S.C. § 1639g; 12 C.F.R. § 1026.36(c)(3). Nationstar does not charge for payoff statements provided in the normal course within the seven-business-day period, which is the only statement required by the statute. And nothing in the statute or regulations prohibits charging a fee for expedited delivery.[2]

Indeed, expedited delivery fees are broadly recognized as permissible pursuant to federal law and regulation, as illustrated by the following examples:

- Since at least 2006, the Office of the Comptroller of Currency's ("OCC") has identified fees for providing a payoff statement on an expedited basis as an allowable fee. *See* Exhibit 1 (OCC Interpretive Letter # 1069, dated August 21, 2006).

- Since at least 2017, Fannie Mae's Servicing Guide has identified fees for expedited service as allowable. *See* Exhibit 2 (Section A2-3-05 of Fannie Mae Servicing Guide). Fannie Mae also allows fees for providing more than one payoff statement in a short period of time. *Id.*

- HUD identifies fees for expedited delivery of payoff statements and

---

[2] The statute cited by Plaintiffs, 11 U.S.C. § 2610, governs fees for settlement statements and escrow account statements, as well as statements required by the Truth in Lending Act ("TILA"). Dkt. 43, at 3. As noted, Nationstar does not charge for the payoff statement required by TILA. The charge is for expedited delivery. Accordingly, this statute and its accompanying regulation have no relevance to this case.

NATIONSTAR'S OPPOSITION TO PLAINTIFFS' RULE 23(d) MOTION
(Case No. 2:24-cv-00444-BJR) - 6

TROUTMAN PEPPER
HAMILTON SANDERS LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

additional payoff statements as allowable. *See* Exhibit 3 (Appendix 3.0 to HUD Handbook 4000.1).

Indeed, recognizing that federal law permits such fees, the regulations implementing HOEPA specifically note as much. For example, 12 C.F.R. § 1026.34(9)(ii) provides that a creditor or servicer may charge a processing fee to cover the cost of providing a payoff statement, by fax or courier, "provided that such fee may not exceed an amount that *is comparable to fees imposed for similar services provided in connection with consumer credit transactions that are secured by the consumer's principal dwelling and are not high-cost mortgages*." 12 C.F.R. § 1026.34(9)(ii) (emphasis added).

In short, Plaintiffs' assertion that Nationstar's liability in this case is a foregone conclusion simply lacks merit, as does their Motion seeking to impose unwarranted restrictions on Nationstar's communications with its customers and to require Nationstar to comply with Local Civil Rule 3(g) when there is no evidence that Nationstar has failed to do so in this case or any other.

*First*, the Court should deny Plaintiffs' request for an order enforcing LCR 3(g). Plaintiffs seek to impose a mandatory injunction on Nationstar without providing any basis whatsoever for that drastic action. And the only "evidence" Plaintiffs point to as purportedly supporting a "threat" that Nationstar will fail to comply with LCR 3(g) does no such thing. The *Garcia* and *Contreras* matters were not related cases. There were no overlapping causes of action or plaintiffs, and the attorneys representing the plaintiffs in each case identified the nature of the suits differently. In short, even if cases filed nearly ten years ago had any bearing on Nationstar's compliance with the rule in this case – and they do not – Plaintiffs could not have chosen two more unrelated cases on which to base their motion.

Second, the Court should also deny Plaintiffs' request for an order monitoring Nationstar's communications with its borrowers. Plaintiffs point to no evidence that Nationstar has engaged in

NATIONSTAR'S OPPOSITION TO PLAINTIFFS' RULE 23(d) MOTION
(Case No. 2:24-cv-00444-BJR) - 7

TROUTMAN PEPPER
HAMILTON SANDERS LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

misleading or coercive communications with potential class members in *this case*. Standing alone, this failure requires denying Plaintiffs' Motion. Instead, Plaintiffs would have this Court monitor Nationstar's speech during the pendency of this case because Nationstar took steps to comply with regulatory guidance issued by the State of Maryland on May 12, 2022, directing lenders and loan servicers to stop charging convenience fees for making mortgage payments over the telephone. But Nationstar's actions in the *Baxter* class action were taken in direct response to regulatory guidance and amounted to nothing more than sending checks to its customers in Maryland for the time period identified by regulators. Moreover, Plaintiffs do not – and cannot – demonstrate that Nationstar's actions were somehow coercive or otherwise justify the imposition of restrictions on Nationstar's communications with its customers.

The Court should deny Plaintiffs' motion in its entirety.

