# EXHIBIT 1



Comptroller of the Currency
Administrator of National Banks

Washington, DC 20219

August 21, 2006

**Interpretive Letter #1069**
**October 2006**
**12 USC 371**
**12 USC 24(7)**
**12 CFR 7.4002**

Subject:  Expedited Service Fees for Loan Payoff Information

Dear [                    ]:

This responds to your letter of August 16, 2006, regarding the facsimile transmission service fees charged by [ ***Bank, City and State*** ] (the Bank) and its operating subsidiaries, [ ***Op. Sub. 1*** ] and [ ***Op. Sub. 2*** ] (collectively, the Operating Subsidiaries).  The Bank and Operating Subsidiaries service residential mortgage loans originated by the Bank.  In the course of this business, they offer a service to their customers who wish to receive, on an expedited basis, information concerning the amount due if the customer is to pay off his or her loan in full.  Using this service, customers may request that loan payoff calculations be produced while they are on the telephone with a customer service representative.  The information is then sent to the customer immediately by facsimile or other expedited means.  Customers not availing themselves of this expedited service wait for the payoff calculation to be produced in the normal course of business and sent through the U.S. mail.

You request the concurrence of this office that the Bank and Operating Subsidiaries are authorized to charge this fee under section 24(Seventh) of the National Bank Act (12 U.S.C. §24(Seventh)) and 12 C.F.R. § 7.4002(a).[1]  We concur.  Based on our review of your letter and supporting materials submitted, and the relevant procedural considerations set forth in 12 C.F.R. § 7.4002(b), we confirm that the Bank and Operating Subsidiaries are authorized to charge the fee, in their discretion, pursuant to

---

[1] We note that the authority of national banks and operating subsidiaries to charge particular fees is not conditioned on obtaining an individual confirming opinion, since national banks and operating subsidiaries are authorized to charge non-interest fees and charges as an inherent element of their authority to conduct the business of banking.

12 U.S.C. § 24(Seventh), 12 U.S.C. § 371, and 12 C.F.R. § 7.4002(a).[2]  The basis for our conclusion is set forth first with regard to the Bank, followed by a separate discussion of the authority of the Operating Subsidiaries.

**National Bank Charges and Fees Are Authorized Under 12 U.S.C. § 24(Seventh), 12 U.S.C. § 371, and 12 C.F.R. § 7.4002**

Twelve U.S.C. § 24(Seventh) authorizes a national bank to engage in activities that are part of, or incidental to, the business of banking as well as certain specified activities listed in that statute.  Other provisions of the banking laws also expressly authorize particular activities for national banks.  Real estate lending, for example, is expressly authorized for national banks pursuant to 12 U.S.C. § 371.  Providing the information necessary for a customer to pay a mortgage loan in full – if, for example, the customer intends to replace an existing loan with a new loan at a more favorable interest rate – is an activity encompassed within the statutory authorization to engage in real estate lending.  A bank's authority to provide products or services to its customers necessarily encompasses the ability to charge a fee for the product or service.[3]

The ability to charge a fee for the Bank's services is expressly reaffirmed in 12 C.F.R. § 7.4002(a), which provides:

> (a)  *Authority to impose charges and fees*.  A national bank may charge its customers non-interest charges and fees, including deposit account service charges.

The Bank's authority in this, as in all other, areas must be exercised in a manner that is consistent with safe and sound banking practices.  Paragraph (b) of section 7.4002 sets out the factors that the Bank should consider to ensure that the process for setting its fees and charges is consistent with safety and soundness:

> (b)  *Considerations*.  (1)  All charges and fees should be arrived at by each bank on a competitive basis and not on the basis of any agreement, arrangement, undertaking, understanding, or discussion with other banks or their officers.

---

[2] You have informed us that **[**        *Op. Sub. 2*        **]** and another wholly owned subsidiary of the Bank, **[**        **Op. Sub. 3**        **]**, are currently involved in litigation involving challenges to the fax fees under various state laws.  However, you have not requested our opinion, and we accordingly express no view, about whether these laws apply to national banks.

[3] *See Bank of America, N.A. v. City and County of San Francisco*, 309 F.3d 551 (9th Cir. 2002), *cert. denied*, 538 U.S. 1069 (2003) (national bank authorized to charge ATM fees, and city ordinances prohibiting such fees held preempted and permanently enjoined); *Metrobank v. Foster*, 193 F. Supp. 2d 1156 (S.D. Iowa 2002) (national bank authority to charge fees for ATM use preempted Iowa prohibition on such fees).  *See also Wells Fargo Bank of Texas, N.A. v. James*, 321 F.3d 488 (5th Cir. 2003), *aff'g* 184 F. Supp. 2d 588 (W.D. Tex 2001) (national bank authorized to charge on-us check cashing fees, and state laws prohibiting these fees do not apply to national banks).

