IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

RICARDO SALOM, CATHERINE PALAZZO as assignee for Ruben Palazzo, and PETER HACKINEN, on their own behalf and on behalf of other similarly situated persons,

Plaintiffs,

v.

NATIONSTAR MORTGAGE LLC d/b/a CHAMPION MORTGAGE, et al.,

Defendants.

Civil Action No. 2:24-cv-00444-BJR

BRIEF OF AMICUS CURIAE
CONSUMER FINANCIAL PROTECTION BUREAU
IN SUPPORT OF PLAINTIFFS

I.   Introduction

The Consumer Financial Protection Bureau ("CFPB") respectfully submits this Amicus Brief to assist the Court in its evaluation of the claim brought under the Fair Debt Collection Act ("FDCPA"). The FDCPA is a federal consumer financial protection law that aims to protect consumers from a host of harmful debt-collection practices. *See* 15 U.S.C. § 1692(a), (e). As relevant here, the Act prohibits debt collectors from collecting any amount unless the amount is expressly authorized by the agreement that created the debt or permitted by law. *Id.* § 1692f(1). The CFPB has authority to issue rules and advisory opinions under the FDCPA and to enforce compliance with the Act's requirements. *See id.* §§ 1692*l*(b)(6), (d), 1692k(e).

The plaintiffs brought the instant action against Nationstar Mortgage LLC, on behalf of themselves and others similarly situated, alleging that Nationstar unlawfully charged and collected fees—up to $25—when borrowers requested payoff statements to satisfy their loans or understand what sums were due. First Am. Compl. ¶ 4, ECF No. 24. The named plaintiffs include Peter Hackinen, a Washington resident whose mortgage Nationstar acquired and began servicing after the loan was in default. *Id.* ¶¶ 113-15. Mr. Hackinen (Plaintiff) is the only named plaintiff who alleges that Nationstar violated the FDCPA, 15 U.S.C. § 1692f(1), by collecting fees that were neither expressly authorized by the underlying mortgage agreements nor permitted by law. *Id.* ¶¶ 189-202, and the named plaintiffs collectively bring other state and common law claims. Nationstar moved for judgment on the pleadings. Nationstar Mortgage LLC d/b/a Champion Mortgage Company's Mot. J. Pleadings ("MJP"), ECF No. 37.

This amicus brief addresses two FDCPA issues raised by Nationstar's motion. First, Plaintiff's FDCPA claim is not barred by a contractual provision requiring notice and an opportunity to cure before bringing certain suits. Second, taking the allegations in the complaint

1

as true, Nationstar violated the FDCPA by collecting payoff statement fees that were neither expressly authorized by the agreement creating the debt nor permitted by law.[1]

II.   Argument

      **A. The contractual notice-and-cure provision in Plaintiff's deed of trust cannot bar his claim under the FDCPA.**

The notice-and-cure provision contained in Plaintiff's deed of trust does not bar the FDCPA claim here. The provision by its terms does not apply to the FDCPA claim, and, in any event, a contractual notice-and-cure provision cannot limit consumers' ability to vindicate their FDCPA rights. Therefore, contrary to Nationstar's contentions, *see* MJP at 5-7, Plaintiff need not have provided notice and an opportunity to cure prior to bringing a claim under the FDCPA.

1. To start, the notice-and-cure provision does not by its terms apply to Plaintiff's claim under the FDCPA. The provision requires a party, before commencing any suit that alleges a "breach" of "any provision of, or any duty owed by reason of, this Security Instrument" or any suit "that arises from the other party's actions pursuant to this Security Instrument," to give notice to the other party "of such alleged breach" and an opportunity "to take corrective action." MJP at 37. Plaintiff's FDCPA claim fits in neither category.

First, Plaintiff's FDCPA claim is not based on a "breach" of a contractual provision or duty "owed by reason of" the security instrument. Plaintiff alleges a violation of the statute, not the contract. And the duty that Nationstar allegedly breached is one owed by reason of the FDCPA—to not collect fees unless expressly authorized by the contract or permitted by law. This statutory duty exists independent of the contract, and thus does not involve a "breach" of a contractual provision or duty. Courts have recognized as much in analogous statutory contexts.

