UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

RICARDO SALOM, CATHERINE
PALAZZO as assignee for Ruben Palazzo, and
PETER HACKINEN, *on their own behalf and
on behalf of other similarly situated persons,*

        Plaintiffs,

    vs.

NATIONSTAR MORTGAGE LLC, *et al.*

        Defendants.

Case No. 2:24-cv-00444-BJR

**OPPOSITION TO FREDDIE MAC'S
MOTION TO DISMISS**

## I. CERTIFICATION OF CONFERRAL

The Plaintiffs certify that, through counsel, they conferred with Defendant Federal Home Loan Mortgage Corporation ("Freddie") about its anticipated motion. Plaintiffs identified that the well-pled facts in the Amended Complaint make its planned motion premature and also ignored the ambiguities of paragraph 14 of the Palazzo deed of trust to which Freddie relies. Notwithstanding, Freddie stated it wished to proceed. The Plaintiffs also confirmed that the jurisdictional link to Freddie arises solely from the Palazzo Loan.

## II. INTRODUCTION

Plaintiffs' contract claims against Freddie in this action are in the alternative if it is determined that their unjust enrichment claims against Nationstar cannot proceed. ECF No. 24, Amended Complaint (hereinafter "AC") at ¶¶ 136(o), 142,

Seattle Consumer Justice P.S.
10728 16th Avenue SW
Seattle, WA 98146
206.330.0595

146, 150, 175-188.  By raising its *Merrill* Doctrine defense (albeit prematurely), Freddie's Motion to Dismiss (ECF. 74)(Motion) concedes Nationstar was not permitted to impose and collect fees for payoff statements from the Palazzos and others like them because to do so violated the applicable laws governing the Palazzos' and Freddie's relationship.  The *Merrill* Doctrine defense can only apply if the fees imposed and charged violate the applicable laws. Plaintiffs do not concede under the circumstances presented that there is a basis to apply the *Merrill* Doctrine defense raised by Freddie that it should not be responsible for Nationstar's failure to follow the applicable constitutional provisions and laws that apply to the subject loans.  However, the Court could stay the Plaintiffs' claims against Freddie and the Defendant Class members since the argument and defense raised materially undermine Nationstar's ability to avoid the Plaintiff's' claims for unjust enrichment by acknowledging that the fees at issue are not owed and Nationstar's conduct was in bad faith and violated the applicable law.

Plaintiffs respond *infra* to the Motion should the Court wish to address it at this stage.

### III.  THE MERRILL DOCTRINE IS NOT APPLICABLE TO THIS CASE.

The Supreme Court has described *Merrill* as "the leading case in our modern line of estoppel decisions." *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 420 (1990). Here, Freddie presents an expansive version of the doctrine, claiming it "provides that a federal instrumentality can only be vicariously liable for the acts of its agents or representatives if those acts were actually authorized…" Mot. at 7. Through this capacious claim, it seeks to transform the narrow *Merrill* Doctrine to a broad bar of any liability for junk fees collected by its agent.

Courts generally describe the elements of equitable estoppel as requiring a voluntary representation of one party and detrimental reliance by the other party. *Steele v. Diamond Farm Homes Corp.,* 211 A.3d 411, 421 (2019)*; Leonard v. Washington Emp., Inc.,* 461 P.2d 538, 544 (1969). Several federal courts have applied Pomeroy's "classic and oft-cited statement of the requirements" for establishing an equitable  estoppel claim. *Portmann v. United States*, 674 F.2d 1155, 1164 n. 29 (7th Cir. 1982). That account requires

Seattle Consumer Justice P.S.
10728 16th Avenue SW
Seattle, WA  98146
206.330.0595

that: (i) one party misrepresents material facts; (ii) the misrepresenting party is charged with knowledge of the accurate facts; (iii) the deceived party did not know the accurate facts; (iv) the misleading party intended or should have expected the misrepresentation to cause the deceived party to act; and (iv) that the deceived party acted on the misrepresentation to their detriment. *Id.* If a party establishes the elements of equitable estoppel, it "precludes [the other party] from asserting a claim or defense which might otherwise be available to him." *Id.* at 1158 (citations omitted).

