UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

RICARDO SALOM, CATHERINE
PALAZZO as assignee for Ruben Palazzo, and
PETER HACKINEN, *on their own behalf and
on behalf of other similarly situated persons,*

        Plaintiffs,

     vs.

NATIONSTAR MORTGAGE LLC, *et al.*

        Defendants.

Case No. 2:24-cv-00444-BJR

**AFFIDAVIT OF
CATHERINE PALAZZO**

    I, CATHERINE PALAZZO, proposed Plaintiff and Class Representative, being of lawful age, deposes and states the following:

1. I am over 18 and competent to testify to the following facts. I have personal knowledge of the facts set forth herein.

2. In this action I have asserted certain legal claims against Defendant Nationstar Mortgage LLC and, in the alternative, a contract claim against Defendant Federal Home Loan Mortgage Corporation more commonly known as Freddie Mac.

Seattle Consumer Justice P.S.
10728 16th Avenue SW
Seattle, WA 98146
206.330.0595

3. I reside in Pittsville, Wicomico County, Maryland, where I own a home with my husband at 34811 Old Ocean City Road.

4. My home is subject to a mortgage loan and is secured by a Deed of Trust in which I am identified as a borrower. My husband Ruben Palazzo and I agreed to the terms of the loan offered by SunTrust Mortgage LLC for our personal, family use of the family home.

5. Sometime after we took out the mortgage loan to our home, it was assigned and apparently sold to Freddie Mac, who then engaged a series of collectors to act as the mortgage servicer of the loan on its behalf thereafter. Nationstar d/b/a RightPath became the servicer of our loan in 2022 but it did not disclose its role as the servicer of the loan until more than eight months after the fact and only in response to a dispute we sent to it. In that same correspondence dated February 24, 2023, Nationstar stated in writing that its "records indicate that the Federal Home Loan Mortgage Corporation (Freddie Mac) as owner" of our loan.

6. Before filing the Amended Complaint in this action in response to Nationstar's opening arguments and admissions, I wrote to Freddie Mac, as the owner of my loan, about Nationstar's practice of imposing and collecting fees to obtain a payoff statement. According to the United States Postal Service, Freddie Mac received that written grievance.

7. I specifically asked Freddie Mac in my grievance, described in the previous paragraph, if it believed it had a right to charge us and others like us fees for payoff statements through Nationstar and to let me know why it believed it had such a right.

Seattle Consumer Justice P.S.
10728 16th Avenue SW
Seattle, WA  98146
206.330.0595

8.  Freddie Mac never responded (reasonably or otherwise) to my grievance letter before the filing of the Amended Complaint in this action. Nor has Freddie Mac provided any response of any kind to my grievance letter since it has hired counsel in this case.

9.  My husband and I agreed to loan terms with SunTrust when we took out the loan. We did not believe then that we were seeking or agreeing to a loan with any government agency.

10. In our deed of trust with SunTrust, we specifically agreed that "[SunTrust] may not charge fees that are expressly prohibited by [the deed of trust] or by the Applicable Law." ECF. 20-4 at ¶ 14. At no time since we signed the deed of trust, have my husband and I agreed to any modification of this provision in writing signed by us and the owner of our loan. In the deed of trust, it was also agreed that the "Applicable Law" applied to the loan includes various Maryland and Federal constitutional protections and laws which my counsel has presented to the Court. Neither my husband nor I have ever agreed to any modification of the deed of trust which states these such laws do not now apply to the loan and our relationship with Freddie Mac or its collector Nationstar.

11. SunTrust drafted the deed of trust agreed to by my husband and I when we took out our loan, including the provisions which defined the "Applicable Law" governing the loan and the fee bar stated in the previous paragraph.

12. I understand now that Freddie Mac voluntarily chose to purchase our loan at some time after the origination of the loan, but I was never provided timely notice of when that actually occurred.

13. I do not know the specific terms and conditions of Freddie Mac's conditions to acquire the loan after it originated. I do know when I agreed to the loan terms with SunTrust that

Seattle Consumer Justice P.S.
10728 16th Avenue SW
Seattle, WA 98146
206.330.0595

neither Freddie Mac or the government were involved as a party to the loan which included just SunTrust (as Lender), and my husband and I (as borrowers). Put another way, we never voluntarily agreed to enter into a mortgage contract with the Federal government but agreed to a loan with SunTrust as a private mortgage company.

