1

2

3

4

5

6

7

The Honorable Barbara J. Rothstein

8                IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF WASHINGTON

9

10  RICARDO SALOM, CATHERINE               Case No. 2:24-cv-00444-BJR
    PALAZZO as assignee for Ruben Palazzo, and
11  PETER HACKINEN, *on their own behalf and*
    *on behalf of other similarly situated persons*,   **NATIONSTAR MORTGAGE LLC'S**
12                                          **MOTION FOR SUMMARY JUDGMENT**
                Plaintiffs,
13                                          ORAL ARGUMENT REQUESTED
    vs.
14
    NATIONSTAR MORTGAGE LLC,
15
                Defendant.
16

17

18

19

20

21

22

23

24

25

26

27

28

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................................. 4

    A.    Nationstar ............................................................................................... 4

    B.    Loan Servicing Industry ....................................................................... 7

    C.    Plaintiff Richardo Salom ....................................................................... 8

    D.    Plaintiff Catherine Palazzo .................................................................... 9

    E.    Plaintiff Peter Hackinen ...................................................................... 10

    F.    Uniform Instruments ........................................................................... 11

III.   ARGUMENT ................................................................................................. 11

    A.    It would be contrary to law—and a policy harmful to consumers—to deny Plaintiffs' freedom to contract with Nationstar to obtain optional, additional services that Nationstar is not required to provide by law and that are outside the contract. .................................................................................................... 11

        1.    Nationstar had no duty arising from statute to provide Plaintiffs with expedited delivery of a payoff quote and expedited delivery services fall entirely *outside* the scope of the loan agreements. ..................................... 12

        2.    Absent a pre-existing duty, Plaintiffs had freedom of contract to accept Nationstar's offer for expedited delivery of their payoff quotes and in return pay for that service. ..................................................................................... 13

        3.    To show that charging a fee for additional services is contrary to public policy, Plaintiffs must identify a clear policy recognized by statute. ......... 15

        4.    Plaintiffs do not identify any statute that prohibits servicers from offering – and from borrowers accepting—services outside the loan agreement for additional fees. ............................................................................................. 15

        5.    Courts routinely hold that borrowers can request—and loan servicers may provide for an additional fee—services outside of those encompassed by the loan documents. ........................................................................................ 17

        6.    Allowing borrowers to purchase optional, additional services from loan servicers is not only permitted by law but is sound policy. ....................... 19

    B.    Based on the undisputed material facts, Nationstar is entitled to summary judgment on Plaintiffs' claims. .............................................................. 20

        1.    Nationstar is entitled to summary judgment on Plaintiffs' unjust enrichment claim. .......................................................................................... 20

        2.    Nationstar is entitled to summary judgment on Plaintiff Hackinen's FDCPA claim. ................................................................................................ 21

NATIONSTAR'S MOTION FOR SUMMARY JUDGMENT - ii
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

3.      Nationstar is entitled to summary judgment on Plaintiffs' claim for
violations of state debt collection and mortgage servicing laws................ 22

IV.    CONCLUSION .............................................................................................................. 24

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

1

**TABLE OF EXHIBITS**

| Exh. No. | Title or Description | Bates Nos. | Confidential |
|---|---|---|---|
| 1 | Fannie Mae Decl. | | |
| 2 | Ehinger Deposition Transcript (II) | | |
| 3 | Ehinger Declaration (I) | | |
| 4 | Marcel Bryar Expert Report | | |
| 5 | Ehinger Deposition Transcript (I) | | |
| 6 | Fee Matrix | NSM_SALOM 019942 | Yes |
| 7 | Palazzo Interrogatory Response | | |
| 8 | Web Payoff Request Sample | NSM_SALOM 020061 | |
| 9 | Ehinger Declaration (II) | | |
| 10 | Consumer service representative script | NSM_SALOM 20059 | |
| 11 | IVR Script Sample | NSM_SALOM 020056 | Yes |
| 12 | Salom Deed of Trust | NSM_SALOM 005882 | |
| 13 | Detail Transaction History | NSM_SALOM 019197-190202 | |
| 14 | Salom Assignment | NSM_SALOM 005917 | |
| 15 | Communication Profile | NSM_SALOM 019224 | |
| 16 | Salom Payoff Quote | NSM_SALOM 009958 | |
| 17 | Salom Recorded Release | NSM_SALOM 005933 | |
| 18 | Salom Interrogatory Response | | |
| 19 | Salom Deposition Transcript | | |
| 20 | Palazzo Note | NSM_SALOM 002557 | |
| 21 | Palazzo Deed of Trust | NSM_SALOM 002562 | |
| 22 | Palazzo Welcome Letter | NSM_SALOM 002714 | |
| 23 | Palazzo Assignment | NSM_SALOM 002669 | |
| 24 | *Intentionally Left Blank* | | |
| 25 | Palazzo Communication History | NSM_SALOM 005876 | |
| 26 | Palazzo Deposition Transcript | | |
| 27 | Palazzo Payoff Quote | NSM_SALOM 003169 | |
| 28 | Palazzo Transaction History | NSM_SALOM 019957 | |
| 29 | Hackinen Deed of Trust | NSM_SALOM 000005 | |

NATIONSTAR'S MOTION FOR SUMMARY JUDGMENT - iv
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Exh. No. | Title or Description | Bates Nos. | Confidential |
|---|---|---|---|
| 30 | Hackinen Welcome Letter | NSM_SALOM 000635 | |
| 31 | Hackinen Deposition Transcript | | |
| 32 | Hackinen Communication History | NSM_SALOM 002548-2553 | |
| 33 | Hackinen Transaction History | NSM_SALOM 020017-20018 | |
| 34 | Hackinen Payoff Quotes | NSM_SALOM 001478-001484, 001473-001477, 001492-001495, 001485-001487 | |

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

Defendant Nationstar Mortgage LLC d/b/a Champion Mortgage Company ("Nationstar"), pursuant to Fed. R. Civ. P. 56, moves this Court to enter judgment against Plaintiffs Richardo Salom ("Salom"), Catherine Palazzo ("Palazzo") and Peter Hackinen ("Hackinen") (collectively "Plaintiffs") on all claims asserted in their Amended Complaint.

The Court previously found "that an initial decision on the legality of expedited payoff quote [fees] will eliminate or narrow the claims in this case." *See* ECF No. 88.[1] Pursuant to the Court's direction, Nationstar now moves for summary judgment on the grounds that charging a fee for a voluntary, optional service requested by the Plaintiffs, and not governed by the loan agreements or by statute, is legally permissible pursuant to a separate agreement for services, which the parties are allowed to form. This position is well supported by both law and industry standard.

## I.    <u>INTRODUCTION</u>

As a threshold matter, this case is not a "pay-to-pay" case, despite Plaintiffs repeated efforts to make it so. An expedited delivery fee is a fee paid for an optional service—here, expedited delivery of a payoff statement (*i.e.* information delivered *faster*)—separate from services provided pursuant to the loan agreement. As numerous courts have held, it is not a fee tied to making payment of a mortgage loan. Nor is a payoff statement an attempt to collect a debt. Instead, a payoff statement is an informational statement that a borrower may request for any number of reasons wholly unrelated to paying off a loan. Hence, this case is (nor can it be) governed by the Fair Debt Collection Practices Act ("FDCPA") or its state analogues.

What this case *is* about the parties' freedom of contract—a fundamental right long enshrined in the American legal system. For more than a century, the U.S. Supreme Court has recognized that "it is a matter of great public concern that freedom of contract be not lightly interfered with." *Steele v. Drummond*, 275 U.S. 199, 205 (1927). This case poses the question: can parties to an existing contract make a second agreement for an *additional* service that is not otherwise governed

---

[1] The Court's Order declined to reconsider its ruling that Plaintiffs were not required to give notice under Section 20 of their loan agreements as to their statutory claims and gave proper notice of their unjust enrichment claims. ECF 88, n.1. Nationstar raises the issue here solely to preserve it for appeal. Regardless of whether notice to the entities owning the loans can serve as "indirect notice" to Nationstar, ECF No. 77, at 11, which Nationstar disputes, the evidence demonstrates that Plaintiffs did *not* give notice to the owners of their loans before they filed their Complaint in this case. Their claims therefore are barred.

