The Honorable Barbara J. Rothstein

1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON - SEATTLE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

RICARDO SALOM, CATHERINE
PALAZZO as assignee for Ruben Palazzo,
and PETER HACKINEN, *on their own
behalf and on behalf of other similarly
situated persons,*

          Plaintiffs,

        vs.

NATIONSTAR MORTGAGE LLC


          Defendant.

Case No. 2:24-cv-00444-BJR


**PLAINTIFFS' OPPOSITION TO
NATIONSTAR'S MOTION FOR
SUMMARY JUDGMENT**

OPPOSITION TO NATIONSTAR'S
MOTION FOR SUMMARY JUDGMENT
2:24-cv-00444-BJR

DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010

**PLAINTIFFS' STATEMENT OF MATERIAL FACTS WHICH PRECLUDE SUMMARY JUDGMENT**[1]

**A.** Nationstar imposes, charges, and collects certain fees from residential mortgage borrowers just like the Plaintiffs, who request a payoff statement to be delivered in less than seven days.[2]

**B.** Federal and state laws and regulations are incorporated into and govern every standard, mortgage contract of the Plaintiffs (and others just like them) to which Nationstar acts as servicer.[3] Nationstar also provides training to its officers and employees on the applicable laws that govern its work, including the Truth in Lending Act ("TILA"), Fair Debt Collection Practices Act ("FDCPA"), and Real Estate Settlement Procedures Act ("RESPA").[4]

**C.** Federal law unambiguously bars Nationstar from imposing and collecting any fee related to any statement authorized by the TILA that is subject to this action, which is delivered in less than seven days to the borrower. *See* Argument *infra* at Pages 7-11. Nationstar does not even know if its legal or compliance departments reviewed those laws.[5]

**D.** The laws and regulations of Washington or Maryland do not permit Nationstar to impose, charge, and collect any fees not agreed to by a borrower in a signed agreement. *See* Argument *infra* at Pages 11-16. *See also* Ex. 6, Dec. of Maryland Office of Financial Regulation ("OFR") (Hyland)(2-14-2015) at ¶¶ 5-12; Ex. 9, Dec. of Washington State Department of Financial Institutions ("DFI") (St. Onge) at ¶¶ 11-13.

---

[1] Plaintiffs reference hereinafter their Statement of Annotated Material Facts referenced herein as "**DMF _____** [appropriate, corresponding letter]."

[2] Nationstar Factual Statement (Dkt.96 at Pages 4-16) ¶¶ 3, 6, 10-12, 24-25, 36, 42. *See also* Dkt. 35-13, 35-14, and 35-15; Ex. 3, Ehinger Dep. (Rule 30(b)(1))(1-14-2025) Page 106:7 to 119:2; But Nationstar's corporate officer does not know if they considered TILA or RESPA when it created its Fee Matrix. Ex. 7, Blunt Dep at Page 36:12-21; Ex. 4, Nationstar Dep. (Ehinger)(3-11-2025) at Page 63:11-23 (confirming a final payment on the Salom Loan is a payment on the loan). **DMF Q**.

[3] Dkt. 96-13, 96-22, and 96-29 at Definition ¶ J (definition of "Applicable Law") and ¶ 16 (governing law provision). *Cf.* Ex. 4, Blunt Dep. at Page 43:12-20; Dkt. 99-3, Patterson Rep. at ¶¶ 19-29 (offering opinion testimony related to a sampling of uniform instruments); Dkt. 99-5, Tarter Rep. at 8-17 (reviewing compliance requirements in the industry and explaining that "[c]ompliance with all laws, regulations, and judicial decisions is an industry standard").

[4] Ex. 7 Blunt Dep. at Page 26:1 to Page 28:1; Ex. 8, Lamb Dep at Page 24:18 to 25:1.

[5] Ex. 4, Nationstar Dep. at 144:21 to 145:17; 154:4 to 155:11. *Cf.* Ex. 7, Blunt Dep. at Page 31:18-25.

---

OPPOSITION TO NATIONSTAR'S
MOTION FOR SUMMARY JUDGMENT
2:24-cv-00444-BJR – Page 1

1

DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010

**E.** Every standard mortgage contract of the Plaintiffs (and others just like them) does not expressly authorize any fees related to requests and delivery of a payoff statement.[6]  When the standard mortgage instruments wish to specifically authorize other fees, the instruments do so.[7]

**F.** Nationstar also knows how to review loan terms as part of its routine process and sampling to know what sums it may impose and collect from a borrower to disclose on a payoff statement.[8]  Nationstar uses data from its electronic system or samples of its records to determine charges for borrowers.[9]

**G.** Every standard, mortgage contract of the Plaintiffs (and others just like them), expressly bars Nationstar from charging any fees to borrowers barred by all Applicable Laws.[10]  Each also recognizes any rights in the instruments are "are subject to any requirements and limitations of Applicable law."[11]  The Maryland Supreme Court already ruled against Nationstar on this precise issue in a final, judicial decision and also found if there was any ambiguity on this issue it should be construed against Nationstar under basic contract law.  *See* Argument *infra* at Pages 16-19.

**H.** Nationstar is not a party or owner to any of the Plaintiffs' mortgage contracts and simply collects on the loans on behalf of another—i.e. Fannie Mae (in relation to the Salom Loan), Freddie Mac

---

[6]     Ex. 4, Nationstar Dep. at 99:3 to 103:25; Ex. 3, Ehinger Dep. Page 71:9 to 71:13; 75:23 to 83:14.

[7]     Dkt. 96-13, 96-22, and 96-29 at ¶ 1 (authorizing late changes), ¶ 14 (authorizing fees in connection with a borrower's default).

[8]     Ex. 4, Nationstar Dep. at 36:21 – 38:23.

[9]     Ex. 4, Nationstar Dep. at 38:14-18.  *Cf.* Dkt. 99-2 Pizer Rep. at 5 (describing the industry practice of performing most work electronically through the servicer's system of record to minimize expenses and maximize profits, but that custom does not change the "fundamental duty to seek and collect only those sums actually permitted by law or the mortgage loan's governing documents").

[10]     Nationstar Factual Statement (Dkt. 96 at Pages 4-16) ¶ 44.  *See also* Ex. 3, Ehinger Dep.  Page 73:15-19; Dkt. 99-2 Pizer Rep. at 5 (offering opinion testimony that the uniform instruments executed by the Plaintiffs are on standardized forms with material terms that have been unchanged for decades and none of the Plaintiffs' modifications addressed "fees related to a borrower's request or receipt of a payoff statement").  *See also* Dkt. 99-4 Friend Rep. at 6-8 (offering opinion testimony about the consistent use of core terms in the standard instruments for decades; Dkt. 93-3, Patterson Rep. at ¶¶ 22-29.

[11]     Dkt. 96-13, 96-22, and 96-29 at Definition ¶ J and also ¶ 16 (governing law provision).  *Cf.* Dkt. 93-3, Patterson Rep. at ¶¶ 22-29.

---

OPPOSITION TO NATIONSTAR'S
MOTION FOR SUMMARY JUDGMENT
2:24-cv-00444-BJR – Page 2

2

DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010

(in relation to the Palazzo Loan), and a private security (in relation to the Hackinen Loan).[12] Nationstar merely owns the servicing and collection rights of the Plaintiffs' loans and nothing more[13] and no borrower selects it to be their servicer/collector.[14]

**I.** None of the Plaintiffs signed any instrument or other documents agreeing to be charged any fees related to their requests for a payoff statement to be delivered to them by any means.[15] Nationstar concedes that the only agreements related to any fees imposed, charged, and collection of payoff statements to which it relies for the basis of the fees at issue in this action are unsigned or oral agreements related to the Plaintiffs' residential mortgage loans.[16] Even when borrowers allow third parties acting on their behalf (like new potential lenders or title companies) to request payoff statements to proceed to closing, there is no written, signed authorization to permit Nationstar to charge fees related to the payoff statement not authorized by law or contract.[17]

**J.** The only written discovery produced in the case by the Parties about the fee practices of other mortgage servicers all identify no fees related to the requests and delivery of payoff statements by various means, including by fax, Internet, and email.[18]

---

[12]     Nationstar Factual Statement (Dkt.96 at Pages 4-16) ¶ 1.  *See also* Ex. 4, Nationstar Dep.  at Pages 25:24 to 26:8; Page 30:10 to 30:19 (confirming Fannie Mae and Freddie own loans that Nationstar services on their behalf); Ex. 7, Dep of Blunt at Page 40:15-25.

