The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RICARDO SALOM, CATHERINE PALAZZO as assignee for Ruben Palazzo, and PETER HACKINEN, *on their own behalf and on behalf of other similarly situated persons*,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONSTAR MORTGAGE LLC,<br><br>Defendant. | Case No. 2:24-cv-00444-BJR<br><br>**NATIONSTAR MORTGAGE LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>ORAL ARGUMENT REQUESTED |

NATIONSTAR'S REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 1
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

# I. INTRODUCTION

This case is about the parties' freedom of contract—a fundamental right long enshrined in the American legal system. As Nationstar noted in its opening memorandum, this case poses the question: can parties to an existing contract make a second agreement for an *additional* service—here expedited delivery—that is not otherwise governed by the first contract or required by law?

As Nationstar demonstrated, the answer to this question unequivocally is "yes." But in their Opposition, Plaintiffs essentially ignore this issue, relegating their response to a footnote. Pls. Opp. 19 n.56, ECF No. 106. To the extent they respond, Plaintiffs appear to concede the right to freedom of contract but argue that various statutes and regulations bar Nationstar from contracting to offer an optional additional service that is not subject to the loan agreement. Plaintiffs wholly fail.

First, Plaintiffs do not (and cannot) identify *any* statute or regulation that prohibits Nationstar from offering expedited delivery services to consumers for a small fee. Indeed, parsing through their many scattershot citations, the only statute Plaintiffs identify as purportedly outright prohibiting Nationstar from contracting to provide expedited delivery of a payoff statement is 12 U.S.C. § 2610, which prohibits charging a fee for any statement required by the Truth in Lending Act ("TILA"). TILA requires only that—with certain exceptions—a loan servicer send a payoff statement no more than seven business days after receiving a written request. 15 U.S.C. § 1639g; 12 C.F.R. § 1026.36(c)(3). But this case is not about merely *sending* a payoff statement within seven business days. Instead, it involves the *expedited delivery* of a payoff statement, usually within hours. It is that expedited *delivery* that provides value to a consumer seeking to lock in an interest rate, consummate a sale, or to request and obtain the payoff information *faster* for other reasons.

Second, Plaintiffs' remaining arguments boil down to their contention that the loan agreement, state regulators, Nationstar's "Code of Conduct," and industry standard require complying with "applicable law." But they nowhere identify any "applicable law" that prohibits Nationstar from contracting with a consumer to provide the additional service of expedited delivery of a payoff statement, a service not required or governed by the loan contract. Instead, they cite to irrelevant case law addressing different fees and/or fees that are expressly prohibited by a state statute. The point of this argument appears to be to shoehorn this case into the case law addressing

NATIONSTAR'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 2
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

so-called "pay-to-pay" fees under the Fair Debt Collection Practices Act ("FDCPA") and thereby assert that any contract to provide a service must be embodied in a signed writing. The Court should reject this invitation to promulgate improper regulation by litigation.

For example, the CFPB itself has just publicly retracted its own overreach by withdrawing sixty-seven (67) publications that it now officially acknowledges included "interpretations that are inconsistent with the statutory text and impose compliance burdens on regulated parties outside of the strictures of notice-and-comment rulemaking."[1] Accordingly, though this is not a "pay-to-pay" case, the precedential value of *Alexander v. Carrington Mortg. Servs.*, LLC, 23 F.4th 370 (4th Cir. 2022)—the primary inapposite case Plaintiffs rely on—has been severely undermined. Further, Plaintiffs fail to address the numerous cases holding that providing a payoff statement is a service that falls *outside* the loan contract, a finding echoed by this Court and confirmed by industry standards explicitly permitting a contract for expedited service for a disclosed $25 fee. It is not governed by the FDCPA or state analogues because delivering a payoff statement at a consumer's request is neither an attempt to collect a debt nor must a consumer tender the payoff amount.

Third, Plaintiffs' contention, that once there is an existing debtor-servicer relationship, it becomes illegal for a loan servicer to contract with consumers to provide additional, optional services not required by law or the existing contract is not only nonsensical, it also is not the law. The Court should grant Nationstar's Motion for Summary Judgment.[2]

---

[1] *See* Federal Register Interpretive Rules, Policy Statements, and Advisory Opinions Withdrawal ("Interpretive Rules"), https://www.federalregister.gov/documents/2024/05/12/2025-08286/interpretive-rules-policy-statements-and-advisory-opinions-withdrawal. Notably, the CFPB expressly retracted its Advisory Opinion "Debt Collection Practices (Regulation F); Pay-to-Pay Fees, 87 FR 39733 (July 5, 2022) on which the CFPB relied in its prior amicus brief filed in this case (ECF No. 54, p. 10). Effective May 12, 2022, the CFPB has publicly retracted those statements and withdrawn *sub silencio* its amicus brief.