## II.    ARGUMENT

### A.    Plaintiffs Fail to Make the Rigorous Showing Necessary to Obtain Mandatory Relief Related to LCR 3(g)

To be clear, the relief Plaintiffs seek from this Court is an order mandating that Nationstar comply with LCR 3(g).[3] Dkt. # 43-1 ¶ 5. In other words, Plaintiffs ask this Court to enter a mandatory injunction against Nationstar ordering compliance with a Local Rule with which Nationstar is already required to comply. They do so while citing *no evidence* whatsoever that Nationstar has failed to comply with the Rule in this case, or that Nationstar has somehow threatened noncompliance. Plaintiffs wholly fail to make the showing necessary to obtain the mandatory relief they seek.

Plaintiffs' request that Nationstar "'perform positive acts' is the quintessential characteristic

---

[3] LCR 3(g) requires a party to "file a Notice of Related Cases alerting the court within five days of learning of any other action that was or is pending in this district that may be related to the party's case." Cases are related if they involve "substantially the same parties, property, transaction, or event." LCR 3(g)(3), (4).

NATIONSTAR'S OPPOSITION TO PLAINTIFFS' RULE 23(d) MOTION
(Case No. 2:24-cv-00444-BJR) - 8

TROUTMAN PEPPER
HAMILTON SANDERS LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

of mandatory relief." *Pinnacle Armor, Inc. v. United States*, No. CV F 07-1655 LJO DLB, 2008 U.S. Dist. LEXIS 3831, at *14 (E.D. Cal. Jan. 7, 2008). Thus, Plaintiffs here seek a mandatory injunction ordering compliance with the Local Civil Rule. Mandatory injunctions are particularly disfavored in the Ninth Circuit. *Stanley v. University of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994). And the party seeking this relief bears the burden of showing that he is entitled to such a remedy. *United States v. Evans*, 929 F.3d 1073, 1077 (9th Cir. 2019). A mandatory preliminary injunction "must be necessary both to protect against irreparable harm in a deteriorating circumstance created by the defendant and to preserve the court's ability to enter ultimate relief on the merits of the same kind." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 526 (4th Cir. 2003); *Stanley*, 13 F.2d at 920 (plaintiff must demonstrate it will suffer irreparable injury); *see United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) (the moving party must satisfy the court that relief is needed, and the necessary determination is that there exists some cognizable danger of recurrent violation, something more than a mere possibility).

Plaintiffs fail to provide this Court with any evidence that Nationstar failed to comply with LCR 3(g) or that there is some "cognizable danger" that Nationstar will fail to comply with the Rule. To the contrary, counsel for Nationstar has advised Plaintiffs' counsel that Nationstar knows of no other case pending against it in this district that involves the transaction at issue here – a fee paid by consumers for the optional service of expediting the delivery of a payoff quote. Should Nationstar learn of such a case, it will, of course, comply with LCR 3(g). Nor have Plaintiffs demonstrated that they will suffer some sort of irreparable harm unless the Court enters a mandatory injunction essentially requiring Nationstar to comply with a rule it is already required to follow. In short, Plaintiffs make no showing whatsoever that they are entitled to the mandatory relief they seek, and the Court should deny Plaintiffs' request for an order enforcing LCR 3(g).

Far from identifying irreparable harm stemming from some imminently threatened violation

NATIONSTAR'S OPPOSITION TO PLAINTIFFS' RULE 23(d) MOTION
(Case No. 2:24-cv-00444-BJR) - 9

TROUTMAN PEPPER
HAMILTON SANDERS LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

of the law, Plaintiffs rest their entire request on one purported failure to identify related cases, occurring nearly 10 years ago. Dkt. # 43 at 6-7. Specifically, Plaintiffs contend Nationstar should have identified *Contreras v. Nationstar* and *Garcia v. Nationstar* as related. *Id.* But Plaintiffs cannot manufacture grounds for a mandatory injunction based on their misrepresentations about *Garcia* and *Contreras* – two non-overlapping class cases settled by Nationstar. Even if they were somehow relevant, the *Garcia* and *Contreras* cases are significantly dissimilar and Nationstar was not obligated to identify them as related cases under the version of LCR 3(g) in effect in 2016 and 2017.[4] Plaintiffs' motion appears to be nothing more than a cynical attempt to cast Nationstar as untrustworthy – one the Court should reject as meritless.