(2)  The establishment of non-interest charges and fees, their amounts, and the method of calculating them are business decisions to be made by each bank, in its discretion, according to sound banking judgment and safe and sound banking principles.  A national bank establishes non-interest charges and fees in accordance with safe and sound banking principles if the bank employs a decision-making process through which it considers the following factors, among others:

(i)  The cost incurred by the bank in providing the service;

(ii)  The deterrence of misuse by customers of banking services;

(iii)  The enhancement of the competitive position of the bank in accordance with the bank's business plan and marketing strategy; and

(iv)  The maintenance of the safety and soundness of the institution.

If the Bank uses a decision-making process that takes these factors into consideration, then there is no supervisory impediment to the Bank exercising its discretionary authority to charge non-interest fees and charges – such as the expedited service fees at issue here – pursuant to section 7.4002(a).

**The Bank's Consideration of the § 7.4002(b) Factors**

The Bank has provided analysis and supporting documentation demonstrating that it has considered each of the four factors listed in § 7.4002(b)(2).  The materials provided include information on the costs incurred by the Bank in providing expedited payoff calculations to its customers.[4]  The Bank has concluded that its expedited service fee is necessary to help defray these costs.

The Bank also has concluded that the expedited service fee will help deter misuse because it will discourage customers and their agents from straining the Bank's resources by waiting until the last minute to request a loan payoff calculation.  The Bank does not charge a fee for a payoff calculation request if it is requested in the ordinary course of business and can be handled in a routine manner.  Routine handling would include the processing of the request in the order in which it was received and providing the payoff information to the customer or the customer's agent by U.S. mail.  This process can take up to four business days. When the Bank receives an expedited payoff request, the Bank gives the request priority above all other payoff requests in order to process it as soon as possible.  Once completed, the payoff information is transmitted

---

[4]  The Bank's submission includes information that they believe to be exempt from disclosure under the Freedom of Information Act (FOIA).  12 U.S.C. § 552(b).  The FOIA exempts matters constituting "trade secrets and commercial or financial information obtained from a person and privileged and confidential."

electronically to the customer.  Depending on the time the request is received, the payoff calculation can be transmitted to the customer the same day.

In discussing how the fees enhance its competitive position and relate to its overall market strategy, the Bank notes as a threshold matter that it recognizes that providing expedited services is a business necessity in order to meet the demands of some customers and the marketplace.  In establishing a fee to cover the costs and earn profits on the expedited service, the Bank compared fees charged for similar services by competitors and determined that its fees are in the middle of the market range.

The Bank also has considered the impact that these fees will have on its ability to provide superior convenience for its customers and their agents.  The Bank believes that the fee will promote greater convenience for its customers by allowing the Bank to reduce delays in customer service and assist them in the timely completion of their financing transactions.

Finally, the Bank discusses the impact that the expedited service fees it charges will have on its safety and soundness, particularly its ability to recoup costs associated with providing expedited payoff services and realize a profit.  Although providing expedited services does not impose a burden on the operations of the Bank that would jeopardize its safety and soundness, not charging for these services would increase expenses.  The Bank has concluded that charging a reasonable fax fee for providing expedited service is consistent with sound banking practices.

Based on the foregoing, we confirm that the Bank is authorized, under 12 U.S.C. § 24(Seventh), 12 U.S.C. § 371, and 12 C.F.R. § 7.4002(a), to charge a fee for expedited services and that the process for considering the establishment of the fee used by the Bank is consistent with the considerations required by section 7.4002(b).

**Fees Charged by the Operating Subsidiaries.**

The Operating Subsidiaries are wholly owned subsidiaries of the Bank.  These Operating Subsidiaries conduct the same real estate lending activities as described above with respect to the Bank.  Pursuant to 12 C.F.R. § 5.34(e)(3), national bank operating subsidiaries conduct their activities subject to the same authorization, terms, and conditions as apply to the parent banks.  This includes the authorization to charge non-interest charges and fees pursuant to section 7.4002 of our rules.  The analysis and supporting documentation concerning the charging of fees for expedited payoff information provided by the Bank applies equally to the Operating Subsidiaries' activities.  Accordingly, the conclusions we have reached concerning the Bank's authorization to charge a fee for expedited services, and the consistency of the process used to establish the fee with the considerations required by section 7.4002, apply equally to the Operating Subsidiaries.

-4-

**Conclusion**

Based on the foregoing, we confirm that the Bank and Operating Subsidiaries are authorized, by 12 U.S.C. § 24(Seventh), 12 U.S.C. § 371, and 12 C.F.R. § 7.4002(a), to charge a fee for expedited services and that the process for establishing the fee used by the Bank and Operating Subsidiaries is consistent with the requirements of section 7.4002(b).

Sincerely,

/s/

Julie L. Williams
First Senior Deputy Comptroller and Chief Counsel