---

[1] This brief is limited to certain aspects of Defendant's discussion of the legal framework of the FDCPA, and the Bureau takes no position on the parties' other claims or arguments.

2

*See St. Breux v. U.S. Bank, Nat. Ass'n*, 919 F. Supp. 2d 1371, 1376 (S.D. Fla. 2013) (concluding obligation is "not a duty owed by reason of the mortgage" but "is a duty owed by reason of [Truth in Lending Act (TILA)]"); *McShannock v. JP Morgan Chase Bank N.A.*, 354 F. Supp. 3d 1063, 1072 (N.D. Cal. 2018) (concluding that "statutory duty 'exists independent of any contract between the parties'" and "is therefore not 'owed by reason of' the Deeds of Trust" (citation omitted)), *rev'd and remanded on other grounds*, 976 F.3d 881 (9th Cir. 2020); *Williams v. Lakeview Loan Servicing LLC*, 694 F. Supp. 3d 874, 890 (S.D. Tex. 2023) (concluding that "[p]laintiffs' claims arise solely from the statutory duties in the [Texas Debt Collection Act], not from duties owed by the servicer under the mortgage"); *Trevathan v. Select Portfolio Servicing, Inc.*, 142 F. Supp. 3d 1283, 1291 (S.D. Fla. 2015) (distinguishing TILA claim, which "implicates a statutory duty," from contract claims that were subject to the notice-and-cure provision).

Nor can Plaintiff's claim be said to "arise from [Nationstar's] actions pursuant to" the deed of trust. Nationstar did not act "pursuant to" the deed of trust in collecting payoff statement fees; the deed of trust says nothing about such fees. Indeed, courts in this district have found claims challenging similar unauthorized payoff statement fees not subject to virtually identical notice-and-cure provisions. *See Beyer v. Countrywide Home Loans Servicing LP*, No. C07-1512, 2008 WL 1791506, at *3 (W.D. Wash. Apr. 18, 2008), *aff'd*, 359 F. App'x 701 (9th Cir. 2009) (noting deed of trust's "silence" regarding expedited fees "supports Plaintiff's argument that the [consumer protection act] and unjust enrichment claims do not arise from the mortgage contract . . . and therefore are not foreclosed by [plaintiff's] failure to notify"); *Gerber v. First Horizon Home Loans Corp.*, No. C05-1554P, 2006 WL 581082, at *3 (W.D. Wash. Mar. 8, 2006) (observing plaintiff's state consumer protection act claim "involves allegations of deceptive business practices" that "clearly exists independent of any contract between the parties").

3

Nationstar's reliance on *Giotta v. Ocwen Loan Servicing, LLC*, 706 F. App'x 421 (9th Cir. 2017), fares no better. *Contra* MJP at 6. There, the security instrument specifically authorized the servicer to charge certain fees, and the court accordingly held that the suit qualified as a suit that "*arises from* the other party's actions *pursuant to* th[e] Security Instrument." *Giotta*, 706 F. App'x at 422 (emphasis in original). That reasoning does not apply here, where the deed of trust makes no mention of payoff statement fees. *See McShannock*, 354 F. Supp. 3d at 1071 (contrasting *Giotta* with cases like *Beyer* and *Gerber* where "plaintiffs were challenging fees that were allegedly not specified in their loan agreements" and thus where "the mortgage lenders' attempts to impose the fees were clearly not 'actions pursuant to' the agreements"). Accordingly, the notice-and-cure provision by its terms does not preclude Plaintiff's FDCPA claim.

2. Separately, and more fundamentally, companies cannot use a notice-and-cure provision to contract around their obligations under the FDCPA and undermine the statute's purpose. Here, applying the contractual notice-and-cure provision to Plaintiff's FDCPA claim would amount to a prospective waiver of an important statutory right, and that waiver is unenforceable.

To start, applying a contractual notice-and-cure provision amounts to a prospective waiver. Contractual provisions can amount to waivers when they operate to deprive plaintiffs of their statutory rights. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985) (noting contractual "choice-of-forum and choice-of-law clauses" could "operate[] in tandem as a prospective waiver of a party's right to pursue statutory remedies"); *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 831 (6th Cir. 2019) (noting that a "shortened [statute of] limitation[s] period equates to a substantive waiver"); *Taub v. World Fin. Network Bank*, 950 F. Supp. 2d 698, 702-03 (S.D.N.Y. 2013) (holding that "enforcement of the notice and cure provision . . . would essentially amount to a waiver" of TILA's requirements).