The Supreme Court in *Merrill* held that equitable estoppel generally does not apply to the government when its agents represent that original contracts with the government would extend beyond the scope the government authorized. *Merrill*, 332 U.S. at 382. In *Merrill,* a farmer applied for crop insurance directly from the government under the Federal Crop Insurance Act (FCIA), and an agent for the Federal Crop Insurance Corporation (FCIC) represented (erroneously) that the entire wheat crop qualified for the insurance. *Id.* Because the crop was largely reseeded, it was explicitly excluded from coverage by the FCIA and its implementing regulations. *Id.* After a loss, the FCIC learned that the crops had been reseeded and refused to cover the claim made. *Id.* Knowledge of the regulation on the exclusion was imputed to the farmer because it was clear and not discretionary. *Id.* at 383. Ultimately, the Court held that equitable estoppel was unavailable because the agent's error could not override the statutory and regulatory exclusion. *Id.*

The facts of *Merrill* distinguish it from the issues here. The Palazzos (and similar members of the putative Plaintiffs' Class) did not voluntarily choose, like the farmer in *Merrill* chose to do, to enter into any mortgage contract they have with Freddie but instead entered into contracts with non-government entities which were later assigned the loan to Freddie. AC at ¶¶ 93-94. *See also* Ex. 1 at ¶¶ 5, 9, 12-13. Rather, Freddie acquired the Palazzo Loan from another—i.e. SunTrust Mortgage Inc. (ECF. 20-3; ECF. 20-4)—and as an assignee, it knew that a new "Lender may not charge fees that are expressly prohibited by [the loan's deed of trust] or Applicable Law." ECF. 20-4 at ¶ 14. *Nationstar*

Seattle Consumer Justice P.S.
10728 16th Avenue SW
Seattle, WA 98146
206.330.0595

1    *Mortg. LLC v. Kemp,* 258 A.3d 296, 298 (2021). Further, the Palazzos had no choice in

2    picking either Freddie or any of its agents who service their loans. *Arnett v. Mortg. Elec.*

3    *Registration Sys., Inc*., No. 14-CV-05298-BJR, 2014 WL 5111621, at *7, FN 3 (W.D. Wash.

4    Oct. 10, 2014). In addition, unlike *Merrill*, there is no risk to the 'public treasury' by Plaintiffs'

5    claims against Freddie in this case because Nationstar has indemnified Freddie by virtue of

6    Freddie's agreement with Nationstar for whatever judgment sums are awarded in this action

7    against Freddie. *See also* Ex. 1 at ¶¶ 17-18.

8       Additionally, the servicing rules and regulations that control the actions of mortgage

9    servicers are not explicit like those that apply to crop insurance. In the mortgage servicing

10   relationship Freddie maintains with Nationstar, many of the prescribed servicing duties are left

11   to interpretation. For example, the Freddie guideline it relies upon in the Motion here requires

12   Nationstar to "*comply* with all applicable laws in its servicing of Freddie Mac loans and that it

13   only charge fees to the extent permitted by applicable law." Motion at 9. This guidance

14   appears broad but contingent on the meaning of the phrase "to the extent." Further, Freddie

15   seems to concede a "violation of any state or federal law" would violate this provision. Mot. at

16   10. *See also* Christopher K. Odinet, Modernizing Mortgage Law, 100 N.C. L. Rev. 89, 160

17   (2021).

18       Respectfully*, Merrill*'s bar is limited and its application is limited. *Cf. Montilla v. Fed.*

19   *Nat'l Mortg. Ass'n,* 999 F.3d 751, 756, 759-762 (1st Cir. 2021)(recognizing Freddie is not a

20   government actor and even if it were in some instances an entity with some government

21   responsibility may not be a "government actor for all purposes"); *U.S. ex rel. Adams v. Aurora*

22   *Loan Servs., Inc.*, 813 F.3d 1259, 1262 (9th Cir. 2016)(same); *H. Landau & Co. v. United*

23   *States*, 886 F.2d 322, 324 (Fed. Cir. 1989), *as amended on reh'g* (Dec. 11, 1989)(holding

24   "implied actual authority, like expressed actual authority, will suffice" for holding a

25   government entity responsible for acts and conduct at issue). *See also United States v.*