14. Neither my husband nor I had any control over Freddie Mac's election to retain Nationstar as the collector on our loan.

15. From its pending motion to dismiss, I understand that Freddie Mac seeks to be dismissed from this action based upon its factual contention that it did not authorize Nationstar to impose and collect fees for payoff statements as alleged in the Amended Complaint and any claims against it for the acts of its agent Nationstar should otherwise be excused or avoided—notwithstanding the applicable laws governing our loan as presented to the Court in our papers before it. It is not clear to me based upon the facts described herein and in the Amended Complaint, how Freddie Mac should, under the early circumstances of this action, be excused from the case based upon Nationstar's conduct undertaken on its behalf.

16. According to public testimony published on the Federal court system PACER in the matter of _Schneck v. Suntrust_ (Case No. 1:11-cv-01878-CCB, ECF. 73-6), Freddie Mac's authorized corporate designee long ago testified in another proceeding between borrowers and a servicer of a Freddie Mac mortgage loan that Freddie Mac expects servicers acting on its behalf in relation to residential mortgage loans to comply with all Federal and State laws related to mortgage servicing on loans it purchases and owns from others (just like its relationship with Nationstar in this action). Ex. A, Dep. Pages 23:18 to 25:20; 30:9-15. Pursuant to Federal Rule of Evidence 201, I request the Court

take judicial notice of Freddie Mac's consistent position in similar litigation which is relevant to the any inconsistent positions taken by the Defendants in this action and the premature defense raised by Freddie Mac's pending motion to dismiss.

17. From Freddie Mac's publicly available guidelines with all servicers it engages, available at   Freddie Mac Single-Family Seller/Servicer Guide PDF (Freddie Mac Servicing Guide), I am aware that Freddie Mac and Nationstar have agreed that Nationstar has indemnified Freddie Mac by their contract "and hold[s] it harmless for any loss, damages or expenses (including court costs and attorney fees) that Freddie Mac sustains as a direct or indirect result of any failure" by Nationstar to comply with its obligations.  *See e.g.* Ex. B (excerpts of the Freddie Mac Servicing Guide) at § 8101.9.  Nationstar is also "responsible for providing payoff amounts to individual Borrowers or their agents and is liable to Freddie Mac for any errors in the amount of any payoff.  The Servicer agrees to hold Freddie Mac, its successors and assigns, harmless from and against any and all losses, claims, demands, actions, suits, damages, costs and expenses (including reasonable attorney fees) of every nature and character that may arise or be asserted against or be incurred by Freddie Mac as a result of the Servicer's failure to comply with applicable law." *See e.g.* Ex. B. at § 8103.6(a).

18. Based upon the broad agreement between Freddie Mac and Nationstar identified in the previous paragraph, as well as other provisions of the servicing guide, there does not seem to be any material risk to Freddie Mac or any government entity for a judgment in this case (if necessary) entered against Freddie Mac having any material impact on the taxpayers as Nationstar will be the ultimate party responsible to pay any judgment imposed or granted against Freddie Mac (if that is even necessary) in this case.

Seattle Consumer Justice P.S.
10728 16th Avenue SW
Seattle, WA  98146
206.330.0595

19. According to the Freddie Mac Servicing Guide, Freddie Mac also retains the right and duty to review Nationstar's work on its behalf (that is related to this case) including:

   a.  Requiring Nationstar to report to Freddie Mac timely report payoffs of Freddie Mac-owned loans within two business days of its receipt of the payoff.  Ex. B at § 8303.9.

   b.  Requiring Nationstar to "maintain accurate records for Freddie Mac's review and inspection of the actual principal reductions and adjustments made to correct any reporting errors." Ex. B at § 8305.5.

   c.  Requiring Nationstar to agree that related to its compensation received for the right to collect on Freddie Mac owned loans "that it does not retain any rights or legal ownership interest in such compensation or any portion of the interest or other amounts due or received from the Borrower under the terms of the Mortgage." Ex. B at § 8105.1.