NATIONSTAR'S MOTION FOR SUMMARY JUDGMENT - 1
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

by the first contract or required by law?  Plaintiffs' position in this case is that the parties cannot contract for additional services.  By Plaintiffs' logic, once there is an existing debtor/servicer relationship, it becomes *illegal* for a loan servicer to provide consumers different, additional, optional services—not otherwise subject to the existing contract or required by law—for a fee.  This is ridiculous.  It is also not the law.

Practically, if a borrower is refinancing or paying off a mortgage through the sale of their house and needs a payoff quote, the law allows up to a *week—or longer*, depending on the speed of mail delivery—before the borrower receives that payoff quote.  While that timeline may work for the simply curious homeowner, it is not difficult to imagine a stressed consumer selling their home wanting a payoff quote much faster—within hours or even minutes.  Anything slower and a home purchase might not close, or a refinance might fall through.  **How does a consumer obtain a payoff quote *faster* than 7 business days?**  The answer is simple: they pay for *expedited* service. Paying for expedited service is not a novel concept.  Our world is replete with options for consumers to pay for expedited service.  For example, you can pay extra to send a letter via Priority Mail Express, you can pay an additional $60.00 to expedite your passport application to get it in time for your trip, and you can pay a "premium processing fee" up to $2,805 to expedite immigration paperwork.[2]  Expedited fees are not just routinely approved by the federal government, states also routinely advertise expedited services for additional fees.[3]

Fees for expedited services are also normal—and routinely approved by courts—in the mortgage loan servicing industry.  For example, Fannie Mae is a "leading source of financing for residential mortgages" in the U.S. and publishes a guide that "establishes loan servicing guidelines" for the industry.  Fannie Mae Decl. ¶¶ 4, 7, **Ex. 1**.  Fannie Mae's servicing guide defines "allowable

---

[2] *See* Mail & Shipping Services, USPS.com, https://www.usps.com/ship/mail-shipping-services.htm (last visited March 25, 2025); Get My Passport Fast, U.S. Dept of State, https://travel.state.gov/content/travel/en/passports/get-fast.html (last visited March 25, 2025)' G-1055, Fee Schedule, U.S. Citizenship & Immigration Services, https://www.uscis.gov/g-1055?form=i-907 (last visited Mar. 26, 2025).

[3] *See Charter Business Services - SDAT*, Maryland Dep't Assessments & Taxation, https://dat.maryland.gov/ businesses/pages/default.aspx (authorizing $425.00 "expedited fee in addition to the base filing fee"); Wash. Admin. Code § 434-112-080(3) ("Expedited service requests for filing records will be completed within three working days of submission for an expedited service fee of $100.").

NATIONSTAR'S MOTION FOR SUMMARY JUDGMENT - 2
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

1    fees for servicing" to explicitly *include* fees for "providing expedited service…."  *See* A2-3-05,

2    Fees for Certain Servicing Activities, Fannie Mae (Nov. 8, 2017), https://servicing-

3    guide.fanniemae.com/svc/a2-3-05/fees-certain-servicing-activities.

4        Expedited service fees are not new—and neither are consumer challenges to them.  For

5    decades courts have considered challenges to fees for expedited delivery of payoff quotes, and

6    routinely found that it is entirely proper for a loan servicer to charge a separate fee for an additional

7    service.  *E.g.*, *Davis v. Homecomings Fin.*, No. C05-1466RSL, 2006 U.S. Dist. LEXIS 77331, at

8    *14 (W.D. Wash. Oct. 10, 2006) (recognizing that the consumer "received the benefit of receiving

9    the [payoff] statement in an expedited manner"); *Krause v. GE Capital Mortg. Servs.*, 314 Ill. App.

10   3d 376, 385-86 (2000) (finding proper "fees were charged for expedited delivery by facsimile

11   requested by the plaintiffs" when "[t]here is no language in the contracts that prohibits the

12   imposition of a charge for services provided outside the contracts").

13       Plaintiffs reach their contrary conclusion from a flawed premise: that borrowers and loan

14   servicers cannot agree to additional services after the initial loan agreement.  This case illustrates

15   how the starting premise determines the conclusion.



*General Factual Premise:*
Loan contract does not explicitly include fee,
nor is it explicitly mentioned by statute.

*General Legal Premise:*
Charging an unauthorized fee is illegal.

**Plaintiffs' Premise:**
Borrower/servicer cannot contract
for optional services not governed
under existing agreement for
additional fees.

**Contract Law:**
Freedom of contract allows *any* party
(including loan servicers and borrowers)
to contract for services not governed by
existing agreement.

Nationstar illegally charged a fee not
authorized by the loan documents nor
explicitly approved by statute.

Contract law authorizes Nationstar to
provide valuable, optional service to
Plaintiffs, at their request, for extra fee.

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

An expedited payoff quote is a service that is not required by law or governed by the loan agreements. It requires the loan servicer to invest in additional corporate infrastructure—in both human and technological resources. But it can have great value to the harried consumer who needs a payoff quote in minutes instead of a week later. The terms of Nationstar's offer were explicitly provided, either orally or in writing depending on how the consumer requested the payoff quote. Plaintiffs accepted Nationstar's offer, Nationstar provided the agreed service, and Plaintiffs provided the agreed consideration ($25.00). There was offer, acceptance, and consideration (*i.e.*, a contract) between Plaintiffs and Nationstar: an extra service for a set fee. This is explicitly authorized by contract law. Further, expedited processing fees are approved by industry practice.

Plaintiffs ask this Court to hold as a matter of law that Nationstar may not charge for expedited delivery of a payoff quote. This is obviously a very significant request. It asks the Court to find that the parties' inviolate freedom of contract is severely circumscribed to exclude anything outside of the explicit terms of the original loan agreement—in other words, over the space of a thirty (30) year mortgage, servicers may *never* offer new services to consumers *unless* Congress or a state enacts a statute in the interim explicitly validating the fee.

Nationstar asks the Court to side with multiple centuries of contract law that presumes contracts are both allowed and presumptively enforceable, preserving to consumers the choice to purchase an additional service for an extra fee. The alternative, which Plaintiffs inexplicably advocate, is to deny consumers the option to contract for additional, valuable services they request.

## II.    FACTUAL BACKGROUND

### A.    Nationstar

1.    Nationstar services consumer mortgage loans on behalf of private investors and government sponsored entities ("GSEs"), such as Fannie Mae and Freddie Mac. Ehinger Dep. (II) 26:2-11 (Fannie Mae); 30:10-19 (Freddie Mac), **Ex. 2**.

2.    Nationstar maintains robust legal compliance procedures, including auditing. Ehinger Dep. (II) 89:12-15 (explaining that Nationstar is audited internally by compliance as well as by investors, states, and federal regulators). Nationstar's policy is to comply with federal, state, and GSE requirements, which are coded into Nationstar's servicing system for loan-level

NATIONSTAR'S MOTION FOR SUMMARY JUDGMENT - 4
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

application, including when processing and delivering payoff statements.  Ehinger Decl. ¶¶ 9-10, **Ex. 3**; Ehinger Dep. (II) 15:12-17:25, 28:9-21, 118:20-120:6 & Ex. 44 thereto.

3.      A payoff quote or payoff statement identifies "how much cash a borrower needs by a certain date to pay off the borrower's loan, including accrued interest and any outstanding fees and expenses incurred by the borrower in connection with the loan."  Bryar Rep. ¶ 4, **Ex. 4**.

4.      Producing a payoff statement is a complex process.  Bryar Rep. ¶ 51; Ehinger Dep. (I) 137:18-138:3, 140:1-10, **Ex. 5** (explaining various departments and systems involved in preparing payoff quotes). The servicer must account for the loan's outstanding balance, interest accrued since the borrower's last payment, any fees the borrower owes, and any refunds due to the borrower. Bryar Rep. ¶ 51. Each borrower's unique circumstances further complicate the preparation of a payoff statement.  *Id.* For instance, one borrower may need to pay only the unpaid principal balance and accrued interest, while another may owe additional fees and have insurance proceeds in escrow related to a hazard insurance claim.  *Id.*  A third borrower might owe fees and costs incurred by the lender due to delinquency.  *Id.* Servicers must design systems and processes to effectively address all these varying scenarios.  *Id.*

5.      Nationstar ordinarily processes written requests for a payoff quote within seven (7) business days.  Ehinger Decl. ¶ 8.  Nationstar does not charge for payoff quotes processed and delivered in the ordinary course to consumers in Maryland and Washington.  *Id.*

6.      Nationstar also offers expedited delivery of payoff quotes for an additional state-specific fee.  Ehinger Dep. (I) 108:18-109:7; Fee Matrix, **Ex. 6**.  This can take mere seconds. Palazzo Interrog. Resp. 12, **Ex. 7**.