[13]     Ex. 4, Nationstar Dep. at  44:10-14; Ex. 3, Ehinger Dep.  Page 13:6 to 15:5, Page 18:23 to Page 19:11, Page 24:20 to 25:24.

[14]     Ex. 3, Ehinger Dep. Page 143:13-15.

[15]     Dkt. 96-13,  96-22, and 96-29 (deeds of trust);  Dkt. 20-1, 20-3, and 20-5 (notes).  *See also* Ex. 3, Ehinger Dep. Page 41:23 to 44:19.

[16]     Ex. 4, Nationstar Dep. at Page 123:20 to 123:25; Page 127:17 to 127:24; Page 130:9 to 130:23; Pages 132:22 to 133:6 (all confirming Nationstar relies on its right to impose, charge, and collect the fee at issue int his action based upon oral or unsigned agreements and never obtains signed consent from the Plaintiffs or anyone else like them). *See also See also* Ex. 3, Ehinger Dep. at 148:5-13.

[17]     Ex. 4, Nationstar Dep.  at Page 131:11 to Page 131:24.

[18]     Ex. 4, Nationstar Dep. at Pages 74:12 to 83:20.  *See also* Ex. 10, Collected Payoff Statements from Other Servicers Produced in Discovery.

---

OPPOSITION TO NATIONSTAR'S
MOTION FOR SUMMARY JUDGMENT
2:24-cv-00444-BJR – Page 3

3

DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010

**K.** The standard industry practices established by Fannie Mae and Freddie Mac required Nationstar to comply with all applicable laws and regulations,[19] as do general industry standards;[20] Nationstar's parent company's, i.e. the Mr. Cooper Group (Dkt. 8), Code of Business Conduct and Ethics Policy also requires the same of Nationstar and each of Nationstar's officers and employees[21] and it is not standard industry practice for Nationstar to violate its own corporate governance statement.[22] Nor did Fannie Mae or Freddie Mac authorize Nationstar to violate the law.[23]

**L.** No borrower is a party to Fannie Mae's or Freddie Mac's contracts and guidelines which apply to the GSE's relationships with Nationstar.[24] Nationstar does not believe any borrower agreed to be governed by the Fannie Mae or Freddie Mac guidelines.[25]

**M.** The standard practices and regulations established by the two state agencies that license Nationstar to do business in Maryland and Washington[26] also prohibit Nationstar from acting in violation of the law and from failing to correct their errors once discovered. *See also* Argument *infra* at Pages 12-16. *See also* Ex. 6, OFR Dec. at ¶¶ 12,

---

[19]     Ex. 11, Dec. of Freddie Mac (Dean Meyer)(2-25-2025) at ¶¶ 5-10; Ex. 12, Dec. of Fannie Mae (Christi Richey)(2-14-2025) at ¶¶ 7-14. *See also* Ex. 4, Nationstar Dep. at 40:3-10, 43:19-21 (Nationstar does not dispute Fannie's and Freddie's testimony).

[20]     Dkt. 99-4 Friend Rep at 2-6 (providing general opinion testimony about the responsibilities of servicers in a highly regulated market to establish procedures to ensure compliance for regulatory and investor practices for the protection of investors and others in the secondary market and to provide context to how the industry works in practice).

[21]     Ex. 4, Nationstar Dep. at Page 71:3-6 ("Nationstar Mortgage, also known as Mr. Cooper, we have an ethics and code of conduct that we are all expected to adhere to. Following law is one of our baselines that we adhere to"). *See also* Ex. 13, Nationstar Code of Business Conduct and Ethics Policy.

[22]     Dkt. 99-5, Tarter Rep. at 8-17 (describing the industry standards for "good governance" and concluding "Nationstar's actions and conduct (as a loan servicer) did not conform to applicable industry standards and/or its own corporate governance statements by charging fees that were not agreed to in writing" by the Plaintiffs).

[23]     Ex. 11, Dec. of Freddie Mac at ¶ 11; Dec. of Fannie Mae at ¶ 12.

[24]     Ex. 4, Nationstar Dep. at 41:22 to 42:15. *See also* Blunt Dep. at Page 54:12-20, 58:13 to 59:7.

[25]     Ex. 4, Nationstar Dep. at 42:10-:15,

[26]     Ex. 4, Nationstar Dep.at 46:21-23.

---

OPPOSITION TO NATIONSTAR'S
MOTION FOR SUMMARY JUDGMENT
2:24-cv-00444-BJR – Page 4

4

DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010

**N.** Nationstar's practice and custom, as judicially admitted by the same counsel and corporate designee, is that it has a duty to comply with all applicable laws and make its wrongs right in compliance with the May 12, 2022 OFR regulatory guidance.[27]  Nationstar agreed to a court approved settlement that resolved the class claim based upon Nationstar's representations that it was complying with the OFR guidance and had refunded all sums of one particular fee at issue in *Baxter,* except for pre-judgment interest owed and attorney fees.  Dkt. #  13-1 at page 12 of 165 (at *Baxter* Hearing Trans. 21:1-10)); *Id.* at pages 4-5 of 165.

**O.** Nationstar agrees it received the May 12, 2022 OFR Advisory[28] and that there was no limitation to a specific fee addressed in the guidance that served as the basis for its practice and custom and position in *Baxter* described in the previous paragraph.[29]

**P.** Nationstar knowingly or recklessly imposed, charged, and collected excessive fees from the Plaintiffs,[30] who each submitted requests for payoff statements of their residential mortgage loans to which it knew (*see* **DMF N-O**), while it had an appreciation it was not entitled to any fees[31,32]

---

[27]    Ex. 1, Second Ehinger Declaration from Baxter (2-23-2023) at ¶ 10 and Ex. A thereto.  Ex. 2, Third Ehinger Declaration from Baxter (2-21-2023) at ¶ 5.

[28]    Ex. 3, Ehinger Dep. Page 52:5-8.

[29]    Ex. 4, Nationstar Dep. at 60:21 to 62:8.  *See also* FN 46 *supra*.

[30]    Dkt.96, Nationstar Factual Statement (Pages 4-16) ¶¶ 3, 6, 10-12, 24-25, 36, 42.

[31]    Ex. 9, Dec. of DFI at ¶¶ 8-9 (discussing Nationstar's national mortgage settlement requiring it to ensure accuracy related to a borrower's account); Ex. 6, OFR Dec. at ¶ 5 (discussing Nationstar's past conduct of charging fees in violation of the law and its duty "to review [its] practices in charging consumer borrowers loan payment fees both to ensure compliance with the law and to determine if any improper fees have been previously been assessed…"), ¶ 12 (discussing that Nationstar it is expected to "act lawfully and honestly").  *Cf.*  Ex. 4, Nationstar Dep. at 58:3-6; 45:6-20 (Nationstar not disputing the OFR and DFI declarations).

[32]    Nationstar's appreciation is also shown by its election to identify only one individual—i.e. Ehinger—with purported knowledge of the issues at stake in this action while not disclosing to her the identities of other officers of Nationstar who had personal knowledge based upon their testimony in the *Bloom* action in New York state court—i.e. Alan Blount and Jill Lamb.  Ex. 3, Ehinger Dep. Page 59:3 to 61:22, 120:2-4, 158:18-20.

but it choose to continue to impose, charge, and collect fees related to payoff statements[33] without disclosing to any borrower that it might not be entitled to them.[34]

**Q.** Absent the relief sought in this action, Nationstar refuses to return the illegal fees it has collected from the Plaintiffs and thousands of other borrowers like them[35] and has not stopped its conduct.[36]   "It's [also] not [Nationstar's] standard procedure to return fees"[37] which knowingly violates the May 12, 2022 OFR Notice and its own practice. **DMF. K – O**.  *Cf.* FN 47 *infra*.