[2] Plaintiffs complain that Nationstar's Motion exceeds the Court's Scheduling Order. ECF No. 106, at 6-7 & n. 38, 39. They request an opportunity under Rule 56(d) for more wide-ranging discovery, which appears to be class discovery, *see* Pls.' Ex. 17, and to brief class certification, ECF No. 106, at 6-7. But Nationstar's Motion addresses precisely the question the Court outlined: does the law permit Nationstar to charge the named Plaintiffs a fee to provide expedited delivery of a payoff statement? The fact that the answer to that question dooms Plaintiffs' case does not make Nationstar's Motion improper. The reason for bifurcating discovery was to delay class discovery until after a decision on Plaintiffs' individual claims. Allowing such discovery contradicts the Court's Scheduling Order. Nationstar has not waived its opposition to class certification. *Cf.* ECF No. 106, at 7. The case law Plaintiffs cite merely holds that, should Nationstar prevail on its Motion, it waivers the right to bind anyone other than the named Plaintiffs. *Schwarzschild v. Tse*, 69 F.3d 293, 297 (9th Cir. 1995). That is Nationstar's decision to make, as the law permits, and it so choses.

NATIONSTAR'S REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 3
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

## II. REBUTTAL OF PLAINTIFFS' "FACTS"

### A. Rule 702 Requires the Court to Serve as a Gatekeeper

By and large, Plaintiffs' "Statement of Material Facts Which Preclude Summary Judgment" are either irrelevant or constitute legal conclusions and argument. For instance, paragraphs C, D, G, H, I, J, N, and P all state Plaintiffs' legal conclusions as to the applicability of various contract provisions, statutes, and regulatory guidance. Nationstar responds to these points below but notes that the OFR regulatory guidance cited by Plaintiffs, Pls. Opp. 5, deals exclusively with "pay-to-pay" fees, not payoff quotes or expedited services, making it utterly irrelevant to this case. Ehinger's testimony only confirmed the OFR Advisory deals with "pay-to-pay" fees charged by servicers and other lenders to consumers making monthly loan payments. *See* Pls' Ex. 4. Likewise, the *Baxter* case repeatedly referenced by Plaintiffs dealt solely with pay-to-pay fees Nationstar voluntarily refunded to Maryland consumers. The case is wholly irrelevant to the issue here.

## III. ARGUMENT

### A. Plaintiffs Fail to Refute Nationstar's Core Argument: Consumers Are Free To Contract To Obtain Optional, Extra Services Not Prohibited By Statute And Outside The Loan Contract.

As Nationstar argued in its opening brief, Plaintiffs' lawsuit attacks the fundamental right of Nationstar and Plaintiffs to contract for an optional, extra services (*i.e.*, expedited processing and delivery of a payoff statement) arising entirely outside the loan agreements. Adopting Plaintiffs' theory—that a loan servicer and borrower are precluded from ever contracting for extra services not required by statute or governed by loan documents—runs contrary to centuries of precedent holding inviolate the freedom to contract and would harm consumers by preventing them from obtaining services. *Morta v. Korea Ins. Corp.*, 840 F.2d 1452, 1460 (9th Cir. 1988). Plaintiffs *sole* counter—such as it is—is that Nationstar is barred by federal and state statute, state regulation, and the loan agreement from contracting to provide expedited delivery of Plaintiffs' payoff statements.

    1. <u>Plaintiffs do not identify a statute or regulation prohibiting servicers from offering— and borrowers accepting—services outside the loan agreement for extra fees.</u>

Plaintiffs do not identify any statute that explicitly prohibits loan servicers from charging a fee for an extra service outside the scope of the loan documents. Plaintiffs hang their argument on a tortured interpretation of § 1639g. Pls. Opp. 7-10. Plaintiffs contend that RESPA prohibits

NATIONSTAR'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 4
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

charging a fee "related to a borrower's request for a payoff statement which is delivered in less than '7 business days'" by "any means." *Id.* at 8-9. But this is not what the statute says.