A brief overview of *Garcia* and *Contreras* reveals they were not suitable candidates for disclosure as related cases. Juanita Garcia filed her putative class action complaint against Nationstar on November 17, 2015. Exhibit 4 (Complaint and Civil Cover Sheet). Ms. Garcia alleged Nationstar violated the Washington Consumer Protection Act (RCW 19.86 *et seq.*) ("CPA") and the Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et seq.*) ("FDCPA"). *Id.* ¶¶ 36-56. Ms. Garcia did not amend her complaint. Exhibit 5 (Docket). By December 2017, Ms. Garcia had moved for preliminary approval of class certification and settlement. *Id.* (Dkt. # 92).

The plaintiffs in *Contreras* filed their amended complaint on September 24, 2018. Exhibit 7 (Second Amended Complaint). The Contreras Plaintiffs asserted claims against Nationstar for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and violations of various state consumer protection statutes. Exhibit 6 (Complaint at pp. 1-4). They did not make claims under the CPA or FDCPA. *Id.* Ms. Garcia had already settled with Nationstar

---

[4] In February 2016, the Local Civil Rules required "a party [who] knows or learns that its pending case involves *all or a material part of the same subject matter and all or substantially the same parties as another action* that is pending in any other federal or state court" to "file a Notice of Pendency of Other Action within five days of learning of the other action…" LCR 3(g) (Local Civil Rules, adopted 1/21/2016) (emphasis added).

NATIONSTAR'S OPPOSITION TO PLAINTIFFS' RULE 23(d) MOTION
(Case No. 2:24-cv-00444-BJR) - 10

TROUTMAN PEPPER
HAMILTON SANDERS LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

*nearly a year prior* to the filing of the amended complaint. Exhibit 5 (Dkt. # 92). In addition to the completely different causes of action, the attorneys for Ms. Garcia and the Contreras Plaintiffs identified the nature of their respective suits differently. Ms. Garcia identified her suit as an FDCPA claim under Code 890 in her Civil Cover Sheet. Exhibit 4 at p. 1 (Civil Cover Sheet). The Contreras Plaintiffs identified their suit as a contract dispute under Code 190 in the Civil Cover Sheet. Exhibit 6 at p. 1 (Civil Cover Sheet).

The underlying theories in each case differed significantly too. For example, Ms. Garcia's complaint focused solely on whether charging a fee for making a payment on a consumer mortgage loan was allowable. Exhibit 4 ¶¶ 21-27. The Contreras Plaintiffs, on the other hand, primarily focused their claims on fees relating to property inspections (Exhibit 5 ¶¶ 10-18) adding a comparatively minor section on fees for payments on the loan (*id.* ¶¶ 19-22). In short, the causes of action asserted in *Garcia* and *Contreras* did not overlap. The named plaintiffs did not overlap. The timing of the two cases overlapped only briefly, with the Garcia case having settled months before the Contreras Plaintiffs filed their amended complaint. The attorneys for Ms. Garcia and the Contreras Plaintiffs identified the nature of their suits differently. There was no objective basis for Nationstar to invoke LCR 3(g) by filing a Notice of Related Case.

The Court should deny Plaintiffs' request for an order requiring Nationstar to comply with to LCR 3(g) – particularly given Plaintiffs complete failure to give this Court any reason to anticipate that Nationstar will fail to comply should the Rule become relevant.

**B.    The Court Should Deny Rule 23(d) Relief as to Communications Between Nationstar and its Customers Because Plaintiffs Identify No Conduct by Nationstar That Warrants Any Such Relief**

The Court should also deny Plaintiffs' request pursuant to Rule 23(d) for an order limiting Nationstar's communications with its borrowers during the pendency of this lawsuit.

As a threshold matter, and as Plaintiffs recognize, federal courts generally permit

NATIONSTAR'S OPPOSITION TO PLAINTIFFS' RULE 23(d) MOTION
(Case No. 2:24-cv-00444-BJR) - 11

TROUTMAN PEPPER
HAMILTON SANDERS LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

communications with potential class members prior to class certification. *See Nugussie v. HMS Host North Am.*, No. C16-0268RSL, 2017 WL 1250420, at *1 (W.D. Wash. 2017) ("Defendants in class action litigation are generally allowed to communicate with putative class members prior to certification of the class."); *Zwerin v. 533 Short North, LLC*, No. 2:10-cv-488, 2011 WL 2446622, at *2 (S.D. Ohio 2011) ("[O]ther things being equal, a defendant does nothing wrong by communicating directly with someone who may become, but is not yet, a member of either a class for which certification is sought"). Although federal courts have discretion to regulate communications with potential class members, "an order limiting communication between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for limitation and the potential interference with the rights of the parties." *Gulf Oil v. Bernard*, 452 U.S. 89, 101 (1981). "In addition, such a weighing – identifying the potential abuses being addressed – should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances. As the court stated in *Coles v. Marsh*, 560 F.2d 186, 189 (3d Cir. 1977), cert. denied, 434 U.S. 985 (1977):

> [To] the extent that the district court is empowered . . . to restrict certain communications in order to prevent frustration of the policies of Rule 23, it may not exercise the power *without a specific record showing by the moving party of the particular abuses by which it is threatened*."