4

Here, the notice-and-cure provision amounts to a waiver of Plaintiff's FDCPA claim by requiring him, as a condition of obtaining his mortgage, to prospectively limit his ability to vindicate his statutory right to be free from the collection of unauthorized fees. Indeed, in forcing Plaintiff to first notify the collector of unlawful charges, and to then wait for corrective action (which may or may not occur), the contractual notice-and-cure provision operates as a roadblock to the right to sue, effectively shortening the one-year statute of limitations period granted under the statute. *See* 15 U.S.C. § 1692k(d); *cf. Logan*, 939 F.3d at 833 ("[C]ontractual clauses that purport to shorten the limitation period of Title VII to bring suit are not enforceable"). And even if Plaintiff were to provide notice of an unlawful charge, and even if a debt collector were to provide a "cure" by refunding him and placing him "in the same position as he would have occupied had no breach occurred," *DC Farms, LLC v. Conagra Foods Lamb Weston, Inc.*, 179 Wash. App. 205, 222 (2014), Plaintiff would still be deprived of the statutory damages to which he is legally entitled, *see* 15 U.S.C. § 1602k(a). In short, enforcing a notice-and-cure provision against Plaintiff's FDCPA claim prospectively limits the rights granted by Congress, amounting to a waiver of rights under the FDCPA.

That prospective waiver is invalid. It is axiomatic that "a statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 704 (1945). Under this well-established standard, the statutory right that Plaintiff seeks to vindicate here—to be free from the collection of unauthorized amounts—cannot be prospectively waived. The rights that the FDCPA confers on private parties plainly affect the public interest. *See Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, 42 F.4th 675, 687 (7th Cir. 2022) (recognizing that "the public as a whole has an interest in the vindication of" FDCPA rights

5

(cleaned up)). When enacting the FDCPA, Congress found that "collection abuses by independent debt collectors [were] serious and widespread," S. Rep. No. 95-382, at 7 (1977), and had contributed to "personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy," 15 U.S.C. § 1692(a)—all things that impact the public at large. Accordingly, Congress authorized a host of federal agencies to enforce compliance with the law for consumers across the country. *See* 1692*l*(a)-(b). Congress also created a private right of action and adopted "a 'private attorney general' approach to assume enforcement of the FDCPA," *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008), thereby bolstering the vindication of important statutory rights that affect the public interest. *See Cooper*, 42 F.4th at 687 (noting role of private attorneys general in vindicating FDCPA); *cf. Parker v. DeKalb Chrysler Plymouth*, 673 F.2d 1178, 1181 (11th Cir. 1982) (same for TILA). The public thus has an interest in the vindication of FDCPA protections against unlawful charges.

  Further, enforcing the notice-and-cure provision against Plaintiff's FDCPA claim would contravene the statutory policy. As the Ninth Circuit made clear in *Clark v. Capital Credit & Collection Services*, consumers "cannot waive protection from the practices the FDCPA seeks to eliminate," as "[p]ermitting such a waiver would violate the public policy goals pursued by the FDCPA." 460 F.3d 1162, 1171 n.5 (9th Cir. 2006).[2] The express purpose of the FDCPA is to

---

[2] To be sure, the court in *Clark* held that a *different* FDCPA right—a consumer's right under 15 U.S.C. § 1692c(c) not to be contacted by a debt collector if the consumer notifies the collector that the consumer "wishes the debt collector to cease further communication"—could be waived. The court reasoned that it would be consistent with the public policy of that provision for a consumer to be able to waive the no-contact right that she herself invoked in the first instance— as the consumer did there by asking a debt collector to contact her with specific information. 460 F.3d at 1170. Where consumers have the choice to invoke that right in the first instance, they also have the option to change their mind. But here, consumers need not choose to be free from attempts to collect unauthorized amounts—the statute provides automatic protection from that harmful practice. Because collecting unauthorized amounts is a "practice[] the FDCPA seeks to eliminate," it cannot be waived under *Clark*. *Id.* at 1171 n.5.