26   *Georgia-Pac. Co.*, 421 F.2d 92, 100–01 (9th Cir. 1970)(where the Court collects cases in FNs

    17 and 18 holding exceptions to *Merrill* where equitable

Seattle Consumer Justice P.S.
10728 16th Avenue SW
Seattle, WA 98146
206.330.0595

estoppels may be found against the government when its acting in a proprietary basis (like acquiring mortgages on the secondary mortgage market) and its representative was acting within the scope of its vague authority).[1]   And, as with other equitable estoppel claims, when *Merrill* actually applies, it limits the scope of the government's affirmative duties after its agents make misrepresentations that are detrimentally relied on by another party. This means that *Merrill* provides the government some ability to limit the extent of business it enters— preventing its agents from binding it to contract terms not authorized by Congress.  But besides that exception, once the government is involved in business that Congress has authorized, the *Merrill* Doctrine has nothing to say about the government's liability for the harmful actions by it or its agents.  Sovereign immunity, the Federal Tort Claims Act, or other bodies of law may affect the government's liability, but *Merrill* offers no such protection against subsequent *unrelated* liability.

Here, the subject Freddie acquired expressly incorporated Maryland law (where the Palazzos live and where the Palazzo Property is located).  ECF. 20-4 at Definition of Applicable Law.  Under Maryland's constitution, the Palazzos' right to a remedy for Freddie's breach of their contract—charging and collecting sums not authorized by the contract—is enshrined as a fundamental, state right.  MD. CONST. DECL. OF RTS. ART. 19 ("That every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the Land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the Land"); *Doe v. Doe*, 747 A.2d 617, 624 (Md. 2000).

*Merrill* did not apply the law of the state where the contract was made like the contract at issue here (Justice Black Dissenting Op., 332 U.S. at 386), it concerned a contract made directly with a Federal agency at its origination.  332 U.S. at 382.  *Merrill* also did not, like this action, involve an assignee who voluntarily acquired the contract by assignment.  AC at ¶¶ 2-3,

---

[1]       Here, Nationstar argues it was granted authority to collect the fees Freddie disclaims. *Cf.* ECF. 37 at Pages 7-10'

94, 178.  The Maryland Supreme Court (f/k/a the Maryland Court of Appeals) previously

explained that Fannie Mac as a mortgage assignee could not escape the contractual duties owed

under the contract it acquired which incorporated Maryland laws and barred the junk fee in that

action at issue.  *Kemp*, 258 A.3d at 319.  There is no basis under Maryland law and this

precedent permits a different result for Freddie here.  Further, any ambiguities in the contracts

on the controlling laws are construed against Freddie as the assignee of the originator.  *Id.* at

320, FN 52.  *See also* Ex. 1 at ¶¶ 10-11.  If Freddie wished to have greater rights, then it should

have modified the loan in writing and in agreement with the Palazzos since that is a basic

requirement under Maryland law.  Md. Code Ann., Real Prop. § 5-103; *Markoff v. Kreiner*, 23

A.2d 19, 25 (1941).  *See also* Ex. 1 at ¶ 10.  But as an assignee, Freddie simply cannot usurp

greater rights than its predecessors had in the loan it voluntarily acquired on the secondary

market.  *Kemp*, 258 A.3d at 310.

The Fourth Circuit also recognized this same principle in *Epps v. JP Morgan Chase

Bank, N.A.*, 675 F.3d 315 (4th Cir. 2012).  In *Epps*, Chase voluntarily acquired on the

secondary market a consumer debt after its origination.  *Id.* at 318.  That contract expressly

stated it was "subject to" Maryland law.  *Id.*  Later, the borrower defaulted on the debt and

Chase repossessed the vehicle but related to the repossession it did not comply with the

requirements of Maryland law incorporated into the contract and the borrower commenced an

action against Chase for damages pursuant to those Maryland laws.  *Id.* at 318-19.  Chase

responded by claiming Maryland law was preempted by Federal law and it could not be

accountable for the state law violations (including breach of contract) as a result.  *Id.* at 319.