20. Pursuant to Federal Rule of Evidence 201, I request the Court take judicial notice of the provisions described in the previous paragraphs (and reproduced in Exhibit B hereto) when considering the defenses raised by Freddie Mac's pending motion and the current context of the case and disputes between the parties.

21. Based upon the well-pled and detailed allegations of the Amended Complaint and those facts identified and verified in this affidavit, my counsel and I are unable (without some material discovery from Freddie Mac and Nationstar)[1] to reasonably identify and present

---

[1]    Nationstar only provided its initial discovery responses to my counsel on September 27, 2024 and that initial disclosure largely based upon a series of boilerplate objections.  Freddie Mac has also not provided its initial disclosures in the case as required by Rule 26 and the Court's

Seattle Consumer Justice P.S.
10728 16th Avenue SW
Seattle, WA  98146
206.330.0595

to the Court evidence at this early stage of the proceedings to rebut Freddie Mac's conclusory defense that it cannot be responsible for the acts of Nationstar on its behalf. Specifically such evidence and discovery is necessary to confirm: (i) Freddie Mac's knowledge and appreciation of Nationstar's various fee practices and what steps if any it has it taken to bar Nationstar from continuing those practices undertaken on its behalf as its collector of my loan and the loans of other borrowers like me, including the pay-to-pay fee at issue in this action which is similar in nature to other fees subject to prior actions against Nationstar (*see e.g.* AC at ¶ 7); (ii) whether Freddie Mac has taken any action after receiving my grievance or otherwise to repudiate in whole or in part Nationstar's fee practices at issue in this action or has elected to ratify the practice by doing nothing; and (iii) the scope of the relationship between Freddie Mac and Nationstar related to my loan (to which Nationstar seems to misrepresent to this Court it owns [ECF. 35 at ¶ 94] but Freddie Mac seems to disavow [ECF. 74 at Page 5 and Page 15, FN 7].

Case Management Order. If the Parties cannot resolve these issues, I reserve the right to present the Court with an appropriate motion concerning Nationstar's largely non-responses at a later stage.

Seattle Consumer Justice P.S.
10728 16th Avenue SW
Seattle, WA  98146
206.330.0595

I SWEAR OR AFFIRM UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS ARE TRUE TO THE BEST OF MY KNOWLEDGE, INFORMATION, AND BELIEF.

ID Mfv98CaXJtaLUz7gyL99eHgN

9/29/2024

_____
Catherine Palazzo

Dated _____

Seattle Consumer Justice P.S.
10728 16th Avenue SW
Seattle, WA  98146
206.330.0595

# EXHIBIT 5

Exhibit A
to
Palazzo Affidavit

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

(Northern Division Baltimore)

```
----------------------------------------+
BRIAN SCHNECK, RONA SCHNECK,            :
              Plaintiffs,               :
                                        :
                                        :
vs.                                     :CASE NUMBER
                                        :11-CV-01878-CCB
SUNTRUST MORTGAGE, INC.,                :
              Defendant.                :
----------------------------------------+
```

COPY

March 9, 2012


        PURSUANT TO NOTICE, the following deposition

of DONNA BRANDVEEN, was taken before me, Janie Arriaga,

Notary Public, in and for the Commonwealth of Virginia,

at 8200 Jones Branch Drive, McLean, Virginia 22102,

commencing at approximately 2:10 p.m., when were present

on behalf of the respective parties:

Elite Reporting Company, Inc.          800-734-3337
67 Saint Andrews Road          Severna Park,     Maryland 21146

Brandveen, Donna

**March 9, 2012**

2 (Pages 2 to 5)

| Page 2 | |
|---|---|

**• • • •**

1
2  Appearances,
3          PHILLIP ROBINSON, ESQUIRE
4          Civil Justice Inc.
5          520 West Fayette Street, Suite 410
6          Baltimore, Maryland 21202
7              On Behalf of the Plaintiff
8
9          TODD M. REINECKER, ESQUIRE
10         Miles and Stockbridge P.C.
11         10 Light Street
12         Baltimore, Maryland 21202-1487
13             On Behalf of the Defendant
14
15         TIFFANY JOSEPH, ESQUIRE
16         Federal Home Loan Mortgage Corporation
17         8200 Jones Branch Drive
18         McLean, Virginia 22102
19             On Behalf of the Witness
20
21