7.      To provide this service, Nationstar invested millions of dollars to develop a system to expedite payoff quotes, often delivered within only a few hours.  Ehinger Decl. ¶ 15.  In addition to upfront costs in system development, Nationstar incurs ongoing costs to maintain and update the technology to generate accurate payoff quotes on an expedited basis.  *Id.*  The expedited delivery fee compensates Nationstar for its costs to perform this service.  *Id.* ¶ 16.

NATIONSTAR'S MOTION FOR SUMMARY JUDGMENT - 5
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

8.      In offering expedited delivery of payoff quotes, Nationstar considers "all of [the] federal and regulatory and investor guidelines." Ehinger Dep. (II) 14:17-21.  Nationstar does not charge any payoff statement fees prohibited by law.  Ehinger Dep. (II) 89:12-15.

9.      The expedited delivery fee is clearly disclosed to consumers.  Ehinger Decl. ¶ 17. Nationstar will not assess an expedited delivery fee unless the consumer has agreed to the fee. Ehinger Decl. ¶ 18.  Nationstar also does not require payment of the fee to release a lien.  *Id.* ¶ 22.

10.     The expedited delivery fee is specifically disclosed online, with consumers required to check that they "understand" an expedited delivery fee may apply before continuing with an "INSTANT – WEB" payoff request.  Ehinger Dep. (II) 128:9-13 (explaining sample); Sample Fee Disclosure, **Ex. 8**:



11.     The expedited delivery fee is also verbally disclosed to consumers on the phone. Ehinger Decl. (II) ¶ 12, **Ex. 9**; Ehinger Dep. (II) 127:9-16.  Nationstar consumer service representatives utilize a "conditional" script prompted by account-specific codes based on state/investor/loan type.  Ehinger Dep. (II) 120:7-121:10; Payoff Quote Conditional Script, **Ex. 10**. The script includes disclosure of a $25 expedited delivery fee for Washington and Maryland consumers, unless an alternate fee controls (*e.g.*, FHA loan with $5.00 cap).  *Id.*

12.     Similarly, through Nationstar's interactive voice response ("IVR") telephone system, a borrower can request a quote.  IVR Script Sample, **Ex. 11**.  Nationstar's IVR specifically discloses that there is a fee for expedited delivery of a payoff statement but there "will not be any

NATIONSTAR'S MOTION FOR SUMMARY JUDGMENT - 6
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

delivery fees if you choose to receive your quote by mail." *Id.*  Nationstar's IVR requires a borrower to consent to the fee before the system will authorize expedited delivery of a payoff quote.  *Id.*

13.     Nationstar's conditional guidelines, as built into its live agent, IVR, and website systems, generate customized payoff quote delivery options for borrowers in accordance with applicable law and industry standards. Ehinger Dep. (II) 16:4-13, 28:9-21, 119:4-120:6, 126:20-24.

**B.     Loan Servicing Industry**

14.     GSEs, like Fannie Mae and Freddie Mac, were chartered by Congress with some provisions that supersede state and local laws.  Bryar Rep. ¶ 45.  The GSEs are regulated by the Federal Housing Finance Agency ("FHFA").  *Id.* ¶ 46.

15.     The GSEs outsource servicing of their loans to mortgage servicers such as Nationstar.  *Id.* ¶ 47.  The GSEs publish servicing guidelines that mortgage servicers must follow when servicing GSE loans.  *Id.* ¶ 48.  The GSEs routinely audit mortgage servicers for compliance with the servicing guidelines.  Ehinger Dep. (II) 28:9-21 (Fannie Mae), 30:20-31:6 (Freddie Mac).

16.     The FHFA is responsible for approving all GSE servicing guidelines, which means that if a practice is approved by GSE servicing guidelines, it is permitted (even expected) by industry standards unless expressly prohibited by law.  Bryar Rep. ¶ 48.

17.     Charging an expedited delivery fee for payoff quotes is explicitly authorized by the GSEs, making it consistent with industry standards.  Bryar Rep. ¶¶ 52-67; Ehinger Dep. (II) 75:5-11 (other loan servicers charge similar fees).

18.     For example, Fannie Mae is a "leading source of financing for residential mortgages" in the U.S. and publishes a guide that "establishes loan servicing guidelines" for the industry.  Fannie Mae Decl. ¶¶ 4, 7.  Fannie Mae's servicing guide defines "allowable fees for servicing" to explicitly *include* fees for "providing expedited service."  *See* A2-3-05, Fees for Certain Servicing Activities, Fannie Mae (Nov. 8, 2017), https://servicing-guide.fanniemae.com/svc/a2-3-05/fees-certain-servicing-activities.

19.     The FHFA and the GSEs do not treat expedited service fees as "junk fees."  Bryar Rep. ¶ 63.  The GSEs depend on loan servicers to service GSE loans.  *Id.*  Consequently, the GSEs face the risk that inadequate servicer compensation will lead to insufficient investments in proper

NATIONSTAR'S MOTION FOR SUMMARY JUDGMENT - 7
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

loan servicing.  *Id.*  Conversely, if servicer compensation is excessively high, it may render the loans unaffordable for borrowers.  *Id.*  The goal of FHFA and the GSEs is "to provide borrowers with '[a]ccess to a competitive, inexpensive mortgage market' while at the same time ensuring that servicing is 'profitable.'"  *Id.* (quoting *Servicing Compensation Initiative pursuant to FHFA Directive in Coordination with HUD* (February 2011)).  Fees for additional services, such as expedited processing, help "strike a balance between servicer profitability and affordability for borrowers."  *Id.* ¶ 64.  Without these fees being charged, "FHFA and the GSEs would have to increase the servicing fee for loans. That increase would, in turn, increase the cost of loans for every borrower since, as explained above, the servicing fee is paid out of a loan's interest income, which is paid by all borrowers."  *Id.*  Charging these fees separately means "all borrowers—including the ones who elect to use ancillary services—***pay lower interest rates***."  *Id.* (emphasis added).

**C.    Plaintiff Richardo Salom**

20.    On June 23, 2003, Salom executed a note in the amount of $286,500, secured by a deed of trust on 14608 Quince Orchard Road, Gaithersburg, MD.  Deed of Trust, **Ex. 12**.

21.    Nationstar d/b/a Mr. Cooper began servicing the Salom Loan effective March 1, 2019, at which time the loan was current.  Transaction History, **Ex. 13**.  The Deed of Trust was assigned to Fannie Mae on or about February 9, 2016.  Assignment, **Ex. 14**.

22.    On or about June 29, 2022, Salom's agent (title company) submitted a website request for a payoff quote on Salom's Loan. Communication History, **Ex. 15**; Am. Compl. ¶ 82 (stating that Salom's "agent requested a payoff statement from Nationstar").

23.    In making this request, Salom's agent requested expedited delivery of the payoff quote to a fax number and acknowledged that additional fees may apply.  *Id.*; *see also* Request a Payoff    Quote,    Third    Party    Request,    Mr.    Cooper,    https://www.mrcooper.com/broker_ agent_services/payoff_quote_request.  The fee was identified on the payoff quote as an "expedited delivery fee."  Salom Payoff Quote, **Ex. 16**.

24.    Nationstar provided expedited delivery of Salom's payoff quote via fax.  *Id*; Ex. 15 at 24 (showing payoff statement generated the same day as request).

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

25.     Salom paid off the mortgage loan, and Fannie Mae released the Deed of Trust. Recorded Release, **Ex. 17**; Salom Interrog. Resp. 3, **Ex. 18** (indicating he paid off the loan on July 12, 2022).  Salom paid the expedited delivery fee with his payoff. Salom Interrog. Resp. 6.

26.     Salom has no personal knowledge or documentation showing that the $25 expedited delivery fee was unfair or unlawful.  Salom Dep. 34:25-35:7, 37:20-24, 38:14-15, **Ex. 19** ("I have no idea about the mortgage service and the fees charged. I have no idea.").

27.     While he did not know details regarding his agent's request, Salom admitted that he had no reason to dispute that Nationstar's records show his agent requested expedited delivery of the payoff quote.  Salom Dep. 45:5-6, 9-10; Salom Interrog. Resp. 3 (conceding that "agents…were assisting him with the sale of his home" and "the payoff statement request was made on his behalf, but he has no personal knowledge of whether 'expedited delivery' was requested and or what was said about the payoff statement fee").