### QUESTION PRESENTED

The Court Ordered the Parties to address "whether the fee that was charged to the named Plaintiffs was authorized by the mortgage contracts, federal and state law, and industry standards." Dkt No. 88 at Pg. 1.[38]

### INTRODUCTION

This action, since its inception, was pursued by the Plaintiffs on behalf of themselves and on behalf of a class and subclasses of similar persons related to the same junk fee imposed, charged, and collected by Nationstar related to the request and delivery of payoff statements in less than seven days by any means.  Dkt. 1-3.  Because there is no material dispute about whether this action qualifies for certification under Fed. R. Civ. P. 23, Plaintiffs filed their early class certification motion to which Nationstar opposed.  Dkt. 46; Dkt 58.[39]  The putative class members have received

---

[33]    Dkt. 96-4 at ¶ 33; Dkt. 96-10 at ¶ 35.  *See also* **DMF A, Q.**
[34]    Ex. 4, Nationstar Dep. at 54:13 to 55:3 (confirming Nationstar voluntarily agreed to stop charging the same fee at issue here that is at issue in the *Bloom* action but has not disclosed that election to any borrower); 121:11-16; 123:9-15; 133:7-12; 134:23 to 135:3 (confirming a video posted on Nationstar's website conceals that the fee may not be permitted by applicable law).
[35]    Nationstar Factual Statement (Dkt.96 at Pages 4-16) ¶¶ 3, 6, 10-12, 24-25, 36, 42.
[36]    Ex. 3, Ehinger Dep. Page 54:1-19.
[37]    Ex. 3, Ehinger Dep. Page 145:7-8.
[38]    Nationstar's Motion goes beyond the scope of discovery and Plaintiffs request further relief as described in their Fed. R. Civ. P. 56(d) affidavit and objection marked as Exhibit 17.

[39]    The class certification motion was stayed (Dkt. 59) and then later denied without prejudice (Dkt. 88).  Because there is no merit to Nationstar's arguments and it has voluntarily sought for the Court to make a summary judgment ruling against on issues relevant to the putative class members' claims (and against its own prior judicial admissions and sworn testimony), Plaintiffs request leave to promptly move for class certification so the Court may address all issues together.

---

OPPOSITION TO NATIONSTAR'S
MOTION FOR SUMMARY JUDGMENT
2:24-cv-00444-BJR – Page 6

6

DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010

no court-approved notice pursuant to Fed. R. Civ. P. 23. So, considering any summary judgment motion at this stage creates "the potential that members of the claimed class could in some situations await developments in the trial or even final judgment on the merits in order to determine whether participation would be favorable to their interests." *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 547 (1974). For this reason and by the relief voluntarily sought by Nationstar's Motion, Plaintiffs believe Nationstar has waived any defense to Plaintiffs' claims and class certification requests based upon the one-way intervention rule. *See e.g. Sampson v. Knight Transportation, Inc.*, No. C17-0028-JCC, 2021 WL 2255129, at *3 (W.D. Wash. June 3, 2021); *Schwarzschild v. Tse*, 69 F.3d 293, 296 (9th Cir. 1995).

### FEDERAL AND STATE LAW BAR THE FEES COLLECTED BY NATIONSTAR FROM THE PLAINTIFFS

Every standard, uniform instrument which memorializes the terms and conditions of the Plaintiffs' residential mortgage loans include identical key terms and confirm (i) the loans are governed by all applicable laws, (ii) no fees may be charged if such barred by appliable law, and (iii) all rights and limitations related to the loans are subject to any requirements and limitations imposed by appliable law. **DMF E, G**. *Cf.* Dkt. 99-4 Friend Rep. at 6-8; Dkt. 93-3, Patterson Rep. at ¶¶ 22-29, and Dkt. 99-2 Pizer Rep. at 5.

### A. Federal Law Bars Nationstar's Fees

In plain, unambiguous language, Congress established a standard duty on Nationstar: "A… servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower." 15 U.S.C.A. § 1639g.[40] Congress did not limit the scope of the right to obtain a payoff statement and Nationstar's obligation by any particular method of delivery. *Id.* Rather, the plain

---

[40]     Nationstar does not even attempt to materially address its obligation and the Plaintiffs' rights created by 15 U.S.C.A. § 1639g and fee bar protections established in 12 U.S.C. § 2610 in its Motion but concedes these rights and protections are not "controversial." Mot. at 15-16  It was on notice of the statutory fee bar in § 2610 since it is clearly and unambiguously identified in Plaintiffs' Amended Complaint and discovery. By not even addressing Plaintiffs' actual well pled claims in its Motion, Nationstar has waived any right for summary judgment on this issue. Fed. R. Civ. P. 56(a).

right and obligation apply to a payoff statement by any means. *Id.*[41]  *Cf.* 12 U.S.C.A. § 2605(k)(1)(C).[42]

Justice Scalia, explained, "Congress passed the Truth in Lending Act...to help consumers 'avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing.' 15 U.S.C. § 1601(a)." *Jesinoski v. Countrywide Home Loans, Inc.*, 574 U.S. 259, 261 (2015). And the Supreme Court cautioned against efforts by collectors like Nationstar seeking to alter its plain, unambiguous meaning.  *Id.* at 262.  A specific, sister statute to TILA—i.e. RESPA—and the claims asserted by the Plaintiffs in this action address the question presented (Dkt. 88).  12 U.S.C. § 2610 provides: "**No fee** shall be imposed or charge made upon any other person...by a servicer (as the term is defined under section 2605(i) of this title), for or on account of the preparation and submission by such lender or servicer of the **statement or statements required...by the Truth in Lending Act.**" *Id.*  (emphasis added).  Nationstar's own expert concedes 15 U.S.C.A. but knowingly did not specifically consider the fee bar in 12 U.S.C. § 2610 which he knows is "a provision of RESPA related to fees charged to borrowers."  Dkt. 95-1, Bryar Rep. at ¶ 5, Dkt. 95-2, Bryar Dep. at 45:12 to 46:18.

Under the plain, unambiguous language of 12 U.S.C. § 2610 (i.e. "No fee."), Congress made the policy choice to bar Nationstar (and every other mortgage servicer) from imposing, charging, and collecting any fees related to a borrower's request for a payoff statement which is delivered in less than "7 business days" as authorized by 15 U.S.C.A. § 1639g and its companion regulation 12 C.F.R. § 1026.36(c)(3).[43]  This Court is not permitted to create an exception in the remedial statutory

---

[41]     *Cf.* 12 C.F.R. § 1026.36(c)(3).  That regulation does authorize exemptions for certain categories of transactions but none of those exemptions relate to payoff statements delivered by fax, email, or through a website portal.  *Id.*

[42]     § 1639g was added to TILA in the Dodd-Frank Act. By in large, Nationstar's primary authorities all concern pre-Dodd-Frank law and therefore are largely not material to Plaintiffs' claims.

[43]     "Congress is presumed to know the law and to have incorporated judicial interpretations when adopting a preexisting remedial scheme..." *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1189 (9th Cir. 2003).  Therefore, it cannot be said that Congress when it enacted 15 U.S.C.A. § 1639g was unaware of the application of the fee bar in 12 U.S.C. § 2610.

---

OPPOSITION TO NATIONSTAR'S
MOTION FOR SUMMARY JUDGMENT
2:24-cv-00444-BJR – Page 8

8

DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010

scheme of TILA (i.e. 15 U.S.C.A. § 1639g and 12 C.F.R. § 1026.36(c)(3))[44] and RESPA (12 U.S.C. § 2610), to permit that which Congress barred as a matter of applicable law governing the claims before the Court. *Cf. Jesinoski*, 574 U.S. at 261. Put another way, Nationstar's claimed "policy concerns, moreover, cannot surmount the plain language of the statute." *Republic of Hungary v. Simon*, 145 S. Ct. 480, 497 (2025)(cleaned up). "[P]ursuant to *Loper Bright*…, [the Court shall] proceed to construe the statute independently…[and] begin, as always, with the plain language of the statute….If the plain language is clear, our inquiry is complete." *Lopez v. Garland*, 116 F.4th 1032, 1043 (9th Cir. 2024)(cleaned up).