A loan servicer must "*send* a payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request…." 15 U.S.C. § 1639g.[3] Plaintiff's own expert David Friend agrees: the statute does not address expedited *delivery* of payoff statement. *See* Friend Dep. 79-80, **Ex. 1**.[4] Instead, it states that a servicer has up to 7 business days to prepare and send a payoff balance. A payoff statement mailed on the seventh business day fully complies with the statute regardless of when it is *received* by the borrower, and there is no dispute that Nationstar sends payoff statements within 7 business days at no charge to borrowers. *See* Mot. Summ. J. Statement of Facts ("SOF") ¶ 5, ECF No. 96. RESPA requires no more, and it does not *prohibit* Nationstar from contracting with consumers to provide extra, optional service: expedited delivery.

Plaintiffs concoct a preemption argument that they assert somehow shows their statutory interpretation is correct. Pls. Opp. 9. But, as they note, RESPA's preemption provision requires a direct conflict: RESPA only preempts state laws "*to the extent that those laws are inconsistent with any provision of this chapter, and then only the extent of the inconsistency*." 12 U.S.C. § 2616 (emphasis added). Multiple states (at least 10) expressly authorize a payoff preparation fee and many more expressly authorize charging a fee to deliver an expedited payoff statement in less than 7 business days.[5] *None* have been held preempted by RESPA. Tellingly, Plaintiffs cite no case law for their proposition. And indeed, had it been Congress's intent to prohibit a fee to expedite delivery of a payoff statement, such fees would not be explicitly permitted by HUD and Fannie Mae, or by 15 U.S.C. § 1639(t)(1)(B) (permitting fees for faxing a payoff balance in an amount not to exceed comparable fees charged in connection with non-high-cost mortgages).

---

[3] By its own terms, the statute does not apply to any payoff statement requested over the telephone—as were three of the four statements requested by Plaintiff Hackinen.

[4] Mr. Friend admitted the opinions about RESPA and TILA expressed in his report were improper legal conclusions. Friend Dep. 77, 85. He also admitted that "expedited" means faster than 7 business days, that he had no opinion of what constitutes "expedited delivery" in the industry, and that he had no knowledge of any facts of Plaintiffs requesting expedited delivery, agreeing to the disclosed $25 fee for that additional service, or Nationstar delivering the payoff statement faster than 7 business days. *Id.* at 81-84.

[5] *See, e.g.*, C.G.S.A. § 49-10a (permitting a fee for expedited delivery if consumer agrees); Ga. Code § 7-6A-3 ($10 expedite fee permitted); MA ST 183 § 54D (requiring sending a payoff statement within 5 days and permitting a fee); N.C. Gen. Stat. § 45-36.7(i) (permitting reasonable fee for expedited delivery).

NATIONSTAR'S REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 5
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

### 2. Plaintiffs likewise do not identify any state statute or regulation that prohibits loan servicers from offering services outside the loan agreement for additional fees.

Plaintiffs point to a hodgepodge of state statutes and regulations they claim prohibit Nationstar from charging a fee to provide expedited delivery services to consumers. None explicitly *prohibits* such a fee. Washington Rev. Code § 19.116.250(21) regulates debt collection, which—as discussed below—is not at issue here. *See Walcker v. SN Commer., LLC*, 266 Fed. Appx. 455, 457 (9th Cir. 2006) (statute did not apply because letters were not debt collection). The Washington regulations cited by Plaintiffs confirm this. WAC § 208-620-567 (truncated in Plaintiffs' brief and in the declaration by the Washington DFI) provides that a loan servicer may charge fees "authorized by loan documents, by the act, *or by the borrower*." *Id.* (emphasis added). And WAC § 208-620-551 prohibits only "excessive or unreasonable fees to provide loan payoff information," making it clear that such fees are *permissible* if requested by the borrower and not unreasonable.[6]

Plaintiffs also cite Maryland's version of the FDCPA. As Nationstar has argued, this case does not involve actions regulated by the FDCPA or MCDCA. The *Alexander* decision and MD Advisory discussed in *Baxter*, on which Plaintiffs rely, is plainly limited to certain payment *methods* (phone payments), and is undermined by the CFPB's withdrawal of its Advisory Opinion on "pay-to-pay fees." Further, Md. Code Regs. 09.03.08(C)(1) addresses closing documents signed by the borrower. This case does not involve closing costs or disclosures, making this regulation irrelevant. In short, Plaintiffs do not – and cannot – cite any state statute or regulation that prohibits Nationstar from contracting with consumers to provide expedited delivery services for a fee.