*Id*. at 102. The "mere possibility of abuses does not justify the routine adoption of a communications ban that interferes with" the defense of a class action. *Id.* at 101.

Given this directive, courts have been careful to assess the communications that have occurred between a defendant and potential class members and impose restrictions only when those communications were coercive, misleading, or interfered with the rights of the parties. Indeed, that is the precisely the circumstance involved in the case on which Plaintiffs rely: *Dominguez v. Better Mortg. Corp.*, 88 F.4th 782, 786 (9th Cir. 2023). In *Dominguez*, the Ninth Circuit affirmed the

NATIONSTAR'S OPPOSITION TO PLAINTIFFS' RULE 23(d) MOTION
(Case No. 2:24-cv-00444-BJR) - 12

TROUTMAN PEPPER
HAMILTON SANDERS LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

imposition of restrictions on the defendant in a FLSA action, finding that the district court appropriately determined that the defendant's actions taken after the case was filed – namely, coercing employees to sign a new employment agreement with an arbitration clause or be fired – were misleading and coercive. *Id*. at 792. Other cases addressing the issue have similarly restricted communications only when there is a finding that some prior contact with the class was coercive, misleading, or interfered with the class action process. *See In re School Asbestos Litigation,* 842 F.2d 671, 682 (3d Cir. 1988) (upholding district court's finding that a booklet circulated to potential class members was misleading as a matter of law); *Billingsley v. CitiTrends, Inc*., 560 Fed. Appx. 914 (11th Cir. 2014) (entering corrective order when defendant coercively imposed arbitration agreements on potential members of collective action); *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1202-06 (11th Cir. 1985) (limiting communications with class members after defendant undertook a campaign to call class members and convince them to waive their rights by opting out).

Here, Plaintiffs fail entirely to point to *any* communication between Nationstar and putative class members (*i.e.*, generally identified as borrowers who paid a fee to obtain an expedited payoff quote), let alone communications or threatened communications that could be considered misleading or coercive.[5] Any suggestion that Nationstar might engage in some inappropriate communication is, at best, "a mere possibility," and more accurately, pure speculation. Because Plaintiffs cannot make a "record showing" that they are "threatened" by some "particular abus[ive]" communication on the part of Nationstar, the Court must deny their request to restrict Nationstar's communications with its customers.[6]

---

[5] Presumably, counsel for Plaintiffs here will file this type of motion in every class action against Nationstar going forward, citing *Baxter* as grounds for such relief. This would be clear abuse of Rule 23(d).

[6] "All speech-restricting injunctions are prior restraints in the literal sense of '"administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur."' *Lawson v. Murray*, 515 U.S. 1110, 1113 (1995) (Scalia, J.,

NATIONSTAR'S OPPOSITION TO PLAINTIFFS' RULE 23(d) MOTION
(Case No. 2:24-cv-00444-BJR) - 13

TROUTMAN PEPPER
HAMILTON SANDERS LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

Once again seeking to manufacture some "evidence" to support their request, Plaintiffs point not to any communications or threatened communications with the potential class in *this case*, but to Nationstar's decision to refund convenience fees to its customers in Maryland, some of whom were at the time possible members of an entirely *different class* identified in a *different case*: *Baxter v. Lakeview Loan Servicing, LLC*. Even if *Baxter* were relevant – and it is not – Plaintiffs misrepresent the facts surrounding Nationstar's decision to refund the fees, contending that Nationstar "sought to compromise the claims of the plaintiff and the putative class members by communicating with the plaintiff and putative class members about the subject of the litigation…" Dkt. # 43 at 10-11. But Plaintiffs are wrong. Nationstar sent refund checks to its customers (including individuals who fell outside the class definition) after the Maryland Commissioner of Financial Regulation issued a Notice to Lenders and Servicers: Court Decision on So-Called "Convenience Fees" ("Regulatory Notice").[7] Nationstar *did not* communicate with its customers about the "subject" of the *Baxter* case.