"eliminate abusive debt collection practices" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e). Allowing debt collectors to hide behind notice-and-cure provisions when facing allegations of debt collection practices that Congress sought to eliminate upends these policies by removing incentives for debt collectors to comply with the law. Unscrupulous debt collectors could collect unauthorized amounts knowing that, if the consumer caught on, the collector could just return the money and be no worse off—avoiding the costs of litigation and the statutory damages that are intended to curb violations, *see id.* § 1692k(b) (in setting the statutory damages award, courts take into account "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional"). In short, applying the notice-and-cure provisions to claims like that here could embolden debt collectors to disregard their statutory obligations and enable harmful debt collection practices to proliferate, in direct contravention of the statute's express policy goals of eliminating such practices and ensuring bad actors do not gain an unfair advantage.

The Ninth Circuit's opinion in *Giotta* does not suggest otherwise. There, the court held that applying a notice-and-cure provision to the plaintiffs' FDCPA claim did "not contravene the statute's purposes and, thus, does not impermissibly abrogate the FDCPA." 706 F. App'x at 422. But that decision was an unpublished, non-precedential decision, and the court did not explain the basis for its reasoning. The court also did not consider how applying a notice-and-cure provision to the FDCPA's prohibitions would undermine consumers' ability to pursue statutory remedies and reward debt collectors who engage in unlawful practices. As explained above, the effect of a waiver to claims like those here contravenes the core policies of the statute; such a waiver is therefore unenforceable. *Cf. Mitsubishi*, 473 U.S. at 637 n.19 (noting waiver of "right

7

to pursue statutory remedies" is unenforceable as "against public policy"); *Abercrombie v. Wells Fargo Bank, N.A.*, 417 F. Supp. 2d 1006, 1008-09 (N.D. Ill. 2006) (holding that "contravention of the policy underlying TILA's disclosure requirements is precisely what would occur were we to enforce the notice and cure provision in Wells Fargo's contract").

    **B. Taking the facts alleged as true, Nationstar violated the FDCPA by collecting payoff statement fees that were neither expressly authorized by the agreement creating the debt nor permitted by law.**

Taking as true the facts alleged in the First Amended Complaint, Nationstar violated the FDCPA's prohibition on collecting unauthorized amounts. The FDCPA prohibits debt collectors from "collect[ing] . . . any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). By the statute's own terms, a debt collector can collect an "amount"—here, payoff statement fees—from a consumer in the course of collecting a debt in only two circumstances: if the amount is "expressly authorized by the agreement creating the debt" or if it is "permitted by law." Neither circumstance exists here, so Nationstar violated the FDCPA in collecting the payoff statement fees.

    1. To "expressly authorize[]" a fee, an agreement must explicitly permit its collection; the mere absence of a prohibition is not enough. *See* Black's Law Dictionary 122, 521 (5th ed. 1979) (defining "express authority" as that which is "given explicitly" and "distinguished from authority which is general, implied, or not directly stated"). The agreement creating the debt here does not expressly authorize Nationstar's payoff statement fees. The agreement does not even mention such fees. And the relevant provision of the agreement expressly authorizes only "fees for services performed in connection with Borrower's default," such as "attorneys' fees and

8

property inspection and valuation fees." MJP at 3.³ The provision then says that, for "other fees," the fact that the agreement does not provide "express authority" to charge a specific fee shouldn't be construed as a prohibition on charging that fee. In other words, the agreement recognizes that any such "other fees"—including payoff statement fees—are fees for which the agreement does not provide "express authority."

      2. Nationstar's attempt to justify its collection of payoff statement fees based on Section 1692f(1)'s "permitted by law" prong is similarly unavailing. As the CFPB has previously explained in an Advisory Opinion addressing Section 1692f(1), the "permitted by law" prong means that debt collectors can collect amounts only if those amounts are affirmatively authorized by law. 87 Fed. Reg. 39733, 39734 (July 5, 2022).⁴ Nationstar does not argue otherwise and instead claims that federal law does affirmatively authorize its collection of payoff statement fees. That is wrong.⁵

---

³ The provision reads in full: "**Loan Charges**. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this security instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." MJP at 3.