Relevant to Freddie's argument here, the court recognized that Chase as the assignee to a

"contract contain[ing] an explicit election of …Maryland [law]…is bound by [the] choice" of

the original lender and party to the contract.  *Id.* at 328.  This holding is entirely consistent with

the Maryland Supreme Court's more recent restatement of longstanding Maryland law and

precedent that an assignee to a contract stands in the shoes of the assignor and has no greater

rights than the assignor had to give it.  *Kemp*, 258 A.3d at 310.

Seattle Consumer Justice P.S.
10728 16th Avenue SW
Seattle, WA  98146
206.330.0595

*See also Adams*, 813 F.3d at 1261 (The FHFA's conservatorship of Fannie Mae and Freddie Mac does not transform Fannie Mae and Freddie Mac into federal instrumentalities. It only "gives the FHFA *their* rights, titles, powers and privileges, not the other way around.")

The impact of accepting Freddie's expansion of the *Merrill* Doctrine and therefore exempting or excusing Freddie (and Fannie) from claims arising from a breach of the contracts they acquired—which represents about 50% of the entire secondary mortgage market in the United States—would sanction Freddie and Fannie to avoid any consequence to a breach of their contractual allegations with borrowers. This conclusion is against the weight of longstanding common law about the right to even the most basic of remedies "that [even] a request for nominal damages" available to a "plaintiff's claim is based on a completed violation of a legal right" like a breach of contract. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 141 S. Ct. 792, 801–02 (2021).

Under this governing law to the relationship between the Palazzos and Freddie, the general argument of Freddie to be excused from this action under the *Merrill* Doctrine (and for the other grounds stated *infra*), should be disregarded.

### III. Secondary Mortgage Market Entities Control Nearly All Mortgage Loans; Applying the Merrell Doctrine to the Well Pled and undisputed Facts Before the Court at this Stage Would be Error

Courts recognize that secondary mortgage actors like Freddie (and Fannie) control and own a majority of mortgage loans in today's complex marketplace by purchasing loans from others which creates greater liquidity to make more loans by others.[2] In the case of Freddie, Congress knew that such a secondary market was necessary for the express purpose of "increase[ing] the availability of mortgage credit for the financing of urgently needed housing…" UNITED STATES STATUTES AT LARGE, PL 91-351, July 24, 1970, 84 Stat.

---

[2]     *See e.g. Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 557  (2017).; *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 60 F. Supp. 3d 479, 489 (S.D.N.Y. 2014), *aff'd sub nom.*, 873 F.3d 85 (2d Cir. 2017).

Seattle Consumer Justice P.S.
10728 16th Avenue SW
Seattle, WA  98146
206.330.0595

450.

Notwithstanding this understanding of the mortgage marketplace, the collective argument of the Defendants' competing motions (ECF. 37; ECF. 74) invites the Court to simply disregard Freddie's business and conclude it may be excused, directly or indirectly, from any duty it agreed to in the mortgage contracts it voluntarily elected to purchase. That argument and result is simply disingenuous and misleading. Freddie's stated mission on its website claims that it "serve[s] America's homebuyers, homeowners and renters by equitably providing liquidity, stability and affordability to the housing market." Our Mission (freddiemac.com)(last visited September 27, 2024). Charging and collecting junk fees or any sums barred by law and written contract through agents it selects and approves—like Nationstar in this case—cannot be "equitable" by any stretch of the imagination at this stage of the proceedings (without Freddie filing any Answer or with any discovery having occurred). Further, equitable considerations cannot trump or disregard statutory or law requirements. *I.N.S. v. Pangilinan*, 486 U.S. 875, 883 (1988). In addition, Maryland law has also long recognized "a general rule of equity that 'no one shall avail himself of a law made for his protection, so as to injure another, and especially, not to enrich himself at his expense.'" *Boehm v. Boehm*, 34 A.2d 447, 453 (1943)(cleaned up).