| Page 3 | |
|---|---|

1              **I N D E X**
2  WITNESS                          PAGE
3  DONNA BRANDVEEN
4  Examination by Mr. Robinson           4
5  Examination by Mr. Reinecker         111
6
7
8              **E X H I B I T S**
9  Number 18   Subpoena                 9
10 Number 19   Corporate documents      18
11 Number 20   December 6 letter from SunTrust   102
12 Number 21   October 1 letter from SunTrust    103
13
14             (NOT ATTACHED)
15
16
17
18
19
20
21

| Page 4 | |
|---|---|

1  Whereupon,
2              DONNA BRANDVEEN,
3  was called as a witness by counsel for the Plaintiffs,
4  Brian and Rona Schneck, and after having first been duly
5  sworn by the Notary Reporter, was examined and
6  testified, as follows:
7              EXAMINATION
8  BY MR. ROBINSON:
9      Q   Can you please state your name and business
10 address for the record, please?
11     A   Sure.  My name is Donna Brandveen, B-r-a-n-d,
12 'V' like Vickie, e-e-n.
13     Q   And your business address?
14     A   8000 Jones Branch Drive, McLean, Virginia.
15     Q   Ms. Brandveen, my name is Phil Robinson.  I am
16 counsel for Rona and Brian Schneck in the matter of
17 Schneck vs. SunTrust Mortgage, Inc. pending in the
18 United States District Court for Maryland.
19         We are here today for a corporate designee
20 deposition of the witness -- well, it's Freddie Mac.
21         Are you here today to testify on behalf of

| Page 5 | |
|---|---|

1  Freddie Mac, which is also known as the Federal Home
2  Loan Mortgage Corporation?
3      A   Yes.
4      Q   And instead of saying Federal Home Loan
5  Mortgage Corporation today, I'm just going to say,
6  Freddie Mac.  And you understand that to mean the same;
7  is that right?
8      A   Yes.
9      Q   Have you had your deposition taken before?
10     A   Yes.
11     Q   How many times --
12     A   Five.
13     Q   -- to the best of your ability?
14     A   Five.
15     Q   Five times.  Are you employed by Freddie Mac?
16     A   Yes, I am.
17     Q   And were those depositions on behalf of
18 Freddie Mac?
19     A   Yes, they were.
20     Q   What is your job title here at Freddie Mac?
21     A   Director of loss mitigation.

Brandveen, Donna                                    **March 9, 2012**

---

**Page 22**

1  **Q** By "these two documents," do you mean the
2  ones, just for the record, tabbed at tab 10 and 11?
3  **A** Yes.
4  **Q** Which are FRE23 and FRE25?
5  **A** Yes.
6  **Q** But you believe you reviewed all of the other
7  records that are here?
8  **A** Yes.
9  **Q** In all of the other records that you reviewed,
10  did you see any responses from Freddie Mac to the
11  inquiries made by Mr. or Mrs. Schneck on October 13th
12  2010 or October 29, 2010?
13  **A** No.
14  **Q** If you wanted to find out if there was a
15  written response by Freddie Mac to Mr. and Mrs. Schneck
16  to either of those inquiries, where would you go to find
17  out if there was a written response?
18  **A** I would probably go to Pamela Barrow, the
19  director of that group.
20  **Q** Earlier you testified generically about three
21  different databases that Freddie Mac has. Do you recall

**Page 23**

1  that?
2  **A** Yes.
3  **Q** Would Freddie Mac's responses, if they
4  existed, be in any of those three databases?
5  **A** No.
6  **Q** Is there any other database that you didn't
7  testify about that there might be a record of any
8  response from Freddie Mac to Mr. and Mrs. Schneck?
9  **A** No.
10  **Q** Is there any other database that you know of
11  managed by the customer service team that might track
12  that information?
13  **A** I don't know.
14  **Q** In your preparation for the deposition today,
15  did you review any other documents or communications
16  whatsoever between Mr. and Mrs. Schneck and Freddie Mac?
17  **A** I did not see any communications.
18  **Q** What is your understanding of the relationship
19  between Mr. and Mrs. Schneck with Freddie Mac?
20  **A** They are a borrower on a loan where Freddie
21  Mac owns.