28.     Salom testified that he "didn't realize how or who pay any kind of fees," instead he just signed documents from the closing company.  Salom Dep. 73:19-25.  According to Salom, "I got my money, I'm gone." *Id.* 74:2. He indicated that he was satisfied and happy to move on after paying off his mortgage.  *Id.* 74:3-6.

29.     Salom seeks return of all fees "imposed" related to issuance of a payoff quote. Salom Interrog. Resp. 13.

**D.     Plaintiff Catherine Palazzo**

30.     Ruben Palazzo ("Ruben") executed an adjustable rate note on or about March 21, 2007, in the amount of $128,000 (the "Palazzo Loan"), secured by Deed of Trust against 34811 Old Ocean City Road, Pittsville, MD.  Note, **Ex. 20**; Deed of Trust, **Ex. 21**.  Palazzo signed only the Deed of Trust, not the Note.  *Id.*

31.     Nationstar d/b/a RightPath Servicing began servicing the Palazzo Loan effective June 1, 2022, at which time the loan was current. Welcome Letter, **Ex. 22**.  The Deed of Trust was assigned to Nationstar on or about June 22, 2022.  Assignment, **Ex. 23**.

32.     The Palazzos requested a "web instant payoff quote" through Nationstar's online borrower portal on September 11, 2023.  Palazzo Interrog. Resp. 6, **Ex. 7**; Communication History,

1    **Ex. 25**; Palazzo Dep. 27:10-18, 31:11-24, **Ex. 26**; Palazzo Payoff Quote, **Ex. 27**.

2        33.    In making this request, the Palazzos selected expedited delivery of the payoff quote

3    for an additional $25.00 fee.  *See* Palazzo Dep. 28:10-29:3 (not remembering the specific wording

4    but recalling that there would be a fee associated with rushed delivery).  This fee was reflected on

5    the payoff quote addressed to Ruben Palazzo, listing an "expedited delivery fee." Ex. 27.

6        34.    The Palazzos understood there would be a fee for rushed delivery, but "wanted to

7    know what [the payoff quote] was right away because we were making plans." Palazzo Dep. 28:16-

8    29:3, 33:8-9. The Palazzos were considering refinancing Ruben's loan.  *Id.* 29:4-6.

9        35.    Having requested expedited delivery, Palazzo concedes they were "able to obtain

10    her payoff statement through Nationstar's portal in seconds." Palazzo Interrog. Resp. 12; Palazzo

11    Dep. 35:7-23, 25. The Palazzos received the "service … requested." Palazzo Dep. 36:2-4.

12        36.    Later, as part of his monthly mortgage payment, Ruben paid the expedited delivery

13    fee for the payoff statement.  Palazzo Interrog. Resp. 6; NSM_SALOM 019956, **Ex. 28**.

14        37.    Palazzo has not paid off the mortgage loan, Palazzo Interrog. Resp. 4, and Nationstar

15    continues to service the loan. Palazzo Dep. 29:25-30:1.

16        38.    Palazzo seeks return of all fees "imposed" related to issuance of a payoff quote.

17    Palazzo Interrog. Resp. 14.

18    **E.    Plaintiff Peter Hackinen**

19        39.    Peter Hackinen executed a promissory note on or about December 20, 2006, in the

20    amount of $280,000 (the "Hackinen Loan"), secured by Deed of Trust against 624 N. 138th Street,

21    Seattle, WA.  Deed of Trust, **Ex. 29**.

22        40.    Nationstar began servicing the Hackinen Loan effective August 15, 2011, at which

23    time the account was delinquent. Welcome Letter, **Ex. 30**; Ehinger Dep. (II) 112:10-13; Hackinen

24    Dep. 29:21-24, **Ex. 31**.

25        41.    Hackinen worked with two groups to refinance his mortgage.  Hackinen Dep. 30:21-

26    31:13. He did not have any knowledge of requesting a payoff statement from Nationstar because

27    he "left it up to" the loan guys to handle all the paperwork, while he "went on trust."  *Id.* 32:3-13.

28    He simply authorized "the loan guys" to "do what they needed to do," *id.* 64:18-19, and they

NATIONSTAR'S MOTION FOR SUMMARY JUDGMENT - 10
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

1  requested payoff statements for the refinance effort.  *Id.* 64:21-23.

2      42.    Hackinen obtained four expedited payoff quotes.  The requests on July 5, 2023, July

3  21, 2023, and March 11, 2024, were made by IVR, with a fourth, on October 5, 2023, via the

4  website.  *See* Communication History, **Ex. 32**; Transaction History, **Ex. 33**; Payoff Quotes, **Ex. 34**.

5      43.    Hackinen described the expedited fee disclosure as "black and white," but he did

6  not "pay any attention to that when the loan guys were working on trying to get [him] a new loan."

7  Hackinen Dep. 54:5-9.  Hackinen "was looking for a refi and they got it done. What they did, how

8  they did it, who they spoke to, I left it in their hands. I trusted them and that's it." *Id.* 39:22-25.

9  **F.    Uniform Instruments**

10      44.    The Palazzo Deed of Trust is a Single Family-Fannie Mae/Freddie Mac Uniform

11  Instrument, which states:

12  > **14. Loan Charges.** Lender may charge Borrower fees for services performed in
   > connection with Borrower's default, for the purpose of protecting Lender's interest
13  > in the Property and rights under this Security Instrument, including, but not limited
   > to, attorneys' fees, property inspection and valuation fees. ***In regard to any other***
14  > ***fees, the absence of express authority in this Security Instrument to charge a***
   > ***specific fee to Borrower shall not be construed as a prohibition on the charging***
15  > ***of such fee.*** Lender may not charge fees that are expressly prohibited by this
   > Security Instrument or by Applicable Law.
16
17  Ex. 21 (emphasis added).  Salom and Hackinen's deeds of trust have the same terms.  Ex. 12 & 29.

18  ## III.    ARGUMENT

19  **A.    It would be contrary to law—and a policy harmful to consumers—to deny Plaintiffs'**
   **freedom to contract with Nationstar to obtain optional, additional services that**
20  **Nationstar is not required to provide by law and that are outside the contract.**

21      This lawsuit attacks the fundamental right of Nationstar and Plaintiffs[4] to contract for an

22  optional, additional service (*i.e.*, expedited processing of a payoff quote) arising entirely outside

23

24  [4] Despite the purported assignment of claims, Am. Compl. ¶ 92, Plaintiff Palazzo does not have standing
   to assert offensive consumer claims against Nationstar *on behalf of her husband*.  Courts routinely hold
25  consumers cannot assert statutory claims on behalf of another consumer because they lack standing to do
   so.  *See James v. Puget Sound Collections*, No. 22-5237 RJB, 2022 WL 2357050, at *3 (W.D. Wash. June
26  30, 2022) (holding that the FDCPA did not allow for assignment of claim); *Danso v. Ocwen Loan
   Servicing, LLC*, No. CV PX 16-1396, 2016 WL 4437653, at *4 (D. Md. Aug. 23, 2016) ("In the consumer
27  lending context, a party 'generally must assert his own legal rights and interests, and cannot rest his claim
   to relief on the legal rights or interests of third parties.'" (quoting *Wolf v. Fed. Nat'l Mortgage Ass'n*, 512
28  Fed.Appx. 336, 342 (4th Cir. 2013))).  This bars Plaintiff Palazzo's claims on behalf of her husband.

NATIONSTAR'S MOTION FOR SUMMARY JUDGMENT - 11
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

the loan agreements.  Adopting Plaintiffs' theory—that a loan servicer and borrower are precluded from ever contracting for additional services not required by statute or governed by existing loan documents—runs contrary to centuries of precedent holding inviolate the freedom to contract and would harm consumers by preventing them from obtaining additional services.  The Court should reject Plaintiffs' novel argument.

      1.    <u>Nationstar had no duty arising from statute to provide Plaintiffs with expedited delivery of a payoff quote and expedited delivery services fall entirely *outside* the scope of the loan agreements.</u>

Duties do not arise in a vacuum.  "A duty can arise either from common law principles or from a statute or regulation."  *Doss v. ITT Rayonier, Inc.*, 60 Wash. App. 125, 129 (1991) (citing *Bernethy v. Walt Failor's, Inc.,* 97 Wash.2d 929, 932 (1982)).  It can also arise from contract. *Mesmer v. Maryland Auto. Ins. Fund*, 353 Md. 241, 258 (1999) (recognizing that the "source of the duties" at issue were "entirely contractual"); *Donatelli v. D.R. Strong Consulting Eng'rs, Inc.*, 179 Wash. 2d 84, 92 (2013) (requiring a court to consider "what duties have been assumed by the parties *within* the contract") (emphasis original).  There are limited sources of legal duty: 1) common law, 2) statute/regulation, or 3) contract.  If a duty is not imposed by one of these sources, no duty exists.