Here, there is no dispute that the plain language of 15 U.S.C.A. § 1639g, 12 C.F.R. § 1026.36(c)(3), and 12 U.S.C. § 2610 is clear and complete: Nationstar is not permitted pursuant to RESPA (§ 2610) to charge any fee to the Plaintiffs who requested payoff statements of their residential, mortgage loans which were delivered in less than 7 business days as authorized under TILA. *Cf.* 12 C.F.R. § 1024.12. The Court's inquiry into the question presented on the face of these statutes (and regulation) requires no further investigation because Congress choose to preempt "the laws of any State…except to the extent that those laws are inconsistent with any provision of this chapter, and then only to the extent of the inconsistency." 12 U.S.C.A. § 2616. *Cf.* 15 U.S.C.A. § 1666j (same). So, no state is permitted to authorize a fee when 12 U.S.C. § 2610 bars any fee related to a payoff statement requested by a borrower pursuant to 15 U.S.C.A. § 1639g as such a fee is inconsistent with RESPA and TILA. To suggest otherwise would establish an exception to the plain text of RESPA and TILA and to usurp the policy choices created by Congress to bar junk fees like those imposed by Nationstar without the right to do so. *Cf. Andrus v. Glover Const. Co.*, 446 U.S. 608, 616–17 (1980); *Mi Familia Vota v. Fontes*, 129 F.4th 691, 715 (9th Cir. 2025). In light of the Supremacy Clause and scope of 12 U.S.C.A. § 2616 or 15 U.S.C.A. § 1666j, there is no reason, if

---

[44]    When the CFPB issued its final regulation modifying 12 C.F.R. § 1026.36(c)(3), it declined industry's view that further procedures and exemptions were necessary and explained that: "**The payoff statement may be sent electronically or by fax in place of physical delivery.**" Mortgage Servicing Rules Under the Truth in Lending Act (Regulation Z), 78 FR 10902-01, *10957* (emphasis added).

the Court agrees with Plaintiffs' plain language interpretation of TILA and RESPA as applied to the facts of this case, to consider any state laws and these controlling statutes bar the fees at issue. Further, any state law authorizing a fee would be inconsistent with 12 U.S.C. § 2610 and therefore preempted.  *In re Monroy*, 650 F.3d 1300, 1301 (9th Cir. 2011); *Perkins v. Johnson*, 551 F. Supp. 2d 1246, 1255 (D. Colo. 2008).

Relatedly, for Plaintiff Hackinen and other borrowers for whom Nationstar qualifies as a debt collector, the Fair Debt Collection Practices Act ("FDCPA") also bars the imposition, charging, and collection of any fee by a debt collector which is not expressly authorized by either the applicable contract or law.   The Court recently discussed the governing FDCPA provision at issue.  *Creager v. Columbia Debt Recovery*, 618 F. Supp. 3d 1094, 1103 (W.D. Wash. 2022).  In addition, the Fourth Circuit's holding and well-reasoned opinion in *Alexander*, 23 F.4th at 374, explains further that "by charging its convenience fees, [the mortgage servicer] engaged in conduct violating the FDCPA. We hold that [the servicer] is a 'collector' who charged an 'amount' that was not 'expressly authorized by the agreement creating the debt or permitted by law' in violation of the FDCPA. *See* 15 U.S.C. § 1692f(1)." *Id.* Other Circuit Courts are in accord in holding that "permitted by law," as used in § 1692f(1), requires affirmative sanction and not implied sanction as advocated by Nationstar. *Tuttle v. Equifax Check*, 190 F.3d 9, 13 (2d Cir. 1999); *Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1112 (7th Cir. 2008). *See also Brown v. Transworld Sys., Inc.*, 73 F.4th 1030, 1040 (9th Cir. 2023) (cleaned up). To be clear, the FDCPA's affirmatively permitted requirement does not permit, as Nationstar seeks to do, to infer any fee is allowed without specific, express authorization (recognized under the law). *Alexander*, 23 F.4th at 374; *Tuttle*, 190 F.3d at 13; *Seeger,* 548 F.3d at 1112; *Creager*, 618 F. Supp. 3d at 1103. Of course, it is also well settled that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992).[45]

---

[45]     Beyond the scope of the Court's Order, Nationstar seeks summary judgment not on the issue presented but on Mr. Hackinen's FDCPA claim, claiming that a fee collected related to the request

OPPOSITION TO NATIONSTAR'S
MOTION FOR SUMMARY JUDGMENT
2:24-cv-00444-BJR – Page 10

10

DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010

To the extent Nationstar seeks by its Motion to now assert a defense based upon a legal error or ignorance of the law, such a defense is not appropriate for the claims asserted or even at this stage of the proceedings when permitted. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010); *Creager v. Columbia Debt Recovery*, 618 F. Supp. 3d 1094, 1104 (W.D. Wash. 2022); *Nationstar Mortg. LLC v. Kemp*, 258 A.3d 296, 321 (2021).   Nationstar has not even identified such a defense in its Answer (Dkt. 35) so it is waived at this point. *Wood v. Milyard,* 566 U.S. 463, 470 (2012); Fed. R. Civ. P. 8(c).

Based upon these Federal statutes and the undisputed record of this case, Nationstar had no right under any Federal law applicable to it to charge the Plaintiffs (and others like them) any fee related to their request for a payoff statement of their residential mortgage loan which was delivered in less than seven days. To the extent that Nationstar claims other agencies created such exemptions, only the CFPB was authorized to do so by Congress under these authorities relied upon by the Plaintiffs (*see e.g.* 12 U.S.C.A. § 2617; 15 U.S.C.A. § 1603(5)) and the CFPB did create certain exemptions in 12 C.F.R. § 1026.36(c)(3) (concerning payoff statements related to classes of borrowers in foreclosure or bankruptcy proceedings or to former creditors and servicers <u>but none relating to fees or statements delivered by fax or electronically</u>).   It would be improper to accept Nationstar's invitation to add to the list of exemptions by a judicial decision when Congress delegated that authority exclusively to the CFPB. *Cf. Medler v. U.S., Bureau of Reclamation, Dep't of Interior*, 616 F.2d 450, 453 (9th Cir. 1980).

---

and delivery of a payoff statement is not an attempt to collect a debt. Mot. at 21-22.   But the undisputed record shows he paid the fee (multiple times) . **DMF. A, Q**.   And Nationstar's authorized designee and Senior Vice President admitted that paying off a loan involved a payment on a loan. Ex. 4, Nationstar Corp. Dep. 63:11-23. Also, Nationstar fails to disclose to the Court that *Palazzo v. Bayview Loan Servicing LLC*, No. CV DLB-20-2392, 2024 WL 4361857, at *12 (D. Md. Sept. 30, 2024) did not, according to the district court concern "attempts to collect debt" or even actual collection like is at issue here with Mr. Hackinen, who paid the junk fee and debt multiple times and that decision is on appeal. Further, subsequent to *Palazzo* the Fourth Circuit recognized that efforts to collect fees by a mortgage servicer related to a discharged debt, like for Mr. Hackinen, are actionable under the FDCPA when those fees are in violation of contract and applicable law. *Koontz v. SN Servicing Corp.*, 133 F.4th 320, 328 (4th Cir. 2025). *Cf. In re Orlansky*, 2023 WL 2947616 (B.A.P. 9th Cir. Apr. 14, 2023).

OPPOSITION TO NATIONSTAR'S
MOTION FOR SUMMARY JUDGMENT
2:24-cv-00444-BJR – Page 11

11

DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010

**B.  State Law and Regulation Also Bars Fees Charged by Nationstar**

Maryland and Washington law, which is incorporated into the mortgage contracts of the Plaintiffs and also others like them, also bar Nationstar from imposing, charging, and collecting fees that are not expressly authorized by statute or by the mortgage contract.[46]  Nationstar knows this to be true, because it has litigated this precise question to the Maryland Supreme Court, which rejected its arguments on the face of the standard provision in every mortgage contract that a borrower may not be charged any fees that are expressly prohibited by any applicable law.  Nationstar (and its counsel and authorized corporate designee, Ehringer) also know this to be true since they previously argued and represented to a Maryland state court that they knew this established Maryland law (which is also Washington law) since May 12, 2022.[47]  Yet, notwithstanding its prior sworn testimony, in this action Nationstar has testified under oath and subject to Fed. R. Civ. P. 11 a materially different position to protect its fee harvesting practices at issue here and in hopes of obtaining an Order of the Court to protect its illegal conduct.  There is no merit to Nationstar's changed position based solely upon label or name it chooses to give to a fee which is not expressly authorized by law or part of the Plaintiffs' mortgage contracts.  Specifically, Maryland and Washinton, like many other states, have expressly incorporated the FDCPA (including specifically 15 U.S.C. § 1692f(1) and similar

---

[46]    Nationstar's reliance on a pre-Dodd-Frank letter from the Office of the Comptroller of the Currency (OCC)  for its fee churning practice is simply a red herring since the law has changed and Nationstar is not even regulated by the OCC.  As the OCC explains on its website, the OCC "is an independent bureau of the U.S. Department of the Treasury. The OCC charters, regulates, and supervises all national banks, federal savings associations, and federal branches and agencies of foreign banks."  Nationstar is not a bank or even a subsidiary of a bank.  Dkt. 8.