### 3. The mortgage contracts do not prohibit Nationstar from charging a fee to provide expedited delivery of a payoff statement.

Plaintiffs also assert that the mortgage contracts prohibit Nationstar from contracting with consumers to provide expedited delivery of a payoff statement. Pls. Opp. 16-19. But this argument consists of Plaintiffs' citation to caselaw that has *nothing* to do with payoff statements. Instead, Plaintiffs point to mortgage provisions requiring complying with "applicable law" and caselaw on inspection fees specifically prohibited by Maryland statute, *Nationstar Mortg. LLC v. Kemp*, 258

---

[6] Plaintiffs make no argument that the fee Nationstar charged to offer expedited processing and delivery of a payoff statement is unreasonable or "excessive." Indeed, Plaintiffs did not dispute that Nationstar has invested millions of dollars to develop a system to expedite delivery of payoff quotes and incurs additional ongoing costs to maintain and update this technology. *See* SOF ¶ 7.

NATIONSTAR'S REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 6
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

A.3d 296 (Ct. App. Md. 2021),[7] or so-called pay-to-pay fees, *Alexander*, 23 F.4th 370. Plaintiffs ignore the extensive caselaw cited by Nationstar holding a mortgage loan contract *does not* prohibit charging a fee for extra services *outside* the loan agreement. ECF No. 98, at 18 (collecting cases).

In sum, Plaintiffs cite no federal or state statute or regulation prohibiting Nationstar from contracting with a consumer to provide expedited delivery of a payoff statement—a service not governed by the loan contract—for a fee. Their contention that the loan agreement prohibits it is flatly wrong. Absent a statutory or contractual prohibition, Plaintiffs had the freedom to accept Nationstar's offer of expedited delivery of their payoff quotes and in return pay for that service. "The principle of freedom of contract dictates that express contract clauses are **presumed to be enforceable**." *Smelkinson Sysco v. Harrell*, 162 Md. App. 437, 447 (2005) (emphasis added); *Preferred Contractors Ins. Co. v. Baker & Son Constr. Inc.*, 200 Wash. 2d 128, 136–37 (2022) (recognizing that "parties are ordinarily free to exercise their freedom of contract").

In fact, contrary to Plaintiffs' claims,[8] the right to contract for expedited service for a fee is widely recognized in the loan servicing industry. Bryar Rep. ¶¶ 52-67, ECF No. 96-5 (fees for expedited payoff quotes are standard in the industry and are approved by the GSEs); Alternative Mortgage Servicing Compensation Discussion Paper, FHFA (Sept. 27, 2011) ("Servicers are also entitled to certain ancillary fees … which include, among other things, … charges for issuing payoff statements, [and] fax charges…."); A2-3-05, Fees for Certain Servicing Activities, Fannie Mae (Nov. 8, 2017), https://servicing-guide.fanniemae.com/svc/a2-3-05/fees-certain-servicing-activities; FHA Single Family Housing Policy Handbook 4000.1 (Jan. 2025) § III.A.1.f.ii.A, at 1172 & Appx. 3.0 (setting allowable fees for expedited delivery of a payoff statement).

---

[7] Contrary to Plaintiffs' assertions, *Kemp* is not "on point." Pls. Opp. 17. Far from it. The main question in *Kemp* was whether Nationstar was a "lender" under the Maryland statute that explicitly prohibits charging inspection fees. *Nationstar Mortg. LLC v. Kemp*, 476 Md. 149, 171-72 (2021) (identifying contested issue as whether Nationstar was "acting on behalf of a 'lender'" in charging inspection fee prohibited under Maryland CL § 12-121(b)). No similar MD statute prohibits a fee to expedite delivery of a payoff statement.

[8] Plaintiffs' argument on this front again is that industry standard requires complying with "applicable law." ECF No. 106, at 19-20. The declarations from the Washington DFI, Maryland regulator, Fannie Mae, and Freddie Mac say nothing more than this. Both Messrs. Friend and Bryar agree on this point and that Fannie Mae's Servicing Guide A2-3-05 expressly identifies "expedited delivery" as an example of "allowable fees for servicing." Friend Dep. 64-71; Bryar Rep. ¶¶ 54, 69. But as set forth above, Plaintiffs do not identify any "applicable law" that bars Nationstar from contracting, for a fee, to provide Plaintiffs with an extra service that outside the loan contract and which Nationstar is not required to provide by statute.