On the contrary, the facts demonstrate that, on May 16, 2022, in response to the Regulatory Notice, Nationstar stopped charging fees to its Maryland borrowers for the convenience of making payment over the telephone and, shortly thereafter, determined to refund those fees. Exhibit 8 ¶ 10 (Declaration of Courtney Ehinger dated November 10, 2022). In September 2022, Nationstar began refunding all convenience fees it charged to its Maryland customers by mailing checks to the last known address of its customers. Exhibit 9 ¶ 6 (Declaration of Courtney Ehinger dated February 21,

---

concurring) (citation omitted). "Precedent shows that a speech-restricting 'injunction' that is not issued as a remedy for an adjudicated or impending violation of law is also a prior restraint in the condemnatory sense, that is, a prior restraint of the sort prohibited by the First Amendment. *Id.*

[7] On May 12, 2022, the Commissioner issued its Regulatory Notice directing "lenders and servicers to review their practices in charging consumer borrowers loan payment fees both to ensure on-going compliance with the law and to determine whether any improper fees have previously been assessed so that they can undertake appropriate reimbursement to affected borrowers."

NATIONSTAR'S OPPOSITION TO PLAINTIFFS' RULE 23(d) MOTION
(Case No. 2:24-cv-00444-BJR) - 14

TROUTMAN PEPPER
HAMILTON SANDERS LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

2023); *see also* Dkt. # 13-1 at p. 21 (Transcript at 26:2-10 [explaining Nationstar stopped charging fees four days after the Commissioner's direction in May and refunded the fees in September because it took about four (4) months to gather the information to send the checks]). Even if they were relevant to this case, Nationstar's actions in *Baxter* bear no resemblance to the misleading and coercive actions, such as those at issue in *Dominguez*, that justify court-imposed restrictions on class communications. Nationstar was not responding to the lawsuit when it issued refund checks to its customers. It was responding to the direction in the Commissioner's Regulatory Notice, which squarely covered the fees refunded to Nationstar's customers, many of whom were not even members of the putative class. Exhibits 8-9.

Unlike the facts in *Dominguez*,[8] 88 F. 4th at 792 (where the defendant told employees they would be fired if they did not agree to have claims already being asserted on their behalf decided in individual arbitrations), Nationstar made no attempt to coerce Ms. Baxter or its other customers to sign an agreement that would "amicably" resolve any dispute about the fees. To the contrary, Nationstar sent checks without requiring any action by its customers. Nationstar had no other communications with its customers aside from sending the checks, let alone any that could be considered coercive or misleading.[9] Accordingly, even if Baxter were relevant, Plaintiffs have offered no basis for this Court to restrict or monitor Nationstar's communications with its customers.

The Court should deny Plaintiffs' motion for Rule 23(d) relief.

---

[8] *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664 (E.D. Tex. 2003) and *Friedman v. Intervet Inc.*, 730 F. Supp. 2d 758 (N.D. Ohio 2010) are distinguishable as the district court in both cases noted that the defendants' actions were coercive and misleading.

[9] Plaintiff's counsel made this identical argument in Baxter in support of a motion to strike Nationstar's evidence supporting its motion for summary judgment. The court denied the motion.

NATIONSTAR'S OPPOSITION TO PLAINTIFFS' RULE 23(d) MOTION
(Case No. 2:24-cv-00444-BJR) - 15

TROUTMAN PEPPER
HAMILTON SANDERS LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

### III. CONCLUSION

For the foregoing reasons, Nationstar respectfully requests the Court deny Plaintiffs' motion (Dkt. # 43).

*I certify that this memorandum contains 3,855 words, in compliance with the Local Civil Rules.*

Dated: August 6, 2024

TROUTMAN PEPPER
HAMILTON SANDERS LLP

By: */s/ Thomas N. Abbott*
    Thomas N. Abbott (WSBA No. 53024)
    100 SW Main Street, Suite 1000
    Portland, Oregon 97204
    Telephone: 503.290.2322
    Email: thomas.abbott@troutman.com

    Justin D. Balser (WSBA No. 56577)
    5 Park Plaza, Suite 1400
    Irvine, California 92614
    Telephone: 949.622.2700
    Facsimile: 949.622.2739
    Email: justin.balser@troutman.com

ATTORNEYS FOR DEFENDANT
NATIONSTAR MORTGAGE LLC D/B/A
CHAMPION MORTGAGE

NATIONSTAR'S OPPOSITION TO PLAINTIFFS' RULE 23(d) MOTION
(Case No. 2:24-cv-00444-BJR) - 16

TROUTMAN PEPPER
HAMILTON SANDERS LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405