⁴ Every court of appeals to have analyzed Section 1692f(1)'s "permitted by law" prong agrees. *See Alexander v. Carrington Mortg. Servs.*, 23 F.4th 370, 377 (4th Cir. 2022) (holding that "permitted by law" requires "affirmative sanction or approval"); *Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1111, 1112 (7th Cir. 2008) (holding that a fee was not "permitted by law" where no "law expressly permit[ed]" the fee); *Tuttle v. Equifax Check*, 190 F.3d 9, 13 (2d Cir. 1999) (explaining that charges are not "permitted by law" where state law does not "affirmatively permit[]" them).

⁵ Nationstar also argues that it did not violate Section 1692f(1) because its "expedited payoff quote fees [were not] misleading." MJP at 9. But even if it were true that the fees were not "misleading," that is not relevant to Plaintiff's Section 1692f(1) claim, which is premised on the fees not being expressly authorized by the agreement creating the debt or permitted by law.

Nationstar first relies on provisions of the Truth in Lending Act (TILA) and its implementing regulation, Regulation Z, that exempt fees for fax or courier delivery from the general prohibition on charging payoff statement fees for high-cost mortgages, so long as those fees are no more than an amount "comparable to fees imposed for similar services" for certain non-high-cost mortgages. *See* MJP at 9-10 (citing 15 U.S.C. § 1639(t)(1)(B) and 12 C.F.R. § 1026.34(a)(9)(ii)); *see also* 15 U.S.C. § 1639(t)(1)(A); 12 C.F.R. § 1026.34(a)(9)(i). But, as Nationstar acknowledges, "Plaintiffs' loans are not high-cost loans," MJP 10, making these sections irrelevant. Regardless, even if Plaintiff's loan were a high-cost mortgage, TILA and Regulation Z exempt fees only for payoff statements provided by fax or courier—not fees for any payoff statement "delivered on an expedited basis" as Nationstar claims, *see* MJP at 3. And while the provisions' reference to "comparable" fees may contemplate that servicers charge payoff statements fees delivered by courier or fax for other types of loans, that kind of implicit acknowledgement is not an affirmative authorization as required by the FDCPA to charge fees for those other types of loans. Furthermore, the TILA and Regulation Z exemption is intended to allow servicers to cover the cost of fax or courier delivery, which means that the provisions' reference to "comparable . . . fees for similar services" does not refer broadly to fees charged to transmit payoff statements, but instead to fees charged to deliver any notice by fax or courier.

Nationstar also makes passing reference to Department of Housing & Urban Development (HUD) guidelines, which, for HUD loans, authorize fees for payoff statements transmitted by fax. MJP at 10; *see also* HUD, FHA Single Family Housing Policy Handbook, HUD Handbook 4000.1, https://www.hud.gov/sites/dfiles/OCHCO/documents/40001-hsgh-update15-052024.pdf. It is unclear what relevance this has given that Plaintiff does not allege his loan is a HUD loan or that his payoff statement was transmitted by fax. In any event, the HUD

10

guidelines authorize payoff statement fees in only limited circumstances—where the statement is transmitted via fax or where the servicer has already processed two or more payoff statement requests in the same calendar year—and only in limited amounts (which in no event can exceed $10). *See* HUD Handbook 4000.1 § III.A.1.f.ii.A., at 1171; App'x 3.0, at 1784-85. Thus, even where it applies, the Handbook does not authorize Nationstar to collect a $25 payoff statement fee or to collect a fee of any amount for a non-faxed statement in response to a consumer's first or second request.

### III.   Conclusion

For the foregoing, the court should hold that: (1) Plaintiff's FDCPA claim is not barred by the contractual notice-and-cure provision, and (2) Plaintiff has stated a claim under the FDCPA.

August 5, 2024                                             Respectfully submitted,

Seth Frotman
    *General Counsel*
Steven Y. Bressler
    *Deputy General Counsel*
Kristin Bateman
    *Assistant General Counsel*
Joe Frisone
    *Senior Counsel*
Lauren Gorodetsky
    *Counsel*

/s/ Lauren Gorodetsky
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
(202) 435-7560
lauren.gorodetsky@cfpb.gov