Freddie "routinely acquires loans from others…[including the] Palazzo Loan." AC at ¶ 3; AC at ¶ 93 ("The Palazzo Loan was later assigned and sold to Freddie…and [it] subsequently engaged a series of collectors to act as the mortgage servicer of the Palazzo Loan on its behalf. Relevant to this action, Nationstar…became the servicer of the Palazzo Loan on or about June 1, 2022"). "Freddie…simply stands in the shoes of others and is bound by the terms and conditions of the contracts it acquires and is entitled to no greater rights as an assignee than its assignors had to give it." *Id. See also Kemp*, 258 A.3d at 310. Freddie is the "mortgage lender or noteholder" and "party to the Uniform Mortgage documents between the borrower and the owner of the loan." AC at ¶ 11. "The Uniform Mortgage agreed to by [the Palazzos] does not expressly authorize…[the] Payoff Fees" at

issue in this action which actually "violate multiple uniform provisions..." AC at ¶ 68. Freddie's "model language" in the mortgage agreements it acquires "contain uniform covenants" which bar charging a borrower any "fees that are expressly prohibited by the mortgage or applicable law." AC at ¶ 72; ECF. 20-4 at ¶ 14. No Maryland law or contract expressly authorizes Freddie to directly or indirectly impose, collect, or attempt to collect any Payoff Fee from the Palazzos. AC at ¶¶ 99-100. But as Freddie's collector, Nationstar did just that (as well as "unspecified 'LENDER PAID EXPENSES." AC at ¶¶ 103-109.[3]

Freddie has the "means and ability" to supervise Nationstar "to ensure all such work, including the imposition and collection of Payoff Fees was expressly allowed by contract or law. However, notwithstanding that ability and means and methods to ensure such compliance [under the law]…Freddie…elected to ratify Nationstar's unfair, deceptive or abusive conduct by turning a blind eye in reckless indifference to its fee harvesting program to collect Payoff Fees…" AC at ¶180. Freddie "[also]…ha[s] an appreciation of Nationstar's overall pay-to-pay practices since they have been involved in this conduct with many actions across the country including those identified herein. Yet, even with this appreciation, Freddie…choose not to investigate Nationstar's conduct related to the fee at issue [here], which is simply another variation of its pay-to-pay fee harvesting practices. Such an election constitutes another example of the ratification of Nationstar's conduct…by Freddie…" AC at ¶181. *See also* AC at ¶¶ 7-8, 182. "Freddie…ha[s] never required Nationstar to stop its payoff statement fee harvesting practice even though they claim to require Nationstar to fix all problems caused by it…This failure also constitutes a ratification by Freddie…of Nationstar's conduct which amounts to a breach of the mortgage agreements between (i) Plaintiffs and members of the

---

[3] Freddie's conflicting position is that even though the well-pled facts show it turned a blind eye to its agent's unlawful fee-harvesting program on its behalf, it cannot be held accountable under the *Merrill* Doctrine. MTD at 7-8. However, it also claims its standard loan documents authorized the junk fees. MTD 11-14. But it fails to acknowledge Maryland's controlling law from *Kemp* which is dispositive of the Palazzos' breach of contract claim (discussed *supra*) to which it cannot disclaim knowledge since its counsel in this case served as counsel for Fannie Mae in *Kemp* where it made these same arguments and lost.

Seattle Consumer Justice P.S.
10728 16th Avenue SW
Seattle, WA 98146
206.330.0595

Plaintiffs' Class and (ii) Freddie…" AC at ¶183. Finally, before Freddie was added to this action, Mrs. Palazzo sent it a notification about Nationstar's conduct and practice on its behalf and Freddie did not respond in a reasonable time (AC at ¶ 108) and still has not responded (Ex. 1 at ¶¶ 6-8) thus exemplifying its ratification of Nationstar's practices and conduct at issue. *See also* AC at ¶ 187.