**Page 24**

1  **Q** Okay. By "loan," you mean mortgage loan; is
2  that right?
3  **A** Correct.
4  **Q** Freddie Mac doesn't buy any other kind of
5  loan; does it?
6  **A** No.
7  **Q** Just residential loans; right?
8  **A** Residential and multi-family.
9  **Q** Multi-family loans, too. But in this case,
10  it's a residential mortgage loan?
11  **A** That's correct.
12  **Q** And do you know how Freddie Mac acquired the
13  loan?
14  **A** Freddie Mac purchased the loan interest from a
15  mortgage company.
16  **Q** Okay. Is it your understanding that that
17  mortgage company is SunTrust Mortgage, Inc.?
18  **A** Yes.
19  **Q** What is your understanding of the relationship
20  of Mr. and Mrs. Schneck's loan now owned by Freddie Mac
21  and SunTrust Mortgage, Inc.?

**Page 25**

1  **A** Can you repeat that?
2  **Q** What is your understanding of the relationship
3  of -- I'm going to say SunTrust today, I mean, SunTrust
4  Mortgage, Inc., not to be confusing, just to narrow it
5  down.
6  What is your understanding of the relationship
7  between SunTrust and Mr. and Mrs. Schneck?
8  **A** SunTrust is the mortgage company that owns the
9  servicing rights.
10  **Q** Servicing rights to Mr. and Mrs. Schneck's
11  loan?
12  **A** Yes.
13  **Q** And what does that mean or what is your
14  understanding of what that means, that they own the
15  servicing rights?
16  **A** That means the mortgage company manages their
17  residential mortgage on a monthly basis. They collect
18  their monthly mortgage payments and they submit their
19  required portions to the investor, which would be
20  Freddie Mac.
21  **Q** Okay. And I should have said this at the

---

Brandveen, Donna                                      March 9, 2012

Page 30

1    here; is that correct?
2        A   That is correct.
3        Q   And those guidelines change over time; is that
4    right?
5        A   Yes.
6        Q   Especially in the last five years,
7    unfortunately for all of us?
8        A   Yes.
9        Q   Does Freddie Mac also expect that SunTrust
10   will comply with all federal and state laws related to
11   mortgage servicing?
12       A   That is correct.
13       Q   What is Freddie Mac's policies and procedures
14   when it receives a complaint that a servicer has not
15   complied with federal and state laws?
16       MS. JOSEPH: I'm going to object. I think
17   this is getting outside the scope of the subpoena as we
18   discussed and agreed.
19       MR. REINECKER: I'm going to object as well
20   for the same reasons. I'm also going to object because
21   I think the question, at least in my view, assumes facts

Page 31

1    not in evidence.
2        MR. ROBINSON: I'll back up and narrow it to
3    the Schnecks.
4    BY MR. ROBINSON:
5        Q   What was your understanding as to Mr. and
6    Mrs. Schneck's inquiry at tab 10 and 11, FRE23 and
7    FRE25?
8        A   I understood they inquired or they called
9    Freddie Mac to state that they had been denied for HAMP
10   and they thought that they should have been included in
11   the program and wanted to file a complaint.
12       Q   And nothing else; right?
13       A   They're saying that -- the consumer, which is
14   the homeowner, stated that SunTrust told her Freddie Mac
15   denied her, not SunTrust.
16       MR. REINECKER: For the record, which document
17   are we looking at? Is it tab --
18       MS. JOSEPH: Tab 10.
19       THE WITNESS: Tab 10.
20   BY MR. ROBINSON:
21       Q   FRE23?