As applicable to Plaintiffs, the only <u>statutory requirement</u> Nationstar has is to provide a payoff quote in response to a written (not verbal) request, within seven (7) business days. 15 U.S.C. § 1639g.  And there is no requirement in any of Plaintiffs' security instruments that Nationstar provide a payoff quote, let alone expedited delivery of a payoff quote. Instead, as this Court previously held and as numerous courts have found, the loan agreements do not cover the subject matter of payoff quotes or expedited fees at all. ECF No. 77, at 12; *see, e.g*., *Beyer v. Countrywide Hom Loans Svc'g LP*, 359 Fed. Appx. 701, 702 (9th Cir. 2009) (expedited payoff service was voluntary and extraneous to the mortgage); *Cappellini*, 991 F. Supp. 31, 39-40 (D. Mass. 1997) ("The fax and duplicate statement charges relate to special services *outside of the scope* of the basic services provided by a mortgage servicer …."); *Davis v. Homecomings Fin.*, No. C05-1466RSL,

NATIONSTAR'S MOTION FOR SUMMARY JUDGMENT - 12
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

2006 U.S. Dist. LEXIS 77331, at *14 (W.D. Wash. Oct. 10, 2006) (same). Expedited delivery services fall into that category of special services that are *outside* the loan agreement.[5]

In the absence of a duty, Nationstar did not owe Plaintiffs an extra-contractual service: expedited processing of a payoff quote. *See Wesker v. Select Portfolio Servicing, Inc.*, No. 1:21-CV-03012-JRR, 2024 WL 4237357, at *8 (D. Md. Sept. 19, 2024) ("as a matter of law, no duty arises" from a loan servicer advertising "extra-contractual" services; *Ensor v. Wells Fargo Bank Nat'l Ass'n*, No. CV CCB-21-324, 2022 WL 345513, at *3 (D. Md. Feb. 4, 2022) ("offering extra-contractual" service is not "a 'special circumstance,' and thus does not give rise to a duty on the part of the lender to the consumer").

All Plaintiffs' arguments in this lawsuit must be considered in light of the indisputable fact that Nationstar had no common law, statutory, or contractual obligation to send Plaintiffs a payoff quote sooner than seven (7) business days. Moreover, the expedited service at issue is not encompassed by the loan agreements. Given these indisputable facts, this case turns on the simple question: ***Can the parties contract for an extra service outside the loan agreements?***

2.   <u>Absent a pre-existing duty, Plaintiffs had freedom of contract to accept Nationstar's offer for expedited delivery of their payoff quotes and in return pay for that service.</u>

"At root, this case is about the respect the law ought to accord agreements between private parties. **Despite recent cynicism, sanctity of contract remains an important civilizing concept.**"

---

[5] Plaintiffs have tried to turn this case into a "pay-to-pay" case so they can take advantage of case law holding that servicers cannot charge a fee to borrowers for making payments over the telephone or online without violating the FDCPA. Irrespective of the debatable merits of those decisions, a fee to expedite delivery of a payoff statement is not a "pay-to-pay fee." Numerous courts have held that a fee to expedite delivery of a payoff statement is *not* a fee required to pay off the loan. *See, e.g., Curran v. Wash. Mut. Bank, FA*, 2006 U.S. Dist. LEXIS 19187, at *8-9 (W.D. Ark. March 2, 2006) (a fax fee may be connected to payoff statements ordered for a litany of reasons, including "when payment is being contemplated (but not made), for general information, financial planning, updating personal records, preparing personal financial statements" and so on); *Cappellini*, 991 F. Supp. at 38 (expedited fee may be incurred in situations unrelated to prepayment and a borrower may pay a loan without obtaining a payoff statement). An expedited delivery fee is fundamentally different from a "pay-to-pay" fee, where the borrower *must* pay the fee to use a particular service to fulfill a contractual payment obligation. Unlike a "pay-to-pay" fee, fees for providing expedited services fall outside the scope of the loan documents. *Id.*, at 39 (while some fees not stated in the contracts might be barred, fax charges are not within the scope of the loan agreement and, like charges for federal express or requests for certified copies of documents, therefore are permissible).

---

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

1   *Morta v. Korea Ins. Corp.*, 840 F.2d 1452, 1460 (9th Cir. 1988) (emphasis added).  While the Ninth

2   Circuit wrote these words almost four decades ago, they remain just as applicable today.

3   "The sanctity of a contract is a fundamental concept of our entire legal structure." *Chambers*

4   *Dev. Co. v. Passaic Cnty. Utilities Auth.*, 62 F.3d 582, 589 (3d Cir. 1995); *Sanger v. Yellow Cab*

5   *Co.*, 486 S.W.2d 477, 480 (Mo. 1972) ("It is the policy of the law to encourage freedom of

6   contract.").  Contracts embody "very important ideas about the nature of human existence and about

7   personal rights and responsibilities: that people have the right, within the scope of what is lawful,

8   to fix their legal relationships by private agreement." *Morta*, 840 F.2d at 1460.  Considering the

9   paramount sanctity of contract, it is unsurprising courts routinely recognize the enforceability of

10   contracts, even when one party makes a bad deal. *Calomiris v. Woods*, 353 Md. 425, 445 (1999)

11   ("Contracts play a critical role in allocating the risks and benefits of our economy, and courts

12   generally should not disturb an unambiguous allocation of those risks in order to avoid adverse

13   consequences for one party."); *accord King Cnty. v. CPM Dev. Corp.*, 25 Wash. App. 2d 1036,

14   2023 WL 1777235, *7 (Wash. App. Feb. 6, 2023).

15   "The principle of freedom of contract dictates that express contract clauses are **presumed**

16   **to be enforceable**." *Smelkinson Sysco v. Harrell*, 162 Md. App. 437, 447 (2005) (emphasis added);

17   *Berne Corp. v. Gov't of the Virgin Islands*, No. CV 2000-141, 2011 WL 13228471, at *1 (D.V.I.

18   Jan. 22, 2011). Thus, because courts "recognize an overarching freedom to contract," agreements

19   are only "unenforceable where they are prohibited by statute," *Jordan v. Nationstar Mortg., LLC*,

20   185 Wash. 2d 876, 883 (2016) or are "contrary to public policy." *Preferred Contractors Ins. Co. v.*

21   *Baker & Son Constr. Inc.*, 200 Wash. 2d 128, 136–37 (2022) (recognizing that "parties are

22   ordinarily free to exercise their freedom of contract").

23   Considering the law above, the answer to the question initially posed is: ***Yes, absolutely***.

24   Plaintiffs and Nationstar "are ordinarily free to exercise their freedom of contract." *Preferred*

25   *Contractors*, 200 Wash. 2d at 136–37. To invalidate the parties' agreement, Plaintiffs must

26   demonstrate that their agreement to pay for additional services rendered (expedited delivery) was

27   somehow "contrary to public policy." *Id.*  Based on the undisputed facts and application of law,

28   Plaintiffs cannot make this showing.

NATIONSTAR'S MOTION FOR SUMMARY JUDGMENT - 14
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

3.     To show that charging a fee for additional services is contrary to public policy, Plaintiffs must identify a clear policy recognized by statute.

Showing that Plaintiffs' agreement with Nationstar to purchase optional, additional services somehow violates public policy is a high bar. Plaintiffs cannot clear this hurdle. Courts "will not, under the guise of public policy, rewrite a clear contract between the parties." *Findlay v. United Pac. Ins. Co.*, 129 Wash. 2d 368, 380 (1996); *Lithko Contracting, LLC v. XL Ins. Am., Inc.*, 487 Md. 385, 417 (2024) ("While the Court may decline to enforce contract provisions on the grounds that they are against public policy, … the Court will not rewrite the contracts of these parties….").