[47]    In *Baxter v. Lakeview Loan Servicing LLC and Nationstar Mortgage LLC*, Cir. Ct. of Anne Arundel County, Maryland (Case No. C-02-CV-22-000654), Ehinger testified that Nationstar was aware of the advisory issued by the OFR May 12, 2022 Notice which explained "collecting fees on any form of loan payment violates the Maryland Consumer Debt Collection Act…if the fees are not set forth in the loan Document…If such a fee is not provided for in the applicable loan documents, it would be deemed illegal. Further, attempts to circumvent this fee restriction by directing consumers to a payment platform associated with the lender or servicer that collects a loan payment fee or requiring consumers to amend their loan documents for the purposes of inserting such fees could also violate Maryland law." Ex. 3, Ehinger Second Dec. from *Baxter* (2-13-2023) at ¶ 10 and Exhibit A thereto.

---

prohibitions) into their own state laws).[48] So, like Federal law, state laws applicable to the Plaintiffs and others like them are in harmony and aligned to bar Nationstar seeking to collect fees not expressly authorized by contract or law.

Nationstar is also barred from seeking to "[c]ollect or attempt to collect in addition to the principal amount of a claim any sum other than allowable interest, collection costs or handling fees expressly authorized by statute…" Wash. Rev. Code Ann. § 19.16.250(21); *See e.g. Fireside Bank v. Askins*, (2020); *Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885, 897 (2009)("Like the FDCPA, [the CAA] prohibits collection agencies from making false representations as to the legal status of a debt…attempting to collect amounts not actually owed, or implying legal liability for costs not actually recoverable…"); *Mease v. DCS Fin. Inc.*, 741 F. Supp. 3d 900, 914 (W.D. Wash. 2024); *Creager,* 618 F. Supp. 3d at 1106 ("…each time Defendant attempted to collect the Balance from Plaintiff, it was seeking an "amount[ ] not authorized by law." … Those attempts, therefore, constitute violations of RCW § 19.16.250(21)").

In addition to the fee bar expressed in Wash. Rev. Code Ann. § 19.16.250(21), regulations promulgated by DFI under the Consumer Loan Act Ch. 31.04, *et seq.* also bar Nationstar's fee at issue in this action from Mr. Hackinen and others like him. For example, Nationstar is prohibited from charging fees not expressly "authorized by the loan documents." Wash. Admin. Code 208-620-567 (but recognizing late fees as typically expressly authorized).[49] Also, Nationstar was prohibited "from requiring or encouraging a borrower" to "[a]gree to pay charges not enumerated in any agreement between the borrower and the lender, servicer, or owner of the loan." Wash. Admin. Code 208-620-551(1)(d).[50] So, in addition to the statutory bars discussed herein,

---

[48]    The Court limited the scope of Phase 1 discovery to the laws of Washington and Maryland (since they are the state laws that govern the Plaintiffs' loans). Dkt. 88. However, for illustrative purposes only, and without prejudice to addressing any variance in state laws that may exist, Plaintiffs preliminarily identify to the Court now some other states like Maryland and Washington, which incorporate the identical or similar conduct barred by § 1692f(1) into their state laws and regulations. *See* Ex. 18, Summary of Other State Laws.

[49]    *Cf.* DFI Declaration at ¶ 12(c).

[50]    *Cf.* DFI Declaration at ¶ 12(c).

OPPOSITION TO NATIONSTAR'S
MOTION FOR SUMMARY JUDGMENT
2:24-cv-00444-BJR – Page 13

13

DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010

Washington's regulations serve as a basis to find Nationstar's conduct to be unlawful, unfair, and deceptive. *Cf. Rush v. Blackburn*, 361 P.3d 217, 226 (2015).

Maryland law is in accord with Washington law in relation to the Salom Loan and the Palazzo Loan.[51] Under the Maryland Consumer Debt Collect Act ("MCDCA"), "[i]n collecting or attempting to collect an alleged debt a collector may not…[e]ngage in any conduct that violates §§ 804 through 812 of the federal [FDCPA]." MD. CODE ANN., COM. LAW § 14-202(11). A collector may also not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." COM. LAW § 14-202(8).[52] The Fourth Circuit applied this specific law at issue in this action and held "that [a mortgage servicer] is a 'collector' who charged an 'amount' that was not 'expressly authorized by the agreement creating the debt or permitted by law' in violation of the FDCPA. *See* 15 U.S.C. § 1692f(1). As a result, [it[ reverse[d] the district court's dismissal of plaintiffs' § 14-202(11) claim." *Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 374–75 (4th Cir. 2022). In so rejecting the mortgage servicer's arguments, the Fourth Circuit 'rejected' the servicer's contention that "[s]o long as the law does not expressly prohibit it from doing so…it can charge whatever fees it wishes." *Id.* at 378. The Fourth Circuit also rejected the servicer's 'side agreement' argument created through its platform to suggest the 'side agreement' rendered the judge fee as "permitted by law" since it would render the actual language of § 1692f(1) incorporated into Com. Law § 14-202(11) as meaningless." *Id.* at 379. It explained, "if general contract principles are enough to permit the charging of such fees, then the statute's prong permitting amounts 'expressly authorized by the agreement creating the debt' becomes superfluous." *Id.*

---

[51] Nationstar claims Ms. Palazzo may not pursue claims assigned to her. This is wrong for three reasons. First, as defined by the instruments, she is a borrower on the Palazzo Loan. Dkt. 96-22. Second, controlling Maryland law permits her to pursue her husband's assigned claims. *Mayor & City Council of Baltimore v. Thornton Mellon, LLC*, 478 Md. 396, 451–52 (2022); *Med. Mut. Liab. Ins. Soc. of Maryland v. Evans*, 330 Md. 1, 30 (1993). *Cf.* MD. RULE 2-241(a)(3). Third, after *Kemp* was remanded from the Supreme Court of Maryland, Nationstar agreed to a class action settlement of the case, which received court approval, after Kemp had assigned her claims to her friend. Therefore, as a matter of judicial estoppel, Nationstar cannot object now after having benefited from a near identical assignment before in the form of a court-approved settlement of MDCDA claims.

[52] A violation of the MCDCA is also a violation of Maryland's Consumer Protection Act. *Nationstar Mortg. LLC v. Kemp*, 258 A.3d 296, 304 (2021).

OPPOSITION TO NATIONSTAR'S
MOTION FOR SUMMARY JUDGMENT
2:24-cv-00444-BJR – Page 14

14

DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010

The OFR has also issued regulations that bar the fee at issue here that was imposed, charged, and collected related the Salom Loan and the Palazzo Loan and also the loans of others. For example, "[u]nless disclosed in written agreements signed by the borrower, a licensee may not, directly or indirectly, impose **any** fee or charge payable by or on behalf of the borrower." Md. Code Regs. 09.03.06.08(C)(1).[53] Pursuant to its license, Nationstar also agreed that it "has a duty of good faith and fair dealing in communications, transactions, and course of dealings with a borrower in connection with the…servicing…of any mortgage loan." Md. Code Regs. 09.03.06.20(A). This duty requires Nationstar "to be truthful in all aspects of mortgage servicing of any mortgage loans." Ex. 6, OFR Dec. at ¶ 10. "OFR [also] expects Nationstar to follow the law and to act lawfully and honesty." *Id.* at ¶ 12(b). Finally, in resolving a prior junk fee dispute with the State of Maryland concerning fees barred by state law, Nationstar agreed on May 14, 2018, to "cease and desist from engaging in any unfair or deceptive trade practices in violation of the [Maryland Consumer Protection Act]." *Id.* at ¶ 5(b). Yet, Nationstar has continued to violate the MCDCA in hundreds if not thousands of instances. Based upon these State law authorities[54] and the undisputed record of

---

[53]     In relation to the phrase "any amount" used in § 1692f(1) of the FDCPA that is incorporated in Washington and Maryland law, "means what it says—*any* amount, whether or not that amount is incidental to the principal obligation." *Alexander*, 23 F.4th at 376. "As the Supreme Court has indicated, '[r]ead naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *Id.* (cleaned up). This same, broad construction would also apply to the interpretation of the state regulations' use of "any" to the fee bars in Md. Code Regs. 09.03.06.08(C)(1) and Wash. Admin. Code 208-620-551(1)(d).