NATIONSTAR'S REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 7
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

Plaintiffs identify no authority showing that the parties' contract for expedited delivery of a payoff quote—a valuable service for a small fee—is illegal. The law plainly allows this contract.

**B.  This Case Is Not A "Pay-To-Pay" Case and the Caselaw Cited by Plaintiffs Addressing Convenience Fees or Inspection Fees Is Wholly Irrelevant.**

Plaintiffs focus most of their scattered argument citing caselaw that considered pay-to-pay fees in the context of the FDCPA or its state analogues. Specifically, they rely heavily on *Alexander*, which held that a "pay-to-pay fee"—a fee charged to the consumer to make a monthly payment by telephone or over the internet—violated the MCDCA because it was not expressly authorized by the loan agreement or permitted by law. Pls. Opp. 10-14.[9] Much of Plaintiffs' "applicable law" argument is geared toward propping up this same contention—namely, that caselaw addressing "pay-to-pay fees" is the "applicable law" prohibiting Nationstar from offering to expedite delivery of a payoff statement for a fee. But in addition to being wholly inapplicable here, the CFPB's recent retraction of its Advisory Opinion undermines Plaintiffs' theory that *Alexander* somehow dictates the outcome of this case. Indeed, the CFPB expressly cautioned *against* such reliance, explaining that, "to the extent guidance materials or portions thereof go beyond the relevant statute or regulation, **they are unlawful, undermining any reliance interest in retaining that guidance**," calling into question the courts' application of 15 U.S.C. 1692f and Regulation F in "pay-to-pay" cases. *See* Interpretive Guidance, *supra* (emphasis added).

Moreover, Plaintiffs' argument simply *assumes*—with essentially no analysis—that the FDCPA governs the legality of the fees at issue in this case. It does not. Plaintiffs make no coherent argument explaining why the FDCPA prohibits Nationstar from contracting with consumers to provide an extra service not governed by the loan contract, offering only the vague proposition that "the payments all relate to Plaintiffs' real estate and mortgage transactions." Pls. Opp. 18. But numerous courts, including this one, have found that a fee for expedited service falls outside the

---

[9] Charitably, *Alexander* is the only case Plaintiffs cite that is even remotely in the ballpark. *Creager v. Columbia Debt Recovery*, 618 F. Supp.3d 1094, 1103 (W.D. Wash 2022), involved a landlord's attempt to collect a security deposit, nothing like the instant case. *Brown v. Transworld Sys., Inc*., 73 F.4th 1030 (9th Cir. 2023) addressed a creditor's attempt to collect a debt post-discharge, again, unlike this case. *Kemp*, addressed above, involved inspection fees explicitly barred by Maryland statute. *Tuttle v. Equifax Check*, 190 F.3d 9 (2d Cir. 1999), *supports* Nationstar's argument, holding in the alternative, that Tuttle had *agreed* to the collection fee when, in full view of the sign alerting him to the fee, he tendered his check. *Id.* at 15.

NATIONSTAR'S REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 8
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

loan contract. ECF No. 96, at 12-13 (citing cases). "The charges expressly mentioned in the note and mortgage appear to be of a class which are related either to payments under the agreements or to default by the borrower. Charges in a similar category not stated in the contracts might be barred … but *fax and duplicate statement fees do not fall into that category.*" *Cappellini v. Mellon Mtg. Co.*, 991 F. Supp. 31, 39 (D. Mass. 1997) (emphasis added). Instead, they relate to "special services outside the scope of the basic services provided by a mortgage servicer." *Id.*; *see Bracco v. PNC Mortg.*, 2016 U.S. Dist. LEXIS 115269, at *13 (M.D. Fla. 2016) (request for a payoff statement does not relate to servicing of a loan). An expedited service fee is not a "pay-to-pay fee," making *Alexander* and other cases cited by Plaintiffs irrelevant. *See, e.g.*, *Curran v. Wash. Mut. Bank, FA*, 2006 U.S. Dist. LEXIS 19187, at *8-9 (W.D. Ark. March 2, 2006) (a fax fee may be connected to payoff statements ordered for a litany of reasons, including "when payment is being contemplated (but not made), for general information, financial planning, updating personal records, preparing personal financial statements" and so on); *Cappellini*, 991 F. Supp. at 38 (same); *Zepeda v. BMO Harris Bank, N.A.*, 2024 U.S. Dist. LEXIS 27736, at *13 (C.D. Cal. Feb. 15, 2024) (request for a loan payoff *does not relate* to a servicer's receipt of a borrower's scheduled periodic payments). In short, Plaintiffs provide no authority for the proposition that a fee to provide the optional service of expedited delivery is governed by 15 U.S.C. § 1692(f)(1), let alone barred by that section.