Courts applying *Merrill* have recognized a high bar for establishing estoppel against the government, but in analyzing estoppel claims against the government they still recognize that similar elements to standard equitable estoppel claims apply. *See Portmann*, 674 F.2d at 1164 n. 29 (applying Pomeroy's cited-above definition of estoppel); *Fredericks v. Comm'r Internal Revenue*, 126 F.3d 433, 449 (3d Cir. 1997) (stating that in addition to traditional equitable estoppel, there are other "factors…we should consider before estopping" the government). Here, the Plaintiffs are not pursuing equitable estoppel or any analogous arguments that Freddie or its agents misrepresented the extent of protections or duties in their loans. Instead, the Plaintiffs are suing Freddie, in the alternative to their common law unjust enrichment claim against Nationstar, based upon a breach of contract theory since Freddie is the owner of Palazzo's loan and hundreds of loans of the putative class members that are serviced by Nationstar. AC at ¶¶ 136(o), 142, 146, 150, 175-188. Under Freddie's theory, when combined with Nationstar's arguments in its pending motion (ECF. 37), a borrower may never be able to bring a breach of contract claim against the government entity who purchased their loan after the fact when that entity engages others to act on its behalf and they elect to collect junk fees not authorized by contract or law. Respectfully, the *Merrill* Doctrine does not favor such a "novel rule" to take away any claims a residential mortgage borrower may have against the party who buys their mortgage loan (and those borrowers had no choice in Freddie's acquisition). *Cf. Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022)(holding "a court may not devise novel rules to favor arbitration over litigation").

Plaintiffs recognize a few federal courts have applied *Merrill* in tort cases. Often, the doctrine seems to apply when courts confront torts of

Seattle Consumer Justice P.S.
10728 16th Avenue SW
Seattle, WA  98146
206.330.0595

misrepresentation that are effectively indistinguishable from equitable estoppel. In *Faiella*, the First Circuit found that the plaintiff's common-law claims of deceit and negligent misrepresentation were "inextricably tied to duties derived from the appellant's contractual relationship with Fannie Mae" and "based on representations allegedly made by [the agent's] personnel." *Faiella v. Fed. Nat'l Mortg. Ass'n*, 928 F.3d 141, 150 (1st Cir. 2019); "Seen in this light," the court reasoned, "construing the Merrill doctrine to preclude contract claims while allowing parallel contract-based tort claims would be both incongruous and mischievous– an open invitation to gamesmanship." *Id*. *See also Nelson v. Nationstar*, 504 F. Supp. 3d 1307 (S.D. Ala. 2020) (similar holding in case involving misrepresentations related to contracting). Other courts have refused to join in these excursions, wiping out wholesale claims without any reasonable opportunity for some targeted discovery or circumstances presented to properly consider the doctrine's application to the dispute presented. *Cf. Hartley-Culp v. Green Tree Servicing, LLC*, 52 F. Supp. 3d 700, 704-05 (M.D. Pa. 2014); *see also Selene Fin., LP v. MacDougall*, 67 Conn. L. Rptr. 852 (Conn. Super. Ct. 2019) ("the [*Merrill*] doctrine set forth therein does not apply so as to bar the defendants' setoff and counterclaims, to the extent they do not implicate estoppel.").

In addition, the cases that stretch *Merrill* have generally failed to analyze whether the underlying logic of *Merrill* applies outside its original context. For example, in *Faiella,* the First Circuit accurately recognized "separation of powers" and "appropriate protection of the public fisc" as the justifications underlying *Merrill*. 928 F.3d at 147. But the court then erred by overstating *Merrill*'s breadth and proclaiming—without any analysis—that while "[i]n this circuit, the Merrill doctrine has been applied primarily when a party asserts that the federal government should be equitably estopped from raising the defense that the acts of its agents were unauthorized.... It is abundantly clear ... that the principle that the federal government cannot be held liable for its agents' unauthorized acts is not limited to cases arising in such a posture." *Id*. at 147 n. 7.

Freddie provides for specific and continuing

Seattle Consumer Justice P.S.
10728 16th Avenue SW
Seattle, WA 98146
206.330.0595

governance of Nationstar. Ex. 1 at ¶¶ 17, 19 and Ex. 1-B. The nature of the relationship and Freddie's policing (or lack of policing) of Nationstar's activities became relevant and also requires discovery. Ex. 1 at ¶ 21 and Ex. 1-A. Freddie has a long-standing policy of requiring its servicers to comply with all laws and here there is a question of fact, based on the limited pleading before the Court, as to what Freddie does to ensure such compliance. Ex. 1 at ¶ 16 & Ex. 1-A. In addition, the Plaintiffs also identified factual issues relating to whether Freddie ratified the actions of Nationstar by allowing the charges without objection and including them in payoff statements sent to borrowers.[4]