Page 32

1        A   Yes.
2        Q   Does Freddie Mac approve or deny borrowers for
3    loss mitigation?
4        A   Yes.
5        Q   Does Freddie Mac delegate responsibility to
6    mortgage servicers, like SunTrust, to approve or deny
7    borrowers for loss mitigation?
8        A   Yes.
9        Q   In this instance, were there any other records
10   that you reviewed in preparation for your deposition
11   today that Freddie Mac had denied Mr. and Mrs. Schneck
12   for loss mitigation?
13       A   I did not see that.
14       Q   If you wanted to know if Freddie Mac had
15   actually denied Mr. and Mrs. Schneck for loss
16   mitigation, where would you go to find that information?
17       A   The loss mitigation work station.
18       Q   Those documents, I believe, were produced in
19   Exhibit 19; is that correct?
20       A   Correct.
21       Q   Do you know what tab those are at?

Page 33

1        A   That would be tab 4.
2        Q   Is there any information on what is at tab 4,
3    FRE7, to indicate that Freddie Mac had actually denied
4    Mr. and Mrs. Schneck for loss mitigation?
5        A   There's nothing here that indicated that we
6    reviewed or denied it. And I'm focusing in on the
7    section on the bottom, which is workout history.
8        Q   And that information is all blank?
9        A   That's correct.
10       Q   That's where you would see if there had been a
11   Freddie Mac denial?
12       A   That's correct.
13       Q   I don't want to put words in your mouth, but I
14   understand the process a little bit. So if it got
15   escalated, someone wanted to complain that they
16   shouldn't have been denied by their servicer and they
17   appealed to Freddie Mac directly, and Freddie Mac
18   denied, is that where it would show up? Is that how it
19   happens in most instances?
20       A   Yes.
21       Q   Because primarily Freddie Mac expects SunTrust

Elite Reporting Company, Inc.                800-734-3337
67 Saint Andrews Road          Severna Park,      Maryland 21146

**Brandveen, Donna**                                        **March 9, 2012**

Page 119

### CERTIFICATE OF NOTARY PUBLIC

I, Janie G. Arriaga, Court Reporter, before

whom the foregoing Deposition was taken, do hereby

certify that the witness whose testimony appears in the

foregoing Deposition was duly sworn by me; that the

testimony of said witness was taken by me

stenographically, and that I thereafter reduced it to

typewriting; that said Deposition is a true record of

the testimony given by said witness; that I am neither

counsel for, related to, nor employed by any of the

parties to the action in which this Deposition was

taken; and further, that I am not a relative or employee

of any attorney or counsel employed by the parties

thereto; nor financially or otherwise interested  in the

outcome of the action.

*Janie G. Arriaga/s/*

JANIE G. ARRIAGA,

Notary Public

My commission expires:  July 31, 2014

Registration Number 7039792





Exhibit B
to
Palazzo Affidavit

**8101.9**

# Servicer agrees to indemnify

**Effective 11/14/2018**

The Servicer must indemnify Freddie Mac for and hold it harmless from any loss, damage or expenses (including court costs and attorney fees) that Freddie Mac sustains as a direct or indirect result of any failure on the Servicer's part to perform its services, duties and obligations under the Purchase Documents.

© 1989-2024 Freddie Mac



# Application of payments: Mortgage paid in full

**Effective 06/12/2019**

## (a) General Servicer responsibilities

The Servicer must determine and accept the amount required to pay a Mortgage in full, including the interest to the payoff date and remit the total proceeds due Freddie Mac. The Servicer is responsible for providing payoff amounts to individual Borrowers or their agents and is liable to Freddie Mac for any errors in the amount of any payoff.

The Servicer must take all actions required by law, within statutory time limits, to release the lien and discharge the debt of a Mortgage that has been paid in full (paid off). The Servicer agrees to hold Freddie Mac, its successors and assigns, harmless from and against any and all losses, claims, demands, actions, suits, damages, costs and expenses (including reasonable attorney fees) of every nature and character that may arise or be asserted against or be incurred by Freddie Mac as a result of the Servicer's failure to comply with applicable law.

If the Mortgage is evidenced by a Security Instrument, or is insured or guaranteed under a federal program, that prohibits the charging of a release or reconveyance fee upon payoff, the Servicer may not charge such a fee even if permitted to do so under applicable law. This prohibition extends to trustees in deed of trust jurisdictions and applies to "release" fees, "processing" fees, "forwarding" fees, "document preparation" fees and similarly denominated charges. In deed of trust jurisdictions, a Servicer must not knowingly employ or retain a trustee who charges Borrowers for reconveyance services.