"In general, a contract which is not prohibited by statute, condemned by judicial decision, or contrary to the public morals contravenes no principle of public policy." *LK Operating, LLC v. Collection Grp., LLC*, 181 Wash. 2d 48, 85–86 (2014). When a public policy exists, "it will ordinarily be found in a regulatory statute." *Findlay*, 129 Wash. 2d at 379. Thus, "[a]bsent a statute, Washington courts are reluctant to invoke public policy as a reason to limit or avoid express contract terms." *Fluke Corp. v. Hartford Acc. & Indem. Co.*, 102 Wash. App. 237, 246 (2000), *as modified* (Oct. 23, 2000), *aff'd*, 145 Wash. 2d 137 (2001); *accord Willard Packaging Co. v. Javier*, 169 Md. App. 109, 122 (2006) ("[P]arties have a broad right to construct the terms of contracts they enter into as they wish, providing the contract is neither illegal nor contrary to public policy.").

4.     Plaintiffs do not identify any statute that prohibits servicers from offering – and from borrowers accepting—services outside the loan agreement for additional fees.

In their Amended Complaint, Plaintiffs do not point to any statute that explicitly *prohibits* loan servicers from changing a fee for an additional service (expedited delivery) outside the scope of the loan documents. Plaintiffs string together a hodgepodge of statutory citations to obfuscate this critical deficiency. *See* Am. Compl. ¶¶ 28-41 (FDCPA, TILA, and RESPA); ¶¶ 42-60 (Maryland and Washington state consumer laws); ¶¶ 69-71 (HUD servicing requirements).

Plaintiffs cite the Truth in Lending Act ("TILA") to show that loan servicers, such as Nationstar, have the obligation to send a payoff statement within seven (7) business days. *Id.* ¶ 36 (quoting 15 U.S.C. § 1639g). This requirement is reiterated in Regulation Z, which requires the payoff statement to be "accurate" "as of a specified date." *Id.* ¶ 37 (quoting 12 C.F.R.

NATIONSTAR'S MOTION FOR SUMMARY JUDGMENT - 15
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

§ 1026.36(c)(3)).  Plaintiffs then cite the Real Estate Settlement Procedures Act ("RESPA") for the proposition that Nationstar is not permitted to charge borrowers for the seven (7) day payoff statement required by TILA.  *Id.* ¶ 39 (12 U.S.C.A. § 2610).

None of this is controversial.  Nationstar's policy and procedure is to comply with each of these statutory requirements, taking into consideration both federal law, industry standards, and applicable state laws.  SOF ¶ 11-13.  Upon written request from a borrower, Nationstar provides a payoff statement—for free—within the statutorily allowed timeframe.  SOF ¶ 5. Nothing in Plaintiffs' legal citations indicates that Plaintiffs were *prohibited* from accepting Nationstar's offer of an additional service beyond what was required by contract and statute and that falls outside the loan agreement: expedited delivery of a requested payoff quote.  *See generally* Am. Compl.; *Calomiris*, 353 Md. at 445–46 (criticizing the trial court's ruling because it "overlooked" the importance of enforcing the agreed contracts "in its desire to arrive at a 'fair' result").

The remainder of Plaintiffs' legal citations reflect general requirements regarding not unfairly collecting existing debts.  *See generally* Am. Compl. ¶¶ 28-60.  These citations state the unremarkable proposition that a debt collector cannot inflate the amount owed.[6] And, this makes sense.  The parties have an agreement for a product or services (here, a mortgage loan) and one party (the loan servicer) cannot unilaterally change the terms by increasing the cost to the other party.  This is consistent with the basic principle of contracts that "[t]he law … requires parties to do what they have agreed to do." *Moyer v. Mitchell*, 53 Md. 171, 177 (1880).

**But the logic of this goes both ways.**  While a loan servicer cannot inflate charges for borrowers, borrowers are *not* entitled to additional services from loan servicers that were not agreed to and for which the borrower is not paying.  "To say that a borrower can make such requests for his or her own benefit, yet,  … never allow the mortgage servicer to charge for the services unless they are specified in the loan documents would be an unreasonable interpretation of the contracts." *Cappellini,* 991 F. Supp. at 39-40.  Just like inflating costs without providing additional services, demanding that loan servicers provide additional services without compensation *for those services*

---

[6] As noted above, an expedited service fee is not a "pay-to-pay" fee. Moreover, expedite fees are expressly permitted by law. *See infra* Part III.A.5-6.

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

1   is tantamount to one party unilaterally forcing new contract terms on the other – which the law does

2   not allow.  *Krause v. GE Capital Mortg. Servs.*, 314 Ill. App. 3d 376, 387 (2000) ("We do not

3   believe that plaintiffs' mortgages and notes entitled them to receive free of charge any service not

4   specifically referenced in the contract. Therefore, we reject plaintiffs' argument that the mortgages

5   and notes preclude defendant from charging quote and fax fees.").

6       Quite simply, none of Plaintiffs' citations to legal authority demand that one party (a loan

7   servicer) provide services (expedited delivery) to another party (the consumer) which are not

8   encompassed by the parties' original agreement and for which the loan servicer is not paid.[7]

9       5.    <u>Courts routinely hold that borrowers can request—and loan servicers may provide
10              for an additional fee—services outside of those encompassed by the loan
               documents.</u>

11      For decades, consumers have challenged fees for additional services not subject to their loan

12  documents, such as expedited delivery of payoff statements.  And they have lost these challenges.

13      Numerous courts have analyzed challenges to fees charged by loan servicers for additional

14  services and found that "[t]here is **nothing inequitable** about a company charging a fee for an

15  additional service rendered." *Davis*, 2006 U.S. Dist. LEXIS 77331, at *14; *e.g.*, *Cassese v. Wash.

16  Mut.*, No. 05 CV 2724, 2007 U.S. Dist. LEXIS 117562, at *13-14 (E.D.N.Y. Sep. 7, 2007)

17  (dismissing TILA and RESPA claims over payoff statement fees); *Chatman v. Fairbanks Capital

18  Corp.*, No. 02 C 665, 2002 U.S. Dist. LEXIS 10945, at *8 (N.D. Ill. June 13, 2002) ("Defendant is

19  not required to specifically state every service-related fee in Plaintiffs' note or mortgage.");

20  *Cappellini*, 991 F. Supp. at 39-40 ("There are a number of special services that a borrower could

21  ask Mellon to provide that are not mentioned in the loan documents but which it appears clear that

22  Mellon would have a right to request payment for providing.").

23      In fact, such fees are widely recognized in the loan servicing industry. *See* 12 CFR

24  § 1026.34(9)(ii) (explicitly stating that loan servicers can charge "processing fees" for payoff

25

26  ―――――――――――

27  [7] Indeed, the Washington Administrative Code recognizes that servicers may charge fees when those fees
    are agreed to, or authorized, by the borrower in exchange for extra services. *See* WAC 208-620-567
    (providing non-exclusive examples, such as wire transfer fees for a wire transfer requested by the
28  borrower).

―――――――――――

NATIONSTAR'S MOTION FOR SUMMARY JUDGMENT - 17
(Case No. 2:24-cv-00444-BJR)

statements that are "comparable to *fees imposed for similar services provided in connection with consumer credit transactions that are secured by the consumer's principal dwelling and are not high-cost mortgages*"—*i.e.*, payoff quote processing fees that are charged by loan servicers for traditional mortgages); SOF ¶ 17 (citing Bryar Rep. ¶¶ 52-67) (explaining that fees for expedited payoff quotes are standard in the mortgage servicing industry and are approved by the GSEs); Alternative Mortgage Servicing Compensation Discussion Paper, FHFA (Sept. 27, 2011) ("Servicers are also entitled to certain ancillary fees under the Servicing Guidelines, which include, among other things, … charges for issuing payoff statements, [and] fax charges….").

For example, Fannie Mae is a "leading source of financing for residential mortgages" in the U.S. and publishes a guide that "establishes loan servicing guidelines" for the industry.  SOF ¶ 18. Fannie Mae's servicing guide defines "allowable fees for servicing" to explicitly *include* fees for "providing expedited service…."  *Id.* (quoting A2-3-05, Fees for Certain Servicing Activities, Fannie Mae (Nov. 8, 2017), https://servicing-guide.fanniemae.com/svc/a2-3-05/fees-certain-servicing-activities).  This servicing guide is expressly sanctioned by the U.S. government agency via the FHFA, giving it the effective force of law.  SOF ¶ 16.  In other words, it is expressly permitted by law to charge a fee for "providing expedited service."