[54]     Nationstar argues in conclusory terms the laws of states that do not govern the Plaintiffs' claims and seem to suggest Plaintiffs are raising claims under other state debt collection statutes. Mot. at 22-24. That's just not true. Plaintiffs' claims are based in Federal law, which Nationstar waives any argument, and Maryland and Washington law, which it is also fails to address except in conclusory, disputed terms that cannot be resolved on summary judgment. Also, as Nationstar knowingly misstates the Palazzo and Salom claims under the MCDCA to suggest improperly that it is not a collector under that statute (Motion at 23) when the Maryland Supreme Court has already held otherwise in its own prior case. *Kemp*, 258 A.3d at 303 ("The MCDCA regulates the conduct of anyone who collects – or attempts to collect – a debt arising from a consumer transaction" including Nationstar acting on behalf of Fannie Mae). *See also Alexander*, 23 F.4th at 375("The MCDCA's broader definition [of collector] controls here, as it is not displaced by the federal definition" of debt collector).

---

OPPOSITION TO NATIONSTAR'S
MOTION FOR SUMMARY JUDGMENT
2:24-cv-00444-BJR – Page 15                    15                    DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010

1   this case, Nationstar had no right under any State law to charge the Plaintiffs (and others like them)

2   any fee related to their request for a payoff statement.

3   **C.** **Nationstar's Fees are Also Barred by the Standard, Uniform Mortgage Contracts.**

4       Nationstar is not the lender or owner of any of the Plaintiffs' loans. (**DMF H**). It simply was

5   the collector or debt collector hired by the loan owner (or investors) or the holder of the master

6   servicing rights (for whom it acts as a sub-servicer) to collect payments from borrowers and to provide

7   bills and payoff statements to borrowers like the Plaintiffs (and others like them) (**DMF H**). So, as

8   the collector or agent of the loan owner, Nationstar is not entitled to any greater rights than the owner

9   of the loan and merely stands in its shoes for its limited role. *Kemp*, 258 A.3d at 301 ("Under the

10  common law, an assignee generally has the same rights and responsibilities as its assignor – no more,

11  no less"); *Gebreseralse v. Columbia Debt Recovery*, 521 P.3d 221, 225 (2022)(same). *Cf.* Md. Code

12  Regs. 09.03.06.08(C)(1); Wash. Admin. Code 208-620-567.

13      Nationstar admits that none of the uniform instruments that memorialize their residential

14  mortgage agreements creating the debts expressly authorize any fees related to the request and

15  delivery by any means of a payoff statement (**DMF I**).   In contrast, the agreements do expressly

16  authorize other fees (such as late fees, property inspection fees (Washington), valuation fees, property

17  preservation fees, and reasonable attorney fees to protect the lender's interest in the property) (**DMF**

18  **E**). Additionally, the Plaintiffs' standard loan instruments expressly provide that the Plaintiffs "may

19  not" be charged fees that are "expressly prohibited…by Applicable Law" (**DMF G**). *See also* Dkt.

20  20-1 at ¶ 6(E), 20-3 at ¶ 7(E), and 20-5 at ¶ 6(E) (limiting the right of the note holder to only recover

21  "its costs and expenses in enforcing [the] Note to the extent not prohibited by applicable law.").

22  These terms have never been modified to expressly authorize anyone, including Nationstar, to charge

23  and collect any fees related to requests and delivery of payoff statements by borrowers and their

24  agents.  (**DMF I, K**).  And again, the term Applicable Law has been defined broadly to mean "all

25  controlling applicable federal, state, and local statutes, regulations, ordinances and administrative

26  rules and orders (that have the effect of law) as well as all applicable final, non-applicable judicial

    opinions." (**DMF B, E, F, G, K**). This definition and the standard, uniform terms barring the fees at

---

1    issue in this action, if those fees are barred by all Applicable Law, has been part of every uniform,

2    loan instruments for decades (**DMF B, E, F, K**).

3    As a matter of collateral estoppel, Nationstar is barred from disputing that the plain contractual

4    language in every standard, uniform instrument forecloses the collection of fees expressly prohibited

5    by applicable law.[55]  Specifically, in *Kemp*, Nationstar (and Fannie Mae), argued the junk fee at issue

6    in that case was "authorized by paragraph 14 of the deed of trust."   *Kemp*, 258 A.3d at 319.  Put

7    another way, Nationstar claimed "authorization for the fees in paragraph 14 of the deed of trust, while

8    jettisoning the statutory limitations…explicitly incorporated in that authorization," which provides

9    Nationstar had no right to "**charge fees that are expressly prohibited…by Applicable Law.**"  *Id.*

10   at 305, 319 (emphasis in original)(cleaned up).  In addition, Kemp also recognized "[i]f there were

11   any ambiguity in how the provisions in the deed of trust or the loan modification agreement should

12   be construed, under ordinary contract principles, they would be construed against the drafters – in

13   this case… Nationstar." *Id.* at 320.  *Kemp* is a final appellate decision from the Maryland Supreme

14   Court (f/k/a Maryland Court of Appeals).  As shown *supra* (see Pages 7-16), the fees at issue in this

15   action, which Nationstar collected from the Plaintiffs (and others), were barred also by contract and

16   Nationstar knew it was unjustified from its harvesting practice based upon the previous final appellate

17   decision on point by the Maryland Supreme Court in *Kemp*.  It simply is estopped from claiming

18   otherwise now as a matter of contract and also collateral estoppel (*see* FN 55 *supra*).

19   Nationstar is also not permitted to claim any right to enter into side arrangements to avoid the

20   contractual promises and agreement between the Plaintiffs and the owners of their loans.  *Alexander,*

21   23 F.4th at 379.  *Cf.* Md. Code Regs. 09.03.06.08(C)(1); Wash. Admin. Code 208-620-567.  *See also*

22   *Lembeck v. Arvest Cent. Mortg. Co.*, 498 F. Supp. 3d 1134, 1136–37 (N.D. Cal. 2020)("If mortgage

23

---

24   [55]    *State v. Mullin-Coston, 95 P.3d 321, 324 (2004)*("Washington courts…now apply nonmutual
25   collateral estoppel so long as the party against whom preclusion is sought was a party or in privity
     with a party to the prior litigation and had a full and fair opportunity to litigate the issue in question");
     *Hadley v. Maxwell*, 27 P.3d 600, 602 (2001); *Garrity v. Maryland State Bd. of Plumbing*, 135 A.3d
26   452, 463, 467 (2016)(recognizing Maryland also permits the same application of nonmutual collateral
     estoppel—including findings made in administrative proceedings).

servicers wish to charge a fee incidental to the principal obligation, that fee must be 'expressly authorized' by the underlying mortgage agreement. Any separate contract to pay an incidental fee is prohibited unless 'permitted by law'—that is, by some state or federal statute or regulation. Because no such law exists, the contract and the IVR fee remain unlawful"); *McFadden v. Nationstar Mortg. LLC*, 2021 WL 3284794, at *4 (D.D.C. July 30, 2021), <u>report and recommendation adopted,</u> 2022 WL 1001253 (D.D.C. Apr. 4, 2022) (same); *Knapp v. PHH Mortgage*, 2025 WL 1174947, at *5 (D. Or. Apr. 18, 2025)("Courts have interpreted the 'agreement creating the debt' to refer to the deed of trust or underlying mortgage contract").  And Nationstar admits that neither the Plaintiffs nor anyone like them using its online portal to request a payoff statement from the Mr. Cooper website, or its IVR system or by telephone does not sign any document agreeing to pay a fee related to their request and delivery of a payoff statement.  **DMF I**.  Without any signed instrument authorizing the fee, Nationstar's purported side-agreements are not enforceable and simply irrelevant to the claims asserted, since the payments all relate to Plaintiffs' real estate and mortgage transactions, which require a signed, written agreement by the borrower and owner of the loan for any fee to be permitted. *E.g.* Md. Code Regs. 09.03.06.08(C)(1); Wash. Admin. Code 208-620-551(1)(d); Ex. 9, DFI Dec. at ¶ 12. Nationstar also has no binding contract through its purported side agreements since "a promise to do that which a party is already legally obligated to do cannot serve as consideration for a contract." *Reitz v. Nationstar Mortg., LLC*, 954 F. Supp. 2d 870, 884 (E.D. Mo. 2013).  *Cf.* Argument at Page 14 addressing *Alexander*.