Moreover, as Nationstar pointed out in its opening brief, sending a payoff quote is not an attempt to collect debt. *Palazzo v. Bayview Loan Servicing LLC*, No. CV DLB-20-2392, 2024 WL 4361857, at *11 (D. Md. Sept. 30, 2024) ("[T]he payoff statement was not an attempt to collect debt…. The statement does not demand payment immediately or by a certain date, and the amounts included in the statement cannot be reasonably viewed as a demand for payment…. The 'animating purpose' of the payoff statement clearly was to provide Palazzo with information on his mortgage account, not to demand payment. The fact that Bayview sent this statement at Palazzo's request is yet another reason why the payoff statement is not an attempt to collect a debt."); *accord Chaudhry v. Gallerizzo*, 174 F.3d 394, 401 (4th Cir. 1999) ("[The payoff] letter was not an act to collect a debt, but rather was sent at Fox's request so that she could have an accurate payoff figure at the refinancing meeting."); *see also*, *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (7th Cir.

NATIONSTAR'S REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 9
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

2011) (balance statements provided at plaintiff's request were not attempt to collect debt); *Redmond v. Fifth Third Bank*, 624 F.3d 793, 801 (7th Cir. 2010) (payoff letters are not acts of collection).

Plaintiffs' only rebuttal of this point comes in a footnote in which they try to distinguish *Palazzo* by arguing both that Nationstar's representative conceded the unremarkable proposition that "paying off a loan involved a payment on a loan" and noting that Plaintiff Hackinen ordered and paid for several payoff statements. Pls. Opp. 10-11 & n.45. Neither assertion has any relevance to whether sending a payoff statement *at a consumer's request* is debt collection. The mere fact that a "payoff statement" *may* be sent before a loan is paid is does not make *it* collection activity. As Nationstar has explained, there any number of reasons why a borrower might want a payoff statement—many of which are not directly related to paying the loan. *See* ECF No. 96, at 2. This point is confirmed by Plaintiffs' own expert. Friend Dep. 76-77 (there could be many reasons for ordering a payoff quote). Plaintiff Hackinen's experience is an example of this. He requested several payoff statements before finally paying off his loan, apparently to shop around for the best refinance opportunity, not to immediately pay off the loan. *See id.* SOF ¶¶ 41-43. In short, Plaintiff Hackinen's claim under the FDCPA fails as a matter of law. He purchased a service from Nationstar. He acknowledges it was beneficial (SOF ¶ 43), and he cannot prevail on a claim that charging the fee he agreed to, for a service he purchased, was somehow improper.

**C.  Nationstar Is Entitled To Summary Judgment On Plaintiffs' Unjust Enrichment And State Statutory Claims.**

Nationstar is entitled to summary judgment on Plaintiffs' claims[10] for unjust enrichment (Count I) and their Maryland and Washington statutory claims (Count IV). *See* ECF No. 96, at 25. Plaintiffs' statutory claims are derivative of their general theme that a fee for expedited service is improper, which fails for the reasons previously explained. With respect to Nationstar's argument that it is entitled to summary judgment on Plaintiffs' unjust enrichment claim, Plaintiffs make

---

[10] Plaintiff Palazzo may not maintain claims on behalf of her husband. Plaintiffs' arguments on this point are unavailing. *Cf.* ECF No. 106, at 15 n.51. First, Plaintiff is not a signatory to her husband's loan. *See* ECF No. 96-21, at 6. She wrongly cited the Court to the mortgage lien document, not the Note. Further, she is not attempting to assert claims on her own behalf as the borrower, making this irrelevant. Next, Plaintiff cannot vicariously recover on her husband's statutory claims. *See* ECF No. 96, at 16 n.4. Finally, a settlement in a different case is not evidence that Nationstar agreed with in that case – or somehow waived in this case – its objection to a litigant improperly attempting to carry on litigation that the actual consumer has decided not to pursue.