  Maryland law controls the contractual relationship between Freddie and the Palazzos. ECF. 20-4 at Definition of Applicable Law. And that law recognizes that a principal may be responsible for the acts of its agent—even when unauthorized—by virtue of ratification. *Tower Oaks Blvd., LLC v. Procida*, 219 Md.App. 376, 405 (2014)(cleaned up)("Under the doctrine, when an actual or apparent agent purporting to act on behalf of a principal did not have authority to act, the principal later may approve the unauthorized act…Thus, the act, although done without authority, becomes binding on the principal who subsequently approves it…"). *See also Smith v. Merritt Sav. & Loan, Inc.*, 295 A.2d 474, 481 (1972)("It is well settled in Maryland and generally that the liability of a ratifying principal, after knowledge of all of the relevant facts, is not limited to the extent of the benefits retained by him because the principal cannot ratify a transaction in part and repudiate it as to the rest. The principal must either adopt the whole transaction or none at all"); *Progressive Cas. Ins. Co. v. Ehrhardt*, 69 Md. App. 431, 441–42 (1986).[5]

---

[4] Similarly, Freddie never addresses or demonstrates that Plaintiffs' claims do not fit within the "affirmative misconduct exception" which would also apply to the Freddie.

[5] Washington law on ratification is in accord. *See e.g. National Bank of Commerce v. Thomsen,* 80 Wash.2d 406, 413, 495 P.2d 332 (1972) ("Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him.*"); Riss v. Angel*, 131 Wash. 2d 612, 636, 934 P.2d 669, 683 (1997) (When a principal, with full knowledge of an unauthorized act of his agent, does not take steps to repudiate the

Seattle Consumer Justice P.S.
10728 16th Avenue SW
Seattle, WA 98146
206.330.0595

In addition to the fact question about whether Freddie ratified Nationstar's wrongful conduct and should be precluded from raising a *Merrill* Doctrine defense, a progeny of case law also recognizes an "affirmative misconduct exception" to its application. *Faiella*, 928 F.3d at 150. *See also Nelson,* 504 F. Supp. 3d at 1327 ("the affirmative misconduct exception would apply only in the presence of affirmative misconduct by the instrumentality (*i.e.*, Freddie Mac), not the agent (*i.e.*, Nationstar)"). The statutory duty that prohibits charging payoff statement fees for a mortgage loan owned by Freddie is a non-delegable duty. 16 M.L.E. Negligence § 17. Therefore, based upon the well-pled facts of Plaintiffs' Amended Complaint, Freddie's misconduct and willful blindness preclude its argument at this early stage. *Kemp*, 258 A.3d 296, 322.

In *Denton v. Nationstar Mortg. LLC*, the court considered the *Merrill* Doctrine arguments and the affirmative misconduct exception and recognized that "[u]nder traditional concepts of agency or contract law, "the government is ordinarily bound by the authorized acts of its agents…Such authorization must be express or implied." No. 18-CV-241-GKF-JFJ, 2020 WL 1917486, at *4–6 (N.D. Okla. 2020). The *Denton* court relied on a discovery record before it when it denied Fannie's motion finding "a genuine issue of material fact exists as to whether Fannie… and Seterus had a principal/agent relationship wherein Seterus acted on Fannie['s] behalf and subject to Fannie['s] control." *Id.* at *6. In addition, the *Denton* court recognized that "the agency inquiry focuses on the entire relationship between the principal and the agent—not simply the acts in question." *Id.* at *5. *See also Thomas v. Green Tree Servicing LLC*, No. 2:15-CV-1309-RSL, 2019 WL 2224922, at *5 (W.D. Wash. May 23, 2019)(ordering in light of *Merrill* Doctrine defense advanced by Freddie, that discovery was permitted "to establish an agency relationship between Freddie Mac and [is servicer]"); *Nelson*, 504 F. Supp. 3d at 1327 (granting summary judgment on the *Merrill* Doctrine when the "record is devoid of evidence (or even allegations) of any affirmative misconduct by Fannie Mae"); *Akowskey v. Nationstar*

---

unauthorized act, accepts benefits from the act, or without inquiry assumes the obligation imposed, it ratifies the act.)