If permitted to do so under applicable law and the Security Instrument, the Servicer may charge the Borrower for the actual cost of recording the release or reconveyance.

The Servicer must request the release of the Note and other documents held by the Document Custodian in accordance with Section 8107.1 for a Mortgage that has been paid in full. The Servicer must comply with any and all statutory requirements and time frames regarding disposition of the Note, which may require returning the Note to the Borrower following pay off. For an eMortgage (as defined in Section 1402.2) that has been paid in full, the Servicer must also comply with the requirements in Section 1402.10(c).

Payoff proceeds received by the Servicer must be remitted and reported to Freddie Mac in accordance with applicable provisions of Chapters 8303 and 8304.

## (b) Prepayment Penalty Mortgages

With respect to a Prepayment Penalty Mortgage, the Servicer must collect the amount of the prepayment penalty provided for in and under the conditions specified in the Mortgage loan instruments and:

1. For Prepayment Penalty Mortgages sold to Freddie Mac prior to October 14, 2005, the Servicer must not assess or collect a prepayment penalty if either:
   - The proceeds received for the payoff of the Mortgage are from the sale of the Mortgaged Premises, or
   - The payoff of the Mortgage is received from any source, including insurance proceeds, in connection with the workout of a delinquent Mortgage or due to a default under the terms of Security Instrument
2. For Prepayment Penalty Mortgages sold to Freddie Mac on and after October 14, 2005, the Servicer must not assess or collect a prepayment penalty if either:
   - The proceeds received for the payoff of the Mortgage are from the sale of the Mortgaged Premises and the prepayment period is more than three years or
   - The payoff of the Mortgage is received from any source, including insurance proceeds, in connection with the workout of a delinquent Mortgage or due to a default under the terms of the Security Instrument

### (c) FHA/VA and Section 502 GRH Mortgages

For FHA/VA and Section 502 GRH Mortgages, any notice of prepayment or entitlement to interest past the date of payment-in-full must be waived by the Servicer on behalf of Freddie Mac. Escrow balances may be either credited to the mortgagor or returned separately.

When an FHA Mortgage is paid in full, the Servicer must collect the amounts due FHA for the adjusted prepayment premium and for pro rata earned mortgage insurance premiums. The Servicer must then complete any required notice and submit it directly to FHA with the required remittances.

### (d) Buydown accounts

Any funds remaining in the buydown account of a Mortgage prepaid in full must be released according to the terms of the buydown agreement.

For further explanation of procedures to be followed in regard to conventional, FHA/VA and Section 502 GRH Mortgage payments-in-full, see Section 8303.9.

© 1989-2024 Freddie Mac



**8105.1**

# Compensation for Servicing Mortgages

**Effective 04/12/2023**

The compensation Freddie Mac pays to the Servicer for the performance of its duties and obligations under the Servicing Contract for each Mortgage purchased by Freddie Mac is the amount by which the Note Rate exceeds the Accounting Net Yield, with a Minimum Servicing Spread to provide adequate compensation. Each Servicer agrees that it does not retain any rights or legal ownership interest in such compensation or any portion of the interest or other amounts due or received from the Borrower under the terms of the Mortgage. Further, under no circumstance does a Servicer retain any legal ownership of the Servicing Contract or any related Servicing Contract Rights. Freddie Mac acknowledges that a Servicer may recognize Servicing Contract Rights as assets on its balance sheet in the form of "mortgage servicing rights" in accordance with generally accepted accounting principles (GAAP); however, such recognition under GAAP does not confer any legal ownership interest in any Servicing Contract Rights.

The Minimum Servicing Spread is 0.250% (25 basis points) for all Home Mortgages unless the Purchase Documents provide otherwise. (Note: For fixed-rate Home Mortgages with Settlement Dates on and after June 3, 2019, the maximum Servicing Spread is 0.500%.)

For Mortgages with single-premium lender-paid mortgage insurance, the Minimum Contract Servicing Spread must be no less than the Minimum Servicing Spread. For Mortgages with annual- or monthly-premium lender-paid mortgage insurance, the Minimum Contract Servicing Spread must meet the requirements of Section 4701.2(b)(i).