Courts agree. While today, servicers may provide expedited transmission of payoff quotes via the internet, historically, consumers' challenges arose in the context of a "fax" fee.  *See Curran*, 2006 U.S. Dist. LEXIS 19817, at *11 (defendant was entitled to summary judgment on breach of contract claim and RESPA claim for fax fee); *Stone v. Mellon Mortg. Co.*, 771 So. 2d 451, 455 (Ala. 2000) ("We conclude that Mellon did not violate the terms of the note by charging the Stones the fax fee ..."); *Jurik v. Columbia Nat'l, Inc.*, 97 C 6877, 1999 U.S. Dist. LEXIS 19241, at *9 (N.D. Ill. Sep. 29, 1999) (granting summary judgment to defendant because "neither the  $ 5 fax fee nor the $ 10 quote fee constitutes a prepayment penalty" and the fees "do not constitute a deceptive act or practice"); *Beyer v. Countrywide Home Loans Svc'g LP*, 2008 U.S. Dist. LEXIS 122333, at *19-20 (Apr. 18, 2008), *aff'd* 359 Fed. Appx. 701 (9th Cir. 2009) (payoff statements were not misleading when they stated that the fees were charges for "expedited payoff service");

NATIONSTAR'S MOTION FOR SUMMARY JUDGMENT - 18
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

1  *Cain v. Source One Mortg. Servs. Corp.*, No. 43041-6-I, 1999 Wash. App. LEXIS 1600, at *5 (Ct.

2  App. Aug. 30, 1999) (charging for expedited service was not a breach of contract).

3  Using a potpourri of legal theories over multiple decades, consumers have sought to coerce

4  loan servicers into providing services that consumers are not entitled to by law or by contract for

5  free. Courts around the United States, have rejected these attempts. This Court should do the same.

6        6.    <u>Allowing borrowers to purchase optional, additional services from loan servicers is not only permitted by law but is sound policy.</u>

7

8  Not only is it the law to allow loan servicers and consumers to agree to additional services

9  outside of the loan agreements, doing so is just sound policy. There are two reasons for this.

10  First, providing a consumer with expedited delivery of a payoff quote provides the

11  consumer something of value to which the consumer is not otherwise entitled: *time*. By obtaining

12  a payoff quote in hours or minutes instead of days, a consumer may use the payoff quote to obtain

13  a mortgage loan refinance or pay off a home mortgage *a week sooner*. By providing expedited

14  services, a loan servicer is providing "an accommodation of [the consumer's] special request,"

15  which they are not otherwise obligated to do. *Cain*, 1999 Wash. App. LEXIS 1600, at *1; *Davis*,

16  2006 U.S. Dist. LEXIS 77331, at *14 (finding the consumer "received the benefit of receiving the

17  statement in an expedited manner"); *Krause*, 314 Ill. App. 3d at 385-86 ("[T]he fax and quote fees

18  in this case were charged for *special services that plaintiffs requested*.") (emphasis added).

19  Second, allowing loan servicers and consumers to contract for additional services in

20  exchange for a fee keeps the overall interest rate down for consumers while allowing consumers

21  who desire special services to still obtain those services. Contrary to Plaintiffs' position, the FHFA

22  and the GSEs do *not* treat expedited service fees as "junk fees." SOF ¶ 19. The GSEs depend on

23  loan servicers to service GSE loans. *Id.* Consequently, the GSEs face the risk that inadequate

24  servicer compensation will lead to insufficient investments in proper loan servicing. *Id.*

25  Conversely, if servicer compensation is excessively high, it may render the loans unaffordable for

26  borrowers. *Id.* The goal of FHFA and the GSEs is "to provide borrowers with '[a]ccess to a

27  competitive, inexpensive mortgage market' while at the same time ensuring that servicing is

28  'profitable.'" *Id.* (quoting *FHFA Directive in Coordination with HUD* (February 2011)). Fees for

NATIONSTAR'S MOTION FOR SUMMARY JUDGMENT - 19
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

additional services, such as expedited processing, help "strike a balance between servicer profitability and affordability for borrowers." *Id.* If servicers were prohibited from charging fees, "FHFA and the GSEs would have to increase the servicing fee for loans. That increase would, in turn, increase the cost of loans for every borrower since, as explained above, the servicing fee is paid out of a loan's interest income, which is paid by all borrowers." *Id.* The reciprocal, however, is also true. Charging these fees separately means that "all borrowers – including those who elect to use ancillary services – ***pay lower interest rates***." *Id.* Allowing loan servicers to offer extra, valuable services to borrowers for extra fees honors centuries of contract law. It is also good policy.

**B.     Based on the undisputed material facts, Nationstar is entitled to summary judgment on Plaintiffs' claims.**

1.      Nationstar is entitled to summary judgment on Plaintiffs' unjust enrichment claim.

In Count I, Plaintiffs allege a claim for unjust enrichment based on Nationstar's allegedly improper charging of an expedited delivery fee for payoff quotes. Am. Compl. ¶¶ 160-174.

Unjust enrichment entails "(1) conferral of the benefit, (2) knowing acceptance or retention of the benefit, and (3) lack of adequate compensation for the benefit." *Bircumshaw v. State*, 194 Wash. App. 176, 205 (2016); *Transamerica Premier Life Ins. Co. v. Selman & Co., LLC*, 401 F. Supp. 3d 576, 597 (D. Md. 2019) (same). "The general rule is that an unjust enrichment claim may not proceed when an enforceable contract exists." *See* ECF No. 77, at 12. But when the initial contract "does not cover the subject matter at issue," the parties can make another agreement. *Id.*

Here, the Court previously held that the loan documents, which were "silent as to the challenged fees," did not cover the subject matter and, therefore, Plaintiffs' unjust enrichment claim survived Nationstar's motion for judgment on the pleadings. *See id.* at 13. Thus, the only operative contractual arrangement between the parties related to the expedited service fee was Nationstar's offer to provide expedited delivery of a payoff quote for $25, Plaintiffs' acceptance of Nationstar's offer, Nationstar's performance by expedited delivery, and Plaintiffs' $25 consideration for the special services. *See Beyer*, 359 F. App'x at 702 ("The expedited payoff service was voluntary and extraneous to the mortgage.").

NATIONSTAR'S MOTION FOR SUMMARY JUDGMENT - 20
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

As explained in detail above, this was an entirely proper contract for a service, enforceable under the law.  There are no facts showing that there was a one-sided conferral of a benefit, improper retention by Nationstar of the same, or lack of adequate service to Plaintiffs in exchange. SOF ¶ 20-43.  Plaintiffs voluntarily contracted with Nationstar to obtain valuable services that Plaintiffs would not otherwise have received.  Plaintiffs' claim for unjust enrichment fails.  *Stone*, 771 So. 2d at 456 (affirming summary judgment for mortgage servicer on unjust enrichment claim)

2. <u>Nationstar is entitled to summary judgment on Plaintiff Hackinen's FDCPA claim.</u>

Next, in Count III,[8] Plaintiff Hackinen[9] asserts on behalf of the FDCPA Subclass that Nationstar's payoff statement fees violate 15 U.S.C. § 1692f(1), Am. Compl. ¶ 190, which prohibits a debt collector from "collect[ing] ... any amount … unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

There are four elements of a FDCPA cause of action: (1) the plaintiff is a "consumer" under 15 U.S.C. § 1692a(3); (2) the debt arises out of a transaction entered into for personal purposes; (3) the defendant is a "debt collector" under 15 U.S.C. § 1692a(6); and (4) the defendant violated one of the provisions contained in 15 U.S.C. §§ 1692a – 1692o. *See Minichino v. Piilani Homeowners Ass'n,* No. 16-00461, 2016 WL 5796799, at *4 (D. Haw. Sept. 30, 2016).

The record shows that Nationstar contracted with Plaintiffs to provide them a specific service: expedited processing of their payoff quotes. This service fell outside the scope of their loan agreements, so Plaintiffs contracted with Nationstar to provide a separate, optional service. Plaintiffs specifically agreed to a $25 fee for Nationstar's expedited delivery service.  SOF ¶ 20-43.  Given the terms of this separate contract, there can be no doubt that Nationstar received from Plaintiffs the $25 consideration that was *expressly authorized* by the parties' agreement.  No one coerced Plaintiffs into obtaining this optional service.  They requested it from Nationstar.  And there is no doubt that the $25 fee was clearly disclosed.  Plaintiffs agreed to the fee, making the

---

[8] The Court previously dismissed the breach of contract claim asserted in Count II against Freddie Mac and the Defendant Class.  ECF No. 85.