The Maryland Supreme Court has explained, "[it is well-established…that 'laws subsisting at the time of the making of a contract enter into and form a part thereof as if expressly referred to or incorporated in its terms, and the principle embraces alike those provisions which affect the validity, construction, discharge and enforcement of the contract." *John Deere Const. & Forestry Co. v. Reliable Tractor, Inc*., 957 A.2d 595, 599 (2008)(cleaned up).  *Cf. Caritas Servs., Inc. v. Dep't of Soc. & Health Servs.*, 869 P.2d 28, 36 (1994)("A contract is impaired by a statute which alters its terms, imposes new conditions or lessens its value").  Thus, Nationstar's purported side-agreements, if to be considered, are all subject to the applicable laws and regulations that exist at the time they were

OPPOSITION TO NATIONSTAR'S
MOTION FOR SUMMARY JUDGMENT
2:24-cv-00444-BJR – Page 18

18

DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010

purportedly entered into ,and as discussed *supra*, they are not valid or enforceable. *John Deere,* 957 A.2d at 599; *Caritas Servs.,* 869 P.2d at 36. *Cf.* 15 U.S.C.A. § 1639c(e)(3).[56]

Allowing Nationstar special treatment to avoid the laws governing its conduct and to which its purported side-agreements are subject, while it chose to conceal all the relevant, material facts known to it from its borrowers (**DMF P**), would impermissibly legalize its fee-harvesting practices. As a matter of contract law, its fees were not expressly authorized as stated herein.

### D. Industry Standards Also Prohibit Nationstar's Practices.

While a contract could incorporate generic or specific industry standards (*see e.g. Odyssey-Geronimo JV v. State , Dep't of Transportation*, 4 Wash. App. 2d 1056 (2018)), no standard, uniform loan agreement of the Plaintiffs (and others like them) incorporates any industry standards into loan terms. Notwithstanding any plain reading of the operative mortgage contracts, the Court asked the Parties to pursue discovery about industry standards ([Dkt. 88](#)) and Plaintiffs did so without waiving their objection (renewed here), that any purported industry standards supporting Nationstar's fees are not relevant and material. By law and contract, Nationstar had no right to collect any fees related to a residential, mortgage borrowers' request for and the delivery of a payoff statement by any means. *See* Pages 7-19 *supra*. And the industry standards confirm the same conclusion.

Fannie Mae and Freddie Mac have established guidelines for all servicers,[57] including Nationstar, to follow when the servicer collects upon a residential mortgage loan each may own. **DMF K.** Each have testified in this action that the mandatory requirement for Nationstar (and every other servicer they utilize) is to comply with all applicable laws and "[t]o the extent the fees at issue

---

[56]    The crux of Nationstar's 'freedom to contract' (Mot. at 1-4, 11-20) argument is that it may contract around what law and regulations bar it from doing and Nationstar knows this to be untrue because the Washington Supreme Court told it so. *Jordan v. Nationstar Mortg., LLC*, 374 P.3d 1195, 1199 (2016)("While we recognize an overarching freedom to contract, provisions are unenforceable where they are prohibited by statute"). *Cf. Edgewood Nursing Home v. Maxwell*, 282 Md. 422, 427, 384 A.2d 748, 751 (1978)(same). Plaintiffs have identified the laws and regulations herein barring Nationstar's side agreements, and Nationstar simply has its head in the sand and ignores the law.

[57]    But the Plaintiffs and no other borrowers are actual parties to the contractual guides which only govern Nationstar's relationship with Fannie Mae and Freddie Mac. **DMF L.**

OPPOSITION TO NATIONSTAR'S
MOTION FOR SUMMARY JUDGMENT
2:24-cv-00444-BJR – Page 19

19

DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010

in this lawsuit are unlawful under federal, state or local law…Fannie Mae states that such fees are not allowed to be charged by its servicers to Fannie Mae borrowers including Ricardo Salom."  Fannie Mae Dec. at ¶ 13.  *Cf.* Freddie Mac Dec at ¶ 9.[58]  In addition, neither Fannie Mae nor Freddie Mac authorized Nationstar to violate any applicable laws or regulations governing the fees at issue in this action.  **DMF K**.  Notwithstanding Fannie Mae's and Freddie Mac's standards, as shown Pages 7-19 *supra*, Nationstar's fees at issue in this action are not permitted by applicable laws and therefore Nationstar has knowingly and recklessly chosen to violate the most basic of industry standards established by Fannie Mae and Freddie Mac (which control more than 50% of the market).

For decades, Fannie Mae and Freddie Mac have also jointly prepared and published standard, uniform loan instruments for use by any lender who seeks to do business with them or not.  Fannie Mae Dec. at ¶ 8; Freddie Mac Dec at ¶ 6.  It is a standard industry practice for lenders to use the uniform, instruments in their course of work, so the loans they arrange may be sold on the secondary market to Fannie Mae and Freddie Mac (if so desired by a subsequent owner).  **DMF E, G**.  *See also* Dkt. 99-4 Friend Rep. at 6-8; Dkt. 93-3, Patterson Rep. at ¶¶ 22-29, and Dkt. 99-2 Pizer Rep. at 5.  In these Fannie Mae and Freddie Mac standard, uniform instruments, each instrument contained the same prohibition discussed in *Kemp* (Page 16 *supra*) to bar any fee expressly prohibited by applicable law as applied in *Kemp*.  **DMF G**.  Each also utilized the same definition of the term applicable law. **DMF G**.  In addition, the standard, uniform instruments published by Fannie Mae and Freddie Mac also universally included terms that "[a]ll rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law."  **DMF G**.  Based upon these uniform, contractual terms which are likely contained in every loan serviced by Nationstar, the terms also confirm the industry standards governing Nationstar's conduct and establish that its collection of the fees at issue also fail the specific requirements of these basic terms found in every loan instrument for decades.  Dkt. 93-3, Patterson Rep. at ¶¶ 22-29.  *Cf.* Dkt. 99-5, Tarter Rep. at 10 ("any

---

[58]    This same industry standard is also established by the two state agencies who each prohibit Nationstar from acting in violation of the law and to fail to correct its errors once discovered. **DMF M**.

OPPOSITION TO NATIONSTAR'S
MOTION FOR SUMMARY JUDGMENT
2:24-cv-00444-BJR – Page 20

20

DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010

loans sold to Freddie Mac are required to be memorialized on standard, uniform Freddie Mac loan instruments as stated in *Freddie Mac Guide")*.

Nationstar's corporate parent—i.e. the Mr. Cooper Group (Dkt. 8)—has established a Code of Business Conduct and Ethics (Ex. 13)) each officer and employee of Nationstar is required to follow. **DMF K**. Specifically, Nationstar is required to "not just to comply with the laws and regulations that apply to [its] businesses; [it] also strive[s] to abide by the highest standards of business conduct." Ex. 13 at Page 1. However, by charging and collecting fees related to the request and delivery of payoff statement from residential, mortgage borrowers that the borrowers did not agree in writing to pay when they took out their loans or even by any later by a written, signed modification and also where there is no applicable law or regulation affirmatively allowing Nationstar [see Pages 7-19 *supra*] to collect the fee, Nationstar (i) did not comply with industry standards established by its own Code of Business Conduct and Ethics, (ii) did not acknowledge it was accountable for the harm and damage it caused Plaintiffs and other borrowers like them; and (iii) engaged unsafely and unsoundly by projecting one image to the public and by acting totally different with respect to Plaintiffs (and apparently others like them) while other servicers do not charge any fees for the same types of payoff statements. **DMF J - Q**.