NATIONSTAR'S REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 10
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

various conclusory—or outright misleading—claims to avoid the inevitable conclusion that there was a contractual agreement between the parties for expedited delivery. Pls. Opp. 23-24.

For example, Plaintiffs claim that the contracts are "side-agreements" that "are not legally enforceable contracts" that "violate[] the law." Pls. Opp. 23. Plaintiffs claim the Maryland OFR informed Nationstar "that such side-agreements were 'illegal.'" *Id.* (purporting to quote Ex. 6 OFR Dec. at ¶ 5(c)). Plaintiffs misrepresent the OFR's statement[11] through a selectively edited excerpt. The complete sentence quoted by Plaintiffs reads in full: "[A]ttempts to circumvent this fee restriction *by directing consumers to a payment platform associated with the lender or servicer that collects a loan payment fee* or *requiring consumers to amend their loan documents* for the purposes of inserting such fees could also violate Maryland law." *Id.* (emphasis added). The OFR statement had *nothing* to do with fees for expedited delivery of payoff quotes or even separate contractual agreements for extra services. The OFR statement also *never* stated that separate agreements for extra services were "illegal." Plaintiffs are completely wrong.

Plaintiffs also impliedly challenge the validity of the agreement for extra services because it was not in writing but do not explain their basis for this position. *See* Pls. Opp. 23. Here, an agreement to provide a service within hours is an enforceable oral contract—the parties understood the essential terms (expedited service for payment of a fee) and performed under the agreement. *See Brown v. Poole*, 337 F.3d 1155, 1159 (9th Cir. 2003) (recognizing generally that oral "agreements are enforceable"); *Royal Inv. Grp., LLC v. Wang*, 183 Md. App. 406, 437 (2008) (recognizing the purpose of the statute of frauds "is not to prevent the performance or the enforcement of oral contracts that have in fact been made").

## IV. CONCLUSION

Plaintiffs ask this Court to deny consumers the right to contract with Nationstar for an extra service. The Court should reject Plaintiffs' request and grant summary judgment to Nationstar.

---

[11] Plaintiffs also improperly rely on inadmissible statements about past settlements. Pls. Opp. 6 n.31; *see* Fed. R. Evid. 408(a), 410(a); *King Cnty., Wash. v. Merrill Lynch & Co.*, 2012 WL 2389998, at *3 (W.D. Wash. June 25, 2012) ("[L]itigation allegations are mostly inappropriate commentary."); *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) ("This is a consent judgment between a federal agency and a private corporation which is not the result of an actual adjudication of any of the issues…. [I]t can not be used as evidence in subsequent litigation….").

NATIONSTAR'S REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 11
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405

| | | |
|---|---|---|
| 1 | Dated: May 19, 2025 | TROUTMAN PEPPER LOCKE LLP |
| 2 | | By: */s/ Jason E. Manning* |
| 3 | | Thomas N. Abbott (WSBA No. 53024) |
| | | 100 SW Main Street, Suite 1000 |
| 4 | | Portland, Oregon 97204 |
| | | Telephone: 503.290.2322 |
| 5 | | Email: thomas.abbott@troutman.com |
| 6 | | Justin D. Balser (WSBA No. 56577) |
| | | 100 Spectrum Center Drive, Suite 1500 |
| 7 | | Irvine, California 92618 |
| | | Telephone: 949.622.2700 |
| 8 | | Email: justin.balser@troutman.com |
| 9 | | John C. Lynch (admitted *pro hac vice*) |
| | | Jason E. Manning (admitted *pro hac vice*) |
| 10 | | 222 Central Park Avenue, Suite 2000 |
| | | Virginia Beach, Virginia 23462 |
| 11 | | Telephone: 757.687.7500 |
| | | Email: john.lynch@troutman.com |
| 12 | | Email: jason.manning@troutman.com |
| 13 | | Counsel for Defendant |
| | | NATIONSTAR MORTGAGE LLC |

NATIONSTAR'S REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 12
(Case No. 2:24-cv-00444-BJR)

TROUTMAN PEPPER LOCKE LLP
100 SW Main Street, Suite 1000
Portland, Oregon 97204
T: 503.290.2322 / F: 503.290.2405