Seattle Consumer Justice P.S.
10728 16th Avenue SW
Seattle, WA 98146
206.330.0595

*Mortgage, LLC*, No. 21-CV-14487, 2022 WL 3718165, at *10 (S.D. Fla. Aug. 5, 2022), *report and recommendation adopted*, No. 21-14487-CIV, 2022 WL 3715793 (S.D. Fla. Aug. 29, 2022)(rejecting Fannie's *Merrill* Doctrine arguments without sufficient evidence and opportunity for discovery to understand its ratification of Nationstar's illegal conduct after it was put on notice of the illegal fees and sums sought to be collected).

In light of these fact issues, Freddie's motion based upon the *Merrill* Doctrine is premature without some discovery and thus, the Motion should be denied.

## IV. PALAZZO HAS STATED AN ADEQUATE BREACH OF CONTRACT CLAIM AGAINST FREDDIE

In the alternative to its Merrill Doctrine arguments, Freddie moves to dismiss the Plaintiffs' alternative claims for breach of contract (which is not necessary if the Plaintiffs obtain relief from Nationstar on their unjust enrichment claims). Mot. at 11-15. *See also* § II supra. "[F]or breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation…" *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (2001)(cleaned up).

Mrs. Palazzo has pled the required elements that Freddie has a contractual obligation not to charge fees prohibited by law. AC at ¶¶ 25, 99-100, 107, 177-178, 188; ECF. 20-4 at ¶ 14. And in fact, Freddie's agent breached that promise on its behalf by charging and collecting from the Palazzos (and hundreds of others like them) fees for payoff statements which are expressly barred by law. AC at ¶¶ 112, 185. 187. The contractual relations, like those at issue in this action are settled. *Kemp*, 258 A.3d at 299–300. Further, a mortgage assignee is bound "by the…terms of the deed of trust to which it is now a party." *Wells Fargo v. Neal*, 922 A.2d 538, 546 (2007).[6] Here, the contractual provision at issue provides "**[l]ender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.**" *Kemp*, 258 A.3d at 305 (emphasis in original); ECF. 20-4 at ¶ 14. And in this case, just like in

---

[6] Not relevant to this case, an assignee may, however, be exempt between itself and the borrowers from claims arising from ¶ 9(b) of an FHA Deed of Trust. 922 A.2d at 546.

Seattle Consumer Justice P.S.
10728 16th Avenue SW
Seattle, WA 98146
206.330.0595

*Kemp*, the defined term "Applicable Law" is broad and includes the appellate decision in *Kemp* as well as statutes and regulations such as 15 U.S.C. § 1692f(1), MD. CODE ANN., COM. LAW § 14-202(11), and 12 C.F.R. § 1026.36(c)(3) (which govern, directly and indirectly, the right of borrowers to obtain payoff statements and not be charged for the statement).[7] "If there [is] any ambiguity in how the provisions in the deed of trust…should be construed, under ordinary contract principles, they would be construed against the drafters – [and] in this case [their assignees" who stand in their shoes. *Kemp*, 258 A.3d at 301 & 320, FN52.

Based upon the foregoing, Mrs. Palazzo has stated a clear contract claim against Freddie for charging and collecting fees barred by law which Freddie Mac was not permitted to charge, directly or indirectly through another. ECF. 20-4 at ¶ 14. It's Motion is premature at this stage.

## V. CONCLUSION

Based upon the foregoing Freddie's Motion should be denied. If the Court believes the allegations are deficient, the Plaintiffs request leave to file a Second Amended Complaint to cure.

DATED September 30, 2024.

     /s/ Phillip R. Robinson_____
Phillip R. Robinson (admitted *Pro Hac Vice*)
Consumer Law Center, LLC
10125 Colesville Road, Ste 378
Silver Spring, MD 20901
301-448-1304
*phillip@marylandconsumer.com*

     /s/ Christina L. Henry_____
Christina L Henry, WSBA 31273
SEATTLE CONSUMER JUSTICE, P.S.
10728 16th Ave SW
Seattle, WA 98146
206-330-0595 Fax 206-400-7609
*chenry@hdm-legal.com*

---

[7] Plaintiffs have discussed these provisions in prior papers before the Court. *See e.g.* ECF. 47. *Cf.* ECF. 54.