Refer to Sections 6101.6(c), 6102.8(b), and 6201.3(a), (b) and (c) for Servicing Spread requirements.

© 1989-2024 Freddie Mac



**8303.5**

# Correcting reporting errors

**Effective 12/09/2019**

The Servicer must monitor all Edit Error reports (Edits to be Cleared, System Cleared Edits, Warning and Loan Level Missing) provided by Freddie Mac daily. If the Servicer discovers an error after it has transmitted its accounting reporting information, the Servicer must take immediate action to:

1. Correct the source of the error
2. Transmit a revision to Freddie Mac that reflects the Borrower's payment activity or disposition of the Mortgage

If unable to resolve the issue, the Servicer should call Freddie Mac **(see Directory 7)** for instructions on how to correct the information. Servicers may refer to the Investor Reporting Quick Reference Guide for a detailed description of edit codes.

The Edit Error reports may be accessed through the Loan Level Reporting tool (see Exhibit 88, Servicing Tools).

If the Servicer fails to send Freddie Mac the appropriate information to clear any reporting errors within the applicable time frame, Freddie Mac will make those corrections on the Servicer's behalf subject to the applicable fees.

If the Servicer reports a payoff to Freddie Mac in error, the Servicer must transmit a revision within the same Accounting Cycle in which the Servicer erroneously reported it. If the Servicer reports a payoff to Freddie Mac in error and the Servicer does not reverse it within the same Accounting Cycle, Freddie Mac will not be able to reactivate the Mortgage for the Servicer. The Servicer must advance its own funds which Freddie Mac will draft to liquidate the Mortgage.

The Servicer must maintain accurate records for Freddie Mac's review and inspection of the actual principal reductions and adjustments made to correct any reporting errors.

© 1989-2024 Freddie Mac


**8303.9**

# Payoff – matured or prepaid reporting and drafting requirements

**Effective 05/01/2019**

A payoff is the repayment of a Mortgage due to full amortization or prepayment-in-full. The Servicer must report the payoff as of the Payoff Date or the date the Servicer receives the funds (as applicable), and may not alter it for any reason.

The Servicer must complete the following steps to report a payoff of a Mortgage:

1. To report a prepayment-in-full, report the payoff by the second Business Day after the Payoff Date To report the payoff of a matured Mortgage, report the payoff by the earlier of the maturity date or within two Business Days of the date the Servicer receives the funds. For Mortgages registered on the MERS® System, the Servicer must, by the second Business Day after the Payoff Date, update the MERS System to a loan status of "Paid in full" for Mortgages reported to Freddie Mac as matured or prepaid.
2. Do not report on this Mortgage in future Accounting Cycles.

Freddie Mac will draft the payoff amount (remaining UPB plus *exception interest*) directly from the Servicer's designated Custodial Account as follows:

## (i) Principal

For a payoff of a matured Mortgage or a prepayment-in-full that is successfully reported within two Business Days of the *exception date*, Freddie Mac will draft the UPB due as reported in the previous Accounting Cycle on the fifth Business Day after the Payoff Date.

For a payoff of a matured Mortgage, or a prepayment-in-full that is successfully reported **more** than two Business Days after the exception date (which is considered late), Freddie Mac will draft the UPB due as reported in the previous Accounting Cycle on the second Business Day after the reported payoff is successfully processed.

## (ii) Interest

For a payoff of a matured Mortgage or a prepayment-in-full that is successfully reported within two Business Days of the exception date, Freddie Mac will draft the *exception interest* on the fifth Business Day after the Payoff Date.

For a payoff of a matured Mortgage or a prepayment-in-full that is successfully reported **more** than two Business Days after the exception date, Freddie Mac will draft the *exception interest* on the second Business Day after the reported payoff is successfully processed.

Refer to Sections 8303.4 and 8303.5 for information regarding an erroneously reported payoff or rescinded payoff.

© 1989-2024 Freddie Mac

# eSignature Details

**Signer ID:**    **Mfv98CaXJtaLUz7gyL99eHgN**
Signed by:    Catherine Palazzo
Sent to email:    cathypalazzo@live.com
IP Address:    174.216.144.218
Signed at:    Sep 29 2024, 3:56 pm EDT