[9] Plaintiffs Salom and Palazzo do not assert violations of the FDCPA.  Indeed, they cannot because neither loan was in default when servicing transferred to Nationstar.  SOF ¶¶ 21, 31.

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

1   collection of the fee expressly authorized by the agreement.  As stated above, the expedited service

2   fee is routinely used in the industry and authorized by contract law.

3       Moreover, simply sending a payoff quote is not an attempt to collect debt.  Plaintiff

4   Palazzo's husband already litigated this exact issue—and lost.  *Palazzo v. Bayview Loan Servicing*

5   *LLC*, No. CV DLB-20-2392, 2024 WL 4361857, at *11 (D. Md. Sept. 30, 2024) ("[T]he payoff

6   statement was not an attempt to collect debt…. The statement does not demand payment

7   immediately or by a certain date, and the amounts included in the statement cannot be reasonably

8   viewed as a demand for payment…. The payoff statement does not list Palazzo's monthly

9   obligation or include a payment coupon…. The 'animating purpose' of the payoff statement clearly

10  was to provide Palazzo with information on his mortgage account, not to demand payment. The

11  fact that Bayview sent this statement at Palazzo's request is yet another reason why the payoff

12  statement is not an attempt to collect a debt."); *accord Chaudhry v. Gallerizzo*, 174 F.3d 394, 401

13  (4th Cir. 1999) ("[The payoff] letter was not an act to collect a debt, but rather was sent at Fox's

14  request so that she could have an accurate payoff figure at the refinancing meeting.").  This alone

15  bars any FDCPA claim.

16      Plaintiff Hackinen's claim under the FDCPA fails as a matter of law.  He purchased a

17  service from Nationstar.  He acknowledges it was beneficial (SOF ¶ 43), and he cannot prevail on

18  a claim that collecting the fee he agreed to, for a service he purchased, was somehow improper.

19      3.      Nationstar is entitled to summary judgment on Plaintiffs' claim for violations of
                state debt collection and mortgage servicing laws.

20      Finally, Nationstar is entitled to summary judgment on Plaintiffs' miscellaneous claims for

21  violations of state debt collection and mortgage servicing laws.  In Plaintiffs' final claim they assert

22  generalized "Violations of State Debt Collection and Mortgage Servicing Laws." Am. Compl.

23  Count IV.  Plaintiffs attempt to assert a claim for violations of "the laws of any and all of the fifty

24  states and the District of Columbia that regulate the conduct of debt collectors and/or mortgage

25

26

27

28

servicers in consumer transactions." *Id.* ¶ 204. Plaintiffs' basic claim appears to be that Nationstar collected the $25 expedited delivery fee without authority to do so, in violation of state laws.[10]

Beyond the glaringly improper pleading,[11] Plaintiffs' generalized claims fail because the applicable law does not prevent Nationstar from offering expedited services for a fee. In the interest of brevity, Nationstar will not repeat the pages of argument above. Suffice it to say that none of Plaintiffs' citations to state laws[12] explicitly prohibit a loan servicer from contracting to provide an expedited service, for a fee, to borrowers. *See generally* Am. Compl.

Plaintiffs' state law claims fail broadly on several other common elements:

- With respect to all of the state statutes that include some element of deception or misrepresentation, *e.g.*, *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986) (identifying unfair or deceptive act or practice as an element of the WCPA claim); *Lloyd v. General Motors Corporation*, 916 A.2d 257, 277 (Md. App. Ct. 2007) (same element under MCPA), there are precisely **zero facts** indicating that Nationstar acted deceptively or misrepresented the fee for expedited delivery of a payoff quote. Nationstar offers to expedite delivery of payoff quotes for $25. SOF ¶ 6. A borrower can purchase expedited delivery only after being informed of the fee for the service and consenting to the fee. SOF ¶ 9. For example, before Palazzo could order expedited delivery of her payoff statement on Nationstar's website, she had to read a disclosure and

---

[10] To the extent that Count IV is derivative of the FDCPA, neither Mr. Salom nor Ms. Palazzo can rely on the FDCPA because their loans were current when transferred to Nationstar. Dkt. # 35-5; Dkt. # 35-7. Based on these faults alone the derivative Count IV claim should be dismissed.

[11] Plaintiffs have not suffered an invasion of a legally protected interest under other states laws and thus lack standing to assert claims under such laws. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011) (collecting cases for proposition that "plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury"). Likewise, this Court lacks jurisdiction over state law claims arising outside Washington State. For a court to "exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 582 U.S. 255, 264 (2017). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.*

[12] Nationstar only offers expedited delivery of payoff quotes for an extra fee in states that do not prohibit such fees. SOF ¶¶ 2, 8, 13.

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

affirmatively agree to the fee.  SOF ¶ 33.  This is not deceptive.  *Beyer*, 359 F. App'x at 702 (voluntary selection of expedited payoff service was not "deceptive" under the CPA).

- For state statutes that require attempting to collect a debt without the legal authority to do so, these claims fail because Nationstar had legal authority to collect a $25 fee pursuant to the parties' agreement.  *Pugh v. Corelogic Credco, LLC*, No. DKC-13-1602, 2013 WL 5655705, at *4 (D. Md. Oct. 16, 2013) (identifying MCDCA element that "that Defendant attempted to collect the debt knowing that it lacked the right to do so").

- Finally, for all the consumer statutes that require actual damages, *e.g. Lloyd*, 916 A.2d at 277 (requiring actual damages for MCPA claim), Plaintiffs' claims must fail.  If Plaintiffs did not want to pay the expedited service fee, they could have requested the payoff quotes on a regular, instead of expedited, basis.  SOF ¶ 5.  Had they done so, Nationstar would not have charged them any fee for the payoff quote.  SOF ¶ 9.  Of course, they also would not have gotten the payoff quote as quickly.  Plaintiffs voluntarily chose to pay $25 for expedited delivery of their payoff quotes.  They cannot demonstrate any actual damages resulting from this choice.  *Paris v. Steinberg & Steinberg*, 828 F.Supp.2d 1212,1218 (W.D. Wash. 2011) (dismissing CPA claim because consumer failed to allege actual damages).

In the end, Plaintiffs' state law claims are victims of Plaintiffs' central—but fundamentally flawed—premise that a fee for expedited service is *prohibited* by law.  It is not.  As explained above, fees for expedited services (such a faxing a payoff quote) are presumed enforceable as a matter of contract law, routinely used in the industry, and repeatedly upheld by courts.

## IV.    CONCLUSION

For nearly two centuries, American law has recognized that "the obligation of private contracts has been regarded by all civilized people, as of the highest and most inviolable sanctity; and according to our fundamental law, there is no power in the land by which the obligation of such contracts can be in any manner lessened or impaired."  *Clagett v. Salmon*, 5 G. & J. 314, 327–28 (1833) (opinion of Chancellor Bland).  Plaintiffs ask this Court to deny consumers the right to contract with Nationstar for an additional service.  The Court should soundly reject this invitation and grant summary judgment on Plaintiffs' claims against Nationstar in their entirety.

NATIONSTAR'S MOTION FOR SUMMARY JUDGMENT - 24
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

1    Dated:  April 14, 2025                    TROUTMAN PEPPER LOCKE LLP

2                                              By: */s/ Jason E. Manning*
3                                                  Thomas N. Abbott (WSBA No. 53024)
                                                   100 SW Main Street, Suite 1000
4                                                  Portland, Oregon 97204
                                                   Telephone: 503.290.2322
5                                                  Email: thomas.abbott@troutman.com

6
                                                   Justin D. Balser (WSBA No. 56577)
7                                                  100 Spectrum Center Drive, Suite 1500
                                                   Irvine, California 92618
8                                                  Telephone: 949.622.2700
                                                   Facsimile:  949.622.2739
9                                                  Email: justin.balser@troutman.com

10
                                                   John C. Lynch (admitted *pro hac vice*)
11                                                 Jason E. Manning (admitted *pro hac vice*)
                                                   222 Central Park Avenue, Suite 2000
12                                                 Virginia Beach, Virginia 23462
                                                   Telephone: 757.687.7500
13                                                 Email: john.lynch@troutman.com
                                                   Email: jason.manning@troutman.com
14

15                                                 Attorneys for Defendant
                                                   NATIONSTAR MORTGAGE LLC D/B/A
16                                                 CHAMPION MORTGAGE

17

18

19

20

21

22

23

24

25

26

27

28

NATIONSTAR'S MOTION FOR SUMMARY JUDGMENT - 25
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405