Mr. Tarter's expert opinion (Dkt. 99-5, Tarter Rep.) (which supports the factual conclusions in the preceding paragraph) is also consistent with Nationstar's own prior corporate testimony in other matters which Plaintiffs provided to Nationstar in this action. Nationstar's Senior Vice President Courtney Ehinger also testified previously in the *Baxter* action that Nationstar (untimely) corrected its errors at issue in that case as required by the OFR's May 12, 2022 regulatory guidance (**DMF N-O**) which applies to this fee as well and it refunded more than $1,000,000 in illegal fees not expressly authorized in any loan instrument. Ex. 1, Ehinger Dec. from *Baxter* (2-13-2023) at ¶ 10 and Exhibit A thereto. In *Bloom v. Nationstar Mortg. LLC*, 73 Misc. 3d 327, 154 N.Y.S.3d 395 (N.Y. Sup. Ct. 2021), when Nationstar was sued for the same fee at issue in this action on behalf of a class of New York borrowers, Nationstar stopped charging the fee. **DMF P.** However, with an appreciation of its violations of its own code of ethics, Fannie Mae and Freddie Mac's standards, and the law

OPPOSITION TO NATIONSTAR'S
MOTION FOR SUMMARY JUDGMENT
2:24-cv-00444-BJR – Page 21

21

DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010

discussed herein, Nationstar has violated its industry standards by any measure and it has voluntarily continued to collect its illegal fee at issue in this action notwithstanding its appreciation and the past rulings against it in *Kemp* which forecloses the argument it advances here.  **DMF Q.**

Industry standards, to which the Plaintiffs have no control as mere consumers, do not apply to the question presented.  Yet, as shown *supra*, the actual standards discussed and identified in discovery demonstrate that Nationstar should have an appreciation from all these sources—including its own Code of Business Conduct and Ethics (**DMF K**) and past conduct in *Bloom*, *Baxter*, and *Kemp* and also the guidelines of its primary clients Fannie Mae and Freddie Mac, that it has not right to seek to collect and actually collect any fee related to a borrower's request for a payoff statement to be delivered to him by any means.[59]

E. <u>Nationstar's Demand for Fees It has No Right to Collect Requires Restitution</u>

"There is nothing in law or in reason which requires one to deal as though dealing with a liar or a scoundrel, or that denies the protection of the law to the trustful who have been victimized by fraud." *Sainsbury v. Pennsylvania Greyhound Lines*, 183 F.2d 548, 551 (4th Cir. 1950).  The Plaintiffs did not pick Nationstar to be their servicer. **DMF H.**

Because Nationstar's purported side-agreements through its oral communications, IVR system, and website are not legally enforceable contracts and it violated the law (*see* Pages 7-19 *supra*), Plaintiffs and the class members are entitled to pursue a common law claim for unjust enrichment.  The OFR informed Nationstar on May 12, 2022 that such side-agreements were "illegal" and "attempts to circumvent this fee restriction…for the purposes of inserting such fees could also violate Maryland law."   Ex. 6 OFR Dec. at ¶ 5(c); *Cf.* FN 47 *supra*. Thus, Plaintiffs and others who performed "under an agreement that is illegal or otherwise unenforceable for reasons of public policy

---

[59]    In addition, in case the Court wishes to look at other servicers' practices to determine industry practices based on similar entities, the only admissible discovery produced by the Parties shows Nationstar is in a class by itself as scores of other servicers do not charge similar fees.  **DMF J.**

OPPOSITION TO NATIONSTAR'S
MOTION FOR SUMMARY JUDGMENT
2:24-cv-00444-BJR – Page 22

22

DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010

1    may obtain restitution from the recipient…if restitution is required by the policy of the underlying

2    prohibition…").  Restatement (Third) of Restitution and Unjust Enrichment § 32 (2011).[60]

3        "A plaintiff may recover from a defendant on a claim for unjust enrichment upon proving the

4    following three elements: (1) A benefit conferred on the defendant by the plaintiff; (2) An

5    appreciation or knowledge by the defendant of the benefit; and (3) The acceptance or retention by the

6    defendant of the benefit under circumstances that would make it inequitable for the defendant to

7    retain the benefit without the payment of its value."  MPJI-Cv 9:32; *Young v. Young*, 191 P.3d 1258,

8    1262 (2008)(same).  A collector who chooses to collect without the right to do so can be liable for a

9    claim for unjust enrichment.  *Cf. LVNV Funding, LLC v. Finch*, No. 1075, Sept.term,2016, 2017 WL

10   6388959, at *14 (Md. Ct. Spec. App. Dec. 14, 2017), underline on other grounds in part but this holding

11   affirmed, 463 Md. 586, 207 A.3d 202 (2019); *Shields v. Fred Meyer Stores Inc.*, 741 F. Supp. 3d 915,

12   930 (W.D. Wash. 2024)(holding where the defendant was aware it it holding the benefit conferred by

13   the plaintiff which it was not entitled established a claim for unjust enrichment); *Larsen v. PTT, LLC,*

14   737 F. Supp. 3d 1076, 1093 (W.D. Wash. 2024)("it is unjust [for the defendant] to retain the benefits

15   of conducting illegal sales").

16       All applicable laws and regulations that apply to the Plaintiffs' claims did not authorize

17   Nationstar to demand and now retain any fees related to the imposing, charging, and collection of any

18   fees at issue in this action that are neither expressly authorized by any enforceable contract or

19   expressly permitted by any applicable law.  *See* Pages 7-19 *supra*.  Nationstar has not returned those

20   benefits, confirmed by the Plaintiffs and others.  **DMF Q.**  As such, the Plaintiffs have established

21   their claims for unjust enrichment and are entitled to an order of disgorgement of Nationstar's ill-

22   gotten profits—i.e. the fees it collected from the Plaintiffs and others like them without the right to

---

[60]    Illustration 21 to § 32 of the Restatement explains: "A pays B $2000 in advance for a series of medical treatments. After two visits to B's office, A learns that B is not licensed to practice medicine. A repudiates the agreement and asks for his money back. A is entitled to recover $2000 from B by the rule of § 32(1). It is irrelevant to A's recovery that he may have derived benefit from B's services."  *Id.* at Illustration 10 (illustrating that restitution is appropriate even when the parties do not know the transaction is illegal).

OPPOSITION TO NATIONSTAR'S
MOTION FOR SUMMARY JUDGMENT
2:24-cv-00444-BJR – Page 23                    23                    DEVLIN LAW FIRM LLC
                                                                     1526 Gilpin Avenue
                                                                     Wilmington, DE 19806
                                                                     Telephone: (302) 449-9010

do so.  *Cf.* Restatement (Third) of Restitution and Unjust Enrichment § 49 (2011) at Comment c ("Unjust enrichment resulting from a direct payment by the claimant to the recipient ordinarily leads to a prima facie liability in the amount of the payment").  *See also Consumer Protection Div. v. Morgan*, 387 Md. 125, 168-169 (2005); Restatement Illustrations in FN 60 *supra.*

## CONCLUSION

Based upon the foregoing argument and the developed record, Nationstar is not entitled to summary judgment on the question presented by the Court's Order (Dkt. 88) or otherwise.  Since the record largely shows Nationstar's fee is not permitted by law or contract and Nationstar has conceded the record before the Court, Plaintiffs request that the Court, pursuant to Fed. R. Civ. P. 56(g) exercises its discretion to stay the motion while Plaintiffs promptly renew their Fed. R. Civ. P. 23 motion for class certification so that the issues may be held together and Nationstar may not claim the class members are barred from relief by any ruling made by the Court.

DATED May 5, 2025.

DEVLIN LAW FIRM, LLC.                        CONSUMER LAW CENTER, LLC

By: /s/ Christina L. Henry                       By: /s/ Phillip Robinson
Christina L. Henry, WSBA# 31273          Phillip Robinson, *Pro Hac Vice*
6100 219th St SW, Ste 480                     1220 Blair Mill Road, Suite 1105
PMB 398                                              Silver Spring, MD 20910
Seattle, WA 98043-2222                          phillip@marylandconsumer.com
*chenry@devlinlawfirm.com*                    Counsel for Plaintiffs
Counsel for Plaintiffs

DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010